Benjamin Heikali SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
E-mail: bheikali@faruqilaw.com

Richard W. Gonnello (*pro hac vice* pending)
Sherief Morsy (*pro hac vice* pending)
Dillon Hagius SBN 319632
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
E-mail: rgonnello@faruqilaw.com
        smorsy@faruqilaw.com
        dhagius@faruqilaw.com

*Attorneys for Proposed Lead Plaintiff Frank May*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN SCHELLER, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS, <br><br> Defendants. | Case No. 3:19-cv-01651-WHO <br><br> **FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS** |
| TIM MAUTER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS, <br><br> Defendants. | **CLASS ACTION** <br><br> Judge: Hon. William H. Orrick <br> Date:  July 10, 2019 <br> Time:  2:00 p.m. <br> Courtroom:  2 – 17th Floor <br><br> Case No. 3:19-cv-02442-RS |
| *(captions continue on next page)* | |

JOSEPH S. MAROUN, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS,

Defendants.

Case No. 3:19-cv-02744-RS

HEIDI ZAPF, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS,

Defendants.

Case No. 3:19-cv-02781-SI

FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 5

I.      HEDVAT IS INADEQUATE TO REPRESENT THE CLASS........................................ 5

        A.      Hedvat's Sworn Certification Lists Erroneous Trades ........................................ 5

        B.      Hedvat's Sworn Certification Fails To Comply With Civil Local Rule 3-7(c)...... 8

        C.      Hedvat's Counsel Solicited Class Members With Deceptive Advertising............. 9

II.     MAY IS CONSEQUENTLY ENTITLED TO INVOKE THE PSLRA'S "MOST
        ADEQUATE PLAINTIFF" PRESUMPTION AND BE APPOINTED LEAD
        PLAINTIFF..................................................................................................................... 14

III.    MAY'S SELECTION OF FARUQI & FARUQI, LLP SHOULD BE APPROVED AS
        LEAD COUNSEL ............................................................................................................ 14

CONCLUSION............................................................................................................................... 14

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

**TABLE OF AUTHORITIES**

**Cases**                                                                                                              **Page(s)**

*Andrade v. American Apparel, Inc.*,
     No. CV 10-06352 MMM, 2011 WL 13131110 (C.D. Cal. Jan. 21, 2011)...............................13

*Applestein v. Medivation, Inc.*,
     No. C 10-00998 MHP, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010)..................................13

*In re Bally Total Fitness Sec. Litig.*,
     No. 04C3530, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005) ......................................................10

*Bhojwani v. Pistiolis*,
     No. 06 Civ. 13761(CM)(KNF), 2007 WL 9228588 (S.D.N.Y. July 31, 2007)........................7

*Brown v. Biogen IDEC, Inc.*,
     2005 U.S. Dist. LEXIS 19350 (D. Mass. July 26, 2005).............................................................8

*Burke v. Ruttenberg*,
     102 F. Supp. 2d 1280 (N.D. Ala. 2000).......................................................................................5

*Camp v. Qualcomm Inc.*,
     No. 18-cv-1208-AJB-BLM, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019)............................6, 8

*In re Cavanaugh*,
     306 F.3d 726 (9th Cir. 2002) .............................................................................................2, 5, 14

*Cohen v. U.S. Dist. Court For Northern Dist. of California*,
     586 F.3d 703 (9th Cir. 2009) ....................................................................................................14

*Culver v. City of Milwaukee*,
     277 F.3d 908 (7th Cir. 2002) ......................................................................................................9

*Darwin v. Taylor*,
     No. 12-cv-01038-CMA, 2012 WL 5250400 (D. Colo. Oct. 23, 2012) .....................................7

*Deering v. Galena Biopharma, Inc.*,
     No. 3:14–cv–00367–SI, 2014 WL 4954398 (D. Or. Oct. 3, 2014) ...........................................8

*DeSmet v. Intercept Pharmaceuticals, Inc.*,
     No. 1:17-cv-07371-LAK (S.D.N.Y. June 1, 2018), ECF No. 51 (Kaplan, J.)........................12

*In re Diamond Foods, Inc., Sec. Litig.*,
     281 F.R.D. 405 (N.D. Cal. 2012)...............................................................................................9

*In re Enron Corp. Sec. Litig.*,
     206 F.R.D. 427 (S.D. Tex. 2002)......................................................................................5, 7, 12

*Ferrari v. Gisch*,
     225 F.R.D. 599 (C.D. Cal. 2004)................................................................................................9

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

*Fischler v. Amsouth Bancorporation*,
No. 96-1567-Civ-T-17A, 1997 WL 118429 (M.D. Fla. Feb. 6, 1997).....................................8

*Fla. Bar. v. Went For It, Inc.*,
515 U.S. 618 (1995)...............................................................................................................10

*Gutman v. Sillerman*,
No. 15 Civ. 7192 (CM), 2015 U.S. Dist. LEXIS 179553 (S.D.N.Y. Dec. 8,
2015) ........................................................................................................................................9

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) ...................................6

*Hollingsworth v. Perry*,
558 U.S. 183 (2010)............................................................................................................4, 8

*Huang v. Airmedia Grp. Inc.*,
No. 1:15-cv-4966 ....................................................................................................................9

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*,
No. 14 CIV. 8495 RMB, 2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015) .............................5, 6

*Loveman v. Lauder*,
484 F. Supp. 2d 259 (S.D.N.Y. 2007)....................................................................................6

*Mohanty v. BigBand Networks, Inc.*,
No. C 07-5101.......................................................................................................................8, 9

*Nasin v. Hongli Clean Energy Techs. Corp.*,
No. 2:17-3244 (WJM), 2017 WL 5598214 (D.N.J. Nov. 21, 2017)....................................8, 9

*In re Network Assocs. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) .......................................................................10, 12, 13

*In re NYSE Specialists Sec. Litig.*,
240 F.R.D. 128 (S.D.N.Y. 2007) ...........................................................................................7

*Plumbers and Pipefitters Local 51 Pension Fund v. Petco Animal Supplies, Inc.*,
No. 05-CV-823 ........................................................................................................................5

*Richardson v. TVIA, Inc.*,
No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007)...................................2

*Scheller v. Nutanix, Inc., et al.*,
No. 3:19-cv-01651-WHO .......................................................................................................1

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
119 F. Supp. 3d 1213 (C.D. Cal. 2015) .................................................................................6

*Shiring v. Tier Technologies, Inc.*,
244 F.R.D. 307 (E.D. Va. 2007) .............................................................................................8

iii

*Sweet v. Pfizer*,
    232 F.R.D. 360 (C.D. Cal. 2005)...............................................................................9

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659 (C.D. Cal. 2005).............................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................................12

*Tomaszewski v. Trevena, Inc.*,
    No. 18-4378, 2019 WL 2288267 (E.D. Pa. May 29, 2019)..............................5, 6, 7

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
    No. CIV A 07-177 (FLW), 2007 WL 2683636 (D.N.J. Sept. 7, 2007) ...................13

**Statutes**

15 U.S.C. § 78u–4(a)(3)(A) ..............................................................................................7, 9

15 U.S.C. § 78u-4(a)(2)(A)...................................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...........................................................................2, 3, 4, 5, 14

15 U.S.C. §§ 78u-4(e)(1) & (2).............................................................................................7

PSLRA .......................................................................................................... *passim*

**Other Authorities**

First Amendment ................................................................................................................10

Cal. R. Prof. Conduct 7.1(a) & 7.2(a)................................................................................10

Fed. R. Civ. P. 23(a) .............................................................................................................2

Fed. R. Evid. 201(b)(2) .........................................................................................................6

iv
FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO

Frank May ("May") respectfully submits this memorandum of law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in opposition to competing motions seeking appointment as Lead Plaintiff for the above-captioned actions, and in further support of his motion.[1]  ECF No. 37.

**INTRODUCTION**

The following three issues are currently before the Court:  (1) whether the above captioned actions (the "Actions") should be consolidated; (2) which of the various movants should be appointed as Lead Plaintiff; and (3) whether the duly appointed Lead Plaintiff's proposed selection of counsel should be approved as Lead Counsel.

With respect to consolidation, the Actions should be consolidated because they share several questions of fact and law.  *See* ECF No. 37 at 5.  Indeed, all movants seek consolidation of the Actions.  *See* ECF Nos. 19 at 4-5, 22 at 3-4, 26 at 4-5, 32 at 6-5, 35 at 5-6, 37 at 5-6.

As for appointment of a Lead Plaintiff to steer the consolidated Actions, on May 28, 2019, eight movants filed motions seeking appointment as Lead Plaintiff.  Three of these movants subsequently abandoned their motions,[2] leaving the following five movants still vying for appointment:  (1) May; (2) Shimon Hedvat ("Hedvat"); (3) Jose Flores ("Flores"); (4) Bristol Country Retirement System ("Bristol") and Joseph S. Maroun ("Maroun") (collectively, the "Bristol-Maroun Group"); and (5) Mamood Sabahi ("Sabahi").

The PSLRA contains a rebuttable presumption in favor of appointing as lead plaintiff, the putative class member who:  (1) either files the complaint or a timely motion; (2) *establishes* that

---

[1]   Unless otherwise noted, the following conventions are employed herein: (1) all internal citations are omitted; (2) all emphases are added; (3) all ECF references are to the docket captioned *Scheller v. Nutanix, Inc., et al.*, No. 3:19-cv-01651-WHO; (4) all ECF pin cites are to the document's native pagination, but if no native pagination is available, ECF pin cites then refer to the ECF-generated pagination; and (5) all "Ex. _" references are to the Declaration Of Benjamin Heikali filed concurrently herewith.

[2]   On June 5, 2019, the self-styled Nutanix Investor Group filed a notice of non-opposition acknowledging that they do not have the largest financial interest.  ECF No. 56.  That same day, David Panczner also withdrew his motion.  ECF No. 58.  On June 11, 2019, the City of Birmingham Relief and Retirement System filed a notice acknowledging that it does not have the largest financial interest.  ECF No. 66.

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

the class member has "largest financial interest" in the litigation; and (3) makes a prima facie showing that the class member satisfies Rule 23's requirements for class representatives.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  Movants in this District must additionally comply with Civil Local Rule 3-7(c), which states:

> (c)  ***Certification*** *by Nonfiling Party Seeking to Serve as Lead Plaintiff*. Any party seeking to serve as lead plaintiff, but who does not also file a complaint, need not file the certification required in Civil L.R. 3-7(b), ***but must at the time of initial appearance state that the party has reviewed a complaint filed in the action and either: (1)  Adopts its allegations or, if not, (2)  Specifies the allegations the party intends to assert.***

"The statutory process is sequential:  The Court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).

In determining which potential lead plaintiff possesses the "largest financial interest" in the litigation, courts typically weigh four factors, with the greatest weight being afforded to the approximate "losses suffered[.]" *See Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007).  After the Court identifies the movant with the largest financial stake in the case, the Court must then determine whether that plaintiff "satisfies the other statutory requirements[,]" in particular "those of 'typicality' and 'adequacy'" under Fed. R. Civ. P. 23(a). *Cavanaugh*, 306 F.3d at 732.

The remaining movants assert the following financial interests in the Actions:

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

| Movant | Approximate LIFO Losses |
|---|---|
| Hedvat | $934,533.66 |
| May | $505,465.13 |
| Flores | $396,176.00 |
| Bristol | $10,159.61 |
| Maroun | $173,939.33 |
| Bristol-Maroun Group | $184,098.94 |
| Sabahi | $177,896.33 |

Although Hedvat claims to possess the largest financial interest in the Actions, as explained herein, Hedvat has failed to *establish* his actual financial interest and is inadequate to serve as Lead Plaintiff based on the defects in his certification. When Congress passed the PSLRA, it aimed to end abusive practices by class action lawyers and the manipulation of their clients by replacing the race to the courthouse with the appointment of the plaintiff with "largest financial interest[.]" To that end, Congress required that proposed lead plaintiffs file certifications signed under of penalty of perjury which, *inter alia*, state that the plaintiff is willing to appear at a deposition, state that the plaintiff will not accept payment beyond his *pro rata* share of any recovery, and list the plaintiff's transactions in the subject security during the class period.

With this context in mind, Hedvat is inadequate for three reasons. First, Hedvat failed to provide competent evidence of his trading losses in Nutanix, Inc. securities because his PSLRA certification lists quantities of purchases that exceed the publicly reported trading volume at the listed purchase prices on the days in question. Given the PSLRA's strict 60-day deadline, it is too late to correct these defects.[3]

---

[3] Alternatively, May requests discovery of Hedvat's monthly account records and trade confirmations to confirm Hedvat's losses. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv); *infra* § I.A.

3

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

Additionally, Hedvat's certification fails to state whether he adopts the allegations against Nutanix, Inc. as required by Civil Local Rule 3-7(c). Consequently, his motion should be denied because—as the Supreme Court has acknowledged—local rules have the "force of law," *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010); and it is too late to remedy this defect given the PSLRA's strict 60-day deadline.

Lastly, Hedvat is inadequate to serve as a fiduciary to the Class based on his retention of Levi & Korsinsky, LLP ("L&K"), which issued misleading advertisements to solicit class members. That is, L&K controls and uses shill law firms, such as the Klein Law Firm ("Klein") and the Law Offices of Vincent Wong ("Wong"), to solicit class members on L&K's behalf without disclosing in their advertisements L&K's involvement at the outset. Additionally, L&K employed a "Loss Form" on the firm's webpage for this case which more closely resembles a proof of claim form and states, "See If You Qualify For Monetary Reward." These practices violate attorney ethics rules and are directly at odds with the PSLRA's mandate to end abusive practices by class action attorneys.[4]

With Hedvat disqualified, May is entitled to invoke the PSLRA's "most adequate plaintiff" presumption because he timely filed a lead plaintiff motion and the certification required by the PSLRA and the Local Rules, and because he has made a prima facie showing of his adequacy and typicality. Thus, May's motion seeking appointment as Lead Plaintiff should be granted.

With respect to the appointment of Lead Counsel, because only the Court-appointed Lead Plaintiff is entitled to select and propose Lead Counsel for the Court's approval, May's motion seeking approval of Faruqi & Faruqi, LLP, which has substantial experience in cases like these, as Lead Counsel should be granted.

For the reasons summarized above and those explained more fully below, May respectfully submits his motion should be granted.

---

[4] Alternatively, May requests discovery into L&K regarding the issuance of misleading press releases and any agreements they have with law firms to solicit or refer clients to L&K. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv); *infra* § I.C.

4

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

**ARGUMENT**

**I.      HEDVAT IS INADEQUATE TO REPRESENT THE CLASS**

     **A.      Hedvat's Sworn Certification Lists Erroneous Trades**

"In passing the PSLRA in December 1995, *Congress was reacting to significant evidence of abusive practices and manipulation by class action lawyers of their clients in private securities lawsuits*." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 441-42 (S.D. Tex. 2002) (citing H.R. Conf. Rep. No. 104–369, 104th Cong., 1st Sess. at 31 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 730–31).  Through the PSLRA, Congress sought "to eliminate any race to the courthouse by designating the plaintiff 'most capable of adequately representing the interests of class members' as the lead plaintiff"—*i.e.*, the movant with the largest financial interest.  *Plumbers and Pipefitters Local 51 Pension Fund v. Petco Animal Supplies, Inc.*, No. 05-CV-823 H(RBB), 2005 WL 5957815, at *2, *3 (S.D. Cal. Aug. 17, 2005) (citing *Cavanaugh*, 306 F.3d at 729).  To that end, the PSLRA requires that *at the time the plaintiff moves to be appointed as lead plaintiff*, the party must file a sworn certification setting forth, *inter alia*, "*all of the transactions of the plaintiff in the security that is the subject of the complaint*[.]"  15 U.S.C. § 78u-4(a)(2)(A); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1319-20 (N.D. Ala. 2000) ("Only those plaintiffs who satisfy the certification requirement of the subsection can serve as lead plaintiff [because] the certification requirement forms the baseline for any party seeking to act as lead plaintiff[.]"); *accord Cavanaugh*, 306 F.3d at 737-38 (the certification requirement is "among the most important" under the PSLRA).  "*Sworn declarations are integral to the PSLRA process*, *as they assure district courts that the proposed plaintiff (1) has suffered financial harm*; (2) is not a serial litigant; and (3) *is interested and able to serve as lead plaintiff*."  *Tomaszewski v. Trevena, Inc.*, No. 18-4378, 2019 WL 2288267, at *4 (E.D. Pa. May 29, 2019).  Accordingly, lead plaintiff motions must be supported by competent and accurate evidence of the movant's financial interest.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, No. 14 CIV. 8495 RMB, 2015 WL 1345931, at *3-4 (S.D.N.Y. Mar. 19, 2015) (denying motion of movant because the court was "unable to verify [movant's] claimed losses").

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

For example, in *Trevena*, the court ordered discovery of a movant's "trade confirmations from the [c]lass [p]eriod[,]" which the movant ultimately provided "to the Court and to the other moving plaintiffs." 2019 WL 2288267, at *1. The trade confirmations revealed that the movant overstated his total losses by a mere $518.61 out of a total asserted financial loss of $552,075.43. *Id.* at *3. Yet, these errors were a result of the movant's "combin[ing] certain trades and averag[ing] the per-share prices." *Id.* at *4. The court disqualified the movant as inadequate, stating that the errors amounted "to a substantial degree of carelessness and raise doubt as to whether he will fairly and adequately represent the best interests of the class." *Id.* at *4. Further, the court noted that "given that these errors were made at the outset of the case, this causes the Court to doubt whether [movant] possesses the necessary adequacy and sophistication to be lead plaintiff." *Id.*

Hedvat is similarly inadequate because he failed to provide the Court with adequate evidence to evaluate his motion and properly value his financial interest. Hedvat's certification lists the following purchase transactions that are outside of judicially noticeable historical volume for purchases at those prices on the days in question: (1) a December 28, 2018 purchase of 3,000 shares at $39.17, when only 1,125 such shares were traded at that price on that day; and (2) a January 17, 2019 purchase of 900 shares at $49.02, when only 300 such shares were traded at that price on that day. *See* Ex. A (Bloomberg LP terminal screenshots reflecting date, volume, and price data); ECF No. 23-1 at 5, 6.[5] These discrepancies render Hedvat's losses unreliable and Hedvat inadequate to be Lead Plaintiff. *See Camp v. Qualcomm Inc.*, No. 18-cv-1208-AJB-BLM, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (finding a movant inadequate where movant's certification, *inter alia*, contained "errors in the transaction records"); *Trevena, Inc.*, 2019 WL 2288267, at *4; *Tesco PLC*,

---

[5] May requests that the Court take judicial notice under Fed. R. Evid. 201(b)(2) of the facts that on December 29, 2018, 1,125 shares of Nutanix, Inc. were traded at $39.17, and that on January 17, 2019, 300 shares of Nutanix, Inc. were traded at $49.02. *See, e.g.*, *ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1253 (C.D. Cal. 2015) (taking judicial notice of "the volume of Scrips' shares traded"); *see also Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 1070116, at *3 (N.D. Cal. Feb. 27, 2018) (taking judicial notice of "historical stock prices and trading volume during the class period"); *Loveman v. Lauder*, 484 F. Supp. 2d 259, 268 (S.D.N.Y. 2007) ("The Court agreed that it may take judicial notice of the closing price and volume of trading of ELC shares on the date in question[.]").

6

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

2015 WL 1345931, at *3 (rejecting a lead plaintiff movant who overstated its losses by listing "various trades that either fall outside of the daily price range . . . or constitute[d] more shares traded on a given day than the total trading volume . . . for the stock on such days."); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761(CM)(KNF), 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (finding that group member's discrepancies in loss submissions, while small relative to group's holdings, "indicate[d] a certain carelessness about detail that undermines the adequacy of Mr. Cole (and his associated group) as a lead plaintiff").

Further, any belated supplementation of Hedvat's certification should be rejected given the PSLRA's strict 60-day deadline.  *See Darwin v. Taylor*, No. 12-cv-01038-CMA, 2012 WL 5250400, at *6 (D. Colo. Oct. 23, 2012) (rejecting "new certificate to correct [] actual losses" and noting that "[i]n situations such as the one presented here, allowing claimed losses to be based on transactions disclosed after the 60–day deadline could similarly produce prolonged briefing and delay"); *In re Enron Corp. Sec. Litig*., 206 F.R.D. 427, 455 (S.D. Tex. 2002) (supplemental motion untimely because it was filed after PSLRA deadline after the other applicants' calculated losses were in the record available for comparison); *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 142 (S.D.N.Y. 2007) ("[C]ourts have strictly construed this time limitation and found those motions for appointment as lead plaintiff filed outside of the sixty-day window to generally be time-barred.").

Alternatively, if the Court is not inclined to disqualify Hedvat, May requests discovery of Hedvat's account records and trade confirmations for his transactions during the Class Period and the PSLRA's 90-day lookback period[6] to determine Hedvat's actual financial interest.  Under the PSLRA, "discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first ***demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class***."  15 U.S.C. § 78u-4(a)(3)(A)(iv).  Given that the discrepancies in Hedvat's certification undermine his adequacy to serve as Lead Plaintiff, May has demonstrated a reasonable basis for a finding that Hedvat is inadequate.  *See Trevena, Inc.*, 2019 WL 2288267, at

---

[6]     *See* 15 U.S.C. §§ 78u-4(e)(1) & (2).

7

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

*1 (noting that the court ordered discovery of movant's trade confirmations); *Deering v. Galena Biopharma, Inc.*, No. 3:14–cv–00367–SI, 2014 WL 4954398, at *11 (D. Or. Oct. 3, 2014) (noting that the court allowed limited discovery to determine largest financial interest); *Fischler v. Amsouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *3 (M.D. Fla. Feb. 6, 1997) (holding that "the uncertainty of Movant's claims and the unanswered questions of Movant's intent, both raised by Plaintiff, are sufficient to meet that standard."); *see also Brown v. Biogen IDEC, Inc.*, 2005 U.S. Dist. LEXIS 19350, at *7 (D. Mass. July 26, 2005) (granting discovery into adequacy issues raised in brief).  Therefore, May respectfully requests discovery into Hedvat's account records and trade confirmations in Nutanix, Inc. securities to confirm the accuracy of his PSLRA certification.

      **B.      Hedvat's Sworn Certification Fails To Comply With Civil Local Rule 3-7(c)**

Additionally, Local Civil Rule 3-7(c) *requires* that, "*at the time of initial appearance*" the "*certification*" state that the party "*[a]dopts its allegations [in the complaint] or, if not . . . [s]pecifies the allegations the party intends to assert*."  This local rule has the "force of law." *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010); *accord Mohanty v. BigBand Networks, Inc.*, No. C 07-5101 SBA, 2008 WL 426250, at *3 (N.D. Cal. Feb. 14, 2008) ("[I]n addition to compliance with the PSLRA, litigants must also comply with Civil Local Rule 3-7.").

Hedvat's PSLRA certification lacks the requisite averments under Local Civil Rule 3-7(c) regarding whether he adopts the allegations alleged against Nutanix, Inc. and its officers in a case on file. *See* ECF No. 23-1 at 2.  It is important that this language be in the certification, as it shows that plaintiff is not being manipulated by his lawyers.  Hedvat's "indifference to the PSLRA's certification requirements demonstrate[s] a lack of diligence and candor" and "counsel[s] against a finding of adequacy." *Shiring v. Tier Technologies, Inc.*, 244 F.R.D. 307, 317 (E.D. Va. 2007).  Indeed, a "deficient certification[] will subject [him] to a unique defense that renders [him] incapable of adequately representing the class and, as a result, [he] [is] not the presumptively most adequate lead plaintiff." *Nasin v. Hongli Clean Energy Techs. Corp.*, No. 2:17-3244 (WJM), 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017) (PSLRA certifications not signed "under penalty of perjury" rendered the movants inadequate); *see also Camp*, 2019 WL 277360, at *3 (rejecting

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

movant whose certification "declared under penalty of perjury that he 'reviewed the complaint and authorized its filing,'" where "there was no complaint filed in his name"); *Siegall v. Tibco Software, Inc.*, No. C 05-2146 SBA, 2006 WL 1050173, at *1 (N.D. Cal. Feb. 24, 2006) (defendants opposed appointment of plaintiff whose certification did not comply with Civ. L. R. 3-7).

Hedvat cannot cure this deficiency after the fact "because the PSLRA requires that a motion for lead plaintiff be filed not later than 60 days after the date on which the notice is published, 15 U.S.C. § 78u–4(a)(3)(A)(i)(II)," thus, "any attempt to correct the purportedly deficient certification would be untimely." *Huang v. Airmedia Grp. Inc.*, No. 1:15-cv-4966 )(ALC), 2015 WL 10846763, at *2 (S.D.N.Y. Nov. 10, 2015); *see also Ferrari v. Gisch*, 225 F.R.D. 599, 603 (C.D. Cal. 2004) (rejecting joint motion filed after expiration of lead plaintiff deadline and noting that the PSLRA imposed "strict time requirements"); *Nasin*, 2017 WL 5598214, at *3 (refusing to consider corrected certifications filed after 60-day deadline). Accordingly, Hedvat's failure to comply with the threshold certification requirement renders him inadequate.

## C. Hedvat's Counsel Solicited Class Members With Deceptive Advertising

As explained by the Seventh Circuit Court of Appeals in *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002):

> ***For purposes of determining whether the class representative is an adequate representative of the members of the class, the performance of the class lawyer is inseparable from that of the class representative***. This is so because even when the class representative has some stake (unlike Culver), it is usually very small in relation to the stakes of the class as a whole, magnifying the role of the class lawyer and making him (or in this case her) realistically a principal. Indeed the principal.

Thus, in situations where proposed lead counsel has acted improperly in the case, both counsel and the proposed lead plaintiff are inadequate. *See, e.g.*, *Gutman v. Sillerman*, No. 15 Civ. 7192 (CM), 2015 U.S. Dist. LEXIS 179553, at *10-11 (S.D.N.Y. Dec. 8, 2015) (rejecting lead plaintiff movant as inadequate where counsel engaged in "chicanery"); *accord Sweet v. Pfizer*, 232 F.R.D. 360, 371 (C.D. Cal. 2005) (finding plaintiff inadequate where counsel failed to comply with multiple orders and Local Rules). Indeed, "[a] lead plaintiff is a fiduciary for the investor class. No decision by the lead plaintiff is more important than the selection of class counsel." *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 413 (N.D. Cal. 2012).

9

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

While press releases are a legitimate way of furthering the goals of the PSLRA in drawing out the class member with the largest financial interest, *Network Assocs.*, 76 F. Supp. 2d at 1031-32, 1052, and press release advertisements are protected by the First Amendment, *see Fla. Bar. v. Went For It, Inc.*, 515 U.S. 618, 623 (1995), **counsel must not "create misleading forms of notice under the PSLRA**," *In re Bally Total Fitness Sec. Litig.*, No. 04C3530, 2005 WL 627960, at *2 (N.D. Ill. Mar. 15, 2005). As well, Rules 7.1 and 7.2 of the California Rules of Professional Conduct bar attorneys from disseminating false or misleading advertisements about "the lawyer or the lawyer's services." *See* Cal. R. Prof. Conduct 7.1 ("A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services."); Cal. R. Prof. Conduct 7.2(a) ("Subject to the requirements of rules 7.1 and 7.3, a lawyer may advertise services[.]").

By way of background, wire services limit the number of press releases and the circumstances upon which a law firm can issue press releases in securities class actions. L&K attempts to evade these limits by using other law firms, Klein and Wong, which they control to issue additional press releases—without ever disclosing L&K's involvement. By flooding the market with additional press releases, L&K drowns out press releases issued by other firms who play by the rules, such as May's counsel. That is, L&K misleads investors in these press releases by failing to disclose that L&K controls the press releases issued in Klein and Wong's name, and that the issuing law firms have absolutely no intention of litigating the actions and are merely acting as secret touts for L&K. *See* Cal. R. Prof. Conduct 7.1(a) & 7.2(a) ("A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services.").

There is significant evidence that L&K controls Klein's and Wong's press releases, which was obtained as a result of those firms' mistakes. For example, the Klein Law Firm ("Klein") has mistakenly issued multiple press releases on L&K's behalf, using L&K's logo, or otherwise directing investors to L&K. Ex. B (Klein press releases issued with L&K's logo or name in Health Insurance Innovations, Inc., Novan, Inc., and Intellipharmaceutics International Inc.). In fact, some of Klein's press releases mistakenly state that the source of the advertisements is L&K itself. *Id.* The advertisements are undoubtedly controlled by L&K as how else would Klein obtain L&K's logo? Further, Joseph Klein apparently runs a separate firm dubbed *Korsinsky* & Klein LLP, which

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

shares an office with Levi & *Korsinsky* LLP at 55 Broadway, 10th Floor, New York, NY 10006. *See* Ex. C (webpages for Korsinsky & Klein LLP and L&K showing the same exact address). Similarly, in other cases, L&K issued has issued press releases under Wong's name, but forgot to take out the L&K logo. *See* Ex. D (Wong's press release in Intercept Pharmaceuticals, Inc. issued with L&K's logo); Ex. E (Wong's press release in Navient Corporation issued with L&K's logo).

In this case, ***L&K has issued a total of 49 misleading press releases, including 16 through Klein and 13 through Wong***. *See* Ex. F (compilation of L&K, Klein, and Wong press releases). Thus, ***over 59% (29/49) of the press releases L&K issued were misleading***. *See, e.g.*, Ex. F, at 1-3, 7-8 (examples of Klein's and Wong's numerous press releases failing to disclose L&K's involvement). For example, one Klein press release states that Klein "represents investors and participates in securities litigations [sic]," and a different Wong press release similarly states that Wong "has represented investors in securities litigations [sic]," while omitting that those firms merely intend to pass investors to L&K.[7] *See* Ex. F at 14, 25.[8] These deceptive tactics should disqualify L&K, and consequently Hedvat, from serving in the fiduciary roles of Lead Plaintiff and Lead Counsel. *See Network Assoc.*, 76 F. Supp. 2d at 1033 ("The lead plaintiff owes a fiduciary duty to all members of the proposed class to provide fair and adequate representation[.]"); *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 670 (C.D. Cal. 2005) (noting that "lead counsel, will have a fiduciary duty to represent all class members").

Additionally, L&K's website contained a form on a webpage titled "Nutanix, Inc. Loss Form" which misleadingly resembles a claim form in stating, "See If You ***Qualify For Monetary Reward***"—like it is a bounty. Ex. G (L&K's "Nutanix, Inc. Loss Form"). By inviting investors to see if they "qualify" for money when no settlement class has been certified, L&K's Loss Form looks "much like [a] claim form[]," and is therefore misleading because investors "could have easily

---

[7]     To the best of counsel's knowledge, the Klein and Wong firms have never been appointed Lead Counsel in a securities fraud class action subject to the PSLRA.

[8]     Whether Hedvat was solicited by L&K as a result of the Klein and Wong press releases is irrelevant because those press releases made it harder for firms issuing good-faith press releases to reach Hedvat, or investors like him.

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

thought that they needed to sign up to participate at all." *Network Assoc.*, 76 F. Supp. 2d at 1032.[9] The misleading "Nutanix, Inc. Loss Form" therefore also renders L&K, and thus Hedvat, inadequate.

To be clear, lawyer chicanery has led to the disqualification of lead plaintiff movants in other cases. For example, in *Garbowski v. Tokai Pharmaceuticals, Inc.*, the court rejected a lead plaintiff movant who "did not select" counsel that filed a lead plaintiff motion on his behalf. 302 F. Supp. 3d 441, 454 (D. Mass. 2018). There, Garbowski had filled out a form on a law firm's website, and then that law firm "handed [him] off" to another firm without his knowledge. *Id.* at 454, 456. While he was arguably the victim of deceptive tactics by attorneys, the court rejected Garbowski as a lead plaintiff finding that he "did not understand the obligations of a lead plaintiff" and that his appointment would have resulted in "unsupervised plaintiffs' attorneys" conducting the case. *Id.* at 456; *see also* Ex. H, *DeSmet v. Intercept Pharmaceuticals, Inc.*, No. 1:17-cv-07371-LAK (S.D.N.Y. June 1, 2018), ECF No. 51 (Kaplan, J.) (disqualifying L&K, *inter alia*, after the firm hid a fee-sharing agreement from the court and describing L&K's and other counsel's behavior as "unseemly if not worse").

Although the issue of the use of shill law firms appears to be one of first impression, the issues raised by the practice are important. To permit L&K's misleading press releases and "Loss Form" would only encourage other firms to issue similarly deceptive press releases to drown out constitutionally protected advertisements issued by competing firms, resulting in unscrupulous attorneys controlling the case. This is directly contrary to the PSLRA's mandate to end "***abusive practices and manipulation by class action lawyers of their clients in private securities lawsuits***." *See Enron*, 206 F.R.D. at 441-42; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that curbing "lawyer-driven litigation" is one of the PSLRA's "twin goals"); *Network Assoc.*, 76 F. Supp. 2d at 1023 ("One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation."). Accordingly, L&K's misconduct should disqualify Hedvat from serving as Lead Plaintiff.

---

[9] May, for example, understood that his PSLRA certification was "not a claim form." ECF No. 37-3 at 2, ¶7. The same cannot be said for Hedvat, whose already-deficient certification—§I.A, *supra*—does not even mention the words "lead plaintiff." *See* ECF No. 23-1 at 2.

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

Alternatively, May requests discovery of Hedvat and his counsel as these facts demonstrate a reasonable basis for a finding that Hedvat cannot adequately represent the putative Class. *See Applestein v. Medivation, Inc.*, No. C 10-00998 MHP, 2010 WL 3749406, at *5 (N.D. Cal. Sept. 20, 2010) ("the lack of transparency and [publicly] available information about [opaque investment fund movant] makes it impossible for the parties and the court to determine whether or not [the fund] is a typical investor"); *Andrade v. American Apparel, Inc.*, No. CV 10-06352 MMM (RCx), 2011 WL 13131110, at *3 (C.D. Cal. Jan. 21, 2011) (allowing limited discovery, citing cases where potential lead plaintiffs were disqualified for unrelated misconduct and a lack of transparency); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (allowing discovery concerning a movant's background, qualifications, and adequacy, and finding the information gathered during the short depositions to have proven "illuminating"); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. CIV A 07-177 (FLW), 2007 WL 2683636, at *3 (D.N.J. Sept. 7, 2007) (granting limited discovery of prospective lead plaintiff). May therefore respectfully requests discovery into the following facts:

- How Hedvat learned of the Actions and retained L&K;

- L&K's control of Klein and Wong's press releases, or ***any other law firm's press releases***, including communications between or among these three law firms or the firms' agents regarding the timing, content, and/or funding of these press releases;

- All agreements, written or unwritten, between or among L&K, Klein, Wong, and ***any other law firm*** or the firms' agents, regarding the referral of investors to L&K for this case;

- All agreements, written or unwritten, between or among L&K, Klein, Wong, and ***any other law firm*** or the firms' agents, regarding the issuance of press releases for this case; and

- All agreements, written or unwritten, between or among L&K and any law firm, attorneys, or other persons regarding the issuance of press releases and/or sharing of fees in this case.

13

## II.   MAY IS CONSEQUENTLY ENTITLED TO INVOKE THE PSLRA'S "MOST ADEQUATE PLAINTIFF" PRESUMPTION AND BE APPOINTED LEAD PLAINTIFF

Given the deficiencies in Hedvat's motion, May is entitled to invoke the PSLRA's "most adequate plaintiff" presumption because he possesses the largest financial interest in the actions, has filed a lead plaintiff motion and the requisite certification, and has made a prima facie showing of his adequacy and typicality. *See* ECF Nos. 37-37-5. Therefore, May's motion seeking appointment as Lead Plaintiff should be granted.

The remaining movants possess smaller financial interests in the litigation than May, as set forth in the chart above. *See* Introduction, *supra*. Therefore, under the PSLRA, their motions for Lead Plaintiff should be denied. *See Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

## III.   MAY'S SELECTION OF FARUQI & FARUQI, LLP SHOULD BE APPROVED AS LEAD COUNSEL

Only the Court-appointed Lead Plaintiff is entitled to select and propose lead counsel for the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cohen v. U.S. Dist. Court For Northern Dist. of California*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice."). May's motion seeking approval of Faruqi & Faruqi, LLP as Lead Counsel should be granted because the firm has substantial experience in securities class action cases like these, *see* ECF No. 37-5, and the firm does not use shills to issue advertisements on its behalf.

### CONCLUSION

For the foregoing reasons, May respectfully requests that the Court (1) consolidate the Actions; (2) appoint May as Lead Plaintiff; (3) approve his selection of Faruqi & Faruqi, LLP as Lead Counsel; and (4) grant such other relief as the Court may deem just and proper.

Dated:  June 11, 2019                                    Respectfully submitted,

                                                                    By: /s/ *Benjamin Heikali*

14

FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO

Benjamin Heikali

**FARUQI & FARUQI, LLP**
Benjamin Heikali SBN 307466
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
E-mail: bheikali@faruqilaw.com


Richard W. Gonnello (*pro hac vice* pending)
Sherief Morsy (*pro hac vice* pending)
Dillon Hagius SBN 319632
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
E-mail: rgonnello@faruqilaw.com
         smorsy@faruqilaw.com
         dhagius@faruqilaw.com



*Attorneys for Proposed Lead Plaintiff Frank May
and Proposed Lead Counsel for the putative Class*

**FRANK MAY'S RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS No. 3:19-cv-01651-WHO**

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

By:   */s/ Benjamin Heikali*
Benjamin Heikali