Nicole Lavallee (SBN 165755)
A. Chowning Poppler (SBN 272870)
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
       cpoppler@bermantabacco.com

*Counsel for Movant Jose Flores
and Proposed Liaison Counsel for the Class*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RYAN SCHELLER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS,<br><br>Defendants. | Case No. 3:19-cv-01651-WHO<br><br>CLASS ACTION<br><br>**MOVANT JOSE FLORES'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION, AND IN RESPONSE TO THE COMPETING MOTIONS, FOR APPOINTMENT AS LEAD PLAINTIFF**<br><br>DATE:       July 10, 2019<br>TIME:       9:00 a.m.<br>CTRM:      2 – 17th Floor<br>JUDGE:     Hon. William H. Orrick |
| TIM MAUTER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS,<br><br>Defendants. | Case No. 3:19-cv-02442-RS<br><br>CLASS ACTION<br><br>JUDGE:     Hon. Richard Seeborg |

[NO. 3:19-cv-01651-WHO] MOVANT JOSE FLORES'S REPLY MEMO IN FURTHER SUPPORT OF HIS MOTION, AND IN RESPONSE TO THE COMPETING MOTIONS, FOR APPOINTMENT AS LEAD PLTF



| | |
|---|---|
| JOSEPH S. MAROUN, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:19-cv-02744-RS |
| Plaintiff, | CLASS ACTION |
| vs. | JUDGE:    Hon. Richard Seeborg |
| NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS, | |
| Defendants. | |
| HEIDI ZAPF, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:19-cv-02781-SI |
| Plaintiff, | CLASS ACTION |
| vs. | JUDGE:    Hon. Susan Illston |
| NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS, | |
| Defendants. | |

[NO. 3:19-cv-01651-WHO] MOVANT JOSE FLORES'S REPLY MEMO IN FURTHER SUPPORT OF HIS MOTION, AND IN RESPONSE TO THE COMPETING MOTIONS, FOR APPOINTMENT AS LEAD PLTF

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

I.     ARGUMENT...................................................................................................................2

     A.     The Motions To Consolidate Should Be Granted......................................................2

     B.     The PSLRA's Framework For Appointing A Lead Plaintiff And
          Approving Selection Of Counsel................................................................................2

     C.     Should The Court Not Appoint Hedvat, Then Jose Flores Is The Next
          Most Adequate Plaintiff.............................................................................................3

          1.     The Appropriate Way To Calculate The Largest Financial Interest
              In The Actions Is Through The Retained Share Method...........................4

          2.     May Does Not Use The Retained Share Method, And As A Result
              Massively Inflates His Losses...................................................................5

          3.     Flores Has the Second Largest Financial Interest When Calculating
              Losses On Retained Shares.......................................................................6

          4.     Flores Has the Second Largest Financial Interest In The *Olsten-
              Lax* Factors Identified As Relevant by Hedvat And May...........................7

          5.     Jose Flores Meets The Typicality And Adequacy Requirements Of
              Rule 23(a)................................................................................................8

          6.     Assuming Hedvat is Deemed Not To Be the Presumptive Lead
              Plaintiff, Flores Is The Most Adequate Plaintiff.........................................9

     D.     Should The Court Determine To Appoint Jose Flores As Lead Plaintiff,
          Jose Flores's Choice of Counsel Should be Approved............................................9

II.    CONCLUSION..............................................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*Bohnert v. Roman Catholic Archbishop of S.F.*,
67 F. Supp. 3d 1091 (N.D. Cal. 2014) (Orrick, J.) ............................................................. 8

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) ............................................................................................................ 5

*Eichenholtz v. Verifone Holdings, Inc.*,
No. C 07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ...................... 4, 5, 6

*Gadda v. State Bar of Cal.*,
511 F.3d 933 (9th Cir. 2007) .............................................................................................. 8

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .............................................................................................. 3

*In re Network Assocs., Inc., Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ............................................................................... 2

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) .................................................................................... 7

*J & K IP Assets, LLC v. Armaspec, Inc.*,
No. 3:17-cv-07308-WHO, 2018 WL 2047536 (N.D. Cal. May 2, 2018)
(Orrick, J.) .......................................................................................................................... 8

*Lax v. First Merchs. Acceptance Corp.*,
No. 02-cv-6149, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ......................... 7

*Markette v. Xoma Corp.*,
No. 15-cv-03425-HSG, 2016 WL 2902286 (N.D. Cal. May 13, 2016 ..................... passim

*MAZ Partners LP v. Shear (In re PHC, Inc. S'holder Litig.)*,
894 F.3d 419 (1st Cir. 2018) ............................................................................................. 11

*Mulligan v. Impax Labs., Inc.*,
No. C-13-1037 EMC, 2013 WL 3354420 (N.D. Cal. July 2, 2013) ................................... 4

*Ruland v. InfoSonics Corp*,
No. 06cv1231 BTM(WMc), 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) .................. 2, 7

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(A)(i) .................................................................................................... 8

15 U.S.C. § 78u-4(a)(3)(B)(i) .................................................................................................... 3

15 U.S.C. § 78u-4(a)(3)(B)(ii) ................................................................................................... 2

15 U.S.C. § 78u-4(a)(3)(B)(iii) .................................................................................................. 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................................ 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ............................................................................................ 3, 9

**RULES**

Fed. R. Civ. P. 23(a) ........................................................................................................... passim

N.D. Cal. L.R. 23-1 ...................................................................................................................... 9

N.D. Cal. L.R. 3-7(c) ................................................................................................................... 8

**PRELIMINARY STATEMENT**

Lead plaintiff movant Jose Flores respectfully submits this Reply Memorandum in further support of his motion for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act ("PLSRA"), 15 U.S.C. § 78u-4(a)(3) (Dkt. Nos. 32-34, 70), and in further response to the competing motions of Shimon Hedvat (Dkt. Nos. 22-25, 65, 68) and Frank May (Dkt. Nos. 37, 39, 41, 63, 69, 71).[1]

While Shimon Hedvat appears, on the face of his Certification (Dkt. No. 23-1), to have the largest financial interest in Nutanix, Inc. ("Nutanix") common stock purchased during the March 2, 2018 through February 28, 2019 "Class Period," May has challenged the accuracy of the trading data in Hedvat's Certification and the conduct of Hedvat's counsel in issuing press releases apprising class members of the pendency of this case. Should the Court find issue with Hedvat, then the Court should appoint Flores as lead plaintiff because Flores has the second largest financial interest under the PLSRA and meets the adequacy and typicality requirements of Federal Rule of Civil Procedure 23(a). 15 U.S.C. § 78u-4(a)(3)(B)(iii).

"Financial interest" is not defined under the PSLRA. However, where, as here, inflation during the Class Period is alleged to have been constant throughout the Class Period and there is only one curative disclosure at the end of the Class Period (which caused a $16.39 decline in Nutanix's stock price), courts in this District have considered "net retained shares" – the difference between total shares purchased during the Class Period minus total shares sold during the Class Period – to be determinative of "financial interest." *See Markette v. Xoma Corp.*, No. 15-cv-03425-HSG, 2016 WL 2902286, at *5-6 (N.D. Cal. May 13, 2016. Since Flores had 22,400 net Nutanix shares purchased during the Class Period versus May's 14,000 net Nutanix shares purchased during the Class Period, Flores has the greater "financial interest" in the relief sought in the Action and

---

[1] The four other movants all have a smaller financial interest than Hedvat, Flores, and May, and three of them have conceded that they do not have the largest financial interest. *See* Dkt. Nos. 19-21, 66 (City of Birmingham Relief and Retirement System), Dkt. Nos. 26-31, 67 (Mamood Sabahi), Dkt. Nos. 47-50, 56 (John Barnes, Heidi Zapf, and Ronald Castillo), and Dkt. Nos. 35-36, 38, 40, 42, 44-46 (Bristol County Retirement System and Joseph Maroun). In addition, David Panczner also filed a motion for appointment as lead plaintiff, but withdrew that motion on June 5, 2019. Dkt. Nos. 17-18, 58. As such, he is not eligible to be appointed lead plaintiff.

should be appointed lead plaintiff if Hedvat is disqualified. "Ignoring in-and-out losses or gains, the focus is on the net number of shares purchased. 'At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery.'" *Ruland v. InfoSonics Corp,* No. 06cv1231 BTM(WMc), 2006 WL 3746716, at *6 (S.D. Cal. Oct. 23, 2006) (quoting *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999)). Flores also has a greater "financial interest" based on the other three "*Olsten-Lax*" factors that Hedvat and May identified for analysis.

In the event the Court appoints Flores as lead plaintiff, Flores's selection of Wolf Popper LLP to serve as lead counsel and Berman Tabacco to serve as liaison counsel should also be approved. Both firms are nationally recognized securities class action firms with consistent records of achieving substantial recoveries for the benefit of injured investor classes and both have the expertise and resources necessary to provide high-quality legal representation and effectively protect the interests of the class.

## I.  ARGUMENT

### A.  The Motions To Consolidate Should Be Granted

The PSLRA requires that the Court determine the motion for consolidation prior to appointing a lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). No party opposes the motions to consolidate the four above captioned Actions,[2] and the Actions all allege similar claims arising out of the same underlying facts against the same defendants. The motions to consolidate should therefore be granted.

### B.  The PSLRA's Framework For Appointing A Lead Plaintiff And Approving Selection Of Counsel

The PSLRA instructs that in a securities class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable

---

[2] *Scheller v. Nutanix, Inc.*, No. 3:19-cv-1651-WHO (N.D. Cal.) ("Scheller"); *Mauter v. Nutanix, Inc.*, No. 3:19-cv-2442-RS (N.D. Cal.) ("Mauter"); *Maroun v. Nutanix, Inc.*, No. 3:19-cv-2744-RS (N.D. Cal.) ("Maroun"); *Zapf v. Nutanix, Inc.*, No. 3:19-cv-2781-SI (N.D. Cal.) ("Zapf").

of adequately representing the interests of class members (hereafter referred to as the 'most adequate plaintiff')." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person who "has either filed the complaint or made a [timely] motion [for appointment as lead plaintiff]; in the determination of the court, has the largest financial interest in the relief sought by the class; and … otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). The presumption can only be rebutted with "proof" that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

If the lead plaintiff movant with the largest financial interest does not satisfy the Rule 23(a), or if the presumption in favor of that movant is rebutted, "the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23.'" *Markette*, 2016 WL 2902286, at *2 (quoting *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002)). Only if the movant with the second largest financial loss fails to meet the adequacy and typicality requirements of Rule 23(a), or if the presumption in favor of the movant with the second largest financial interest is rebutted, can the movant with the third largest financial interest be considered.

### C. Should The Court Not Appoint Hedvat, Then Jose Flores Is The Next Most Adequate Plaintiff

Both May and Flores concede that, assuming Hedvat's certification is accurate, he has the largest financial interest. *See* Dkt. No. 70 (Flores Resp.) at 6; Dkt. No. 69 (May Resp.) at 3. May and Flores disagree, however, as to whom between themselves, has the larger financial interest after Hedvat.

Flores argues, correctly, that financial interest and losses should be calculated only on shares retained (held) at the end of the Class Period and damaged by the disclosure of the alleged fraud in the Actions. May argues, incorrectly, that his financial interest and loss should be calculated on all

shares he purchased during the Class Period, including any loss suffered due to normal market movement unrelated to the alleged fraud.

### 1.    The Appropriate Way To Calculate The Largest Financial Interest In The Actions Is Through The Retained Share Method

"The Ninth Circuit has declined to endorse a particular method to calculate which movant has the largest financial stake in a securities class action."  *Markette*, 2016 WL 2902286, at *5 (citation and internal quotation marks omitted).

As stated in Flores's Motion (Dkt. No. 32) and Response (Dkt. No. 70), in cases such as here "where there is a relatively constant fraud premium through the class period" and there are "not multiple partial disclosures that reveal the purported fraud during the class period," courts in this District have "look[ed] to the shares retained at the end of the class period that were purchased during the class period and calculate[ ] the total net loss on those securities alone" at the lead plaintiff stage.  *Id.* at *5 (citing *Mulligan v. Impax Labs., Inc.*, No. C-13-1037 EMC, 2013 WL 3354420, at *6 (N.D. Cal. July 2, 2013) and *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *10-14 (N.D. Cal. Aug. 22, 2008)).

> The [main] advantage of [the] "retained shares" method is that it look[s] to losses experienced due to the shares that the plaintiff was holding at the time the fraud was disclosed, and thus focus[es] on losses caused when stock purchased at artificially inflated prices decreases in value due to the disclosure of the fraud. ***This metric thereby excludes losses caused by normal market fluctuations prior and unrelated to the disclosure of the fraud.***

*Markette*, 2016 WL 2902286, at *5 (emphasis added, alteration in original, citations omitted).

> [The] retained shares method most accurately establishes the loss amount [because] a single disclosure revealed Defendants' purported fraud and does not suggest that any partial disclosures occurred during the class period …. ***When a single disclosure reveals a purported fraud, there is a constant fraud premium across the class period, meaning that the artificial inflation of the price of the security did not dissipate.  In those situations, the retained shares method is more accurate than LIFO, net loss, and other economic loss methods because it excludes losses incurred during the class period that are likely attributable to normal market fluctuations rather than fraud***.

*Id.*, at *6 (emphasis added, citations omitted).

All four Actions allege the same Class Period of March 2, 2018 through February 28, 2019. *See Scheller* Dkt. No. 1, at ¶1; *Mauter* Dkt. No. 1, at ¶1; *Maroun* Dkt. No. 1, at ¶1; *Zapf* Dkt. No. 1,

at Preamble.  Further, the Actions all allege *one corrective disclosure*, on February 28, 2019 after the market for Nutanix common stock had closed for the day, and *one corresponding stock drop*, on March 1, 2019 of $16.39 per share of Nutanix common stock (*i.e.*, no multiple partial disclosures).  *Scheller* Dkt. No. 1, at ¶¶6, 60-68; *Mauter* Dkt. No. 1, at ¶¶36-41; *Maroun* Dkt. No. 1, at ¶¶6, 48-57; *Zapf* Dkt. No. 1, at ¶¶6, 60-68.  As such, the retained share method is the appropriate method to use to calculate the movants' financial interests as it will "focus on losses caused when stock purchased at artificially inflated prices decrease[d] in value due to the disclosure of the fraud" and will "exclude[] losses caused by normal market fluctuations prior and unrelated to the disclosure of the fraud."  *Markette*, 2016 WL 2902286, at *5.

### 2.     May Does Not Use The Retained Share Method, And As A Result Massively Inflates His Losses

May does not use the retained share method.  In fact, even after reviewing the opening papers where Flores outlined the appropriateness of the retained share methodology in this matter, May failed to address the retained share method or cite to *Markette* in his response.  Dkt. No. 69.[3]

No doubt, May's failure stems from the fact that the last-in, first out ("LIFO") methodology artificially inflates his interest.  May's use of the LIFO method is erroneous because it includes "losses incurred during the class period that are likely attributable to normal market fluctuations rather than fraud."  *Markette*, 2016 WL 2902286, at *6.

> [I]t is clear that under *Dura* and its progeny, any losses that [a plaintiff] may have incurred before [defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation.

*Eichenholtz*, 2008 WL 3925289, at *3 (citation and quotation omitted).  "Consequently, based on the same rationale, the court finds no reason to include losses in its [lead plaintiff largest financial interest] calculations that would later be considered uncompensable."  *Id*.  Therefore, in cases such

---

[3] Hedvat also argues for the use of retained shares to calculate losses.  *See* Dkt. No. 48 (Hedvat Resp.) at 5-6 ("[M]any courts across the country have found that the [*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)] methodology is the correct method ….  Accordingly, where an investor purchases stock at a price inflated by a fraudulent misrepresentation or omission and sells the stock before any disclosure of the fraud, the investor has suffered no loss caused by the fraud even though they may have lost money on their investment.").

---

as this, "the retained shares method is more accurate than LIFO … because [the retained share method] excludes losses incurred during the class period that are likely attributable to normal market fluctuations rather than fraud." *Markette*, 2016 WL 2902286, at *6.

May's losses should be calculated on his 14,000 net retained shares, not the 145,500 shares purchased during the Class Period.

### 3. Flores Has the Second Largest Financial Interest When Calculating Losses On Retained Shares

Calculating financial interest only on retained shares, Flores's losses are greater than May's.

Jose Flores retained 22,340 shares on February 28, 2019, in two accounts. He valued his investment in those shares at $1,147,023.40 (using his most recent purchases for each account). He sold those shares on March 1 and 4, 2019, and valued his sales at $750,847.40 (using the average trading price of Nutanix common stock on March 1 and 4, 2019 of $33.61 per share). Under the retained share method, he suffered a loss on those shares of $396,176. Dkt. No. 33-3 (Flores Loss Calculation).[4]

May, on the other hand, held only 14,000 net retained shares at the end of the Class Period on February 28, 2019. Dkt. No. 37-4. His most recent purchase price of Nutanix common stock prior to that date was $52.068 on February 25, 2019 (Dkt. No. 37-3), valuing his investment in the 14,000 retained shares at $728,952. May sold those 14,000 shares on March 1 and 4, 2019. Valuing those sales at the $33.61 per share average trading price is $470,540. Under the retained share method, May suffered losses of $230,440. This is $165,736 less than Jose Flores's losses.

---

[4] "The amount paid for the shares retained [is] calculated according to the price paid for the shares bought most recently in time, but prior to [the end of the Class Period]. The losses on the retained shares are calculated according to the following formula: if a share was not sold within 90 days subsequent to [the end of the Class Period], the loss is to be measured using an average of the daily closing price … during the 90-day period …. If a share was sold within 90 days …, the loss is to be measured using the higher of the actual sale price or an average of the daily closing price from [the end of the Class Period] to the date of sale." *Eichenholtz*, 2008 WL 3925289, at *4. For ease of calculation, Flores uses the average trading price between March 1 and 4, 2019.

---

**4.    Flores Has the Second Largest Financial Interest In The *Olsten-Lax* Factors Identified As Relevant by Hedvat And May**

Some courts in this District have used the four "*Olsten-Lax*" factors (named for two of the early cases to adopt the factors)[5] to determine the largest financial interest:  (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant.  Both Hedvat and May have analyzed their financial interest under these factors.  *See* Dkt. No. 68 (Hedvat Resp.) at 4 (citing cases); Dkt. No. 37 (May Mot.) at 8 (listing factors but not identifying them as *Olsten-Lax*).

Significantly, in his response, May abandoned the four factor methodology he espoused in his opening brief, and instead focused only on "approximate LIFO losses."  *Compare* Dkt. No. 37 (May Mot.) at 8 (listing and evaluating all four factors) *with* Dkt. No. 69 (May Resp.) at 2-3 (mentioning existence of four factors but analyzing only approximate losses under LIFO).  Again, this is no doubt because *Olsten-Lax* factors (1), (2), and (3) also favor Flores (underscoring precisely why reliance on LIFO losses here is inappropriate):

|  | **Flores[6]** | **May[7]** |
|---|---|---|
| **Total Shares Purchased in Class Period** | 274,380 | 145,000 |
| **Net Shares Purchased (Retained Shares)** | 22,340 | 14,000 |
| **Net Funds Expended in Class Period** | $1,098,385 | $888,700 |

Further, this Court should calculate the fourth factor – the approximate losses suffered – using the retained share method, and excluding losses incurred prior to the February 28, 2019 disclosure.  *See Ruland*, 2006 WL 3746716, at *4-5 (excluding in-and-out trades and applying a *Dura*/retained share analysis to calculate the fourth *Olsten-Lax* factor of approximate losses when the fraud premium was constant).  Therefore, as Flores suffered a larger loss than May calculated

---

[5] *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Lax v. First Merchs. Acceptance Corp.*, No. 02-cv-6149, 1997 U.S. Dist. LEXIS 11866, at *16-20 (N.D. Ill. Aug. 6, 1997).

[6] Dkt. No. 33-2 (Flores Cert.)

[7] Dkt. No. 37-4 (May Loss Calculation)

on the basis of retained shares, Flores has a larger financial interest in all four *Olsten-Lax* factors identified by Hedvat and May.

### 5.    Jose Flores Meets The Typicality And Adequacy Requirements Of Rule 23(a)

As stated in Jose Flores's Motion, he meets the adequacy and typicality requirements of Rule 23(a). Dkt. No. 32 at 10-11. Jose Flores's claims are based on the same legal theory, and arise from the same events and course of conduct as the class claims, and thus satisfy the typicality requirement of Rule 23(a)(3). Jose Flores's claims are not antagonistic or in conflict with those of the proposed class, he is not subject to any unique defenses, and he has retained experienced counsel. Therefore, Flores meets the adequacy requirements of Rule 23(a)(4).

Despite the fact that it was clear that there was a dispute regarding who had the second largest loss, May failed to proffer any challenge to Flores' adequacy – no doubt because he had none to raise. "'It is well established that issues cannot be raised for the first time in a reply brief.'" *J & K IP Assets, LLC v. Armaspec, Inc.*, No. 3:17-cv-07308-WHO, 2018 WL 2047536, at *2 n.2 (N.D. Cal. May 2, 2018) (Orrick, J.) (quoting *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007)); *see also Bohnert v. Roman Catholic Archbishop of S.F.*, 67 F. Supp. 3d 1091, 1099 n.10 (N.D. Cal. 2014) (Orrick, J.) ("I need not address this argument since it was first raised in the reply.").

The challenges that May raises as to Hedvat's adequacy do not apply to Jose Flores. Flores's sworn certification is complete, and complies with Local Rule 3-7(c). Dkt No. 33-2 (Flores Cert.) ("I have reviewed the first-filed class action complaint in the United States District Court for the Northern District of California in this matter captioned *Scheller v. Nutanix, Inc., et al.*, No. 3:19-cv-01651-WHO. At this time, I generally adopt the key substantive allegations of that complaint.").

In addition, Jose Flores's counsel (Wolf Popper and Berman Tabacco) issued only one press release in this matter. Jose Flores's counsel was also counsel to Ryan Scheller, and filed the first complaint in the Actions (*Scheller*). Jose Flores's counsel issued the PSLRA mandated early notice to class members (15 U.S.C. § 78u-4(a)(3)(A)(i)) via press release on Friday March 29, 2019.

Jose Flores's counsel also complied with Local Rule 23-1 and filed a notice alerting the Court to the press release on April 5, 2019.  Dkt. No. 10.[8]

In fact, no movant challenged Jose Flores's adequacy or typicality, and no movant submitted proof that that Jose Flores "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).  By failing to do so, all other movants concede Flores's typicality and adequacy and waive any arguments to the contrary or to rebut the presumption in favor of Flores.

### 6.     Assuming Hedvat is Deemed Not To Be the Presumptive Lead Plaintiff, Flores Is The Most Adequate Plaintiff

Assuming the Court rules that Hedvat is not the most appropriate lead plaintiff, Flores is most adequate and should be appointed lead plaintiff because he has the second largest financial interest and meets the adequacy and typicality requirements of Rule 23(a).

Further, should the Court determine that additional lead plaintiffs or class representatives are appropriate, Jose Flores stands ready, willing, and able to serve either as an additional lead plaintiff or additional class representative.

### D.     Should The Court Determine To Appoint Jose Flores As Lead Plaintiff, Jose Flores's Choice of Counsel Should be Approved

Flores has selected Wolf Popper as proposed lead counsel and Berman Tabacco as proposed liaison counsel.  These firms are highly experienced in the area of securities litigation and class actions and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as well as other class actions.  *See* Dkt. Nos. 33-4 (Wolf Popper Resume) and 33-5 (Berman Tabacco Firm Resume).

---

[8] This stands in contrast to May's counsel, who, on Monday April 1, 2019, issued the first in a series press releases directed to Class members, "reminding" Class members of the lead plaintiff deadline.  None of the press releases appended the *Scheller* complaint, or advised Class members that May's counsel had not filed that initial complaint. *See, e.g.*, www.globenewswire.com/news-release/2019/04/01/1791031/0/en/LEAD-PLAINTIFF-DEADLINE-ALERT-Faruqi-Faruqi-LLP-Encourages-Investors-Who-Suffered-Losses-Exceeding-100-000-Investing-In-Nutanix-Inc-To-Contact-The-Firm.html (last visited June 18, 2019).

Wolf Popper possesses extensive experience litigating securities class actions.  Since its founding over seventy years ago, Wolf Popper has been a leader in efforts to protect the interests of defrauded investors, prosecuting thousands of actions under federal and state laws throughout the United States and abroad.  Wolf Popper's efforts have resulted in recoveries of billions of dollars for aggrieved parties.  For example, in *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust, et al. v. J.P. Morgan Acceptance Corp. I.*, No. 2:09-cv-01713 (E.D.N.Y.), Wolf Popper represented lead plaintiff the Public Employees' Retirement System of Mississippi.  The action settled in 2014, resulting in a recovery of $280 million for investors in residential mortgage-backed securities issued by JPMorgan Acceptance Corp.  Wolf Popper also represented co-lead plaintiff the Puerto Rico Teachers Retirement System in *Bach v. Amedisys, Inc.*, No. 10-395 (M.D. La.), a securities fraud class action alleging that Amedisys, a home health care company, misrepresented its financial statements and history of compliance with Medicare rules and regulations, improperly securing revenue from Medicare billings.  The action settled for $43.75 million in 2017.  Many of Wolf Popper's lawyers are regularly selected as New York "Super Lawyers," a selection representing the top 5% of attorneys practicing in New York City.  *See* www.wolfpopper.com.

With one of its two offices in San Francisco, Berman Tabacco is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous matters on behalf of investors over the last 35 years including cases in the Northern District of California, as detailed in the firm's resume.  *See* Dkt. No. 33-5 (Berman Tabacco Firm Resume).  Indeed, the Firm appears as one of the top 10 firms with the most settlements on the list of the top 100 largest securities class actions in ISS Securities Class Action Services' published report, *Top 100 U.S. Class Action Settlements of All Time (as of 12/31/2018)*.  For example, as co-lead counsel for the Ohio Public Employees Retirement System, the Firm reached a $175 million settlement, which represented one of only 4 mega settlements in 2017.  The claims process indicates that each class member who submitted a claim will recover over 100% of its recognized losses. With this track record, Berman Tabacco has been ranked as a *Top Ten Plaintiffs' Firm* by *Benchmark Litigation* for its work "on behalf of individuals and institutions who have suffered financial harm due to

violations of securities or antitrust laws," the third consecutive year the firm has received such distinction. *Benchmark* has also ranked the firm as *Highly Recommended* since 2012. The firm has also been recognized as a leading securities litigation firm by *Chambers USA* and recommended by *The Legal 500*. *See* www.bermantabacco.com/achievements/.

Moreover, Wolf Popper and Berman Tabacco have also worked together in prior securities litigations, and completed a jury trial together in July 2017 in the United States District Court of the District of Massachusetts that resulted in a $3 million disgorgement from a controlling stockholder. *See MAZ Partners v. PHC, Inc.*, No. 11-cv-11049 (D. Mass.). That award was affirmed by the First Circuit Court of Appeals in July 2018. *MAZ Partners LP v. Shear (In re PHC, Inc. S'holder Litig.*), 894 F.3d 419 (1st Cir. 2018).

Given that Flores has "made a reasonable choice of counsel, the district court should generally defer to that choice." *Markette*, 2016 WL 2902286, at *3 (citations omitted).

## II.   CONCLUSION

Flores does not contest that, based upon the information available, Shimon Hedvat has asserted the largest financial interest. However, should the Court decide not to appoint Hedvat as lead plaintiff, the Court should appoint Flores as lead plaintiff because Flores has the second largest financial interest of any of the lead plaintiff movants and also satisfies the adequacy and typicality requirements of Rule 23(a). While May asserts a larger loss, that loss is grossly inflated due to May's calculation using all shares purchased during the Class Period, not only May's 14,000 net retained shares held at the end of the Class Period.

Flores also respectfully requests that the four Actions be consolidated.

//

//

//

//

//

//

DATED:  June 18, 2019                    Respectfully submitted,

                                         **BERMAN TABACCO**


                                         _/s/ Nicole Lavallee_
                                         Nicole Lavallee

                                         A. Chowning Poppler
                                         44 Montgomery Street, Suite 650
                                         San Francisco, CA 94104
                                         Telephone: (415) 433-3200
                                         Facsimile: (415) 433-6382
                                         Email: nlavallee@bermantabacco.com
                                                cpoppler@bermantabacco.com

                                         _Counsel for Movant Jose Flores and Proposed_
                                         _Liaison Counsel for the Class_

                                         Robert C. Finkel (Admitted _Pro Hac Vice_)
                                         **WOLF POPPER LLP**
                                         845 Third Avenue
                                         New York, NY 10022
                                         Telephone: (212) 759-4600
                                         Facsimile: (212) 459-2093
                                         Email: rfinkel@wolfpopper.com

                                         _Counsel for Movant Jose Flores and Proposed_
                                         _Lead Counsel for the Class_