Benjamin Heikali SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
E-mail: bheikali@faruqilaw.com

Richard W. Gonnello (*pro hac vice* pending)
Sherief Morsy (*pro hac vice* pending)
Dillon Hagius SBN 319632
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
E-mail: rgonnello@faruqilaw.com
         smorsy@faruqilaw.com
         dhagius@faruqilaw.com

*Attorneys for Proposed Lead Plaintiff Frank May*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN SCHELLER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS,<br><br>Defendants. | Case No. 3:19-cv-01651-WHO<br><br>**FRANK MAY'S REPLY IN SUPPORT OF HIS LEAD PLAINTIFF MOTION** |
| TIM MAUTER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS,<br><br>Defendants. | <u>**CLASS ACTION**</u><br><br>Judge: Hon. William H. Orrick<br>Date:   July 10, 2019<br>Time:   9:00 a.m.<br>Courtroom:   2 – 17th Floor<br><br><br>Case No. 3:19-cv-02442-RS |
| *(captions continue on next page)* | |

**FRANK MAY'S REPLY IN SUPPORT OF HIS LEAD PLAINTIFF MOTION No. 3:19-cv-01651-WHO**

| | |
|---|---|
| JOSEPH S. MAROUN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS,<br><br>Defendants. | Case No. 3:19-cv-02744-RS |
| HEIDI ZAPF, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS,<br><br>Defendants. | Case No. 3:19-cv-02781-SI |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 4

I.      HEDVAT'S DURA LOSS METHODOLOGY IS IRRELEVANT, INAPPROPRIATE, AND INCORRECTLY APPLIED ................................................................................. 4

II.     FLORES' RETAINED SHARE METHODOLOGY FAVORS THE APPOINTMENT OF MAY ........................................................................................................................... 7

III.    FLORES OFFERS NO BASIS TO SUPPORT HIS APPOINTMENT AS CO-LEAD PLAINTIFF OR AS AN ADDITIONAL CLASS REPRESENTATIVE .......................... 9

CONCLUSION................................................................................................................... 10

**FRANK MAY'S REPLY IN SUPPORT OF HIS LEAD PLAINTIFF MOTION No. 3:19-cv-01651-WHO**

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*AGA Shareholders, LLC v. CSK Auto, Inc.*,
    No. CV–07–62–PHX–DGC, 2009 WL 113569 (D. Ariz. Jan. 16, 2009) ................................4

*In re Baan Co. Secs. Litig.*,
    271 F. Supp. 2d 3 (D.D.C. 2002) ...............................................................................................9

*Bodri v. GoPro, Inc.*,
    No. 16-cv-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ...............................5, 10

*California Public Employees' Retirement System v. ANZ Securities, Inc.*,
    137 S. Ct. 2042 (2017)...........................................................................................................9, 10

*Chandler v. Ulta Beauty, Inc.*,
    No. 18-cv-1577, 2018 WL 3141763 (N.D. Ill. June 26, 2018)....................................................6

*City of Ann Arbor Employees' Ret. Sys. v. Accuray, Inc.*,
    No. C 09-03362 CW, 2009 WL 35176678 (N.D. Cal. Oct. 26, 2009) .......................................1

*Cook v. Allergan PLC*,
    No. 18 Civ. 12089 (CM), 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019).........................5, 6, 7

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ..................................................................................10

*Daimler AG v. A-Z Wheels LLC*,
    No. 16cv875-JLS-MDD, 2018 WL 3413863 (S.D. Cal. Apr. 23, 2018)....................................7

*Dolan v. Axis Capital Holdings Ltd.*,
    No. 04 Civ.8564 (RJH), 2005 WL 883008 (S.D.N.Y. Apr. 13, 2005) ......................................9

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005)........................................................................................................ *passim*

*Fialkov v. Celladon Corp.*,
    No. 15cv1458 AJB (DHB), 2015 WL 11658717 (S.D. Cal. Dec. 9, 2015)................................6

*In re Gentiva Sec. Litig.*,
    281 F.R.D. 108 (E.D.N.Y. 2012) ...............................................................................................5

*Kniffin v. Micron Technology, Inc.*,
    No. 19cv678, 2019 WL 2119613 (S.D.N.Y. Apr. 30, 2019).......................................................6

*Leavitt v. Alnylam Pharmaceuticals, Inc.*,
    No. 18-12433-NMG, 2019 WL 2029512 (D. Mass. May 8, 2019) ...........................................6

*Markette v. XOMA Corp.*,
    No. 15-cv-03425-HSG, 2016 WL 2902286 (N.D. Cal. May 13, 2016) ................................7, 8

**FRANK MAY'S REPLY IN SUPPORT OF HIS LEAD PLAINTIFF MOTION No. 3:19-cv-01651-WHO**

*Mulligan v. Impax Laboratories, Inc.*,
    No. C–13–1037 EMC, 2013 WL 3354420 (N.D. Cal. July 2, 2013) ....................................8, 9

*Nicolow v. Hewlett Packard Co.*,
    No. 12-cv-05980-CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) .........................................5

*In re Novatel Wireless Sec. Litig.*,
    No. 08cv1689 AJB (RBB), 2013 WL 12144150 (S.D. Cal. Oct. 25, 2013)..........................6, 7

*Nuance Communications, Inc. v. ABBYY Software House*,
    C 08–02912 JSW (MEJ), 2012 WL 2427160 (N.D. Cal. June 26, 2012)..................................4

*Perlmutter v. Intuitive Surgical, Inc.*,
    No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011)......................................5

*Piven v. Sykes Enters.*,
    137 F. Supp. 2d 1295 (M.D. Fla. 2000).....................................................................................9

*Richardson v. TVIA, Inc.*,
    No. C 06 06304, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007)................................................5

*Ruland v. InfoSonics Corp.*,
    No. 06CV1231 BTMWMC, 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ..............................6

*Schueneman v. Arena Pharmaceuticals, Inc.*,
    No. 10cv1959 BTM(BLM), 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) .............................10

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659 (C.D. Cal. 2005)...............................................................................................9

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016).......................................................................................................6

*In re Watchguard Secs. Litig.*,
    No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005).......................5

*In re Williams Sec. Litig.*,
    496 F. Supp. 2d 1195 (N.D. Okla. 2007)...................................................................................6

**Statutes**

15 U.S.C. § 78u-4 ...............................................................................................................2, 8

**FRANK MAY'S REPLY IN SUPPORT OF HIS LEAD PLAINTIFF MOTION No. 3:19-cv-01651-WHO**

Frank May ("May") respectfully submits this reply memorandum pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in further support of his motion for consolidation, appointment as Lead Plaintiff, and approval of his selection of counsel as Lead Counsel.[1]  ECF No. 37.

**INTRODUCTION**

Three movants continue to seek appointment as Lead Plaintiff for the Actions: (1) May; (2) Shimon Hedvat ("Hedvat"); and (3) Jose Flores ("Flores").[2]  The movants assert the following financial interests:

| Movant | Asserted Losses |
|---|---|
| Hedvat | $934,533.66 |
| May | $505,465.13 |
| Flores | $396,176.00 |

Although Hedvat claims larger losses than May, as explained previously, he is inadequate to represent the putative class for the following reasons:  (1) Hedvat failed to establish his actual financial interest because his certification lists erroneous transactions; (2) his certification fails to comply with Civil Local Rule 3-7(c); and (3) his counsel, Levi & Korsinksy, LLP ("L&K"), engaged in deceptive advertising in soliciting clients for this case by, *inter alia*, using shill law

[1]    Unless otherwise noted, the following conventions are employed herein: (1) all internal citations are omitted; (2) all emphases are added; (3) all ECF references are to the docket captioned *Scheller v. Nutanix, Inc., et al.*, No. 3:19-cv-01651-WHO; (4) all ECF pin cites are to the document's native pagination, but if no native pagination is available, ECF pin cites then refer to the ECF-generated pagination; and (5) all "Ex. _" references are to the Declaration Of Benjamin Heikali filed concurrently herewith.

[2]    The remaining movants abandoned their motions by withdrawing their motions, ECF No. 58, filing non-oppositions acknowledging that they do not have the largest financial interest, ECF Nos. 56, 66, 67, or by failing to file an opposition brief and further advance their motions. *See City of Ann Arbor Employees' Ret. Sys. v. Accuray, Inc.*, No. C 09-03362 CW, 2009 WL 35176678, at *2 n.2 (N.D. Cal. Oct. 26, 2009) (finding that movants who failed to file opposition papers were deemed "to have abandoned [their] motion[s] for appointment as lead plaintiff").

1

**FRANK MAY'S REPLY IN SUPPORT OF HIS LEAD PLAINTIFF MOTION No. 3:19-cv-01651-WHO**

firms to issue press releases that fail to disclose that L&K is the real party in interest behind the advertisements and that the firms named in the ads have zero intention of actually litigating this case. *See* ECF No. 69 at 5-13.[3]

With Hedvat disqualified, May is entitled to invoke the PSLRA's "most adequate plaintiff" presumption because he possesses the largest financial interest of the remaining movants, he timely filed a lead plaintiff motion and the certification required by the PSLRA and the Local Rules, and he made a *prima facie* showing of his adequacy and typicality. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Although the presumption is a rebuttable one, Hedvat and Flores must present evidence—not speculation—that May is inadequate or atypical in order to rebut the PSLRA's presumption. No such evidence has been presented by Hedvat or Flores. Rather, Hedvat and Flores make irrelevant, inappropriate, and incorrect arguments aimed at reducing the financial interests of May and other Class members.

Hedvat argues that May's losses should be reduced in accordance with the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). First, Hedvat's argument is irrelevant because Hedvat asserts larger losses than May regardless of whether the Court uses Hedvat's purported "Dura" methodology; thus, Hedvat is presumably making this argument for some other unstated purpose. Second, it is premature at the lead plaintiff stage to calculate the portion of an investor's losses that are recoverable as damages under *Dura*, which was a decision about the **pleading** standard, because the ultimate determination of damages requires discovery and expert evidence that disentangles non-fraud related factors such as **market and/or industry factors** to determine which portion of an investor's losses are attributable to the defendants' fraud. Furthermore, it ignores the possibility of relevant amendments. Indeed, the majority of courts determine financial interest based on the four *Olsten-Lax* factors, with the greatest weight being afforded to the investor's **total** approximate out-of-pocket losses as measured by the last-in first-out ("LIFO") matching methodology. Therefore, in determining who possesses the "largest financial interest," the Court should credit May's losses of $505,465.13.

---

[3] Alternatively, May requested discovery of Hedvat and L&K as set forth in his opposition brief. *See* ECF No. 69 at 7-8, 13; 15 U.S.C. § 78u-4(a)(3)(A)(iv).

**FRANK MAY'S REPLY IN SUPPORT OF HIS LEAD PLAINTIFF MOTION No. 3:19-cv-01651-WHO**

That said, Hedvat's estimation of May's losses totaling $352,005.75 under *Dura* is mathematically ***incorrect***.  Under a *Dura*-constrained analysis, which excludes losses from so-called in-and-out trading[4] prior to the February 28, 2019 post-market close corrective disclosure at the end of the Class Period, May's losses total $404,264.96.  *See* Ex. 1 at 5.  Thus, if the Court applies *Dura* at this stage, it should credit May's calculation over Hedvat's calculation.  More importantly, if Hedvat were sincere about applying *Dura* and measuring each movant's financial interest by measuring their potential damages, Hedvat would have advanced ***from the outset*** the retained share methodology ("RSM") championed by Flores, as explained below, because the RSM is a better measure of *Dura* damages in this case.

Flores, on the other hand, admits that he does not possess the largest financial interest, but nonetheless argues that he should be appointed Lead Plaintiff in the event that Hedvat is disqualified from doing so.  To that end, Flores argues that May's financial interest is smaller than Flores' based on the RSM, which measures each movant's financial interest by determining the number of shares each retained at the end of the class period that were purchased during the class period.  The theory underlying the RSM is that in cases such as this one, which only assert a single corrective disclosure at the end of the Class Period, and thus assume a constant fraud premium in the Company's stock throughout, the best measure of each investor's financial stake in the litigation—*i.e.*, their potential damages—is the number of shares they purchased during the Class Period that the investor retained prior to the corrective disclosure.

***But May possesses a larger financial interest than Flores under the RSM*** because May possesses a greater number of retained shares that were purchased during the Class Period.  Flores incorrectly tallies May's retained shares at 14,000, ***when in fact May retained 24,500 shares at the end of the Class Period that he purchased during the Class Period—i.e., 2,160 shares more than***

---

[4] According to Hedvat, pursuant to *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005), in-and-out trades must be excluded "where an investor purchases stock at a price inflated by a fraudulent misrepresentation or omission and sells the stock before any disclosure of the fraud, the investor has suffered no loss caused by the fraud even though they may have lost money on their investment."  ECF No. 68 at 6.

**FRANK MAY'S REPLY IN SUPPORT OF HIS LEAD PLAINTIFF MOTION No. 3:19-cv-01651-WHO**

***Flores' 22,340 retained shares***.  Accordingly, May possesses a larger financial interest than Flores under the RSM.

Lastly, Flores requests to be appointed as Co-Lead Plaintiff or as a class representative. Courts appoint co-lead plaintiffs if there is a conflict within the class or if the difference between the movants' losses is minimal such that the movants' financial interests are roughly equivalent. Flores, however, has provided no basis to be appointed Co-Lead Plaintiff.  Additionally, Flores requests to be appointed class representative referencing vague statute of repose issues.  To the contrary, it is the Lead Plaintiff's exclusive right to designate additional class representatives, and Flores offers no authority to the contrary.

For the reasons set forth previously and herein, May respectfully submits his motion should be granted.

## ARGUMENT

### I.    HEDVAT'S DURA LOSS METHODOLOGY IS IRRELEVANT, INAPPROPRIATE, AND INCORRECTLY APPLIED

Hedvat's assertion that May's losses should be reduced under *Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336 (2005) should be rejected because it is irrelevant, inappropriately premature at the lead plaintiff selection stage, and incorrectly applied by Hedvat in any event.

First, Hedvat's argument is irrelevant because it is unclear why he is making the argument in the first place.  Indeed, whether or not the Court adopts Hedvat's method of calculating losses, Hedvat still asserts larger losses than May.  *See, e.g.*, *Nuance Communications, Inc. v. ABBYY Software House*, C 08–02912 JSW (MEJ), 2012 WL 2427160, at *3 n.4 (N.D. Cal. June 26, 2012) ("The Court does not consider these arguments because they are irrelevant to the issues in this dispute[.]"); *AGA Shareholders, LLC v. CSK Auto, Inc.*, No. CV–07–62–PHX–DGC, 2009 WL 113569, at *2 (D. Ariz. Jan. 16, 2009) (noting that the court "was not required to consider an irrelevant argument").

Second, Hedvat's methodology is inappropriate because it is against the weight of authority and premature at this stage of the litigation.  By way of background, "[c]ourts have typically considered the 'Olsten-Lax' factors to determine who has the largest financial interest: (1) the

4

number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Richardson v. TVIA, Inc.*, No. C 06 06304, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007). The "***weight of authority puts the most emphasis on the competing movants' estimated losses, using a last in, first out ('LIFO') methodology***." *Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016); *Nicolow v. Hewlett Packard Co.*, No. 12-cv-05980-CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (same). Thus, courts generally "choose a lead plaintiff ***based on [a] total losses rough estimate for a plaintiff's <u>maximum recoverable</u> damages rather than attempting to estimate a plaintiff's recoverable losses.***" *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *5 (N.D. Cal. Feb. 15, 2011).

By contrast, *Dura* merely held that ***at the pleading stage*** a conclusory allegation that "the price on the date of the purchase was inflated because of the misrepresentation" was insufficient to meet the loss causation element of a claim under § 10(b) of the Exchange Act. 544 U.S. 336 at 342-43. The Supreme Court reasoned that a "tangle of factors" affect the market price of a security; thus "the most logic alone permits . . . is that the higher purchase price will sometimes play a role in bringing about a future loss." *Id.* at 343. The Supreme Court "***did not suggest that a court should guess about the effect of [] as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue***." *In re Watchguard Secs. Litig.*, No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923, at *15 n.6 (W.D. Wash. July 13, 2005). Consequently, courts are understandably wary of excluding in-and-out transactions at the lead plaintiff stage as "the appropriateness of employing *Dura* analysis at the lead plaintiff stage is subject to considerable dispute." *Cook v. Allergan PLC*, No. 18 Civ. 12089 (CM), 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 117 (E.D.N.Y. 2012) (rejecting "contention that other movants improperly included regular trading losses from earlier stock sales that are not recoverable under the federal securities laws"). For example, "the 'fraud premium'"—"the amount by which the stock is inflated because of the alleged misrepresentations or omissions"—may have varied throughout the Class Period as a result of, *inter alia*, partial corrective disclosures[.]" *Allergan*, 2019 WL

5

1510894, at *3, *3 n.3. Indeed, "the *Dura*-loss analysis advanced by [Hedvat] does not appear to be the majority view of financial interest analysis adopted by courts in this district or this circuit." *Fialkov v. Celladon Corp.*, No. 15cv1458 AJB (DHB), 2015 WL 11658717, at *5 (S.D. Cal. Dec. 9, 2015).

Hedvat's out-of-circuit cases are distinguishable on this point. In *Kniffin v. Micron Technology, Inc.*, the only movant not adjusting their calculations "offer[ed] no reason why [the] [c]ourt should depart" from a *Dura*-adjusted analysis, No. 19cv678, 2019 WL 2119613, at *3 (S.D.N.Y. Apr. 30, 2019); and thus the issue was not properly before the court unlike in this case. *See also Leavitt v. Alnylam Pharmaceuticals, Inc.*, No. 18-12433-NMG, 2019 WL 2029512, at *3 (D. Mass. May 8, 2019) (movant did not "contest any of the figures submitted by [competing movants] with respect to his recoverable losses"); *Chandler v. Ulta Beauty, Inc.*, No. 18-cv-1577, 2018 WL 3141763, at *4 n.7 (N.D. Ill. June 26, 2018) (movant that argued for including "in-and-out" transactions did "not argue that the other movants improperly calculated its losses after excluding the in-and-out claims"). Further, the *Ruland v. InfoSonics Corp.* court did not consider the complexities of a true *Dura* analysis, nor did it decide that the *Dura* analysis trumped the LIFO methodology. No. 06CV1231 BTMWMC, 2006 WL 3746716, at *5 (S.D. Cal. Oct. 23, 2006).

The inappropriateness of applying a *Dura* analysis is further evidenced by Hedvat's own failure to abide by *Dura*. Establishing recoverable losses pursuant to *Dura* requires expert evidence that "the fraud premium was removed from the price of the stock by way of the efficient market's reaction to a corrective disclosure that was responsive to the misstatement or omission that created the fraud premium in the first instance." *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1264 (N.D. Okla. 2007); *see also In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 259-60 (2d Cir. 2016) (noting that experts "provide testimony on loss causation and/or damages in securities-fraud cases"). For example, expert evidence conducting "event studies are crucial to demonstrate loss causation, and indeed some courts describe them as almost obligatory" in order to "show the true value of the stock." *In re Novatel Wireless Sec. Litig.*, No. 08cv1689 AJB (RBB), 2013 WL 12144150, at *5 (S.D. Cal. Oct. 25, 2013). Moreover, evidence of loss causation typically requires an expert to "assess statistical significance and quantify the portion of price movement not

6

explained by *market and/or industry factors*, *i.e.*, the company specific portion of the price movement." *Id.* at *5.

Here, Hedvat, provided *no analysis of May's losses under Dura* when arriving at his $352,005.75 figure, let alone any expert evidence regarding market and/or industry factors required to conduct a *Dura* analysis. *See* ECF No. 68 at 7 (listing a "*Dura*" total without any description of how he arrived at those numbers). Thus, Hedvat's failure to "abide by the injunction of the arithmetic teacher"—*i.e.*, to "show [his] work"—only proves that conducting a *Dura* analysis is premature. *Daimler AG v. A-Z Wheels LLC*, No. 16cv875-JLS-MDD, 2018 WL 3413863, at *1 (S.D. Cal. Apr. 23, 2018); *see Allergan*, 2019 WL 1510894, at *3 (rejecting movant's "convoluted [*Dura*] loss calculation methodology at the expense of BRS' considerably more straightforward calculations").

That said, the number which Hedvat states as May's "*Dura* LIFO Total," $352,005.75, *is incorrect*. When in-and-out transactions are excluded, *May's losses total $404,264.96, not $352,055.75*. *See* Ex. 1 at 4 (May's loss calculation using certain *Dura* constraints, and highlighting "*Dura*-eligible" transactions). Thus, in the event the Court is inclined to conduct the kind of partial *Dura* analysis suggested by Hedvat, the Court should credit May's calculation over Hedvat's.

## II.   FLORES' RETAINED SHARE METHODOLOGY FAVORS THE APPOINTMENT OF MAY

Flores incorrectly asserts that he has the largest financial interest under the RSM. The RSM "looks to the shares retained at the end of the class period that were purchased during the class period and calculates the total net loss on those securities alone." *Markette v. XOMA Corp.*, No. 15-cv-03425-HSG, 2016 WL 2902286, at *5 (N.D. Cal. May 13, 2016). The RSM assumes "a constant fraud premium across the class period." *Id.* at *6. In terms of dollar amounts, in *XOMA*, on which Flores relies, ECF No. 70 at 5, the court first determined the number of each movant's retained shares, then "calculate[d] the total value of those shares applying the price of the stock at the time immediately before disclosure of the purported fraud[,]" and then subtracted the value of

**FRANK MAY'S REPLY IN SUPPORT OF HIS LEAD PLAINTIFF MOTION No. 3:19-cv-01651-WHO**

those shares as measured against "the average share price over the 90 days that followed the fraud disclosure" to arrive at the movants' dollar losses under the RSM. *Id.*

Applying this method here, ***May retained more shares of Nutanix, Inc. than Flores***, ***with May retaining 24,500 shares that he purchased during the Class Period, which is 2,160 shares more than Flores' 22,340 shares***. S*ee* Ex. 1 at 4 (highlighting the shares that were retained at the end of the Class Period and purchased during the Class Period); ECF No. 70 at 7.[5]  The price of Nutanix, Inc. shares before the disclosure of the alleged fraud after market close on February 28, 2019—*i.e.*, the closing price of the stock on February 28, 2019—was $50.09 per share. *See, e.g.*, ECF No. 1 at ¶¶62-68.  Multiplying this figure by the number of each movant's retained shares results in a value of $1,227,205 (24,500 x $50.09) for May and $1,119,010.60 (22,340 x $50.09) for Flores.  May's and Flores' retained shares are then multiplied by the average price of Nutanix shares over the 90 days after the February 28, 2019 disclosure, which is approximately $38.5056,[6] *see* Ex. 1 at 1, resulting in totals of $943,387.20 (24,500 x $38.5056) for May and $860,215.10 (22,340 x $38.5056) for Flores.  These totals are then subtracted from the value of May's and Flores' retained shares prior to the alleged disclosure ($1,227,205 and $1,119,010.60, respectively), ***resulting in a $283,817.80 loss for May and a $258,795.50 loss for Flores***.  Thus, even when dollar losses are calculated under the RSM, ***May possesses $25,022.30—approximately 10%— greater losses than Flores***.

Accordingly, Flores' attempt to assert a larger financial interest than May and be appointed as Lead Plaintiff in the event Hedvat is disqualified should be rejected because May's financial interest is greater than Flores' under the methodology Flores promotes. *See Mulligan v. Impax*

[5]     Thus, Flores' assertion that May ***retained*** 14,000 shares at the end of the Class Period is incorrect, because it merely conflates net shares purchased—*i.e.,* shares purchased during the Class Period minus shares sold during the Class Period—with the number of shares purchased during the Class Period that were held during a corrective disclosure and stock drop.  The quantity of May's retained shares differs from the quantity of his net shares purchased because May sold shares he purchased prior to the Class Period during the Class Period.

[6]     This number is the "mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market," which in this case is March 1, 2019 through May 29, 2019. *See* 15 U.S.C. § 78u-4(e)(1).

8

**FRANK MAY'S REPLY IN SUPPORT OF HIS LEAD PLAINTIFF MOTION No. 3:19-cv-01651-WHO**

*Laboratories, Inc.*, No. C–13–1037 EMC, 2013 WL 3354420, at \*8 (N.D. Cal. July 2, 2013) (appointing movant who had largest financial interest under both approximate losses and retained share methods).

### III.   FLORES OFFERS NO BASIS TO SUPPORT HIS APPOINTMENT AS CO-LEAD PLAINTIFF OR AS AN ADDITIONAL CLASS REPRESENTATIVE

Flores requests that the Court appoint him as Co-Lead Plaintiff "[s]hould the Court find issue with Hedvat[,]" but has offered no basis to be appointed Co-Lead Plaintiff.  ECF No. 70 at 7. For instance, courts appoint co-lead plaintiffs where there is a "showing that a conflict of interest exists within the class." *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 670 (C.D. Cal. 2005). Additionally, courts can appoint a co-lead plaintiff if there is a relatively minor difference in the movants' financial interest such that the movants' interests are roughly equivalent.  *See In re Baan Co. Secs. Litig.*, 271 F. Supp. 2d 3, 13 (D.D.C. 2002) ("Co-lead plaintiffs are particularly appropriate in a case such as this, in which it appears that there are two or more smaller investors with roughly equal interests [and] no plaintiff with a significantly larger interest than all other plaintiffs."); *Dolan v. Axis Capital Holdings Ltd.*, No. 04 Civ.8564 (RJH), 2005 WL 883008, at \*4-5 (S.D.N.Y. Apr. 13, 2005) (appointing two individuals as co-lead plaintiffs where both had "approximately equal-if modest-financial stakes" where there was a $779 difference, or 13% difference, between their asserted financial interests); *Piven v. Sykes Enters.*, 137 F. Supp. 2d 1295, 1301-2, 1303 (M.D. Fla. 2000) (appointing co-lead plaintiffs where plaintiffs losses differed by $140,095.82, or approximately 14%, finding that "each has alleged approximately equal losses"). For instance, the Court may find that under the RSM, the 2,160 share or $25,022.30 difference—approximately 10%—between May's and Flores' financial interests may justify the appointment of May and Flores as Co-Lead Plaintiffs.  Flores, however, made no such argument.

Further, Flores requests that the Court appoint him as "an additional class representative in case the appointed lead plaintiff is found to be an inappropriate class representative."  ECF No. 70 at 7.  Flores cites no authority for his request, and merely points out that the "statute of repose for a securities claim is not stayed for absent class members during the pendency of a class action" under the Supreme Court's opinion in *California Public Employees' Retirement System v. ANZ Securities,*

*Inc.*, 137 S. Ct. 2042 (2017).  Flores' argument is beside the point, though, because it is the Lead Plaintiff's *right* to designate "other members of the purported class as named plaintiffs or class representatives[,]" not Flores'—or the Court's for that matter.  *Schueneman v. Arena Pharmaceuticals, Inc.*, No. 10cv1959 BTM(BLM), 2011 WL 3475380, at *5 (S.D. Cal. Aug. 8, 2011); *Bodri*, 2016 WL 1718217, at *6 (declining to appoint co-lead plaintiff because, *inter alia*, it is the lead plaintiff's "responsibility to identi[f]y and include named plaintiffs").  Indeed, naming Flores as class representative due to unspecified statute of repose issues would "work[] a sea change in the law" by involving more lawyers in the process.  *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1157 (C.D. Cal. 2008) (rejecting defendants' argument that class should be decertified because lead plaintiff did not plead standing with respect to 2011 Notes because it would "increase lawyer-driven litigation and conflicts of interest by elevating more lawyers to lead counsel status").  Accordingly, the Court should reject Flores' request to be appointed as a class representative.

## CONCLUSION

For the foregoing reasons, May respectfully requests that the Court (1) consolidate the Actions; (2) appoint May as Lead Plaintiff; (3) approve his selection of Faruqi & Faruqi, LLP as Lead Counsel; and (4) grant such other relief as the Court may deem just and proper.

Dated:  June 18, 2019

Respectfully submitted,

By: /s/ *Benjamin Heikali*
           Benjamin Heikali

**FARUQI & FARUQI, LLP**
Benjamin Heikali SBN 307466
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
E-mail: bheikali@faruqilaw.com

Richard W. Gonnello (*pro hac vice* pending)
Sherief Morsy (*pro hac vice* pending)
Dillon Hagius SBN 319632
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330

**FRANK MAY'S REPLY IN SUPPORT OF HIS LEAD PLAINTIFF MOTION No. 3:19-cv-01651-WHO**

Facsimile: 212-983-9331
E-mail: rgonnello@faruqilaw.com
smorsy@faruqilaw.com
dhagius@faruqilaw.com

*Attorneys for Proposed Lead Plaintiff Frank May
and Proposed Lead Counsel for the putative Class*

**FRANK MAY'S REPLY IN SUPPORT OF HIS LEAD PLAINTIFF MOTION No. 3:19-cv-01651-WHO**

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

By:   */s/ Benjamin Heikali*
      Benjamin Heikali