**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *pro hac vice*)
Kristina M. Mentone (admitted *pro hac vice*)
Gregory M. Potrepka (admitted *pro hac vice*)
Andrew W. Rocco (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: kmentone@zlk.com
Email: gpotrepka@zlk.com
Email: arocco@zlk.com

**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 291-2420
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for Lead Plaintiff Shimon Hedvat,*
*Plaintiff City of Miami Fire Fighters' and*
*Police Officers' Retirement Trust, and*
*Lead Counsel for the Class*

**WOLF POPPER LLP**
Robert C. Finkel (admitted *pro hac vice*)
Joshua W. Ruthizer (admitted *pro hac vice*)
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 459-2093
Email: rfinkel@wolfpopper.com
Email: jruthizer@wolfpopper.com

*Attorneys for Movant Jose Flores and*
*Proposed Co-Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NUTANIX, INC. SECURITIES LITIGATION | Master File No. 3:19-cv-01651-WHO |
| | **CLASS ACTION** |
| | **LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO WITHDRAW AS LEAD PLAINTIFF AND SUBSTITUTE LEAD PLAINTIFF** |
| | Date: March 3, 2021 |
| | Time: 2:00 p.m. |
| | Courtroom: 2 |
| | Judge: William H. Orrick |

1

### NOTICE OF MOTION AND MOTION

2

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

3

PLEASE TAKE NOTICE THAT, on March 3, 2021 at 2:00 p.m., before the Honorable William

4

H. Orrick of the United States District Court, Northern District of California, located at 450 Golden Gate

5

Avenue, San Francisco, California 94102, Lead Plaintiff Shimon Hedvat ("Lead Plaintiff" or "Hedvat"),

6

additional named plaintiff City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Trust"),

7

and Movant Jose Flores ("Flores"), will move before this Court for an order withdrawing Shimon Hedvat

8

as Lead Plaintiff, substituting Flores and the Trust as co-lead plaintiffs, and approving their selection of

9

Levi & Korsinsky, LLP ("Levi & Korsinsky" or "Lead Counsel") and Wolf Popper, LLP ("Wolf

10

Popper") as co-lead counsel. This motion is based upon this Notice of Motion and Motion, the

11

accompanying Memorandum of Points and Authorities, the accompanying Declaration of Shannon L.

12

Hopkins in support of this motion, the Proposed Order filed herewith, all pleadings and papers filed

13

herein, the arguments made regarding this matter, and any other information properly before the Court.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES.................................................................................. 1

STATEMENT OF RELEVANT FACTS ..................................................................... 1

ARGUMENT ............................................................................................................. 5

I.   THE COURT SHOULD PERMIT MR. HEDVAT TO WITHDRAW AS LEAD PLAINTIFF .. 5

II.  THE COURT SHOULD SUBSTITUTE MR. FLORES AND THE TRUST AS CO-LEAD
     PLAINTIFFS ...................................................................................................... 6

   A.   It Is Within The Court's Discretion And Authority To Substitute The Lead Plaintiff............ 6

   B.   Mr. Flores And The Trust Are Proper Lead Plaintiff Candidates............................................ 7

      1.   Mr. Flores Has The Second Largest Financial Interest Of Any Lead Plaintiff Movant  7

      2.   The Trust, A Sophisticated Institutional Investor Intimately Involved In The
           Prosecution Of This Action Since The Early Stages, Should Be Appointed Co-Lead
           Plaintiff With Mr. Flores ............................................................................................ 10

   C.   Mr. Flores And The Trust Satisfy The Adequacy And Typicality Requirements Of The
        PSLRA ........................................................................................................................... 13

      1.   Mr. Flores's And The Trust's Claims Are Typical Of Class Members' Claims.......... 14

      2.   Mr. Flores And The Trust Have Demonstrated Their Adequacy By Their Commitment
           To Working Collaboratively With Lead Counsel And Continue The Timely, Non-
           Duplicative Prosecution Of this Case........................................................................... 15

      3.   Mr. Flores And The Trust Are Otherwise Adequate ..................................................... 15

   D.   The Class Will Benefit From An Orderly And Amicable Lead Plaintiff Substitution.......... 16

III. THE COURT SHOULD APPROVE MR. FLORES'S AND THE TRUST'S SELECTION OF
     CO-LEAD COUNSEL .......................................................................................... 17

CONCLUSION.......................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Ali v. Intel Corp.*,
   2018 WL 2412111 (N.D. Cal. May 29, 2018) ............................................................. 14

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) .......................................................................... 14

*Arthur Kaye IRA FCC as Custodian DTD 6-8-00, et al. v. ImmunoCellular
   Therapeutics, Ltd., et al.*
   Case No. 2:17-cv-03250-FMO-SK (C.D. Cal.) ........................................................... 18

*Billhofer v. Flamel Techs.*,
   2010 U.S. Dist. LEXIS 99438 (S.D.N.Y. Sept. 21, 2010) ............................................. 5

*Billhofer v. Flamel Techs., S.A.*,
   2010 WL 3703838 (S.D.N.Y. Sept. 21, 2010) ............................................................... 7

*Daniels Family 2001 v. Las Vegas Sands Corp.*,
   2021 WL 41301 (D. Nev. Jan. 5, 2021) ....................................................................... 18

*Eichenholtz v. Verifone Holdings, Inc.*,
   2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ............................................................... 9

*Haideri v. Jumei Int'l Holding, Ltd.*,
   2020 WL 5291872 (N.D. Cal. Sep. 4, 2020) ............................................................... 12

*Hufnagle v. Rino Int'l Corp.*,
   2011 WL 710704 (C.D. Cal. Feb. 14, 2011) ................................................................ 14

*In re Aqua Metals Sec. Litig.*,
   2018 WL 4860188 (N.D. Cal. May 23, 2018) ................................................... 14, 15, 19

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ......................................................................................... 8

*In re Cohen v. United States Dist. Court for the N. Dist. of Cal.*,
   586 F.3d 703 (9th Cir. 2009) ....................................................................................... 17

*In re Critical Path, Inc. Sec. Litig.*,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001) ........................................................................ 9

*In re Currency Conversion Fee Antitrust Litig.*,
   2004 U.S. Dist. LEXIS 22320 (S.D.N.Y. Nov. 3, 2004) ............................................... 5

*In re Impax Labs., Inc. Sec. Litig.*,
   2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) ........................................................... 6, 7

*In re Initial Public Offering Sec. Litig.*,
   214 F.R.D. 117 (S.D.N.Y. 2002) ................................................................................... 6

*In re Network Assocs., Inc., Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) .......................................................................... 9

*In re NYSE Specialists Sec. Litig.*,
    240 F.R.D 128 (S.D.N.Y. 2007) ........................................................................... 5

*In Re Penn West Petroleum Ltd. Sec. Litig.*,
    Master File No. 14-cv-06046-JGK (S.D.N.Y.) ................................................... 11

*In re Perrigo Co. PLC Sec. Litig.*,
    2020 WL 5701823 (S.D.N.Y. Sep. 24, 2020) .................................................... 12

*In re Portal Software, Inc. Sec. Litig.*,
    2005 WL 8179740 (N.D. Cal. Mar. 9, 2005) ............................................... 6, 7, 8

*In Re Quality Sys. Inc., Sec. Litig.*,
    Case No. 8:13-cv-01818-CJC-JPR (C.D. Cal.) ................................................. 11

*In re Quality Sys.*,
    865 F.3d 1130 (9th Cir. 2017) ............................................................................ 11

*In re Rackable Systems, Inc. Sec. Litig.*,
    Case No. 4:09-cv-00222-CW (N.D. Cal. Mar. 22, 2010) .................................... 5

*In re Rackable Systems, Inc. Sec. Litig.*,
    No. C09-0222-CW (N.D. Cal. Mar. 22, 2010) .................................................... 7

*In re Sauer-Danfoss Stockholder Litigation*,
    C.A. No. 8396 (Del. Ch.) ................................................................................... 18

*In re Tezos Sec. Litig.*,
    2019 WL 2183448 (N.D. Cal. Apr. 8, 2019) ............................................. passim

*In re Versata, Inc.*,
    2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) ................................................ 16

*Isaacs v. Musk*,
    2018 WL 6182753 (N.D. Cal. November 27, 2018) .......................................... 18

*Johnson v. CBD Energy, Ltd.*,
    2016 WL 3654657 (S.D. Tex. July 6, 2016) ....................................................... 7

*Kirkland et. al., v. WideOpenWest, Inc., et al.*,
    Index No. 653248/2018 (N.Y. Sup. Ct., N.Y. County) ..................................... 18

*Lloyd v. CVB Fin. Corp.*,
    2011 WL 13128303 (C.D. Cal. Jan. 21, 2011) ................................................. 12

*Lomingkit v. Apollo Educ. Grp., Inc.*,
    2016 WL 3345514 (D. Ariz. June 16, 2016) ...................................................... 8

*Markette v. XOMA Corp.*,
    2016 WL 2902286 (N.D. Cal. May 13, 2016) .................................................... 9

*Mohanty v. BigBand Networks, Inc.*,
    2008 WL 426250 (N.D. Cal. Feb. 14, 2008) ............................................... 1, 10

*Morgan v. AXT, Inc.*,
    No. C04-04362 (MJJ) (N.D. Cal. Mar. 14, 2007) .......................................... 5, 7

*Mullins v. AZZ, Inc.*,
   2018 WL 7504312 (N.D. Tex. Aug. 9, 2018) ................................................................ 16

*Pio v. Gen. Motors Co.*,
   2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) ........................................................... 9

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust, et al. v. J.P. Morgan
   Acceptance Corp. I.*,
   No. 2:09-cv-01713 (E.D.N.Y.) ................................................................................... 18

*Ruland v. Infosonics Corp.*,
   2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ............................................................. 9

*Sayce v. Forescout Techs.*,
   2020 WL 6802469 (N.D. Cal. Nov. 19, 2020) ....................................................... 15, 19

*Schueneman v. Arena Pharms., Inc.*,
   2011 WL 3475380 (S.D.Cal., 2011) ........................................................................... 9

*Schwartz v. Opus Bank*,
   2017 WL 5468820 (C.D. Cal. Feb. 23, 2017) ............................................................ 15

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..................................................................................... 15

*Welgus v. TriNet Grp., Inc.*,
   2015 WL 7770222 (N.D. Cal. Dec. 3, 2015) ............................................................. 15

*Westchester Putnam Cntys. Heavy & Highway Laborers Local 60 Benefit Funds v.
   Bixmor Prop. Grp.*,
   2016 WL 11648466 (S.D.N.Y. Nov. 29, 2016) .......................................................... 9

*Westley v. Oclaro, Inc.*,
   2011 WL 4079178 (N.D. Cal. Sep. 12, 2011) ............................................................. 3

*Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*,
   231 F.3d 1215 (9th Cir. 2000) ..................................................................................... 6

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................................................ 17

15 U.S.C. §78u-4(a)(3)(B)(i) ............................................................................................. 15

**Other Authorities**

S. Rep. No. 104-98, at 11 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 690 ................................. 12

**Rules**

Fed. R. Civ. P. 23(a)(4) ..................................................................................................... 15

vi

## STATEMENT OF THE ISSUES

Lead Plaintiff Shimon Hedvat, additional plaintiff City of Miami Fire Fighters' and Police Officers' Retirement Trust, and Movant Jose Flores respectfully submit this memorandum of points and authorities in support of this motion to: (1) withdraw Mr. Hedvat as the lead plaintiff; (2) appoint Mr. Flores and the Trust as substitute co-lead plaintiffs;[1] and (3) approve Mr. Flores's and the Trust's selection of Levi & Korsinsky and Wolf Popper as co-lead counsel.

## STATEMENT OF RELEVANT FACTS

On May 28, 2019, class members, including Lead Plaintiff Shimon Hedvat and Mr. Jose Flores, filed eight competing motions pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for appointment as lead plaintiff in this securities class action. After full briefing, no movant contested that Mr. Hedvat had the largest financial interest of any movant. On July 10, 2019, the Court appointed Mr. Hedvat as the Lead Plaintiff in this Action and appointed his attorneys, Levi & Korsinsky, as Lead Counsel for the proposed class. Dkt. No. 87. On September 9, 2019, Mr. Hedvat filed the Consolidated Amended Complaint for Violations of the Federal Securities Laws ("FAC"). Dkt. No. 102. The FAC added the Trust as a named plaintiff and proposed class representative in this action. The Trust is a sophisticated "institutional investor[]" with significant experience successfully litigating similar securities class action lawsuits on behalf of defrauded shareholders—an ideal class representative and the type of investor Congress preferred to serve as lead plaintiff in securities class action cases brought pursuant to the PSLRA. *Mohanty v. BigBand Networks, Inc.*, 2008 WL 426250, at *6 (N.D. Cal. Feb. 14, 2008).

The Trust has taken an active role as a proposed class representative in this Action since and, in fact, prior to, joining on September 9, 2019. Since the FAC was filed, no party or lead plaintiff movant has objected to the Trust's inclusion in the Action. Over the course of this litigation, Lead Plaintiff, the Trust, and Lead Counsel have vigorously prosecuted this Action on behalf of the proposed Class. Lead Plaintiff and the Trust, through Lead Counsel, filed two thoroughly pleaded amended complaints, and briefed and argued in opposition to two motions to dismiss. The complaints were the

---

[1] If the Court is more inclined to appoint Mr. Flores as sole lead plaintiff, Mr. Flores and the Trust respectfully request, for the reasons set forth herein, that the Trust be allowed to continue to serve as additional plaintiff and proposed class representative.

product of extensive investigation by Lead Counsel that included, among other things, review and analysis of: (i) documents publicly filed by Nutanix, Inc. ("Nutanix" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company; (iii) research reports issued by financial and industry analysts concerning the Company; (iv) other publicly available information and data concerning the Company and its subsidiaries, including information concerning Nutanix's competitors; (v) interviews conducted with former employees of Nutanix; (vi) damages analyses prepared by experts; and (vii) the applicable law governing the claims and potential defenses in this Action. *See* Declaration of Shannon L. Hopkins in Support of Lead Plaintiff's Motion to Withdraw as Lead Plaintiff and Substitute Lead Plaintiff ("Hopkins Decl.") at ¶2.[2]

Lead Counsel has spent nearly 3,500 hours vigorously prosecuting this action on behalf of the Class. Those efforts have conferred a significant benefit upon the Class. On September 11, 2020, the Court denied Defendants' motion to dismiss the operative Second Amended Complaint for Violations of the Federal Securities Laws ("SAC"). Dkt. No. 140. The Court found that Lead Plaintiff and the Trust adequately alleged materially false and misleading statements regarding Nutanix's "new customer growth and sales productivity" during the alleged class period. *Id.* at 1.

Immediately thereafter, Plaintiffs Hedvat and the Trust, through Lead Counsel, commenced a comprehensive discovery plan, including: (i) successful negotiation with Defendants over the joint case management statement, and participation by Lead Counsel at the Court's case management conference on October 27, 2020; (ii) successful negotiation with Defendants over a stipulated protective order and a stipulated protocol for the discovery of electronically-stored information; (iii) the service on Defendants of Plaintiffs' sixty-eight Requests for Production, ten Interrogatories, and twenty-four Requests for Admission; (iv) numerous meet and confer discussions with Defendants via telephone, videoconference, and e-mail; (v) the service of thirty third-party subpoenas, and subsequent meet and confer discussions; (vi) the review of over 10,000 documents produced by over fifteen third parties to date; (vii) serving the Trust's objections and responses to Defendants' requests for production; (viii) engaging in the collection of the Trust's documents for production; and (ix) the retention of a market

---

[2] "Ex." herein refers to exhibits to the Hopkins Decl.

efficiency and damages expert for Plaintiffs' forthcoming class certification motion. Hopkins Decl. at ¶3.

Although Mr. Hedvat has participated in this lawsuit through the pleadings and into discovery, he recently has informed Lead Counsel that, in light of the unprecedented COVID-19 pandemic and attendant personal circumstances, he is no longer able to continue to represent the putative class and therefore, he seeks to withdraw as Lead Plaintiff. *See* Ex. 1 at ¶3 (Declaration of Shimon Hedvat in Support of Motion to Withdraw as Lead Plaintiff and Appoint Substitute).

Because "one such requirement" of the PSLRA "is that a lead plaintiff be appointed" in securities class actions, as soon as the Trust and Lead Counsel became aware of Mr. Hedvat's desire to withdraw, they developed a plan to effectuate a change in leadership of this class action and the appointment of a new lead plaintiff, while simultaneously ensuring continuity of leadership to avoid any delay in the current schedule or duplication of work already performed by Lead Counsel. *Westley v. Oclaro, Inc.*, 2011 WL 4079178, at *1 (N.D. Cal. Sep. 12, 2011). Indeed, to avoid any disruption to the Court's case management schedule and to act prudently to protect the interests of the Class, the Trust and Lead Counsel conferred with Mr. Flores, through his counsel Wolf Popper, LLP ("Wolf Popper"), who has the second largest financial interest after Mr. Hedvat of any lead plaintiff movant. *See* Dkt. Nos. 70, 74. Mr. Flores and the Trust decided that the most efficient and effective method to litigate this Action in the best interests of the class would be to build off of the progress that the Trust and Levi & Korsinsky have made so far, and jointly prosecute the case going forward. *See* Ex. 2 (Declaration of Jose Flores in Support of Lead Plaintiff's Motion to Withdraw as Lead Plaintiff and Substitute Lead Plaintiff) at ¶14; Ex. 3 (Declaration of City of Miami Fire Fighters' and Police Officers' Retirement Trust in Support of Lead Plaintiff's Motion to Withdraw as Lead Plaintiff and Substitute Lead Plaintiff) at ¶9. The Trust also supports appointing Wolf Popper as co-lead counsel, a firm that monitors the Trust's investment portfolio for damages due to breaches of fiduciary duty, fraud, misrepresentation, or other violations of applicable state and federal laws, and therefore, has an ongoing working relationship with the Trust. Ex. 3 at ¶9. Further, Mr. Hedvat fully supports his substitution by the Trust and Mr. Flores as co-lead plaintiffs. Ex. 1 at ¶4.

On January 25, 2021, with Levi & Korsinsky and Wolf Popper present, Mr. Flores, and the Trust through counsel, participated in a conference call wherein they discussed their commitment to work together and: (i) the progression of the Action thus far and the claims against Defendants; (ii) the upcoming motion for class certification; (iii) upcoming case management deadlines; (iv) discovery and litigation efforts to date; (iv) the desire to maximize the recovery for the Class and minimize delay; (v) the desire to ensure efficient and continued litigation without delay and duplication of costs; (vi) the benefits the Class would receive from the leadership of an experienced and committed institutional investor and an individual investor, including diversity of representation and the sharing of experience and resources; and (vii) the shared interests in prosecuting the case in a collaborative and efficient fashion. Ex. 2 at ¶22

Mr. Flores and the Trust's motion seeking appointment as co-lead plaintiffs comports with the PSLRA and with the approach taken by courts in this Circuit. In fact, in *In re Tezos Securities Litigation*, when confronted with a similar situation, Judge Seeborg denied the defendants' request to reopen the lead plaintiff process or require further notice, because such request was inconsistent with the PSLRA which "does not contemplate" repeating the lead plaintiff process. 2019 WL 2183448, at *2 (N.D. Cal. Apr. 8, 2019). Rather, as Mr. Flores and the Trust propose here, the court ordered that the lead plaintiff movant with the next largest financial interest be appointed the substitute lead plaintiff and that it's counsel be appointed as co-lead counsel with the original lead counsel whose "extensive work and knowledge" would be most beneficial to the class. *Id.* at *5. Here, proposed co-lead counsel Levi & Korsinsky and Wolf Popper have worked collaboratively on many similar securities class actions in the past and are confident in their ability to litigate this Action in an efficient matter consistent with their obligations to their clients and the Class.

Allowing the relief requested will not unduly prejudice Defendants or delay proceedings. As demonstrated in the attached declaration, Mr. Flores has reviewed and adopts the substantive allegations of the SAC concerning publicly available information, thereby eliminating the reopening of the pleadings and the attendant PSLRA discovery stay. Ex. 2 at ¶6. Further, Mr. Flores and the Trust stand ready, willing, and able to serve as Class representatives, will work with counsel to produce documents responsive to Defendants' document requests, and will make themselves available for

remote depositions promptly upon Defendants' request. Ex. 2 at ¶25; Ex. 3 at ¶18. There is ample time for Defendants to take reasonable discovery of Mr. Flores and the Trust under the current schedule.

Accordingly, Plaintiffs now move for withdrawal of Mr. Hedvat as the lead plaintiff; substitution of Mr. Flores and the Trust as co-lead plaintiffs or, in the alternative, for the substitution of Mr. Flores as lead plaintiff with the Trust continuing its role as an additional plaintiff; and for approval of their selection of Levi & Korsinsky and Wolf Popper as co-lead counsel.

## ARGUMENT

## I. THE COURT SHOULD PERMIT MR. HEDVAT TO WITHDRAW AS LEAD PLAINTIFF

Federal Rule of Civil Procedure 21 ("Rule 21") provides in relevant part that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "It is certainly within the lead plaintiffs' discretion and, perhaps more importantly, part of a lead plaintiff's responsibility to propose their own withdrawal and substitution should it be discovered that they may no longer adequately represent the interests of the purported plaintiff class." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D 128, 134 (S.D.N.Y. 2007); *see also In re Currency Conversion Fee Antitrust Litig.*, 2004 U.S. Dist. LEXIS 22320, at *4 (S.D.N.Y. Nov. 3, 2004) ("If the [w]ithdrawing Plaintiffs are inadequate representatives, due process requires their withdrawal as class representatives. . . . '[A]bsent a good reason . . . a plaintiff should not be compelled to litigate if it doesn't wish to.'").

Consistent with these principles, courts in this district and other jurisdictions routinely allow parties to withdraw from class actions at various stages of the litigation, and recognize that occasionally the need arises for a court to exercise its authority to substitute another plaintiff to serve as the Lead Plaintiff. *See, e.g., Morgan v. AXT, Inc.*, Case No. 3:04-cv-04362-MJJ (N.D. Cal. Mar. 14, 2007), Dkt. No. 93 (granting motion of lead plaintiff to withdraw and substituting new lead plaintiff); *In re Rackable Systems, Inc. Sec. Litig.*, Case No. 4:09-cv-00222-CW (N.D. Cal. Mar. 22, 2010), Dkt. No. 53 (permitting lead plaintiff to withdraw under Rule 21 and substituting in a new lead plaintiff); *Billhofer v. Flamel Techs.*, 2010 U.S. Dist. LEXIS 99438, at *8-9 (S.D.N.Y. Sept. 21, 2010) (ordering that "Billhofer's motion to withdraw as Lead Plaintiff is granted, and Jenkins is substituted as Lead Plaintiff in this action").

In this case, due to unforeseen circumstances stemming from the global pandemic, Mr. Hedvat is no longer able to continuing serving as lead plaintiff. *See* Ex. 1 at ¶3. Mr. Flores, another qualified class member who asserted the next largest financial, and the Trust, a named plaintiff in the Action that has significant institutional knowledge of the facts and circumstances of this case and is the type of institutional investor that Congress sought to encourage to serve as a lead plaintiff by enacting the PSLRA, are ready, willing and able to substitute for Mr. Hedvat as co-lead plaintiffs. Accordingly, the Court should grant Mr. Hedvat's request to withdraw as the lead plaintiff and substitute Mr. Flores and the Trust as co-lead Plaintiffs.

## II.   THE COURT SHOULD SUBSTITUTE MR. FLORES AND THE TRUST AS CO-LEAD PLAINTIFFS

### A.   It Is Within The Court's Discretion And Authority To Substitute The Lead Plaintiff

The PSLRA is "entirely silent on the proper procedure for substituting a new lead plaintiff when the previously certified one withdraws." *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002). In the absence of statutory guidance, courts in this and other districts recognize that it is in the Court's discretion to permit withdrawal and substitution in appropriate circumstances. *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218 (9th Cir. 2000) ("the district court's order designating a lead plaintiff is not a conclusive, immutable determination of the issue. It can be revisited if circumstances warrant."); *In re Impax Labs., Inc. Sec. Litig.*, 2008 WL 1766943, at *8 (N.D. Cal. Apr. 17, 2008) (analyzing "legislative intent with respect to the PSLRA's lead plaintiff process" and "find[ing] that at this stage of the litigation, there is no prejudice in permitting Plaintiffs to substitute a new Lead Plaintiff").

When substituting the lead plaintiff, the Court need not "re-notice[] th[e] action for the selection of a new lead plaintiff." *Tezos,* 2019 WL 2183448, at 2. This is because "the statute [PSLRA] does not contemplate any sort of lead-plaintiff proceedings beyond the very earliest stages of the litigation . . . The absence of statutory lead-plaintiff mechanics for suits already in progress stands in stark contrast to the detailed mechanics cited above for suits that are only just beginning. This alone suggests that Congress contemplated invoking the PSLRA's lead plaintiff process only once -- at the very beginning of the suit." *In re Portal Software, Inc. Sec. Litig.*, 2005 WL 8179740, at 3 (N.D. Cal. Mar. 9, 2005).

As Chief Judge Walker noted in *Portal Software*, there is a "practical sense to this outcome," because "[i]t would turn securities litigation into a game of snakes and ladders to hold that any time a new plaintiff is added, the action must 'go back to square one' and recommence the PSLRA lead plaintiff selection process. Relatedly, there is no indication that Congress intended such repetitive preliminaries to securities litigation." *Id.* at 4. *See also In re Impax Labs.,* 2008 WL 1766943 at 7-8 (citing *In re Portal Software* and allowing the plaintiffs to substitute a new Lead Plaintiff without need for further notice under the PSLRA).[3]

### B.   Mr. Flores And The Trust Are Proper Lead Plaintiff Candidates

#### 1.   Mr. Flores Has The Second Largest Financial Interest Of Any Lead Plaintiff Movant

Mr. Flores and the Trust have agreed to prosecute this Action efficiently and amicably as co-lead plaintiffs on behalf of the Class. Together, and individually, Mr. Flores and the Trust have a considerable financial stake in this Action that will motivate them to zealously prosecute the litigation on behalf of the Class. Indeed, as set forth herein and in the Trust's Declaration, the Trust has already demonstrated its willingness and ability to vigorously prosecute this action as an experienced institutional investor of the type Congress envisioned when enacting the PSLRA.

However, if the Court prefers to appoint only one lead plaintiff, Mr. Flores is the most appropriate lead plaintiff candidate because he has the second largest financial interest (behind Mr. Hedvat) of any person, entity, or group that moved for appointment as lead plaintiff at the outset of this litigation. When a person or entity possessing the largest financial interest of any movant can no longer serve as lead plaintiff, the person or entity with the "next lower stake in the litigation" should be

---

[3] Numerous other courts in the Ninth Circuit and across the country have followed the approach stated by the courts of the Northern District of California in *Portal Software* and *Impax*. *See*, *e.g.*, *Morgan v. AXT, Inc.*, Case No. 3:04-cv-04362-MJJ (N.D. Cal. Mar. 14, 2007), Dkt. No. 93 (granting motion of lead plaintiff to withdraw and substituting new lead plaintiff); *In re Rackable Sys., Inc. Sec. Litig.*, Case No. 4:09-cv-00222-CW (N.D. Cal. Mar. 22, 2010), Dkt. No. 53 (permitting lead plaintiff to withdraw under Rule 21 and substituting in new lead plaintiff); *Johnson v. CBD Energy, Ltd.*, 2016 WL 3654657, at *6 (S.D. Tex. July 6, 2016) (noting *Impax*, and its proposition that "there is no need to reopen the lead plaintiff process when there is a named plaintiff who has standing" and granting motion to substitute in a new lead plaintiff); *Billhofer v. Flamel Techs., S.A.*, 2010 WL 3703838, at *4 (S.D.N.Y. Sept. 21, 2010) (ordering that "Billhofer's motion to withdraw as Lead Plaintiff is granted, and Jenkins is substituted as Lead Plaintiff in this action").

appointed the lead plaintiff, provided that person or entity has satisfactorily demonstrated their typicality and adequacy. *In re Cavanaugh*, 306 F.3d 726, 731 (9th Cir. 2002). The person or entity with the next lower stake in this Action after Mr. Hedvat, is Mr. Flores.

Because the PSLRA "does not contemplate any sort of lead-plaintiff proceedings beyond the very earliest stages of the litigation," *Portal Software*, 2005 WL 8179740, at 3, the Court should consider the lead plaintiff applications that were asserted by the deadline to file after the original notice, based on facts and circumstances then known to potential filers.[4] Of the eight motions that were filed by the lead plaintiff deadline on May 28, 2019, all but three were withdrawn, abandoned, or otherwise accompanied by statements of non-opposition.[5] The Three remaining motions were filed by Mr. Hedvat, Mr. Flores, and Mr. Frank May.

In analyzing which movant has the largest financial interest, courts in this Circuit and District routinely rely upon the "*Olsten-Lax*" factors, which are: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. Dkt. No. 68 at 4 ("Courts often look to the '*Olsten-Lax*' factors for guidance" (citing examples)); Dkt. No. 37 at 8 ("Courts in this Circuit often look to four factors in the inquiry" and calculating financial interest by asserting *Lax* factors).

There is no dispute that after Mr. Hedvat, Mr. Flores possesses the largest financial interest based on the first three *Lax* factors. *See* Dkt No. 37-4; Dkt. No. 74 at 7:

---

[4] On May 28, 2019, the date lead plaintiff motions were filed, the largest class period alleged in any then-filed complaint ran from March 2, 2018 through the only then-alleged corrective disclosure which occurred on February 28, 2019.

[5] *See* Dkt. Nos. 56 (notice of non-opposition filed by the Nutanix Investor Group); 58 (notice of withdrawal of lead plaintiff motion filed by David Panczner); 66 (notice of non-opposition filed by City of Birmingham Relief and Retirement System); 67 (notice of non-opposition filed by Mamood Sabahi). Movants Bristol County Retirement System and Joseph S. Maroun failed to timely file an opposition or response in further support of their lead plaintiff motion and have, thus, effectively abandoned it. *See Lomingkit v. Apollo Educ. Grp., Inc*., 2016 WL 3345514, at *3 (D. Ariz. June 16, 2016) (failure to object to opposing lead plaintiff motion is tantamount to withdrawal or abandonment of initial motion).

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure |
|--------|------------------------|----------------------|-----------------|
| **Flores** | 274,380 | 22,340 | $1,095,055.52 |
| **May** | 145,500 | 14,000 | $888,655.13 |

Many Courts find that the class member prevailing on these first three *Lax* factors—here, Mr. Flores—has the largest financial interest. *Westchester Putnam Cntys. Heavy & Highway Laborers Local 60 Benefit Funds v. Bixmor Prop. Grp.*, 2016 WL 11648466, at 2 (S.D.N.Y. Nov. 29, 2016) ("These other factors provide a more objective assessment of a movant's financial interest than the losses suffered, given that shares purchased, net shares purchased, and funds expended are static markers set in stone during the class period, whereas losses suffered may be subject to future changes in price per share.") (quoting *Pio v. Gen. Motors Co*., 2014 WL 5421230, at 4 (E.D. Mich. Oct. 24, 2014)). Moreover, courts in this district have found that the movant with the largest ***net shares purchased***, here, Mr. Flores, possesses the largest financial of any movant. *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("[T]he candidate with the most net shares purchased will normally have the largest potential damage recovery."); *In re Critical Path, Inc. Sec. Litig*., 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) ("The Court considers [net shares purchased] the most straightforward method for approximation of financial interest in the recovery sought, but considers that it should be supplemented with in/out losses, *i.e.*, losses suffered by selling shares during the class period.").

The only disagreement as to who had the largest financial interest after Mr. Hedvat under the *Lax* factors concerned the fourth *Lax* factor—the appropriate measure of losses suffered. Mr. Flores also prevailed on this *Lax* factor because, after Mr. Hedvat he has the second largest loss under the retained shares methodology employed by numerous courts in this Circuit and District. *See* Dkt. No. 32 at 8; Dkt. No. 70 at 6; Dkt. No. 74 at 3; *Markette v. XOMA Corp.,* 2016 WL 2902286, at 5-6 (N.D. Cal. May 13, 2016); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at 10-14 (N.D. Cal. Aug. 22, 2008); *see also Schueneman v. Arena Pharms., Inc.*, 2011 WL 3475380, at 4 (S.D.Cal., 2011) ("Schwartz has a significantly greater number of retained shares than Ghayour. Accordingly, the Court concludes that Schwartz has the greatest potential recovery and the greatest financial interest.") (adopting the "retained share methodology" cited in *Ruland v. Infosonics Corp.*, 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006)).

Under the retained share method, Mr. Flores suffered a loss on those shares of $396,176. Dkt. No. 33-3 (Flores Loss Calculation). May, on the other hand suffered losses of just $230,440. Dkt. No. 74 at 6. This was ***$165,736 less*** than Flores's asserted losses.

Thus, weighing the *Lax* factors, Mr. Flores has the largest financial interest by any measure of any movant after Mr. Hedvat and is therefore the proper movant to substitute as the lead plaintiff.[6]

### 2. The Trust, A Sophisticated Institutional Investor Intimately Involved In The Prosecution Of This Action Since The Early Stages, Should Be Appointed Co-Lead Plaintiff With Mr. Flores

Appointing Mr. Flores and the Trust as co-lead plaintiffs or, in the alternative, Mr. Flores as Lead Plaintiff along with the Trust as an additional plaintiff and class representative if the Court prefers, will ensure that the Trust, an institutional investor who is committed to zealously advocating for the Class and its counsel, will have a continued role in representing its fellow Class Members. "[] Congress's intent in enacting the PSLRA provisions governing the appointment of lead plaintiff was, in part, to increase the likelihood that institutional investors will serve as lead plaintiffs." *Mohanty*, 2008 WL 426250, at 6. The Trust has been directly involved in all aspects of the litigation since the filing of the amended complaint, and supports the appointment of Mr. Flores as a co-lead plaintiff or, in the alternative, Mr. Flores as the Lead Plaintiff. *See* Ex. 3 at ¶¶9-10. Mr. Flores and the Trust anticipate filing a motion for class certification consistent with the current Case Management Order on February 26, 2021, and proposing both Mr. Flores and the Trust as class representatives.

Thus, granting this Motion will provide a continuity of leadership without any disruption to the Court's deadlines. The Trust agrees to work cooperatively with Mr. Flores to achieve the best result possible for the putative Class by drawing on both its experience in this litigation and its considerable experience serving in prior shareholder class action lawsuits. *See id*. Moreover, Wolf Popper, counsel for Mr. Flores, has been retained by the Trust to monitor its investment portfolio for damages due to breaches of fiduciary duty, fraud, misrepresentation, or other violations of applicable state and federal laws, and therefore, has an ongoing working relationship with the Trust. *See id.* Further, Levi &

---

[6] The Trust purchased shares throughout the Class Period alleged in the SAC and retained shares over both corrective disclosures.

Korsinsky and Wolf Popper have cooperatively served as counsel together in similar securities class actions in the past and are confident in their ability to litigate this Action in an efficient matter consistent with their obligations to their clients and the Class. *See* Section III, *infra*.

Crucially, the Trust's prior litigation experience includes successfully serving in a representative capacity on behalf of similar classes of defrauded shareholders. In *In Re Penn West Petroleum Ltd. Sec. Litig.*, the Trust served as a lead plaintiff alleging similar violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and violations of Section 20(a) of the Exchange Act against the individual defendants. Master File No. 14-cv-06046-JGK (S.D.N.Y.). *See* Ex. 3. at ¶4. The Trust successfully litigated on behalf of the class and obtained a favorable settlement of $19,759,282 in cash. *See id.* at Dkt. No. 144, at 2. The Honorable John G. Koeltl finally approved that settlement on June 28, 2016 finding, *inter alia*, that the Trust "fairly and adequately represented the Settlement Class both in terms of litigating the Action for purposes of entering into and implementing the Settlement" and that the settlement itself was "in all respects, fair, reasonable, and adequate to the Settlement Class." *Id.* at Dkt. No. 142, at 3-4.

The Trust also has extensive experience litigating securities fraud claims in the Ninth Circuit, including successfully arguing before the Ninth Circuit Court of Appeals. In *In Re Quality Sys. Inc., Sec. Litig.*, the Trust served as a lead plaintiff alleging violations of Section 10(b) and 20(a) of the Exchange Act and successfully appealed an order granting the defendants' motion to dismiss to the Ninth Circuit. Case No. 8:13-cv-01818-CJC-JPR (C.D. Cal.); *see also In re Quality Sys.*, 865 F.3d 1130 (9th Cir. 2017). After remand, the Trust engaged in extensive discovery including collecting over 350,000 pages of documents from parties and non-parties and also produced discovery in response to defendants' requests. *See id.* at Dkt. No. 95, at 2-3. The Trust's representation resulted in a $19 million settlement of the class's claims. In finally approving that settlement, the court found the recovery achieved "far exceeds the median securities settlement recovered as a percentage of damages" and that the Trust "devoted substantial time and effort to monitoring the litigation and assisting Lead Counsel." *Id.* at Dkt. No. 117, at 6, 11.

Accordingly, there can be no doubt that the continued involvement of a sophisticated institutional investor with extensive litigation and settlement experience militates in favor of substituting Mr. Flores

and the Trust as co-lead plaintiffs. *See Haideri v. Jumei Int'l Holding, Ltd*., 2020 WL 5291872, at 5 (N.D. Cal. Sep. 4, 2020) (noting institutional investor's prior experience favorably and listing past appointments). .

Further, the Trust's status as an institutional investor, ***alone,*** supports permitting the Trust to continue its litigation efforts cooperatively with Mr. Flores. There is no question that in enacting the PSLRA, Congress sought to increase the involvement of institutional investors in sophisticated securities class action proceedings. *See* S. Rep. No. 104-98, at 11 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts . . . [and] believes that an institutional investor acting as lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors."); *Lloyd v. CVB Fin. Corp*., 2011 WL 13128303, at 5 (C.D. Cal. Jan. 21, 2011) ("the Reform Act establishes a preference that sophisticated institutional investors direct the course of securities cases."). The Trust's status as an institutional investor who has actively participated in the progress of this Action since the amended complaint stage bodes well for class certification. *See In re Perrigo Co. PLC Sec. Litig.,* 2020 WL 5701823, at 3 (S.D.N.Y. Sep. 24, 2020) (granting class certification in securities fraud suit noting "[t]he Lead Plaintiffs are institutional investors; 'the PSLRA was designed to increase the likelihood that institutional investors will serve as lead plaintiffs.'")

Finally, historical data shows that institutional investors like the Trust obtain higher recoveries in class action settlements. Cornerstone Research ("Cornerstone"), an economic and financial consult and expert, surveys and publishes an annual review and analysis of securities class action settlements. According to Cornerstone's 2019 Review and Analysis, "median 'simplified tiered damages' for cases involving a public pension as a lead plaintiff in 2019 were ***more than three times higher*** than for cases without a public pension plan as a lead plaintiff."[7] *See* Cornerstone, Securities Class Action Settlements, 2019 Review and Analysis, *available at* https://www.cornerstone.com/Publications/Reports/Securities-

---

[7] According to Cornerstone, "'simplified tiered damages'" uses simplifying assumptions to estimate per-share damages and trading behavior. It provides a measure of potential shareholder losses that allows for consistency across a large volume off cases, thus enabling the identification and analysis of potential trends."

Class-Action-Settlements-2019-Review-and-Analysis. Further, as demonstrated by the bar graph below, median settlement amounts per securities fraud settlement are substantially higher—sometimes **four times or more** times higher—when an institutional investor served as a lead plaintiff:



Figure 11: Median Settlement Amounts and Public Pension Plans 2010–2019
(Dollars in millions)

Accordingly, for all the reasons stated above, the Trust should be appointed a co-lead plaintiff with Mr. Flores. In the alternative, the Trust supports the appointment of Mr. Flores as lead plaintiff and is ready, willing, and able to lend Mr. Flores its assistance and considerable experience by continuing to serve as an additional plaintiff.

### C.     Mr. Flores And The Trust Satisfy The Adequacy And Typicality Requirements Of The PSLRA

Rule 23(a) of the Federal Rules of Civil Procedure provides four requirements for a plaintiff to serve as a representative party for a putative class. Of the four requirements, only two—that the representative's claims be typical of the class's claims and that the representative be adequate—are

relevant inquiries at the lead plaintiff stage. *See Ali v. Intel Corp.*, 2018 WL 2412111, at 2 (N.D. Cal. May 29, 2018) (at lead plaintiff selection, a pre-class certification proceeding, focusing on typicality and adequacy). Mr. Flores and the Trust need only make a "preliminary showing" of typicality and adequacy. *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1158 (N.D. Cal. 1999). Mr. Flores made a preliminary showing of his typicality and adequacy in connection with his lead plaintiff application and ***no other lead plaintiff movant challenged Mr. Flores's typicality or adequacy***. No intervening circumstances have changed that preliminary showing. Moreover, the Trust is a sophisticated institutional investor with considerable experience in securities class actions—exactly the kind that Congress intended to serve as a lead plaintiff in litigation like this Action.

### 1. Mr. Flores's And The Trust's Claims Are Typical Of Class Members' Claims

The test to satisfy the typicality requirement of Rule 23(a)(3) is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *In re Aqua Metals Sec. Litig.*, 2018 WL 4860188, at 3 (N.D. Cal. May 23, 2018). Mr. Flores and the Trust satisfy the typicality requirement because they: (i) purchased Nutanix securities during the Class Period; (ii) at prices artificially inflated by the alleged false and misleading statements issued by Defendants; and (iii) suffered significant damages as a result. Therefore, Mr. Flores's and the Trust's claims are typical, if not identical, to those of other Class members who sustained damages as a result of Defendants' alleged misrepresentations and/or omissions during the Class Period. *Id.* at 4 (typicality requirement satisfied where movant, like remainder of class, acquired stock at artificially inflated prices and suffered damages thereby). Moreover, "the claims of institutional investors" like the Trust "generally will be typical of the claims of the class." *Hufnagle v. Rino Int'l Corp.*, 2011 WL 710704, at 4 (C.D. Cal. Feb. 14, 2011).

14

1

### 2. Mr. Flores And The Trust Have Demonstrated Their Adequacy By Their Commitment To Working Collaboratively With Lead Counsel And Continue The Timely, Non-Duplicative Prosecution Of this Case

The PSLRA's requirement that the lead plaintiff be "the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members" (15 U.S.C. §78u-4(a)(3)(B)(i)), is no doubt satisfied by Mr. Flores' willingness to step into the shoes of Mr. Hedvat to ensure this Action proceeds without disruption. Mr. Flores, by staying apprised of developments in this Action and stepping forward when required to serve as lead plaintiff, has demonstrated he is an adequate class representative. Rather than engage in unnecessary litigation that would waste valuable time to the Class's detriment, Mr. Flores appreciates the value of working collaboratively with an experienced institutional investor such as the Trust and its counsel Levi & Korsinsky, who has successfully advanced this Action beyond the pleadings stage. Ex. 2 at ¶15. Mr. Flores would rather continue to drive the litigation to successful resolution than start anew without the institutional knowledge possessed by Levi & Korsinsky and the Trust. *Id.*; *See Sayce v. Forescout Techs.*, 2020 WL 6802469, at 7 (N.D. Cal. Nov. 19, 2020) (adequacy satisfied where movant selected experienced counsel and evidenced "its intent and willingness to act as vigorous advocates on behalf of the entire class.").

### 3. Mr. Flores And The Trust Are Otherwise Adequate

Mr. Flores and the Trust will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The test for adequacy asks whether the lead plaintiff and his counsel 'have any conflicts of interest with other class members' and whether the lead plaintiff and his counsel will 'prosecute the action vigorously on behalf of the class.'" *Welgus v. TriNet Grp., Inc.*, 2015 WL 7770222, at 3 (N.D. Cal. Dec. 3, 2015) (quoting *Staton v. Boeing Co.*,327 F.3d 938, 957 (9th Cir. 2003)). The adequacy requirement is met if no conflicts exist between the representative's interests and those of the class, and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation. *Schwartz v. Opus Bank*, 2017 WL 5468820, at 2 (C.D. Cal. Feb. 23, 2017).

Mr. Flores and the Trust will adequately protect the interest of the Class. The interests of Mr. Flores and the Trust on the one hand, and the Class on the other, are perfectly aligned as both have

15

suffered damages as a result of Defendants' alleged false statements and omissions. Additionally, Mr. Flores has a significant interest in vigorously pursuing this Action given his sizable financial interest. *Aqua Metals*, 2018 WL 4860188, at 3 (movant's "substantial financial stake in the outcome of this litigation, its timely filing of its motion, and the quality of its briefing all demonstrate that it is both motivated to, and capable of, vigorously pursuing this litigation."). Likewise, the Trust has a considerable interest in zealously pursuing this Action that alleges damages to the Trust. Such alleged economic harm renders the Trust less able to meet its financial obligations and increases costs to the City of Miami, the Trust's plan sponsor. *In re Versata, Inc.*, 2001 WL 34012374, at 6 (N.D. Cal. Aug. 20, 2001) ("Catu's institutional status is given great weight in assessing adequacy as a plaintiff"); *Mullins v. AZZ, Inc.*, 2018 WL 7504312, at 2 (N.D. Tex. Aug. 9, 2018) ("[a]s an institutional investor, it is accustomed to acting in the role of a fiduciary, and its experience with investing and financial matters will only benefit the class.").

### D.  The Class Will Benefit From An Orderly And Amicable Lead Plaintiff Substitution

Transitioning the lead plaintiff role to Mr. Flores, the movant with the second largest financial interest of all filers, and the Trust, a sophisticated institutional investor who has helped oversee this Action since mid-2019, is undoubtedly the best result for the Class as it provides leadership by two highly motivated and sophisticated investors and continuity of leadership without duplication or delay. Mr. Flores has reviewed and adopts the substantive allegations of the SAC concerning publicly available information. As this Court held, the SAC, which was the product of Lead Counsel's extensive investigation, states a claim upon which relief can be granted. Substitution of Mr. Flores would guarantee that there would be no disruption to the operative Case Management Order to allow for a new pleading or motion to dismiss.

Flores' choice of counsel, a co-lead structure of Levi & Korsinsky and Wolf Popper, also allows for seamless transition of representation. *See Tezos,* 2019 WL 2183448, at 5 (appointing withdrawing lead plaintiff's counsel as co-lead counsel with counsel for substituting lead plaintiff where counsel agreed to work together going forward). Levi & Korsinsky and Wolf Popper have demonstrated an ability to work together efficiently and for the best interests of the class, having worked together as co-

lead counsel in the past to bring class action cases like this to successful resolution and are currently doing so now. *See* Section III, *infra*.

This Action is now at a critical juncture. Plaintiffs have litigated all the way through to the point of preparing to file a motion for class certification. To arrive at this point, Levi & Korsinsky, on behalf of Mr. Hedvat, the Trust, and the Class has already spent nearly 3,500 hours: (i) researching the law; (ii) interviewing and developing a rapport with confidential witnesses whose statements the Court relied upon in its decision on the motion to dismiss; (iii) developing a case theory based on non-public information relayed through discussions with confidential witnesses; (iv) propounding discovery requests; (v) meeting and conferring with Defendants on their discovery; (vi) responding to Defendants' discovery requests; (vii) issuing thirty Rule 45 third-party subpoenas; (viii) meeting and conferring with third parties; (ix) reviewing over 10,000 documents produced in discovery; (x) reviewing and analyzing the evidence in advance of document searches of Defendants' electronically-stored information; and (xi) retaining and working with an expert for Plaintiffs' anticipated motion for class certification.

As such, the Trust, through Lead Counsel Levi & Korsinsky, has an in-depth understanding of the remaining claims in this case and the evidence needed to prove the elements of the claims asserted in this Action and to oppose Defendants' strategies and arguments for defending the case. Lead Counsel's institutional knowledge would be extremely difficult to replace at this stage of the litigation, and replacement would result in unnecessary duplication and wasted expense to the detriment of the Class. Accordingly, the Court should grant this Motion which would ensure the Trust's and Levi & Korsinsky's continued involvement in the Action. *See Tezos,* 2019 WL 2183448, at 5 ("[I]n light of [withdrawing lead plaintiff's] counsels' extensive work and knowledge of the case, the class would benefit from their continued prosecution of the case.")

### III.    THE COURT SHOULD APPROVE MR. FLORES'S AND THE TRUST'S SELECTION OF CO-LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not interfere with the lead plaintiff's section of counsel unless necessary "to protect the interests of the class." *See In re Cohen v. United States Dist. Court for the N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009). Mr. Flores, in his initial moving papers,

had selected and retained Wolf Popper to serve as his counsel. *See* Dkt. No. 32 at 11-12. Wolf Popper is unquestionably experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as well as other class actions, as detailed in the attached resume. *See* Hopkins Decl. at Ex. 4 (firm résumé of Wolf Popper LLP). For example, in *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust, et al. v. J.P. Morgan Acceptance Corp. I.*, No. 2:09-cv-01713 (E.D.N.Y.), Wolf Popper represented the Public Employees' Retirement System of Mississippi as lead plaintiff and recovered $280 million for investors in residential mortgage-backed securities issued by JPMorgan Acceptance Corp.

Mr. Flores and the Trust have selected Levi & Korsinsky, current lead counsel in this Action, to represent the Class as co-lead counsel with Wolf Popper. In addition to the quality lawyering Levi & Korsinsky has already done *in this Action*—including a thorough investigation on behalf of the Class and defeating Defendants' motion to dismiss—Levi & Korsinsky has extensive experience in successfully prosecuting other complex securities class actions and is well-qualified to represent the Class. *See* Hopkins Decl. at Ex. 5 (firm résumé of Levi & Korsinsky, LLP). *See e.g., Daniels Family 2001 v. Las Vegas Sands Corp.,* 2021 WL 41301, at *3 (D. Nev. Jan. 5, 2021) (appointing Levi & Korsinsky as lead counsel noting the firm's "extensive experience in complex securities class actions"); *Isaacs v. Musk*, 2018 WL 6182753, at *4 (N.D. Cal. November 27, 2018) (Levi & Korsinsky "is experienced in securities fraud litigation and has been appointed Lead Counsel in other securities class actions.")

Mr. Flores's and the Trust's decision to retain Wolf Popper and Levi & Korsinsky as co-lead counsel is also reasonable and should be approved because the two firms have worked cooperatively in class actions and complex class actions in the past. *See e.g.*, *Arthur Kaye IRA FCC as Custodian DTD 6-8-00 v. ImmunoCellular Therapeutics, Ltd.,* Case No. 2:17-cv-03250-FMO-SK (C.D. Cal.) at Dkt. No. 35 (appointing Levi & Korsinsky and Wolf Popper as co-lead counsel in securities class action); *Kirkland v. WideOpenWest, Inc*., Index No. 653248/2018 (N.Y. Sup. Ct., N.Y. County) (Levi & Korsinsky and Wolf Popper currently serving as co-lead counsel on behalf of class); *In re Sauer-Danfoss Stockholder Litig.*, C.A. No. 8396 (Del. Ch.) (Levi & Korsinsky and Wolf Popper acted as co-lead

counsel in a breach of fiduciary duty class action litigation that resulted in a $10 million settlement for the class).

If appointed, Levi & Korsinsky and Wolf Popper will work cooperatively together, under the supervision of Mr. Flores and the Trust, to ensure there is no unnecessary duplication of efforts or unnecessary costs borne by the Class. In fact, appointing Levi & Korsinsky and Wolf Popper together will allow the case to continue unabated as Levi & Korsinsky has been litigating this case since inception and Mr. Flores has kept informed about the progress of the litigation. Ex. 2 at ¶6.

Further, Courts recognize that a co-lead structure, such as the one proposed here, would be advantageous to the Class. In *Tezos*, the court found that "in light of [withdrawing lead plaintiff's] counsels' extensive work and knowledge of the case, the class would benefit from their continued prosecution" and because the parties' counsel agreed they had the "ability and willingness to work together on behalf of the class" the court appointed a co-lead counsel structure going forward. 2019 WL 2183448, at *5; *see also Sayce,* 2020 WL 6802469, at *8 (appointing co-lead counsel structure in securities class action where "[b]oth firms have presented their credentials, including years of experience successfully litigating large securities class actions" and "indicated a willingness to work together and noted that they have successfully litigated securities cases together in the past."); *see also Aqua Metals*., 2018 WL 4860188, at *4. Thus, the Court may rest assured that by granting Mr. Flores's and the Trust's motion, the Class will receive the highest caliber of legal representation and Levi & Korsinsky and Wolf Popper will litigate the Action on behalf of the class in a lean and efficient manner.

## **CONCLUSION**

For all the foregoing reasons, the Court should grant Shimon Hedvat's request to withdraw as the lead plaintiff, substitute Mr. Flores and the Trust as co-lead plaintiff on behalf of the Class, and approve their selection of Levi & Korsinsky, LLP and Wolf Popper LLP as co-lead counsel.

DATED: January 27, 2021                    **LEVI & KORSINSKY, LLP**

                                           */s/ Shannon L. Hopkins*
                                           Shannon L. Hopkins
                                           Kristina M. Mentone
                                           Gregory M. Potrepka
                                           Andrew W. Rocco
                                           1111 Summer Street, Suite 403
                                           Stamford, CT 06905

Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: kentone@zlk.com
Email: gpotrepka@zlk.com
Email: arocco@zlk.com

Adam M. Apton
Adam C. McCall
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for Lead Plaintiff Shimon Hedvat,*
  *Plaintiff City of Miami Fire Fighters' and*
  *Police Officers' Retirement Trust, and*
  *Lead Counsel for the Class*

**WOLF POPPER LLP**
Robert C. Finkel (admitted *pro hac vice*)
Joshua W. Ruthizer (admitted *pro hac vice*)
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 459-2093
Email: rfinkel@wolfpopper.com
Email: jruthizer@wolfpopper.com

*Attorneys for Movant Jose Flores and*
  *Proposed Co-Lead Counsel for the Class*