# Exhibit 4



## BIOGRAPHICAL SKETCH OF WOLF POPPER LLP

Wolf Popper LLP ("Wolf Popper" or "the Firm") is a nationally recognized law firm with decades of experience in the fields of securities, consumer, and ERISA class actions and securities derivative actions.   Since the Firm was founded in 1945, Wolf Popper has been a leader in efforts to protect the interests of defrauded investors, consumers, and employees, prosecuting hundreds of actions under federal and state laws throughout the United States, and recovering billions for aggrieved parties.

The Firm also has a substantial practice in corporate and commercial law.   Wolf Popper's commercial litigation practice encompasses the representation of defendants as well as plaintiffs. The Firm's corporate practice includes business transactions, employer/employee relations, and the law of foreign missions.   Among the Firm's clients are domestic and international individuals and businesses, and foreign missions to the United Nations.

The Firm's members are active members in a variety of professional legal associations, including serving on or chairing a number of committees of such associations and they have written extensively on a variety of subjects for numerous professional associations and legal periodicals, including internationally.   Many of the Firm's current and former members have held responsible positions in government both at the federal and the state level.   For example, Benedict Wolf (now deceased) was the First Secretary and Chief Trial Examiner of the National Labor Relations Board, and Martin Popper (now deceased) was a consultant to the U.S. Delegation to the Founding Conference of the United Nations and an observer at the Nuremberg war crimes trials.

Wolf Popper has an exemplary record in its representation of plaintiffs, and the skill and experience of the attorneys at the Firm have been repeatedly recognized by Courts throughout the country.   In recognition of its high standing at the bar, Courts have frequently appointed Wolf Popper to serve as lead or co-lead counsel in complex, multi-party actions, including securities, consumer, and ERISA actions.   Many of the Wolf Popper attorneys are regularly selected as New York "Super Lawyers"®.   This selection represents the top 5% of attorneys practicing in New York City.

Wolf Popper has achieved notable and significant successes over the years.   Some of the outstanding recoveries achieved and decisions obtained by the Firm are described below.

*Securities Actions:*

•        In <u>Martinek v. AmTrust Financial Services, Inc.</u>, Case No. 19-cv-8030 (KPF) (S.D.N.Y.), on August 14, 2020, Judge Katherine Polk Failla denied the defendants' motion to dismiss a securities fraud action prosecuted by Wolf Popper LLP on behalf of preferred stockholders of AmTrust Financial Services, Inc., a large insurance company.   The complaint filed by Wolf Popper described how AmTrust and three of its directors falsely assured the investing public that, unlike AmTrust's common shares, which would be delisted as part of a merger in which these three directors would be taking the company private, AmTrust preferred stock would continue to be listed

Wolf Popper LLP
Page -2-

on the New York Stock Exchange.    In rejecting the defendants' arguments, Judge Failla concluded that "[t]he fact of the matter is that, prior to the Merger, Defendants repeatedly assured investors that the preferred stock would remain listed, and then, less than two months after the transaction closed, decided to delist the preferred stock."    The Court found that the "professed reasons for delisting the stock…were known to the Individual Defendants before the Merger," a fact "only strengthen[ing] Plaintiff's argument this was a classic bait and switch."

•    In Jackson v. Microchip Technology Inc., No. CV-18-02914-PHX-JJT (D. Az.), on March 11, 2020, Judge John j. Tuchi issued an order denying, in substantial part, defendants' motion to dismiss.    The Court concluded, *inter alia*, that the complaint properly alleges that the defendants' statements concerning the historical performance of a competitor acquired by Microchip were misleading given Microchip's use of differing accounting practices.    The Court further concluded that the complaint properly alleges the defendants' intent to defraud investors.

•    In Public Employees' Retirement System of Mississippi v. TreeHouse Foods, Inc., Case No. 16-cv-10632 (N.D. Ill.), the Court, on February 26, 2020, after considering the work of the Firm in the case, the Firm's knowledge of the law, and the Firm's class action experience, concluded that Wolf Popper is "'experienced and competent'" and should be appointed as Lead Counsel.

•    In Bach v. Amedisys, Inc., 10-CV-00395 (C.D. La.), Wolf Popper represents one of the Co-Lead Plaintiffs, the Puerto Rico Teachers Retirement System.    Plaintiffs allege that Amedisys, a home health care company, engaged in Medicare fraud, misrepresenting its financial statements and history of compliance with Medicare rules and regulations, and improperly securing revenue from Medicare billings.    In essence Amedisys hid a Medicare fraud scheme by which Amedisys improperly inflated Medicare reimbursements by pressuring and intimidating nurses and therapists to provide unnecessary treatment to trigger higher fees.    The District Court granted Defendants' motions to dismiss the Complaint.    However, Co-Lead Plaintiffs successfully appealed that dismissal to the Fifth Circuit, which reversed the dismissal and remanded the case to the District Court for further proceedings.    Following substantial discovery, the parties recently reached a settlement in the amount of $43.75 million.    The Court granted final approval to the settlement on December 13, 2017.

•    In Flynn v. Sientra, Inc., Case No. 2:15-cv-07548-SJO-RAO (C.D. Cal.), Wolf Popper served as co-lead counsel for the class in an action asserting claims under both the Securities Act of 1933 (in connection with a secondary public offering ["SPO"]) and the Securities Exchange Act of 1934, on behalf of purchasers of Sientra, Inc. ("Sientra") common stock.    Sientra sold breast implants implants made by a Brazilian manufacturer in a single facility in Rio de Janeiro, Silimed Indústria de Implantes Ltda. ("Silimed"), with whom Sientra had extensive relationships.    Plaintiffs alleged that, unbeknownst to the investing public, in the spring and summer 2015, European regulators discovered that the implants manufactured in that facility were contaminated with foreign particulates, and that Silimed had performed its own inspection and reached the same conclusion.    Shortly thereafter, Sientra, which needed a cash infusion, announced a $65 million SPO.    Plaintiffs alleged that the SPO's offering documents represented that Sientra, not Silimed, was "primarily responsible for the manufacturing and quality assurance of [Sientra's] products," including inspections of all products

Wolf Popper LLP
Page -3-

from Silimed; and that the offering documents discussed the manufacturing of Sientra's products at the Rio facility, including regulatory compliance and current good manufacturing practices ("cGMP"), without disclosing that widespread contamination at that facility had been found by regulators, and confirmed by Silimed, well before the SPO.   Plaintiffs alleged that, notwithstanding Defendants' knowledge of the regulatory and internal findings, they recklessly continued with the SPO, raising more than $65 million.   Minutes after the SPO closed, the contamination was revealed by the European regulators, causing the price of Sientra's common stock to plummet.   On June 9, 2016, Judge S. James Otero denied in substantial part defendants' motions to dismiss the Section 10(b), Section 11 and 12(b)(2) claims.   Flynn v. Sientra, Inc., 2016 U.S. Dist. LEXIS 83409 (C.D. Cal. June 9, 2016), motion for reconsideration denied, slip op. (C.D. Cal. Aug 12, 2016).   On May 22, 2017, the court approved a settlement of the litigation for $10.9 million in cash.

• In Anwar v. Fairfield Greenwich Ltd., No. 09-cv-0118 (VM) (S.D.N.Y.), Wolf Popper is co-lead counsel for investors in the multi-billion "feeder" funds, managed by affiliates of the Fairfield Greenwich Group (FGG).   These funds lost virtually all of their assets in the Ponzi scheme orchestrated by Bernard L. Madoff.   The case includes claims under both the federal securities laws and New York state common law.   Wolf Popper helped recover hundreds of millions of dollars for these Madoff victims.

Based upon the strength of plaintiffs' arguments and briefing, in a groundbreaking decision Judge Marrero broke from substantial existing precedent in the New York courts and the district courts within the Second Circuit in denying defendants' motion to dismiss, concluding that the Martin Act did not preempt any existing claims under New York law.   Anwar v. Fairfield Greenwich, Ltd., 728 F. Supp. 2d 354 (S.D.N.Y. 2010).   That decision was approved and substantially followed by the New York Court of Appeals in Assured Guar. (UK) Ltd. v J.P. Morgan Inv. Mgt. Inc., 18 N.Y.3d 341, 353 (N.Y. 2011).   On March 22, 2013, the court approved a partial settlement in the amount of $80,250,000, including a minimum of $50,250,000 to be distributed to the settlement class upon final approval, and an additional $30,000,000 to be distributed if not used to resolve other claims.   An additional $5,000,000 partial settlement with defendant GlobeOp was approved by the Court on November 22, 2013.   On November 20, 2015, the Court gave final approval to a $125 million settlement with the Citco Group defendants.   In 2016, the Court approved a settlement with PricewaterhouseCoopers in the amount of $55 million.   Thus, Wolf Popper's efforts helped recover up to $265 million for these victims of the Madoff Ponzi-scheme scandal.

• In Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust et al. v. J.P. Morgan Acceptance Corp. I et al., 2:09-cv-01713 (E.D.N.Y.) (PKC) (WDW), Wolf Popper represents the Public Employees' Retirement System of Mississippi ("MissPERS"), as lead plaintiff, in an action against JPMorgan Acquisition Corp. ("JPMAC"), certain individuals employed by JPMAC or its affiliates, and JP Morgan Securities, Inc.   The class consists of investors who purchased certain mortgage pass-through certificates (mortgage-backed securities) across 26 Offerings, with an initial face value of approximately $23 billion.   MissPERS's consolidated complaint alleges that the offering documents pursuant to which the JPMAC securities were sold contained misrepresentations and omitted to disclose information concerning the underwriting of the mortgage loans serving as

Wolf Popper LLP
Page -4-

collateral for the securities. The parties engaged in extensive motion practice and discovery. In February 2012, Lead Plaintiff defeated Defendants' motion to dismiss in substantial part.

On July 24, 2014, the Honorable Pamela K. Chen entered an order approving the settlement which resolved the action for a total of $280 million. It is one of the largest settlements in a class action against banks that issued mortgage-backed securities. The Court found that "the representation of both sides was obviously very vigorous. The plaintiffs, I know, expended efforts in terms of pursuing the investigation, the theories, the research and the advocacy." The Action "was a difficult case. Certainly in the beginning, at the time when some of the principles, the legal principles that are applied in this case, in any cases related to mortgage-backed securities, was not well established. They did yeomen's work, I think, in trying to establish some of those principles. . . . [T]his is a good result in this particular case."

•  In the State of New Jersey, Department of Treasury, Division of Investment v. Merrill Lynch & Co., Inc. and Bank of America Corp., Docket No. L-3855-09 (New Jersey Superior Court, Hudson County), Wolf Popper represented the State of New Jersey, Division of Investment ("NJ") in an individual action against Merrill Lynch. On January 16, 2009, Bank of America Corp. ("BAC") announced that Merrill Lynch & Co., Inc. ("Merrill"), BAC's subsidiary, reported a net loss after taxes for the fourth quarter of 2008 of $15.3 billion. In researching potential claims against Merrill, Wolf Popper learned that NJ had invested $300 million in January 2008 in a private placement of Merrill preferred stock and that NJ had converted those preferred shares to common stock pursuant to an exchange agreement in July 2008. Further investigation revealed that a different investor, at that same time, had converted its preferred shares to a new series of preferred on terms that were preferential to the terms Merrill had offered to NJ. Prior to filing the Complaint, Wolf Popper was able to obtain discovery with respect to a class action settlement of claims against Merrill then pending in the Southern District of New York for purposes of advising NJ whether to opt out of the class action and file an individual complaint. NJ, subsequent to that discovery, determined to opt out of the class settlement. Wolf Popper filed an individual complaint on NJ's behalf on July 28, 2009, in state court in New Jersey asserting claims against Merrill Lynch for breach of contract, breach of the covenant of good faith and fair dealing, and negligent misrepresentation. After defendants removed the case to federal court, the U.S. Court of Appeals for the Third Circuit unanimously affirmed the remand of the action back to the New Jersey state court on May 18, 2011. The New Jersey Superior Court thereafter denied defendants' motion to dismiss in its entirety. Following merits and expert discovery, the Court on September 29, 2012, denied in all material respects Merrill's motion for summary judgment. The action settled in April 2013 for $45 million, approximately one month before trial. New Jersey Attorney General Jeffrey S. Chiesa stated, in announcing the settlement, that "this is a fair and equitable outcome, and we are pleased to be recovering a substantial amount of dollars on behalf of New Jersey taxpayers."

•  In Tsereteli, et ano., v. Residential Asset Securitization Trust 2006-A8 et al., No. 08 Civ. 10637 (LAK) (S.D.N.Y.) (IndyMac), Wolf Popper is lead counsel, representing a British Virgin Islands corporation, on behalf of investors who purchased mortgage pass-through certificates (RMBS) backed by IndyMac Bank, N.A. ("IndyMac") loans. The court denied the motion to dismiss filed by defendant Credit Suisse Securities (USA) LLC, the underwriter that sold the

Wolf Popper LLP
Page -5-

mortgage-backed securities in the case.   The claims alleged untrue statements and omissions related to the origination, by IndyMac, of the home mortgage loans backing the securities sold in the offering. The court upheld plaintiff's allegations that IndyMac had abandoned the loan origination procedures and underwriting standards that were disclosed to investors in the offering.   Plaintiff's class certification motion, which addressed several novel issues, including whether a single class could include claims brought on behalf of different certificate purchasers within a complex "waterfall" capital structure, was granted on June 29, 2012.

On January 27, 2014, Judge Kaplan approved the parties' proposed settlement, which provides an $11 million benefit to the class.   The settlement is believed to be one of the largest percentage recoveries to date (as a function of statutory damages) in an RMBS Securities Act class action.

•        In In re Tycom Ltd. Sec. Litig., No. 03-3540 (GEB) (D.N.J.), Wolf Popper, representing the Lead Plaintiff, served as co-lead counsel for the class, securing a $79 million cash settlement for the class following extensive motion practice and full discovery.   At the August 25, 2010 hearing at which the Court approved the settlement, the Honorable Garrett E. Brown, Jr., Chief Judge of the U.S. District Court for the District of New Jersey, praised the Firm for its "very extensive and professional representation of the class."

•        In the In re Motorola Sec. Litig., No. 03-C-287 (RRP) (N.D. Ill.), Wolf Popper represented the Lead Plaintiff, the State of New Jersey, Department of Treasury, Division of Investment.   On the eve of trial, the defendants paid $190,000,000 to the class to resolve the federal securities litigation.   This recovery was obtained after more than four years of litigation. During the litigation, Wolf Popper, among other things, defeated Motorola's motion to dismiss the complaint (2004 U.S. Dist. LEXIS 18250 (Sept. 9, 2004, N.D. Ill.)) and Motorola's motions for summary judgment (2007 U.S. Dist. LEXIS 9530 (Feb. 8, 2007, N.D. Ill.)).

•        In Middlesex Retirement System v. Quest Software, Inc., No. 06-06863-DOC (RNBx) (C.D. Cal.), Wolf Popper was appointed lead counsel in a federal securities class action against Quest Software, Inc. ("Quest"), a company that designs, develops, distributes and supports software products.   The case is based on allegations that Quest issued materially false and misleading statements to cover up its failure to account properly for backdated stock options, causing Quest's operating and net income to be overstated and its stock price to be artificially inflated.   Following comprehensive briefing opposing defendants' initial motion to dismiss, the Court denied virtually all of defendants' motion.   Defendants filed subsequent motions to dismiss challenging the amended complaint which had added additional allegations.   The Court denied defendants' motions to dismiss the claims under § 10(b) and § 20(a) of the Securities Exchange Act of 1934.   See Middlesex Retirement System v. Quest Software, Inc., 527 F. Supp. 2d 1164 (C.D. Cal. 2007); and Amended Order (C.D. Cal. July 10, 2008).   After comprehensive discovery and the grant of plaintiff's motion to compel discovery and plaintiff's motion for class certification, see Middlesex Retirement System v. Quest Software, Inc., Order, CV 06-6863-DOC (RNBx) (C.D. Cal. Jul. 8, 2009), aff'd, Order (C.D. Cal. Sept. 18, 2009) (order granting Plaintiff's motion to compel); and Order, CV 06-6863-DOC (RNBx) (C.D. Cal. Sept. 8, 2009) (Granting Lead Plaintiff's Motion for Class Certification), the parties entered into a proposed settlement of the action for $29.4 million (plus the cost of providing

Wolf Popper LLP
Page -6-

notice of the settlement to the class).   The Court preliminarily approved the settlement, stating "[Y]ou really have the court's profound congratulations and compliments," and, on April 26, 2010, gave final approval to the settlement.

•      In Huberman v. Tag-It Pacific Inc., No. 2:05-cv-07352-R(Ex) (C.D. Cal.), Wolf Popper successfully appealed the district court's grant of summary judgment to defendants and the denial of class certification.   In addition to reversing summary judgment, the Ninth Circuit Court of Appeals also reversed the district court's denial of class certification, and ordered the district court to certify the class.   Huberman v. Tag-It Pacific Inc., 2009 U.S. App. LEXIS 2780 (9th Cir. Jan. 16, 2009).   The Court approved the subsequent settlement of the litigation for an amount that was almost 50% of the court-appointed independent expert's estimate of maximum potential losses.

•      In Thurber v. Mattel, Master File No. CV-99-10368-MRP (CWx) (C.D. Cal.) (§10(b) claims) and Dusek v. Mattel, Master File No. CV-99-10864-MRP (CWx) (C.D. Cal.) (§14(a) claims), Wolf Popper was a member of the Executive Committee of Plaintiffs' counsel, but was also specifically appointed by the Federal Court to have primary responsibility for the prosecution of the Dusek v. Mattel §14(a) claims.   After more than three years of extremely hard-fought litigation, including two rounds of motions to dismiss, the production of millions of documents, and the taking or defending of more than 40 depositions, both cases settled for the aggregate sum of $122 million, with $61 million allocated for the Dusek v. Mattel §14(a) claims, believed to be the largest settlement of a § 14(a) case.   Upon approving the settlement, the Judge complimented counsel saying that the settlement was an "awfully good result."   The Judge also specifically found that "Wolf Popper LLP vigorously prosecuted the Dusek action and zealously represented the interests of the Dusek class members" and that Wolf Popper zealously performed in a "very capable and professional manner."

•      Wolf Popper LLP was a co-lead settlement counsel for the plaintiff class in In re Service Corp. Int'l, No. H-99-280 (S.D. Tex.).   The action alleged that defendants made material misrepresentations in connection with Service Corp.'s January 1999 stock-for-stock acquisition of Equity Corp. International.   Based on the strength of the amended complaint, and presentation at mediation sessions, Wolf Popper recovered $65 million for the plaintiff class, 64.7% of the class' recognized losses.   The settlement, approved in 2004, was an extraordinary recovery inasmuch as there were no allegations of insider trading, a SEC investigation, or an accounting restatement, and the District Court had spent over four years deliberating over defendants' motion to dismiss the complaint, lessening plaintiffs' leverage in settlement negotiations.

•      In Stanley v. Safeskin, No. 99cv454-BTM (LSP) (S.D. Cal.), Wolf Popper served as Court-appointed Co-lead Counsel for Plaintiffs, in which the Court approved a $55 million settlement in favor of plaintiffs on March 20, 2003.   The Honorable Barry T. Moskowitz thereafter complimented Plaintiffs' Co-Lead Counsel, noting his "incredible respect for the work that the lawyers did."   Describing Plaintiffs' counsel as "highly skilled in these cases," Judge Moskowitz commented that he was "kind of looking forward to trying this case, because it would have the best lawyers in the country trying this case. . . ."   The Court subsequently further complimented Co-Lead Counsel, stating that "competency is too weak of a word -- the extraordinary ability of these firms * * * I really thought that the Plaintiffs' law firms in this case not only had extraordinary ability to deal

Wolf Popper LLP
Page -7-

with the complicated factual issues -- and it certainly was a difficult case, and you should be applauded in that regard." Paying Plaintiffs' Co-Lead Counsel perhaps an ultimate compliment, the Court further said, "From the plaintiffs' perspective -- and I say this for all the firms -- you handled it on a much higher plane, probably on a textbook or ideal plane. If they would teach people how it should be done in law school, this would be the example of, how the lawyers handle this case."

• In Buxbaum v. Deutsche Bank, A.G., No. 98 Civ. 8460 (JGK) (S.D.N.Y.), Wolf Popper recovered $58 million as co-lead counsel in a major securities fraud action against Deutsche Bank, A.G. and its senior officer. The action alleged that Deutsche Bank defrauded Bankers Trust shareholders by misrepresenting the status of takeover negotiations for Deutsche Bank to acquire Bankers Trust. The District Court's opinion denying defendants' motion to dismiss is reported at Fed. Sec. L. Rep. (CCH) ¶90,969 (S.D.N.Y. 2000). The decision denying defendants' motion for summary judgment is reported at 2002 U.S. Dist. LEXIS 1893 (S.D.N.Y., Jan. 30, 2002). The $58 million recovery, obtained on the eve of trial, was equivalent to approximately 48% of the class' maximum possible recovery, and approximately 96% of the class' most likely recovery.

• In In re Sunbeam Sec. Litig., No. 98-8258-Civ.-Middlebrooks (S.D. Fl.), Wolf Popper was appointed co-lead counsel. The case was brought against Sunbeam, its auditors, and former officers and directors of the company, including "Chainsaw" Al Dunlap. Plaintiffs reached a partial settlement with Sunbeam's auditors, Arthur Andersen, for $110 million - one of the largest settlements ever with an accounting firm in a securities class action - and reached a separate settlement with the individual defendants that included more than $18 million in cash plus a separate $13 million recovery from the company's excess insurance policies.

• In In re Providian Financial Sec. Litig., MDL No. 1301 (E.D. Pa.), Wolf Popper was co-lead counsel for the plaintiff class and obtained a $38 million recovery from the defendants. The Court, in approving the settlement, remarked on the "extremely high quality" and "skill and efficiency" of plaintiffs' counsel's work, which the Court stated it had seen throughout the litigation. The Court also noted the "extremely high quality" of Wolf Popper's work is reflected in the result which it obtained and in the fact that it is a nationally prominent firm with extensive experience in the field.

• Wolf Popper was co-lead counsel in In re Chambers Development Co. Sec. Litig., No. 92-0679 (W.D. Pa.) that resulted in a $95 million cash settlement for the class in 1996.

• Wolf Popper was the Chair of Plaintiffs' Executive and Scheduling Committees in the consolidated litigation arising out of the national scandal at Wedtech Corporation. In re Wedtech Sec. Litig., M 21-36 (LBS) MDL 735 (S.D.N.Y.). The action was settled for $77.5 million, one of the then largest settlements in a securities fraud action.

• Wolf Popper was the plaintiffs' co-lead counsel in a litigation that resulted in the then largest recovery in the history of securities class actions. In In re The Standard Oil Company/British Petroleum Litig., Consolidated Case No. 12676, Court of Common Pleas, Cuyahoga County, Ohio,

Wolf Popper LLP
Page -8-

plaintiffs' counsel negotiated and obtained a benefit for the class in excess of $600 million.   The Court commented favorably on the quality of co-lead counsel:

> The professional skill required to achieve the resultant benefits to this Class has been evidenced on nearly a daily basis by this Court.
>
> As a result of this professional skill and excellent representation, these benefits to the Class would not have otherwise been achieved.
>
> The Court has fully weighed in its decision the benefits bestowed on the Class.   At this juncture the Court finds that the benefit is unprecedented.

•       Wolf Popper was co-lead counsel in the case producing the then largest recovery in a securities class action prior to the Standard Oil litigation.   In Joseph, et al v. Shell Oil Company, et al., Consolidated Civil Action No. 7450 (Del. Ch., April 19, 1985), the plaintiff stockholders successfully petitioned the Delaware Chancery Court to enjoin the proposed merger of Shell Oil Company and Royal Dutch Petroleum Company, 482 A.2d 335, Del. Ch. 1984).   In approving the $205 million recovery in the Shell Oil litigation, Vice Chancellor Maurice Hartnett stated: "The results achieved in this case for the class are outstanding."

•       Wolf Popper played a major role in representing the rights of shareholders in the notorious Boesky/Drexel/Milken trading scandal involving Ivan F. Boesky, Dennis B. Levine, Kidder Peabody & Co. Incorporated, Goldman, Sachs & Co., Drexel, Michael R. Milken, and others.   These actions arose from the illegal use by various individuals of non-public information about publicly traded corporations, conveyed to them from high level executives at these large investment firms, to reap illicit profits for personal gain.   Wolf Popper was co-lead counsel in several of these actions, including the Boesky insider trading class litigation brought in the Southern District of New York, to represent classes of shareholders who suffered losses.   In re Ivan F. Boesky Sec. Litig., MDL 732, MDL-21-45-MP (S.D.N.Y.).   The Firm was also one of the lead counsel in the Drexel/Milken litigation also brought in the Southern District of New York.   In re Drexel Burnham Lambert Group Inc., et al., Debtors, Nos. 90 Civ. 6954 (MP), 90-B-10421 (FGC) (S.D.N.Y.).   After intensive litigation, the Firm helped recover in excess of $800 million for investors.   In the global settlement of these Milken related litigations, the Court specifically certified a worldwide class of investors after notice was given throughout the world, in addition to publications in newspapers worldwide.

•       The Firm was co-lead counsel for plaintiffs in litigation involving the alleged "greenmail" of Walt Disney Company by Saul Steinberg and his Reliance Group, Heckmann v. Ahmanson, C.A. 000851 (Superior Court, Cal.) (Co-lead counsel for derivative actions).   There the Los Angeles Superior Court in September 1989 approved a settlement providing for a cash payment of $45 million plus the therapeutic benefit of the termination of certain defendants' claim for rescission which potentially would have cost the company in excess of a billion dollars.

The Firm acted as sole lead or co-lead counsel for plaintiffs in dozens, if not hundreds, of other cases throughout the United States, achieving recoveries which aggregated in the billions of

Wolf Popper LLP
Page -9-


dollars, many of which settlements recovered well over 50% and, in several cases, 90-100% of the damages in such cases.

*Consumer Class Actions:*

Wolf Popper's strong presence in prosecuting class actions on behalf of defrauded consumers has similarly resulted in the return of millions of dollars to victims of unfair business practices. These litigations in which the Firm served as sole lead or co-lead counsel include, among others:

•       Bozarth v. Envision Healthcare Corporation, et al., Case No. 5:17-cv-01935-FMO-SHK (C.D. Cal.), is a consumer class action filed by the Firm on behalf of patients who went to an in-network emergency department in California (40 hospitals) and were charged inflated rates for out-of-network physician services.   The complaint alleged that defendants failed to disclose information that would allow patients to avoid—or even know that they were receiving—out-of-network care at an in-network hospital, and then overcharged patients, billing at rates far beyond the fair market value of the services.   On June 30, 2020, the court granted final approval to a settlement which provided refunds or write-offs of amounts in excess of what class members' insurance companies determined was the "allowable charge" for the services, for class members who file valid proof of claim forms.

•       In a novel ruling under the Truth in Lending Act ("TILA")/Regulation Z in which the Firm represents the plaintiff, Jamison v. Bank of America, N.A., No. 2:16-cv-00422-KJM-AC, 2016 WL 3653456 (E.D. Ca., July 7, 2016), the Court in the Eastern District of California found the reasoning of the McLaughlin case prosecuted by the Firm and described below "to be persuasive and consistent with TILA's remedial purpose. . . As a result, an 'accurate' payoff statement should have disclosed the [insurance] proceeds."

•       McLaughlin v. Wells Fargo Bank, NA., No. C 15-02904 WHA (N.D. Cal.), in a precedent setting Order under the Truth in Lending Act's ("TILA") Regulation Z, the Court in the Northern District of California, in denying the motion to dismiss of Wells Fargo Bank, held that the bank is required under TILA to indicate the amount of property insurance proceeds held by the bank on the plaintiff customer's payoff statement.   The Court noted that "[n]o decision from our court of appeals has ever addressed the issue of whether TILA compels lenders to include 'potential' credits in payoff statements."   In holding for the plaintiff, the Court found, "[a]s a matter of law, the bank is wrong on this one."   McLaughlin v. Wells Fargo Bank, NA., No. C 15-02904 WHA, Order that TILA Required Insurance Proceeds to be Reflected in Payoff Statement (N.D. Cal. Oct. 29, 2015). A settlement providing for recovery of 88% of the maximum statutory damages in a class action under TILA was approved by the Court in 2017.

•       Belfiore v. The Procter & Gamble Co., 14-cv-4090 (E.D.N.Y.), a consumer class action litigation, arises from Procter & Gamble's representations that its Charmin Freshmates flushable wipes products are "flushable" and "safe for sewer and septic systems."  The plaintiff alleges that, contrary to Procter & Gamble's representations, Freshmates do not break down sufficiently and, as a result, cause serious problems for septic tanks and household plumbing.  Judge

Wolf Popper LLP
Page -10-


Weinstein granted class certification for a class of New York consumers after six days of evidentiary hearings with multiple expert witnesses. On July 23, 2020, Judge Chen approved the settlement on behalf of New York consumers, which included significant changes to the product's labels and a monetary component that allows consumers with proof of purchase to receive up to $50.20—an amount that exceeds the actual and statutory damages potentially available at trial.

  •      Smajlaj v. Campbell Soup Company, No. 10-CV-1332-JBS (D.N.J.), in which four New Jersey housewives sued Campbell Soup in a national class action charging that the labels on Campbell's more expensive low sodium tomato soup products were misleading in that the "low sodium" soups actually contained as much sodium as Campbell's regular tomato soup. They claim they were misled into paying for more expensive soup even though it did not contain less sodium than the less expensive alternative.   Defendants moved to dismiss the complaint and the United States District Judge Jerome B. Simandle denied the motion in a precedent setting opinion decided under the New Jersey Consumer Fraud Statute.   In November 2011, the Court approved a settlement creating a $1.05 million cash fund to reimburse class members and providing for certain changes to Campbell's soup labels.   The creation of the settlement fund was a substantial recovery for the class, considering that it exceeded the proceeds that defendants received as a result of the premium charged for their "low sodium" soups and provided a cash payment to class members after only a relatively short period of litigation.

  •      CLRB Hanson Industries, LLC v. Google, Inc., No. C 05-03649 JW PVT (N.D. Cal.), in which Wolf Popper is lead counsel, representing advertisers who allege that Google improperly overcharged them in connection with Google's AdWords program.   The settlement of the action in the amount of $20 million was approved by the court in 2009.

  •      In re Coordinated Title Insurance Cases, No. 009600/03 (Sup. Ct., Nassau County, NY), a New York consumer fraud action brought against various Title Insurance Companies for their failure to charge the discounted rate for title insurance premiums in qualified refinancing transactions and their failure to provide borrowers with notice of the discount.   In approving the settlement of over $31 million, one of the largest consumer class actions in the history of that court, at the hearing held on July 29, 2005, the court stated:

> And it's this Court's very strong opinion that what we have had before
> us on all sides – Plaintiffs' side, which involves two firms, and the
> Defendants, eight Defendants which involve five firms representing
> the eight different Defendants – was lawyering of the highest quality.
> It's always enjoyable for the Court to have high quality lawyering in
> front of it.   It's always my opinion that it raises the level of the Bench
> when the lawyers before it proceed in a very high fashion, which has
> happened in this case.

  •      Sims v. First Consumers National Bank, No. 01/604536 (Sup. Ct., New York Cnty.), this consumer fraud action challenged the misleading disclosure of fees in fine print in connection with the issuance of the bank's credit cards.   The lower court's dismissal of the action was

Wolf Popper LLP
Page -11-


unanimously reversed by the appellate court and the action was settled in 2005 with a recovery of 100% of the damages for the class.

• Canning v. Concord EFS, Inc., No. L-6609-02 (Super. Ct., NJ, Law Division, Camden County), a consumer fraud action brought in New Jersey on behalf of recipients of certain public assistance benefits who were being illegally surcharged to access their benefits through ATM machines.  The settlement, approved in May 2005, provided for a recovery of 90% of the surcharges and an injunction halting the illegal surcharging.

• Taylor v. American Bankers Insurance Group, Inc., 700 N.Y.S.2d 458 (App. Div., 1st Dept. 1999), in which the Firm successfully defended against an appeal by defendants of the certification of a nationwide class on behalf of consumers who alleged that defendants had violated §§349 and 350 of the General Business Law by misleading consumers about the purchase of insurance and improperly denying insurance claims.  The Firm achieved a complete recovery for class members as defendants agreed to pay class members' disputed coverage claims in full, as well as revise their solicitations to prevent a recurrence.

• Princeton Economics Group, Inc. v. American Telephone & Telegraph Co., No. L-91-3221 (N.J. Super. Ct. 1995), the largest class action ever brought in New Jersey State Court.  The action, based upon AT&T's marketing and sales of a telephone system that it advertised as well suited to small businesses because of its "conference call" features, revealed that the phone system did not function as advertised.  The participants to calls could not hear each other because the conference feature lacked amplification.  This litigation resulted in a settlement valued by the Court at $85-90 million.  At the conclusion of the case, the Court noted the complexity and difficulty of the issues involved and favorably commented that, "[i]f not for the skill and experience of class counsel, a settlement may not have been reached or, if it had been reached, may have resulted in a significantly diminished recovery for the class."

• Tanzer v. HIP, (1997 WL 773695), the New York Court of Appeals, New York's highest court, unanimously upheld a class action complaint on behalf of insureds who had been denied medical insurance coverage.  The Firm subsequently obtained partial summary judgment against HIP for breach of HIP's contract with its insurance subscribers for failing to reimburse them for anesthesia-related expenses in conjunction with surgical procedures performed in New York State since June 7, 1993.  Tanzer v. HIP, No. 114263-95, slip op., January 27, 1999.  Ultimately, a settlement was reached which paid members of the class 100% of their damages.

***Transactional Litigation and Corporate Governance***:


Wolf Popper has represented plaintiffs in Delaware and other states' courts when in class and derivative actions, representing investors in companies where shareholders believe that officers, directors, and others have engaged in self-dealing actions or who, in the context of proposed mergers or tender offers, are offered inadequate compensation for their stock or are provided inadequate information to allow such investors to make informed decisions concerning whether to vote for such transactions.  Wolf Popper has achieved significant corporate governance reforms and often

Wolf Popper LLP
Page -12-

recovered funds for shareholders victimized by such conduct.    Examples where Wolf Popper acted as lead or co-lead counsel in such circumstances include:

•    In re PHC, Inc. Shareholder Litigation, C.A. No. 11-11049-PBS, in which Chief Judge Patti Saris in the U.S. District of Massachusetts certified a class of stockholders who voted against or did not vote in connection with the merger of PHC, Inc. and Acadia Healthcare Corp.    After a two-week jury trial, the Court awarded $2,964,396 plus interest to the plaintiff class, which represented the full amount of the damages plaintiff's expert had calculated to have arisen from the controlling stockholder's breach of fiduciary duty in negotiating a multi-million side-payment, almost all for himself, as part of the merger.    Judge Saris complimented counsel for their skill and professionalism at the end of the trial.    On July 2, 2018, the United States Court of Appeals for the First Circuit affirmed the post-trial order.    The First Circuit also complimented counsel for their "unusually good arguments" and noted that the issues on appeal were "intricate, entangled, and in some instances novel."

•    Frechter v. Zier (Nutrisystem), C.A. No. 12038-VCG (Del. Ch.), Wolf Popper, on behalf of the public shareholders of Nutrisystem Inc., brought a class action lawsuit challenging the company's bylaw that required a two-thirds vote of the shareholders to remove a director.    .    Wolf Popper argued that the bylaw provision violated Delaware law and that only a simple majority should be required.    In an eleven-page decision, 2017 Del. Ch. LEXIS 14 (Del. Ch. Jan. 24, 2017), Delaware Vice Chancellor Sam Glasscock III agreed with Wolf Popper, concluding:    "Section 141(k) [of Delaware's General Corporation Law] unambiguously confers on a majority the power to remove directors, and the contrary provision of the Company bylaws is unlawful."

•    In re: Cornerstone Therapeutics Inc. Stockholder Litig., Case 8922, (Del. Ch.), in which the Firm served as Co-Lead Counsel, on January 26, 2017, Vice Chancellor Glasscock approved a settlement that established a gross settlement fund of $17.9 million for the benefit of Cornerstone's minority stockholders.    The Court stated that class attorneys achieved "almost nothing short of the best result."    The Court pointed out that "[t]here was a great deal of litigation done.    Interesting and undetermined areas of law had to be explored by counsel for both sides." Vice Chancellor Glasscock later said at the hearing that it was "vanishingly unlikely" that shareholders left any claims behind in the deal.

•    In re Venoco, Inc. Shareholder Litig., C.A. No. 6825-VCG (Del. Ch.), Wolf Popper, as Co-Lead Counsel, challenged the going private transaction led by Venoco's founder and controlling shareholder.    After almost five years of litigation, the Firm achieved a fund for the shareholders of $19 million.    (Had the company not filed for bankruptcy, the settlement would have also provided 25% of Venoco's founder's ownership interest in Venoco.)    The Delaware Chancery Court approved the settlement in October 2016.

•    In re: Bluegreen Corporation Shareholder Litig., Case No. 502011CA018111 (Circuit Court, 15th Judicial Circuit, Palm Beach County, Fl.), Wolf Popper, as Co-Lead Counsel, challenged the terms of a merger pursuant to which Bluegreen was acquired by its majority shareholder through an allegedly unfair process and the allegedly unfair price of $10.    After four years of intense

Wolf Popper LLP
Page -13-

litigation, the parties reached a settlement of $36.5 million, which increased the payout to the shareholders by 25%.    The settlement fund is the largest for a lawsuit challenging a merger in Florida legal history, dwarfing the prior record by more than 400%.    According to the Court, "[t]he recovery in the instant case stands in sharp contrast to Florida common fund recoveries and merger suits over the past few years.    The success of this resolution is well above the norm."

• In re Yongye International, Inc. Shareholder Litigation, consolidated Case No. A-12-670468-B (Eighth Judicial District Court, Clark County, NV), in which as Co-Lead Counsel for Plaintiffs, Wolf Popper litigated the acquisition of Yongye International, Inc. on behalf of its public shareholders, securing not only an initial increase in the acquisition price, but an additional settlement fund in the amount of $6 million, as well as substantial additional public disclosures in conjunction with the deal.    According to Cornerstone Research, fewer than 8% of such cases result in settlement funds. The Court in Nevada approved the proposed settlement at a hearing held on March 3, 2016.

• Semon and Meister v. Swenson, No. 5:10-cv-143 (D. Vt. March 11, 2013) (cash settlement increasing the buyout price paid to minority shareholders of Rock of Ages Corporation ("ROAC") by 14.5%, after having initially increased the offer price after plaintiff filed suit and having made significant additional public disclosures of previously undisclosed information; Court described case as "tenacious" litigation by Wolf Popper LLP, with the Judge stating that she will "pay the compliment of tenaciousness" to Wolf Popper, that the Firm "stuck with the litigation, continued to vigorously pursue it, and convince[d] [her], through that, that they were willing to stick with the class through thick and thin …")

• In re Playboy Enterprises, Inc. Shareholders Litig., C. A. No. 5632-VCN (Del. Ch.)(in class action challenging the buyout of the minority stockholders of Playboy Enterprises, Inc. by the majority stockholder, at a March 19, 2013 hearing, Vice Chancellor John W. Noble approved the $5.25 million post-merger closing settlement, further increasing the price to be paid to shareholders in the buyout by approximately 4% and included other, non-monetary benefits; (Defendants had earlier published the disclosures that plaintiffs had complained were missing, and had previously increased the buyout price after plaintiffs had filed suit).    The Vice Chancellor recognized "that a common fund of $5.25 million was created as a direct result of the efforts of plaintiffs' counsel. That is as concrete a metric as one can hope for."    He also stated that "[t]he standing and ability of counsel may not be questioned.")

• In re Atheros Communications, Inc. Shareholder Litig., C.A. No. 6124-VCN (Del. Ch. Mar. 4, 2011) ($3.1 billion merger enjoined pending material disclosures ordered by the Court)

• In re FTD.com, Inc. Shareholder Litig., C.A. No. 19458-NC (Del. Ch.), Wolf Popper was co-lead counsel in an action that alleged that members of the board of directors of FTD.com abused their control of the company by taking FTD.com private under terms advantageous to them but not to FTD.com's public shareholders.    After mediation, co-lead counsel obtained a recovery which came to more than 99% of the damages claimed by members of the class.

• Ehrenhaus v. Baker (Wachovia Corp.), No: 08-CVS-22632 (N.C. Super. Ct.)

Wolf Popper LLP
Page -14-

- • Rice v. Lafarge North America, Inc., Civ. No. 268974-V (Md. Cir.) ($383 million aggregate benefit)

- • In re Aramark Corp. Shareholders Litig., C.A. No. 2117-N (Del. Ch.) ($222 million aggregate benefit)

- • Cuti v. Anthony, et al., 24-c-06-008163 (Md. Cir.)

- • In re Nortek, Inc. Shareholder Litig., C.A. No. 19538-NC (Del. Ch.) ($63 million aggregate benefit)

- • In re New Valley Corp. Shareholder Litig., C.A. No. 1678-N (Del. Ch.) ($28 million aggregate benefit)

- • In re The Topps Co. Shareholder Litig., 926 A.2d 58 (Del. Ch. 2007) (enjoining transaction pending release of standstill agreement and disclosures)

- • In re Net2Phone, Inc. Shareholders Litig., C.A. No. 1467-N (Del. Ch.)

- • In re William Lyon Homes Shareholder Litig., C.A. No. 2015-N (Del. Ch.)

Wolf Popper has served as lead or co-lead counsel in other cases challenging transactions involving, among many others: American Surgical Holdings, Inc., Venoco, Inc., KSW, Inc., OpenTV Corp., EDO Corp., James River Group, Inc., CentraCore Properties Trust, Bioenvision, Inc., Mossimo, Inc., Centerpoint Inc., Genencor International Inc., Uni-Marts, Inc., Nassda Corp., and Chaparral Steel, Co.

*ERISA Litigation:*

Wolf Popper has been appointed co-lead counsel in several class actions on behalf of participants and beneficiaries of 401(k) plans, including, for example, on behalf of Citigroup and AIG.

- • On September 18, 2015, Judge Swain granted final approval to a $40 million settlement in In re American International Group, Inc. ERISA Litig. II, No. 08 Civ. 5722 (LTS) (KNF) (S.D.N.Y. Sept. 18, 2015), noting that in this "extremely complex" litigation, Wolf Popper is "among the premier firms practicing in this area of the law;" that "[Wolf Popper] are themselves very experienced and highly competent securities class action litigators…. [and] are experienced class action litigators [with] strong knowledge of the applicable securities laws and ERISA provisions." The Court proceeded to "congratulate the parties on this result, which I think is an excellent one in view of the complexity of the litigation and is an excellent result for the plaintiff class members.   I congratulate you and I thank you."

Wolf Popper LLP
Page -15-

•       On July 26, 2012, Judge Koeltl appointed Wolf Popper as Co-Lead Counsel for the plaintiffs in In re Citigroup, Inc. ERISA Litig., No. 11 Civ. 7672(JGK) (Consol.) (S.D.N.Y. July 26, 2012), because of the Firm's "extensive knowledge[,] . . . . experience [which] should prove valuable to any plaintiff class [and] . . . . substantial experience in pursuing large scale ERISA actions involving alleged breaches of fiduciary duty and [it is] prepared to expend the necessary resources in this litigation." (Tr. at 21.)

•       On March 31, 2011, Judge Swain largely denied defendants' motions to dismiss in In re American International Group, Inc. ERISA Litig. II, No. 08 Civ. 5722 (LTS) (KNF) (S.D.N.Y. Mar. 31, 2011), in which Wolf Popper is Co-Lead Counsel for the plaintiffs, and denied renewed motions to dismiss on June 26, 2014.   The court approved a settlement of the action on September 18, 2015 for $40 million.

•       On October 7, 2008, the Court approved the settlement reached by Wolf Popper LLP and its co-counsel, on behalf of former and current employees of AIG, in the amount of $24.2 million in In re AIG ERISA Litig., No. 04 Civ. 9387 (JES), stating that "without the work of these [plaintiffs'] attorneys there would be nothing."

*Trial Experience:*

One of the reasons Wolf Popper maintains a favorable, formidable reputation is because of the Firm's demonstrated willingness to prosecute cases through trial in order to achieve a favorable result for our clients.   The Firm's trial (and arbitration) experience includes, among other cases:

•       In re PHC, Inc. Shareholder Litig., C.A. No. 11-11049-PBS, Chief Judge Patti Saris, who oversaw the two week jury trial in federal court in Boston in February-March 2017, entered a post-trial judgment ordering the former chief executive officer of PHC to disgorge $2,964,396, plus interest, which the United States Court of Appeals for the First Circuit affirmed on July 2, 2018, noting that the issues on appeal were "intricate, entangled, and in some instances novel." MAZ Partners LP v. Shear (In re PHC, Inc. S'holder Litig.), Nos. 17-1821, 17-1904, 2018 U.S. App. LEXIS 18035, *1 (1st Cir.), cert. denied, 139 S. Ct. 489 (2018).   The District Court Chief Judge complimented counsel for their skill and professionalism, stating:

> I think you all [ ] did a great job trying this case.  I was telling my law clerks you don't often see commercial litigation actually go to trial so [this is] a great example ….

•       Zuckerman v. FoxMeyer Health Corp., 3-96-CV 2258-L (N.D. Tex. 2002), where Wolf Popper successfully prosecuted a mini-trial before a former Magistrate Judge in the context of an ADR Proceeding to determine a binding fair value of a settlement of the action.   Notwithstanding the fact that the defendant company was on the brink of insolvency (and subsequently filed for bankruptcy), the company providing the initial layer of insurance coverage was in liquidation, and the individual defendants were not wealthy, after presentation of the evidence, the neutral arbiter determined in plaintiffs' favor.

Wolf Popper LLP
Page -16-

•       In an arbitration before a court appointed arbitrator in Retsky Family Limited Partnership v. Price Waterhouse LLP, No. 97 C 7694 (N.D. Ill., June 18, 2001), after a full hearing and several days of testimony, the arbitrator awarded plaintiffs the total damages claimed.

•       Plaintiffs' co-trial counsel in Abzug, et ano. v. Kerkorian, et al., CA 000981, Superior Court, Los Angeles, California, which was settled during trial for $35 million.

•       The Firm was co-lead counsel for plaintiffs in litigation involving the alleged "greenmail" of Walt Disney Company by Saul Steinberg and his Reliance Group, Heckmann v. Ahmanson, C.A. 000851 (Superior Court, Cal.) (Co-lead counsel for derivative actions). There the Los Angeles Superior Court in September 1989 approved a settlement at trial providing for a cash payment of $45 million plus the therapeutic benefit of the termination of certain defendants' claim for rescission which potentially would have cost the company in excess of a billion dollars.

•       Citron v. E.I. duPont de Nemours & Co., Del. Ch. (Civil Action No. 6219), in Delaware Chancery Court in which the Vice-Chancellor complimented plaintiffs' counsel "for the able way in which they presented the case," their "well-done" pre-trial briefs, and the "good job" done.

•       Odmark v. Westside Bancorporation, Inc., No. C85-1099R (W.D. Wash.), settled mid-way through trial in Seattle, Washington.

•       Baum v. Centronics Data Computer Corp., 85-363-L (D.N.H.), settled after trial had commenced in New Hampshire.

•       The Firm also has tried several other actions on behalf of plaintiffs and plaintiff classes in securities and other actions in other federal courts, as well as in Delaware Chancery Court and elsewhere.

*Court Commentary On The Firm:*

Throughout the history of the Firm, the Courts before whom Wolf Popper has appeared have commented favorably and repeatedly on the ability and performance of the Firm and its members. A sampling of some of the praise the Firm has consistently received over the course of its practice include the following cases:

•       Judge Sandra L. Lynch of the United States Court of Appeals for the First Circuit noted the quality of the Firm's oral argument in In re PHC, Inc. Shareholder Litigation, MAZ Partners LP v. Bruce A. Shear, Nos. 17-1821, 17-1904 (1st Cir., May 9, 2018), stating "I'd just like to say, this was an unusually good argument from both sides. It's more of a pleasure to be a judge when we get good arguments from counsel. Thank you." Judge Raul R. Torruella, who also sat on the First Circuit panel, agreed: "I join Judge Lynch's statement." (The Firm ultimately prevailed on appeal). Chief Judge Patti Saris of the District of Massachusetts, who had presided at trial, remarked that

Wolf Popper LLP
Page -17-

counsel "did a great job trying this case" and that "someone should study the case in terms of how attorneys should treat one another."

•       In certifying the class in a comprehensive consumer class action against, *inter alia*, the Procter & Gamble Company and other manufacturer and retailer defendants for defects in labeling "flushable toilet wipes", the Court in <u>Belfiore v. The Procter & Gamble Company</u>, 14-CV-4090 (E.D.N.Y. March 27, 2017), stated that "Counsel for plaintiff have handled the case with great skill and full attention."

•       At a settlement hearing before the Delaware Chancery Court on January 26, 2017, in <u>In re: Cornerstone Therapeutics Inc. Stockholder Litigation</u>, Case 8922, (Del. Ch.), in which the Firm served as Co-Lead Counsel, Vice Chancellor Glasscock approved a settlement that established a gross settlement fund of $17.9 million for the benefit of Cornerstone's minority stockholders.   The Court stated that class attorneys achieved "almost nothing short of the best result."   The Court pointed out that "[t]here was a great deal of litigation done.   Interesting and undetermined areas of law had to be explored by counsel for both sides."   Vice Chancellor Glasscock later said at the hearing that it was "vanishingly unlikely" that shareholders left any claims behind in the deal.

•       In <u>Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust, et al., v. J.P. Morgan Acceptance Corp., et al.</u>, No. 08-cv-1713 (PKC) (E.D.N.Y. May 1, 2014), in preliminarily approving a $280 million settlement on behalf of persons who acquired mortgage pass-through certificates and asset-backed pass-through certificates pursuant and/or traceable to certain registration statements and prospectus supplements, Judge Pamela K. Chen stated "it's very clear that this has been a hard fought and well negotiated, seemingly well negotiated, result.   So I think that's kudos to you all certainly better than any kinds of trial I would say."

•       In <u>Semon and Meister v. Swenson</u>, No. 5:10-cv-143 (D. Vt. March 11, 2013), following what the Court described as "tenacious" litigation by Wolf Popper LLP on behalf of the minority stockholders of Rock of Ages Corporation ("ROAC") in this class action challenging the buyout of the stockholders by ROAC's majority stockholder, Judge Christina Reiss approved the $3.2 million settlement and certified the case as a class action.   The settlement further increased the price to be paid to shareholders in the buyout by 14.5% and included other, non-monetary benefits (including Defendants earlier publication of extensive disclosures that plaintiffs had complained were lacking in the defendants' public filings about the buyout, and that Defendants had also increased the buyout price after plaintiffs had brought suit.)   The Judge said that she will "pay the compliment of tenaciousness" to Wolf Popper, noting that Wolf Popper "stuck with the litigation, continued to vigorously pursue it, and convince[d] [her], through that, that they were willing to stick with the class through thick and thin …" The Judge further found that the firm was "experienced, competent, zealous," and that "it's been an interesting case for me and very professionally handled. . . ."

•       In <u>Tsereteli, et ano., v. Residential Asset Securitization Trust 2006-A8 et al.</u>, No. 08 Civ. 10637 (LAK) (S.D.N.Y. June 29, 2012), the Court granted plaintiff's motion for class certification over the vigorous objections of defendants, commenting that ". . . lead counsel Wolf Popper is qualified and capable of prosecuting this action. It has conducted discovery, engaged in

Wolf Popper LLP
Page -18-

motion practice, and protected the interests of Vazurele and the prospective class throughout the more than three years this case has been before the Court. It has done so diligently and professionally. . . ."

• In Middlesex Retirement System v. Quest Software, Inc., No. CV 06-6863 DOC (RNBx) (C.D. Cal. Dec. 7, 2009), in which Wolf Popper had been appointed by the Court as Lead Counsel and Class Counsel, the Court stated in preliminarily approving the $29.4 million (plus cost of providing notice) proposed settlement of the action, "once again on the record . . .I want to compliment counsel for working extraordinarily hard; . . .this appears to be an extraordinarily fair settlement for all parties concerned. * * * [Y]ou really have the court's profound congratulations and compliments."

• In approving the $190,000,000 recovery for the Class in the Motorola Sec. Litig., No. 03C287 (N.D. Ill.), where Wolf Popper represented the lead plaintiff, the Court stated as follows "You did a great very professional job here.   This was a hard fought, but extremely professionally fought battle and I appreciate it.   Thank you."

• Wolf Popper served as co-lead counsel for plaintiffs in Conolly v. Universal American Financial Corp., No. 13422/07 (Sup. Ct. Westchester Cnty.).   At the final hearing in the action, Transcript Dec. 9, 2008 at 74-75, Hon. Alan D. Scheinkman complimented plaintiffs' co-lead counsel, stating: "The Court has had the opportunity to see these lawyers on numerous occasions and read their submissions, not just those relating to fees but those relating to the merits of the case and the Court has become familiar with counsel and is impressed with their skill and knowledge and their professionalism."

• On October 7, 2008, the Court approved the settlement reached by Wolf Popper LLP and its co-counsel, on behalf of former and current employees of AIG, in the amount of $24.2 million in In re AIG ERISA Litig., No. 04 Civ. 9387 (JES)(AJP) (S.D.N.Y.), stating that "without the work of these [plaintiffs'] attorneys there would be nothing."

• In In re TJX Companies Retail Security Breach Litig., Master Docket No. 07-10162, MDL Docket No. 1838 (D. Mass.), in which Wolf Popper was Co-Lead Counsel, the Court in approving the settlement on July 15, 2008, stated that Plaintiffs' counsel achieved an "excellent settlement" for the consumer class, that they "have been very creative" and performed "a wonderful job."

• Wolf Popper was appointed interim co-lead counsel by Judge Sidney Stein in January 2008, in Gray v. Citigroup, Inc., Case No. 07-CV-9790 (S.D.N.Y.) (SHS) (DCF), a consolidated ERISA class action on behalf of participants and beneficiaries of certain of Citigroup's retirement plans.   In appointing Wolf Popper as co-lead counsel over competing groups of counsel, Judge Stein stated that "… I think the group most able to represent the plaintiffs as interim lead counsel will be Wolf Popper…"because it has "…the deeper experience overall."

• In Dusek v. Mattel, Master File No. CV-99-10864-MRP (CWx) (C.D. Cal.), in approving the settlement of the action along with a companion action, for $122 million, the Judge, in

Wolf Popper LLP
Page -19-


her Findings of Fact and Conclusions of Law entered on November 6, 2003, complimented counsel saying that "Wolf Popper LLP vigorously prosecuted the Dusek action and zealously represented the interests of the Dusek Class members," and that Wolf Popper performed in a "very capable and professional manner."

•        The Firm served as Co-Lead Counsel for plaintiffs in Stanley v. Safeskin, No. 99cv454-BTM (LSP) (S.D. Cal.), in which the Judge noted in approving a $55 million settlement that "Plaintiffs' counsel are highly skilled in these cases" and that he was "kind of looking forward to trying this case, because it would have the best lawyers in the country trying this case. . . ."   The Honorable Barry T. Moskowitz subsequently further complimented Co-Lead Counsel at a hearing on November 20, 2003, stating:

> I think I learned more about the honorability of the firms and the competency -- and competency is too weak of a word -- the extraordinary ability of these firms in handling the cost aspects of it, and expenses aspect of it, . . .I don't think I've seen lawyers so honest with the Court . . . .I really thought that the Plaintiffs' law firms in this case not only had extraordinary ability to deal with the complicated factual issues -- and it certainly was a difficult case, and you should be applauded in that regard.
> 
> \* \* \*
> 
> And it's not usual that the court sees lawyers behave -- we usually see them behave well, but this is extraordinarily positive.   And I wanted to make that notation. . . I can -- come out of it having incredible respect for the work that the lawyers did in this case.
> 
> \* \* \*
> 
> From the plaintiffs' perspective -- and I say this for all the firms -- you handled it on a much higher plane, probably on a textbook or ideal plane.   If they would teach people how it should be done in law school, this would be the example of, how the lawyers handle this case.

_____