NINA F. LOCKER (SBN 123838)
IGNACIO E. SALCEDA (SBN 164017)
EVAN L. SEITE (SBN 274641)
LAURA G. AMADON (SBN 321524)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:     (650) 493-9300
Facsimile:     (650) 565-5100
Email:         nlocker@wsgr.com
               isalceda@wsgr.com
               eseite@wsgr.com
               lamadon@wsgr.com

*Attorneys for Defendants Nutanix, Inc.,*
*Dheeraj Pandey, and Duston M. Williams*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE NUTANIX, INC. SECURITIES LITIGATION | Case No. 3:19-cv-01651-WHO<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION TO WITHDRAW AS LEAD PLAINTIFF AND SUBSTITUTE LEAD PLAINTIFF**<br><br>Hearing Date: March 3, 2021<br>Time: 2:00 P.M.<br>Courtroom: 2<br>Hon. William H. Orrick |

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................................1

RELEVANT PROCEDURAL BACKGROUND.........................................................................2

ARGUMENT ......................................................................................................................4

I.     THE PSLRA PROHIBITS LEAD COUNSEL'S ATTEMPT TO HAND PICK NEW LEAD PLAINTIFFS.............................................................................................4

II.    THE PSLRA LEAD PLAINTIFF APPOINTMENT PROCESS SHOULD BE RE-OPENED FOR ANY APPROPRIATE APPLICANTS.......................................................8

III.   THE COURT SHOULD EXPLORE MR. HEDVAT'S REASONS FOR WITHDRAWAL ......................................................................................................10

CONCLUSION ..................................................................................................................12

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Billhofer v. Flamel Techs.*,
No. 07-civ-09920-RWS, 2010 WL 3703838 (S.D.N.Y. Sept. 20, 2010)...............................7

*Endress v. Gentiva Health Servs., Inc.*,
278 F.R.D. 78 (E.D.N.Y. 2011) ...............................................................................................6

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
862 F. Supp. 2d 322 (S.D.N.Y. 2012)......................................................................................6

*In re Bank of Am. Corp. Auction Rate Sec. (ARS) Mktg. Litig.*,
No MDL 09-02014 JSW, 2009 WL 2031764 (N.D. Cal. July 9, 2009) ...........................4, 6

*In re HealthSouth Corp. Sec. Litig.*,
No. CV-03-BE-1501-S, slip op. (N.D. Ala. Dec. 1, 2004) ....................................................6

*In re Imax Sec. Litig.*,
No. 06 CIV. 6128 NRB, 2011 WL 1487090 (S.D.N.Y. Apr. 15, 2011)................................6

*In re Impax Labs., Inc. Sec. Litig.*,
No. C 04-04802 JW, 2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) ....................................7

*In re Initial Public Offering Securities Litigation*,
214 F.R.D. 117 (S.D.N.Y. 2002)..............................................................................................6

*In re Neopharm, Inc. Sec. Litig.*,
No. 02-C-2976, 2004 2004 WL 742084 (N.D. Ill. Apr. 7, 2004) ..................................4, 5, 8

*In re Portal Software, Inc. Securities Litigation*,
No. C-03-5138 VRW, 2005 WL 8179740 (N.D. Cal. Mar. 9, 2005) ...................................7

*In re Rackable Systems, Inc. Sec. Litig.*,
No. 4:09-cv-00222-CW, slip op. (N.D. Cal. Mar 22, 2010) .................................................7

*In re Smith Barney Transfer Agent Litigation*,
No. 05 Civ. 7583 (WHP), 2011 WL 6318988 (S.D.N.Y. Dec. 15, 2011) ............................8

*In re Snap Inc. Sec. Litig.*,
394 F. Supp. 3d 1156 (C.D. Cal. 2019).......................................................................4, 5, 8, 11

*In re Tezos Sec. Litig.*,
No 17-cv-06779-RS, 2019 WL 2183448 (N.D. Cal. Apr. 8, 2019).........................4, 6, 7, 8

*Johnson v. CBD Energy Ltd.*,
No. CV H-15-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016) .......................................7

*Morgan v. AXT, Inc.*,
No. 3:04-cv-04362-MJJ, slip op. (N.D. Cal. Mar. 14, 2007) ...............................................7

ii

*Reese v. Malone*,
    No. C08-1008 MJP, 2015 WL 1526567 (W.D. Wash. Apr. 3, 2015)...................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ........................................................................................................4

*Westley v. Oclaro, Inc.*,
    No. C-11-2448 EMC, 2011 WL 4079178 (N.D. Cal. Sept. 12, 2011)..................................8

*Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*,
    231 F.3d 1215 (9th Cir. 2000)..........................................................................................8

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(iii) ........................................................................................................9

Defendants Nutanix, Inc. ("Nutanix" or the "Company"), Chief Executive Officer Dheeraj Pandey, and Chief Financial Officer Duston M. Williams (together, with Nutanix, "Defendants"), by and through their counsel, hereby submit this opposition in response to Lead Plaintiff Shimon Hedvat's Motion to Withdraw as Lead Plaintiff and Substitute Lead Plaintiff ("Motion to Withdraw" or "Mot.") filed by Lead Counsel, Levi & Korsinsky LLP ("Levi & Korsinsky" or "Lead Counsel"). *See* ECF No. 161.

## **INTRODUCTION**

One of the central goals of the Private Securities Litigation Reform Act ("PSLRA") was to discourage lawyer-driven litigation. To achieve this goal, the PSLRA requires the Court to appoint "the most adequate plaintiff" to serve as lead plaintiff and requires the lead plaintiff to supervise the lawsuit on behalf of the class. In July 2019, the Court appointed Mr. Hedvat as Lead Plaintiff in this action pursuant to the process set forth in the PSLRA.

In early January 2021, Lead Counsel told Defendants that Mr. Hedvat no longer wished to serve as Lead Plaintiff in this action. Thereafter, Lead Counsel filed the instant Motion to Withdraw Mr. Hedvat as Lead Plaintiff and to replace him with Jose Flores and the City of Miami Fire Fighters and Police Officers Retirement Trust ("City of Miami"). Because Mr. Hedvat no longer wishes to serve as Lead Plaintiff, his withdrawal is not only appropriate—it is necessary. But the PSLRA does not permit Lead Counsel to hand pick Mr. Hedvat's replacements. To the contrary, the responsibility to select the lead plaintiff rests ***solely with the Court*** and should be guided by the PSLRA's provisions regarding selection of lead plaintiff. Therefore, Mr. Hedvat's replacement should be the plaintiff that the Court, not Lead Counsel, determines to be the most adequate to serve. And, although the Court has discretion in how it selects the new lead plaintiff, Defendants respectfully submit that there are factors present here that favor reopening the PSLRA's appointment process to any plaintiff who may wish to be considered.

The lead plaintiff procedure conducted at the outset of this action considered the applicants' claimed losses based on the class period alleged in the original complaint. In subsequent amended complaints, the applicable class period was extended significantly. This

raises the possibility that new potential lead plaintiffs—including those that would not have applied during the original appointment process—may have the largest financial interest. In fact, Mr. Flores's own trading history demonstrates the significant impact of the extended class period: because Mr. Flores sold all of his shares in Nutanix shortly after the end of the class period alleged in the original complaint, he likely cannot claim *any* losses under the "retained shares methodology," his preferred method of calculating alleged losses. By reopening the lead plaintiff appointment process, the Court can assure itself that it selects the most adequate plaintiff to take on the responsibilities of lead plaintiff.

## RELEVANT PROCEDURAL BACKGROUND

As the Court will undoubtedly recall, there was a contest for lead plaintiff in this litigation. Eight potential lead plaintiffs and their respective counsel applied to be appointed as lead plaintiff and lead counsel in this matter. By the end of the briefing process, three lead plaintiff and lead counsel applicants remained: Mr. Hedvat, who claimed losses of $934,534, and his counsel Levi & Korsinsky; Mr. May, who claimed losses of $505,465, and his counsel Faruqi & Faruqi LLP; and Mr. Flores, who claimed losses of $396,176, and his counsel Wolf Popper LLP ("Wolf Popper"). *See* ECF No. 73 at 1-2 (Mr. Hedvat); ECF No. 75 at 1 (Mr. May); ECF No. 74 at 6 (Mr. Flores).[1] Each of the lead plaintiff applicants based their alleged losses on the class period that was alleged in the first complaint filed in this matter: March 2, 2018 to February 28, 2019. *See* ECF No. 1 ¶ 1. Although the applicants disagreed regarding the appropriate measure of damages, Mr. Hedvat had the largest financial interest of the remaining movants under any methodology. ECF No. 87. As a result, the Court appointed Mr. Hedvat and his selected counsel, Levi & Korsinsky, as Lead Plaintiff and Lead Counsel on July 10, 2019. ECF No. 87. The City of Miami never applied for appointment as Lead Plaintiff, and Defendants

[1] Defendants note that there was a dispute regarding the proper measure of damages during the initial lead plaintiff appointment process. For example, Mr. May argued that Mr. Hedvat miscalculated his estimated damages and listed erroneous transactions (ECF No. 69 at 5-13), and Mr. Flores argued that he had greater losses than Mr. May based on the shares he retained at the end of the then-current class period because there was only one alleged corrective disclosure on February 28, 2019. ECF No. 74 at 3-6. For purposes of this background summary, defendants have used the largest estimate of losses claimed by each applicant under their respective preferred methodologies.

understand that the City of Miami's losses would likely be significantly less than the losses claimed by Messrs. Hedvat, May, or Flores.

On September 9, 2019, Mr. Hedvat, through Levi & Korsinsky, filed a Consolidated Amended Complaint (the "CAC"), which, for the first time, named the City of Miami as a co-plaintiff. ECF No. 102. The CAC also expanded the end of the class period 90 days by adding an additional alleged corrective disclosure on May 30, 2019. *Id.* at 1, ¶ 393. Thereafter, the parties fully briefed a motion to dismiss, which the Court granted with leave to amend on March 9, 2020. ECF No. 121 (Order).

On April 17, 2020, Lead Plaintiff Mr. Hedvat and Plaintiff City of Miami filed their Second Amended Complaint (the "SAC," ECF No. 124) and the parties again briefed the motion to dismiss, which was granted in part and denied in part on September 11, 2020. ECF No. 140. The class period relevant to the claims surviving the motion to dismiss is March 1, 2018 to May 30, 2019. ECF No. 143 at 1. Since September 2020, Defendants have answered the SAC and the parties have been proceeding with discovery matters. Starting in November 2020, Lead Counsel issued various discovery requests on Defendants and served over thirty subpoenas on third parties, primarily directed to analysts. Salceda Decl. ¶¶ 1-3, 8.[2] Lead Counsel advised Defendants that it issued a further third-party subpoena. Defendants served their First Set of Requests for Production on Mr. Hedvat and City of Miami on November 18, 2020. *Id.* ¶ 4.

On December 17, 2020, counsel for Mr. Hedvat requested an extension of time to respond and object to Defendant's first set of discovery until January 4, 2021; Defendants accorded Mr. Hedvat that professional courtesy. *Id.* ¶ 5. On January 4, 2021, Lead Counsel conveyed to defense counsel that Mr. Hedvat was unable to respond to discovery because he had become nonresponsive to Lead Counsel's inquiries. *Id.* ¶ 6. Lead Counsel also indicated that they expected that Mr. Hedvat would not be willing to continue to serve as Lead Plaintiff in the litigation. *Id.* Defense counsel granted an additional one-week extension of time in order for

---

[2] Declaration of Ignacio E. Salceda in Support of Defendants' Opposition to Lead Plaintiffs' Motion to Withdraw and Substitute ("Salceda Decl."), filed concurrently herewith. Exhibits ("Ex. _") are attached to the Salceda Decl.

DEFENDANTS' OPPOSITION TO
LEAD PLAINTIFF'S MOTION TO WITHDRAW
CASE: 3:19-CV-01651-WHO          3

Lead Counsel to determine definitively whether Mr. Hedvat would continue as Lead Plaintiff. *Id.* ¶ 7.[3] After the next extension came and went, counsel for Defendants sent Plaintiff's counsel a letter on January 19, 2021, requesting that Lead Counsel promptly notify the Court of Mr. Hedvat's apparent withdrawal as Lead Plaintiff and to explain to the Court the circumstances surrounding Mr. Hedvat's decision so the Court could appoint a new lead plaintiff pursuant to the PSLRA. *See* Ex. 1. The Motion to Withdraw followed thereafter. ECF No. 161. In the Motion to Withdraw, Mr. Hedvat asserts that he is withdrawing because "the country has suffered an unprecedented pandemic and [his] personal circumstances, and availability to represent the Class as a fiduciary, have evolved," and he "no longer wish[es] to serve as Lead Plaintiff or in a representative role." ECF No. 162-1 at 2.

## ARGUMENT

### I.   THE PSLRA PROHIBITS LEAD COUNSEL'S ATTEMPT TO HAND PICK NEW LEAD PLAINTIFFS

One of the central goals of the PSLRA was to discourage lawyer-driven litigation. *E.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (describing "the PSLRA's twin goals: to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims"); *see also In re Bank of Am. Corp. Auction Rate Sec. (ARS) Mktg. Litig.*, No MDL 09-02014 JSW, 2009 WL 2031764, at *2 (N.D. Cal. July 9, 2009) ("[O]ne of the goals of the PSLRA was to minimize lawyer driven lawsuits."). Given this goal, it is not surprising that the PSLRA prohibits plaintiffs' counsel, as Lead Counsel seeks to do here, from hand selecting lead plaintiffs of their choice. Indeed, "merely accepting counsel's suggestion with input from no other potential lead plaintiff *is [directly] contrary to the PSLRA*." *In re Neopharm, Inc. Sec. Litig.*, No. 02-C-2976, 2004 2004 WL 742084, at *3 (N.D. Ill. Apr. 7, 2004) (emphasis added); *see also, e.g.*, *In re Tezos Sec. Litig.*, No 17-cv-06779-RS, 2019 WL 2183448, at *2 (N.D. Cal. Apr. 8, 2019) (rejecting attempt by a withdrawing lead plaintiff and his lead counsel to "hand-pick a substitute without abiding by the [PSLRA]"); *In re Snap Inc. Sec. Litig.*,

---

[3] On January 18, Lead Counsel notified Defendants that it would issue a further third-party subpoena. Salceda Decl. ¶ 8

394 F. Supp. 3d 1156, 1158 (C.D. Cal. 2019) ("a Lead Plaintiff's (or Lead Counsel's) selection of a successor Lead Plaintiff without court input is contrary to the PSLRA").  That is why, when confronted with the withdrawal of PSLRA-appointed lead plaintiffs, courts must re-apply the PSLRA's guidance in selecting a new Lead Plaintiff.  *Snap*, 394 F. Supp. 3d at 1158 (citing authorities).

The situation presented by Lead Counsel's Motion to Withdraw is similar in many respects to the situation the Central District of California recently considered in the *Snap* securities class action.  There, the initial lead plaintiff and lead counsel, who were appointed via the PSLRA-proscribed process, filed a motion for class certification and a concurrent motion to withdraw and substitute new lead plaintiffs, citing the current lead plaintiff's health reasons. *Snap*, 394 F. Supp. 3d at 1157-58.  The court rejected the proposed substitution of lead plaintiffs, explaining that the withdrawal and substitution "can only be seen as an attempt to circumvent the PSLRA's Lead Plaintiff appointment process by having the two proposed [lead plaintiffs] replace [the lead plaintiff] without a full review under the PSLRA[.]"  *Id.*  The court noted that its conclusion was buttressed by the fact that, despite claiming health issues, the lead plaintiff did not withdraw "effective immediately" but, instead, pursued class certification.  *Id.*  The court determined that "it must apply the guidelines of the PSLRA in appointing a new Lead Plaintiff" and reopened the PSLRA Lead Plaintiff appointment process for a 21-day period.  *Id.* at 1158-59.

*Snap* adopted the reasoning of *Neopharm*, in which the court granted a motion to withdraw as lead plaintiff but denied a simultaneous motion to substitute.  *Neopharm*, 2004 WL 742084, at *3.  There, the District Court found that deferring to counsel's choice of lead plaintiff would disturb the PSLRA's mandate that the Court—not lawyers—select the best lead plaintiff for the class based on the criteria set forth in the PSLRA.  *Id.* at *3-4.  The court reopened the PSLRA process to allow any party to move for appointment as lead plaintiff.  *Id.* at *3 ("[T]his court believes it [is] clear that it must apply the guidelines of the PSLRA in appointing a lead plaintiff, whether it is an initial lead plaintiff or thereafter.").  Numerous other courts have

reached the same conclusion and reopened the appointment process to select a new lead plaintiff following the withdrawal of the original lead plaintiff.[4]

Lead Counsel argues that, because the initial lead plaintiff process already occurred, the Court should now disregard the PSLRA's lead plaintiff appointment process altogether and, instead, simply accept their proposed replacement of Mr. Hedvat by Mr. Flores and City of Miami. *See* Mot. at 6-16. Lead Counsel is wrong and their authorities do not support their position. For example, Lead Counsel cites *Tezos* as support for its argument that the Court should appoint Mr. Flores and City of Miami without reopening the lead plaintiff process. Mot. at 4. In fact, *Tezos* directly undermines Lead Counsel's position. There, as here, lead counsel sought to substitute their own "hand-picked choice" after the Lead Plaintiff withdrew. *Tezos*, 2019 WL 2183448, at *2. Judge Seeborg rejected that position outright, explaining that neither the withdrawing lead plaintiff nor his lead counsel could "hand-pick a substitute without abiding by the PSLRA." *Id.* Instead, the court considered a competing motion, filed by a previous lead plaintiff applicant, and determined that applicant was more appropriate under the lead plaintiff appointment factors set forth by the PSLRA because it had suffered greater losses. *Id.* at *4-5. *Tezos* thus confirms that Lead Counsel may not choose Mr. Hedvat's replacement and that the

---

[4] *E.g., Bank of Am.*, 2009 WL 2031764, at *2-3 (denying motion to substitute, requiring proposed lead plaintiff file a renewed motion for lead plaintiff appointment, and reopening appointment process to all applicants in the intervening time period); *see also, e.g., Reese v. Malone*, No. C08-1008 MJP, 2015 WL 1526567, at *1-3 (W.D. Wash. Apr. 3, 2015) (reopening a "modified lead plaintiff selection process" for a 60-day period); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 328 (S.D.N.Y. 2012) (after withdrawal of lead plaintiff, denying motion to substitute and reopening the lead plaintiff appointment process to all shareholders for 30 days); *In re Imax Sec. Litig.*, No. 06 CIV. 6128 NRB, 2011 WL 1487090, at *2 (S.D.N.Y. Apr. 15, 2011) (after reopening lead plaintiff appointment process for 21 days, appointed new movant as lead plaintiff); *Endress v. Gentiva Health Servs., Inc.*, 278 F.R.D. 78, 83-84 (E.D.N.Y. 2011) (reopening lead plaintiff appointment process for 60 days following the withdrawal of previously-appointed lead plaintiff); *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1501-S, slip op. at 2-3 (N.D. Ala. Dec. 1, 2004) (granting withdrawal, denying plaintiff's desire to "unilaterally appoint" its substitute, and reopening lead plaintiff appointment process) (Ex. 2). Even Lead Counsel's own citation to *In re Initial Public Offering Securities Litigation* supports reopening the lead plaintiff appointment process. 214 F.R.D. 117, 120 (S.D.N.Y. 2002) (reopening for 60 days).

court should be guided by the PSLRA's lead plaintiff provisions in determining the most appropriate replacement for Mr. Hedvat.

Lead Counsel also relies on *In re Portal Software, Inc. Securities Litigation*, No. C-03-5138 VRW, 2005 WL 8179740 (N.D. Cal. Mar. 9, 2005), to argue that the PSLRA's lead plaintiff provisions should not apply to the appointment of a new lead plaintiff. Mot. at 6-7. In *Portal*, however, the court considered whether adding an **additional** plaintiff to represent the class, ***where an originally-appointed lead plaintiff remained in the action***, triggered the PSLRA's lead plaintiff appointment process. 2005 WL 8179740, at *1; *see also Tezos*, 2019 WL 2183448, at *2 (same). The court found that doing so would turn securities litigation "into a game of snakes and ladders" to restart the lead plaintiff process every time a new plaintiff was added. *Portal*, 2005 WL 8179740, at *4. Simply put: in *Portal*, there was a lead plaintiff who went through the lead plaintiff appointment process and remained in the case; here, with Mr. Hedvat's withdrawal, there is not. *See Tezos*, 2019 WL 2183448, at *2 (distinguishing *Portal*; recognizing that reopening the appointment process in *Portal* would not further the purpose of the PSLRA in "that particular case" and that *Portal* **did not** hold "that the PSLRA no longer guides the substitution determination" after the lawsuit's initial stages).

Lead Counsel's other authorities fare no better. Several are distinguishable because they involved instances in which lead plaintiffs were appointed without opposition by defendants or other lead plaintiff applicants. *E.g.*, *Morgan v. AXT, Inc.*, No. 3:04-cv-04362-MJJ, slip op. at 1 (N.D. Cal. Mar. 14, 2007) (Ex. 3) (granting unopposed motions to withdraw and substitute lead plaintiff); *see also Tezos*, 2019 WL 2183448, at *4 (distinguishing *Morgan* on the same basis).[5]

---

[5] *In re Rackable Systems, Inc. Sec. Litig.*, No. 4:09-cv-00222-CW, slip op. at 1-2 (N.D. Cal. Mar 22, 2010) and Defendants' Statement of Non Opposition (Exs. 4, 5) (granting motion to withdraw and substitute following statement of non-opposition from defendants and without analysis); *Billhofer v. Flamel Techs.*, No. 07-civ-09920-RWS, 2010 WL 3703838, at *2-4 (S.D.N.Y. Sept. 20, 2010) (granting unopposed withdrawal and substitution of lead plaintiff); *In re Impax Labs., Inc. Sec. Litig.*, No. C 04-04802 JW, 2008 WL 1766943, at *7-9 (N.D. Cal. Apr. 17, 2008) (granting motion to substitute new lead plaintiff; although defendants opposed the motion, the initial lead plaintiff was appointed without opposition and no other lead plaintiff applicants opposed the substitution); *see also Johnson v. CBD Energy Ltd.*, No. CV H-15-1668, 2016 WL 3654657, at *6-7 (S.D. Tex. July 6, 2016) (similar; granting lead plaintiff substitution

And Lead Counsel's citations to *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215 (9th Cir. 2000) and *Westley v. Oclaro, Inc.*, No. C-11-2448 EMC, 2011 WL 4079178 (N.D. Cal. Sept. 12, 2011) are puzzling because both are entirely irrelevant. *Z-Seven Fund* concerned whether an initial order designating a lead plaintiff under the PSLRA was appealable. 231 F.3d at 1219. *Westley* is merely a run-of-the-mill, unopposed lead plaintiff appointment order. 2011 WL 4079178, at *1-4. Neither provide any guidance regarding the proper standard for substitution following the withdrawal of an appointed lead plaintiff.

## II.    THE PSLRA LEAD PLAINTIFF APPOINTMENT PROCESS SHOULD BE RE-OPENED FOR ANY APPROPRIATE APPLICANTS

When appointing new lead plaintiffs under the PSLRA, courts have generally followed one of two approaches. They have either: (1) reopened the process to all shareholders willing to serve; or (2) reopened the process and accorded priority to those candidates that originally sought to serve as lead plaintiff or filed an original complaint. The first approach is exemplified by *Snap* and *Neopharm*, in which the lead plaintiff process was reopened for all shareholders in order to aid the courts in making "a reasoned analysis under the PSLRA rather than to summarily accept the submissions provided by Lead Counsel for the former Lead Plaintiff." *E.g.*, *Snap*, 394 F. Supp. 3d at 1158-59 (quoting *Neopharm*, 2004 WL 742084, at *3). Other courts throughout the country have followed similar processes. *See supra* n.3 (collecting authorities). The second approach was followed in *In re Smith Barney Transfer Agent Litigation*, No. 05 Civ. 7583 (WHP), 2011 WL 6318988 (S.D.N.Y. Dec. 15, 2011). There, upon dismissal of lead plaintiff from the action, the court denied a motion to add a new lead plaintiff and reopened the process by granting priority to original movants for lead plaintiff status. *Id.* at *2-3.[6]

---

where no other lead plaintiff applicants opposed the substitution and the court found the new lead plaintiff to be an "adequate representative").

[6] *Cf. Tezos*, 2019 WL 2183448, at *2, *5 (denying motion to substitute and appointing "only other willing lead plaintiff who moved for an appointment within the initial 60-day notice period.").

Although the approach for appointment of a new lead plaintiff is squarely within the Court's sound discretion, Defendants respectfully submit that circumstances have sufficiently changed since the initial lead plaintiff appointment to favor reopening the lead plaintiff appointment process to any potential applicants. Specifically, since the initial lead plaintiff appointment process, the end of the class period for this action has lengthened by 90 days—from February 28, 2019 to May 30, 2019. *See* ECF No. 143 at 1. As a result, shareholders could have transacted in that new portion of the class period and, thereby, have claimed losses that would make them presumptively more adequate representatives of the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (adopting the presumption that the "most adequate plaintiff" either filed the initial complaint or "has the largest financial interest in the relief sought by the class" and otherwise meets the requirements of Federal Rule of Civil Procedure 23). Because the initial lead plaintiff process was based on the original, shorter class period, such shareholders would not have previously been able to seek to be appointed Lead Plaintiff.

Lead Counsel's selected substitute for Lead Plaintiff, Mr. Flores, demonstrates that this is not a hypothetical concern. Lead Counsel repeatedly asserts that, other than Mr. Hedvat, Mr. Flores has the largest financial interest of the other initial lead plaintiff applicants[7] based on the "retained shares" methodology, which estimates losses based on the net amount of shares that were retained on the last day of the class period. Mot. at 9-10; ECF No. 32 at 8-10. Lead Counsel claims that Mr. Flores has losses of $396,176. Mot. at 10. But Lead Counsel glosses over the fact that Mr. Flores's calculation of retained shares, and therefore his loss estimate, is premised on the original class period end date of February 28, 2019. *See* ECF No. 33-3 (reflecting a loss calculation based on shares "Held at Close of Trading on February 28, 2019"). When the current class period is taken into account, Mr. Flores's submissions in the initial lead plaintiff application process demonstrate that he disposed of ***all*** the holdings that formed the

---

[7] Although Lead Counsel and the City of Miami both claim that Mr. Flores was the "class member who asserted the next largest financial [interest]" after Mr. Hedvat (Mot. at 6; ECF No. 162-2 at 2 (City of Miami declaration stating that Mr. Flores's claimed losses "was the second largest asserted financial interest" of all lead plaintiff applicants)), lead plaintiff applicant Mr. May's claimed losses of $505,465 exceeded Mr. Flores's by $109,289. *See* ECF No. 69 at 3.

basis of his retained share calculation on March 4, 2019, *i.e.*, merely two trading days after the end of the original class period.  As of May 28, 2019—the date of his lead plaintiff application—***Mr. Flores did not retain <u>any</u> shares***.  *Id.*  Accordingly, when estimated based on retained shares at the end of the current class period on May 30, 2019, Mr. Flores's losses are likely ***zero.***

It would strain credulity to suggest that Lead Counsel's failure to mention this crucial facet of Mr. Flores's trading history was mere oversight.  Indeed, Lead Counsel also points out that City of Miami "purchased shares throughout the Class Period alleged in the SAC and retained shares over both corrective disclosures[,]" which likely reflects a strategy to mitigate the fact that Mr. Flores has no retained shares in the expanded class period.  Mot. at 10 n.6.  Although Lead Counsel omits any quantification of City of Miami's losses, its trading during the class period was limited and Defendants estimate that the losses would be significantly less than the other lead plaintiff applicants.  *See* ECF No. 102-1.

The impact of the extended class period is not limited to Mr. Flores's claimed losses.  None of the other seven lead plaintiff applicants provided loss estimates based on a class period end date of May 30, 2019.  More importantly, no other applicants that might have applied had they known the class extended through May 30, 2019 have had any opportunity to do so.  As a practical matter, reopening the Lead Plaintiff application is the only approach that would provide any meaningful assurance to the Court that all initial lead plaintiff applicants and potential applicants have had an opportunity to seek to lead the litigation.

## III.   THE COURT SHOULD EXPLORE MR. HEDVAT'S REASONS FOR WITHDRAWAL

Defendants submit that the reasons for Mr. Hedvat's withdrawal have not been adequately explained and the timing and circumstances surrounding his withdrawal—and Levi & Korsinsky's proposed substitution and co-lead counsel arrangement—raise significant questions that merit investigation.

Mr. Hedvat's only proffered reason for his sudden withdrawal is that "the country has suffered an unprecedented pandemic and [his] personal circumstances, and availability to represent the Class as a fiduciary, have evolved," and he "no longer wish[es] to serve as Lead

Plaintiff or in a representative role." ECF No. 162-1. Although Defendants are certainly sympathetic to the impact the pandemic has had on so many in this country, Mr. Hedvat's explanation for his withdrawal leaves many important questions unanswered. For example, although states began to issue shutdown orders in response to the COVID-19 pandemic in March 2020, Mr. Hedvat does not explain why he waited for the better part of a year before notifying the parties and the Court of his change in circumstances. Moreover, Mr. Hedvat and Lead Counsel do not disclose when Mr. Hedvat first became nonresponsive to Lead Counsel (*supra* at 2), or first expressed his desire to withdraw as Lead Plaintiff to Lead Counsel. Although the answers to these questions may be straightforward, and in light of the historic global pandemic, justified, it is puzzling that Lead Counsel and Mr. Hedvat would not simply volunteer this information as a matter of course.

Lead Counsel and Mr. Hedvat's failure to explain the basic facts surrounding Mr. Hedvat's withdrawal is particularly troubling given Lead Counsel's strenuous argument that they should remain involved in this action due to the work—including, in particular, in pursuing tasks related to third-party discovery—they have performed to date. *E.g.*, Mot. at 1-2. If Mr. Hedvat wished to withdraw, he was obliged to do so "immediately." *Cf. Snap*, 394 F. Supp. 3d at 1158. But the Motion to Withdraw all but concedes that is not what happened. Instead, upon learning that Mr. Hedvat wished to withdraw, Lead Counsel state that they "***developed a plan*** to effectuate a change of leadership of this class action and the appointment of a new lead plaintiff" that would "***ensur[e] continuity of leadership[.]***" Mot. at 3 (emphasis added).

These statements warrant inquiry. The only "plan" that was required or appropriate in light of Mr. Hedvat's inability, or lack of desire, to fulfill his court-appointed role was obvious and required no "development": Mr. Hedvat and his counsel were required to promptly notify the Court and the parties to ensure the prompt expeditious appointment of a new Lead Plaintiff to lead this action. More importantly, to the extent that the "plan" concerned itself with "ensuring" that Lead Counsel remain involved in this action, it directly contravenes the purpose of the PSLRA. Mot. at 3. And, if the "plan" involved, for example, Lead Counsel accelerating the issuance of a large number of third-party subpoenas and discovery efforts without Mr. Hedvat's

supervision[8] or an effort to shore up Lead Counsel's ability to argue that its continued participation in the action is necessary, such a plan would be entirely inappropriate and disqualifying.

Given the lack of clarity from Mr. Hedvat and Lead Counsel to date, the Court and the parties deserve to fully understand what Lead Counsel's purported "plan" entailed, how long it was in effect, how Mr. Hedvat monitored the "plan" given his inability to carry out the other responsibilities of Lead Plaintiff, and why such a plan was advisable.

Defendants respectfully request that the Court require Mr. Hedvat to appear at the hearing on this motion via videoconference to answer these questions in his own words and make himself available for questioning from the Court.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny Mr. Hedvat's Motion to Withdraw to the extent that it seeks to appoint Mr. Flores and the City of Miami as Lead Plaintiffs and Wolf Popper as co-Lead Counsel.  Defendants request that the Court reopen the lead plaintiff appointment process to consider any appropriate applicants to replace Mr. Hedvat.

Dated:  February 10, 2021                Respectfully Submitted,

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

 /s/ Ignacio E. Salceda
     Ignacio E. Salceda

*Attorneys for Nutanix, Inc.,*
*Dheeraj Pandey, and Duston M. Williams*

---

[8] Although Mr. Hedvat lists some efforts he undertook to monitor this lawsuit to date, he does not indicate that he has monitored, or participated in, any discovery.  ECF No. 162-1 ¶ 2.