**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *pro hac vice*)
Kristina M. Mentone (admitted *pro hac vice*)
Gregory M. Potrepka (admitted *pro hac vice*)
Andrew W. Rocco (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: kmentone@zlk.com
Email: gpotrepka@zlk.com
Email: arocco@zlk.com

**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 291-2420
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for Lead Plaintiff Shimon Hedvat,*
 *Plaintiff City of Miami Fire Fighters' and*
 *Police Officers' Retirement Trust, and*
 *Lead Counsel for the Class*

**WOLF POPPER LLP**
Robert C. Finkel (admitted *pro hac vice*)
Joshua W. Ruthizer (admitted *pro hac vice)*
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 459-2093
Email: rfinkel@wolfpopper.com
Email: jruthizer@wolfpopper.com

*Attorneys for Movant Jose Flores and*
 *Proposed Co-Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NUTANIX, INC. SECURITIES LITIGATION | Master File No. 3:19-cv-01651-WHO<br><br>**<u>CLASS ACTION</u>**<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO WITHDRAW AS LEAD PLAINTIFF AND SUBSTITUTE LEAD PLAINTIFF**<br><br>Date: March 3, 2021<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Judge: William H. Orrick |

i

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT ................................................................................................................................... 4

    I.    UNDER THE PSLRA, THE COURT SHOULD NOT RE-OPEN THE LEAD PLAINTIFF PROCESS AND NEED ONLY LOOK TO THE ORIGINAL MOVANTS WHO TIMELY FILED A LEAD PLAINTIFF APPLICATION AS ADEQUATE SUBSTITUTES .................... 4

    II.   FLORES IS THE ONLY ORIGINAL LEAD PLAINTIFF MOVANT TO SEEK APPOINTMENT TO REPLACE HEDVAT ............................................................................ 8

    III.  FLORES IS A PROPER LEAD PLAINTIFF BECAUSE HE PURCHASED NUTANIX STOCK DURING THE CLASS PERIOD, HELD THROUGH A CORRECTIVE DISCLOSURE, AND SUFFERED A LOSS ......................................................................... 10

    IV.  APPOINTING FLORES AND THE TRUST AS CO-LEAD PLAINTIFFS OR, FLORES AS LEAD PLAINTIFF WITH THE TRUST AS A NAMED PLAINTIFF, IS IN THE BEST INTERESTS OF THE CLASS BECAUSE IT PROVIDES INSTITUTIONAL KNOWLEDGE, STRONG LEADERSHIP, AND AVOIDS DUPLICATION AND DELAY ........................... 11

    V.   HEDVAT HAS PROVIDED AN ADEQUATE BASIS FOR HIS WITHDRAWAL ............... 12

CONCLUSION............................................................................................................................... 14

**TABLE OF AUTHORITIES**

**Cases**

*Chenev v. Cyberguard Corp.*,
   211 F.R.D. 478 (S.D. Fla. 2002) ........................................................................... 6, 7

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) .................................................................................................. 3

*Endress v. Gentiva Health Servs., Inc.*,
   276 F.R.D. 62 (E.D.N.Y. 2011) ............................................................................... 5

*Endress v. Gentiva Health Servs., Inc.*,
   278 F.R.D. 78 (S.D.N.Y 2011) ................................................................................ 8

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
   862 F. Supp. 2d 322 (S.D.N.Y. 2012) ..................................................................... 8

*In re Allergan PLC Sec. Litig.*,
   2020 U.S. Dist. LEXIS 230270 (S.D.N.Y. Dec. 7, 2020) ......................... 2, 5, 6, 9

*In re Bank of Am. Corp. Auction Rate Sec. Mktg. Litig.*,
   2009 WL 2710413 (N.D. Cal. Aug. 26, 2009) ......................................................... 5

*In re Bank of Am. Corp. Auction Rate Secs. Mktg. Litig.*,
   2009 WL 2031764 (N.D. Cal. July 9, 2009) ............................................................ 8

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) .................................................................................... 5

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................ 10, 11

*In re CTI Biopharma Corp. Sec. Litig.*,
   2016 WL 7805876 (W.D. Wash. Sept. 2, 2016) ...................................................... 3

*In re Imax Sec. Litig.*,
   2011 WL 1487090 (S.D.N.Y. Apr. 15, 2011) .......................................................... 8

*In re Initial Public Offering Sec. Litig.*,
   214 F.R.D. 117 (S.D.N.Y. 2002) ............................................................................. 8

*In re Int'l Rectifier Corp. Sec. Litig.*,
   2008 WL 4555794 (C.D. Cal. May 23, 2008) ...................................................... 3, 7

*In re MGM Mirage Sec. Litig.*,
   2010 WL 4316754 (D. Nev. Oct. 25, 2010) ....................................................... 7, 10

*In re Neopharm, Inc. Sec. Litig.*,
   2004 WL 742084 (N.D. Ill. Apr. 7, 2004) ............................................................... 7

*In re Portal Software, Inc. Sec. Litig.*,
   2005 WL 8179740 (N.D. Cal. Mar. 9, 2005) ........................................................... 4

*In re SLM Corp. Sec. Litig.*,
   258 F.R.D. 112 (S.D.N.Y. 2009) ............................................................................. 5

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO WITHDRAW AS LEAD PLAINTIFF
AND SUBSTITUTE AS LEAD PLAINTIFF

*In re Snap Inc. Sec. Litig.*,
   394 F. Supp. 3d 1156 (C.D. Cal. 2019) ................................................................................. 7

*In re Tezos Sec. Litig.*,
   2019 WL 2183448 (N.D. Cal. Apr. 8, 2019) ................................................................ passim

*Reese v. Malone*,
   2015 WL 1526567 (W.D. Wash. Apr. 3, 2015) ...................................................................... 8

*Richardson v. TVIA, Inc.*,
   2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ............................................................. 3, 7, 10

*Schueneman v. Arena Pharm., Inc.*,
   2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ......................................................................... 3

*Tanne v. Autobytel, Inc.*,
   226 F.R.D. 659 (C.D. Cal. 2005) .................................................................................. 10, 11

*Zhu v. UCBH Holdings, Inc*,
   682 F. Supp. 2d 1049 (N.D. Cal. 2010) ..................................................................... 5, 8, 14

**<u>Statutes</u>**

15 U.S.C. § 77z-1(a)(3)(A) .......................................................................................................... 4

15 U.S.C. § 78u-4(a)(3)(A)(i) ................................................................................................... 1, 2

15 U.S.C. § 78u-4(a)(3)(B)(i) ...................................................................................................... 9

Court-appointed Lead Plaintiff Shimon Hedvat ("Hedvat"), additional named plaintiff City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Trust"), and Movant Jose Flores ("Flores"), respectfully submit this reply memorandum in further support of the motion for Hedvat to withdraw as lead plaintiff; for Flores and the Trust to be substituted as co-lead plaintiffs or, in the alternative, for Flores to replace Hedvat as sole lead plaintiff with the Trust continuing as an additional named plaintiff; and approval of their selection of Levi & Korsinsky, LLP ("Levi & Korsinsky" or "Lead Counsel") and Wolf Popper, LLP ("Wolf Popper") as co-lead counsel.

## PRELIMINARY STATEMENT

In light of Hedvat's stated desire to withdraw as lead plaintiff, Flores—an original lead plaintiff movant—is seeking the Court's appointment as the lead plaintiff representative, based on his substantial financial interest in the relief sought in this class action. Flores purchased 274,380 shares of Nutanix common stock during the class period. He held 22,340 shares of Nutanix common stock on February 28, 2019, when the first alleged corrective disclosure was made and suffered losses totaling nearly $400,000. Flores, a Salesforce Marketing Cloud Administrator and a resident of Lakeview Terrace, California, has monitored the progress of this litigation by, *inter alia*, reviewing the operative complaint and the Court's rulings on the motions to dismiss. ECF 162-2 at ¶6.

As discussed in the motion (ECF 161), Flores has the second largest financial interest of any original lead plaintiff movant and satisfies Rule 23. In substituting a lead plaintiff, courts in the Ninth Circuit give "priority" to original movants because they are often the only individuals who meet *all* the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *particularly* the timeliness requirement to seek appointment within 60 days from publication of the notice. 15 U.S.C. § 78u-4(a)(3)(A)(i) (requiring notice to the class that "***not later than*** 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff");[1] *In re Tezos Sec. Litig.*, 2019 WL 2183448, at *3 (N.D. Cal. Apr. 8, 2019) (Seeborg, J.) ("Cases in which PSRLA provisions were followed to appoint the most 'adequate' plaintiff consider

---

[1] Unless otherwise noted herein, all emphasis is added and all internal citations are omitted.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO WITHDRAW AS LEAD PLAINTIFF AND SUBSTITUTE AS LEAD PLAINTIFF

timely applicants before moving beyond the noticed pool."). Flores is the only original movant seeking appointment.[2] Accordingly, Flores should be appointed lead plaintiff.[3]

While May opposes the present motion, he does not ask the Court to appoint him the lead plaintiff. Rather, May, as well as the Defendants, ask the Court to re-open the lead plaintiff process so hypothetical class members—who have not stepped forward—can theoretically seek appointment. The Court should follow recent precedent from this Circuit and deny this request. *See Tezos, supra.* Even if the Court were to re-open the process, the result would be the same. Flores would (and should) be given priority as an original movant who satisfies Rule 23 and complied with the 60-day requirement under 15 U.S.C. § 78u-4(a)(3)(A)(i), and should be appointed lead plaintiff. *In re Allergan PLC Sec. Litig.*, 2020 U.S. Dist. LEXIS 230270, at *6 (S.D.N.Y. Dec. 7, 2020) (McMahon, C.J.) (citing *Tezos* and substituting lead plaintiff with "the only current applicant that filed a motion for lead plaintiff status within the [PSLRA's] sixty-day statutory window"). Re-opening the lead plaintiff process will only cause unnecessary delay and cost.

The Court should reject Defendants' and May's (belated) argument to re-open the lead plaintiff process on the purported grounds that the end of the Class Period has been extended by three months since the original lead plaintiff process and there could be new potential class members who were previously excluded from the class definition that might seek appointment. The second corrective disclosure alleged in the Consolidated Amended Complaint for Violations of the Federal Securities Laws ("FAC") and the Second Amended Complaint for Violations of the Federal Securities Laws ("SAC") occurred on May 30, 2019, *21 months ago*. The FAC that first extended the Class Period was filed on September 9, 2019, *18 months ago*. No Defendant, original lead plaintiff movant, or potential class member objected to the extended class period when the FAC was filed. Further, no original lead plaintiff movant or other class member sought to re-open the lead plaintiff process when the FAC was filed with the extended Class Period. Instead, now, on the eve of class certification proceedings and at

[2] An ECF notice of the present motion was sent to all persons who have appeared in this matter, including the original lead plaintiff movants. The Court's docket is publicly available to all class members. Only May has opposed the motion.

[3] The Trust, which is already serving as a named plaintiff, but had not filed an initial motion to serve as lead plaintiff, has also stepped forward and seeks appointment as co-lead plaintiff.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO WITHDRAW AS LEAD PLAINTIFF AND SUBSTITUTE AS LEAD PLAINTIFF

the start of merits discovery, Defendants attempt to seize on Hedvat's withdrawal to claim the lead plaintiff process needs to be re-opened. The eleventh-hour attack on the Class Period is pure opportunism that the Court should reject. Defendants' challenge at this juncture is a transparent attempt to further delay resolution of this case and is unsupported by law. Indeed, numerous courts have rejected nearly identical arguments even where the plaintiff expended the class period for longer. *See e.g., In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *23 (C.D. Cal. May 23, 2008) (no notice republication based on 32-month class period extension where amendments to pleading did not otherwise change legal theories or facts).

In his opposition, May appears to argue that any investor who did not hold their Nutanix stock through both corrective disclosures cannot meet Rule 23's typicality and adequacy requirement. ECF 168 at 2. This argument is incorrect. Flores, having purchased Nutanix common stock during the Class Period at artificially inflated prices and then selling them *after* the first corrective disclosure for a loss, has damages caused by the alleged fraud. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005); *see also Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007) (holding that under *Dura*, that the presumptive lead plaintiff who held through the first partial disclosure was not "subject to a unique defense" even though he did not hold through the final alleged disclosure). Moreover, it is well-settled that "[p]otential standing issues with respect to certain claims do not preclude appointment as lead plaintiff and can be resolved by the appointment of additional class representatives as the litigation proceeds," as Flores seeks to do here by including the Trust, who purchased Nutanix common stock before and after the first corrective disclosure during the Class period, and held Nutanix common stock through the second alleged corrective disclosure. *In re CTI Biopharma Corp. Sec. Litig.*, 2016 WL 7805876, at *4 (W.D. Wash. Sept. 2, 2016) (citing *Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at *5 (S.D. Cal. Aug. 8, 2011)); *see also* pp. 10-11, *infra*.

Defendants' contention that Hedvat has not adequately explained the circumstances of his withdrawal likewise lacks merit. As discussed below, it was not until December 1, 2020 that Lead Counsel had even an inkling that Hedvat may not want to continue as the lead plaintiff. Hedvat did not confirm his desire or instruct Lead Counsel to withdraw him as the lead plaintiff until January 27, 2021. Until then, Lead Counsel had no authority to withdraw Hedvat and had a continuing duty to act

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO WITHDRAW AS LEAD PLAINTIFF AND SUBSTITUTE AS LEAD PLAINTIFF

on behalf of Hedvat, the Trust, and the Class to vigorously prosecute this case by pursuing discovery, which Lead Counsel did in compliance with the deadlines set in the Court's Case Management Order ("CMO"). ECF 152. Thus, Defendants' speculation of improprieties rests on a false assumption and their request for further investigation does not serve any purpose other than to delay and harass.

For these reasons, Flores's motion should be granted and Defendants' request for further inquiry of Hedvat should be denied.

## ARGUMENT

I.   **UNDER THE PSLRA, THE COURT SHOULD NOT RE-OPEN THE LEAD PLAINTIFF PROCESS AND NEED ONLY LOOK TO THE ORIGINAL MOVANTS WHO TIMELY FILED A LEAD PLAINTIFF APPLICATION AS ADEQUATE SUBSTITUTES**

It is undisputed that the PSLRA "does not contemplate any sort of lead-plaintiff proceedings beyond the very earliest stages of the litigation." *Tezos*, 2019 WL 2183448, at *2 (quoting *In re Portal Software, Inc. Sec. Litig.*, 2005 WL 8179740, at *4 (N.D. Cal. Mar. 9, 2005) (citing 15 U.S.C. § 77z-1(a)(3)(A))). Indeed, "there is no indication that Congress intended such repetitive preliminaries to securities litigation. The PSLRA's lead plaintiff provision is designed only to get cases off on the right foot." *Portal*, 2005 WL 8179740, at *9. Courts in the Ninth Circuit have found that Congress's silence on any requirement to repeat the lead plaintiff process "suggests 'Congress contemplated invoking the PSLRA's lead plaintiff process **only once**—at the very beginning of the suit.'" *Tezos*, 2019 WL 2183448, at *2 (quoting *In re Portal Software Sec. Litig.*, 2005 WL 8179740, at *3).

Where, as here, there are already "willing plaintiffs with large financial stakes in the litigation" and no "intra-class conflict," courts in the Ninth Circuit and elsewhere find there is no benefit to re-opening the process. *Tezos*, 2019 WL 2183448, at *2-3. Here, as in *Tezos*, there would be no benefit to re-opening the lead plaintiff process and re-noticing the class because Flores, an original movant, is the only lead plaintiff candidate to come forward and seek appointment as lead plaintiff to replace Hedvat. As in *Tezos*, Flores has the second largest financial interest of any *original* movant, *timely* filed a lead plaintiff application and satisfies Rule 23. ECF 74. May, the only potential class member

4

to oppose Flores's motion, ***does not seek appointment as lead plaintiff in his opposition***.[4] It would be harmful to the Class at this stage of the proceedings to needlessly re-open the lead plaintiff process because it would delay the litigation for months and cause duplicative work and costs when the end result will likely be the same.

This is because in appointing a substitute lead plaintiff, courts give "priority" to the original movants who complied with the PSLRA requirement to ***timely*** file a motion for appointment within 60 days of notice publication. *Tezos*, 2019 WL 2183448, at *3; *Zhu v. UCBH Hldgs*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) (lead plaintiff provision "precludes consideration of a financial loss asserted for the first time . . . [after] the sixty (60) day window has closed."). As the Ninth Circuit emphasized in *In re Cavanaugh*, 306 F.3d 726, 731-32 (9th Cir. 2002), the role of the Court is to consider lead plaintiff movants in the order of their financial interest:

> If…the district court determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirement, it then must proceed to determine whether the plaintiff with the next lower stake in the litigation has made a prima facie showing of typicality and adequacy. If so, it must declare *that* plaintiff the presumptive lead plaintiff….[5]

Courts only consider applications of those who file outside the 60-day period where, unlike here, "sequential plaintiffs [who timely filed] are unavailable or unwilling to take the lead." *Tezos*, 2019 WL 2183448, at *4; *In re Bank of Am. Corp. Auction Rate Sec. Mktg. Litig.*, 2009 WL 2710413 (N.D. Cal. Aug. 26, 2009) (same). Here, Flores is the only lead plaintiff movant seeking appointment to have timely filed a lead plaintiff application and meet the requirements of Rule 23. Thus, even if the lead plaintiff process were re-opened, Flores would receive priority and likely be appointed. *Tezos*, 2019 WL 2183448, at *3; *Allergan*, 2020 U.S. Dist. LEXIS 230270, at *6 (despite expanded class period, appointing movant with fourth largest loss because it was "the only current applicant that filed a

---

[4] May does not submit a declaration evidencing his support for the opposition or that he is even aware of it.

[5] *See also In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116-18 (S.D.N.Y. 2009) (appointing substitute lead plaintiff from pool of movants who applied within the initial 60-day period); *Endress v. Gentiva Health Servs., Inc.*, 276 F.R.D. 62, 64 (E.D.N.Y. 2011) (rejecting request to be appointed, in part, because intervenor missed the 60-day window and thus was "precluded from being named as the lead plaintiff").

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO WITHDRAW AS LEAD PLAINTIFF AND SUBSTITUTE AS LEAD PLAINTIFF

motion for lead plaintiff status within the sixty-day statutory window" and finding "none of the three new applicants has offered any explanation—let alone a satisfactory explanation—for why it did not make a timely application to be lead plaintiff").[6]

Since no other potential class member seeks lead plaintiff appointment, Defendants' purported interest in re-opening the lead plaintiff process is irrelevant. *Tezos*, 2019 U.S. Dist. LEXIS 84600 at *6 ("Defendants express no preference on lead plaintiff but insist on restarting the PSLRA notice….This raises the initial question whether the PSLRA requires re-noticing this action for the selection of a new lead plaintiff. ***It does not.***"); *In re Impax Labs., Inc. Sec. Litig.*, 2008 WL 1766943, at *7 (N.D. Cal. Apr. 17, 2008) (rejecting defendants' contention that new lead plaintiff could "not be added to the complaint without triggering the PSLRA's lead plaintiff process"); *Johnson v. CBD Energy, Ltd.*, 2016 WL 3654657, at *6 (S.D. Tex. July 6, 2016) (same).

Defendants' only argument for re-opening the lead plaintiff process is that the Class Period from the initial complaint was expanded by three months to extend through May 30, 2019 (rather than February 28, 2019). Plaintiffs expanded the Class Period in the FAC filed on September 9, 2019, ***18 months ago***. ECF 102. Defendants took no issue with the expanded class period and did not ask the Court to re-open the lead plaintiff process at that time. Defendants' belated argument should therefore be rejected as untimely. *Cheney v. Cyberguard Corp.,* 211 F.R.D. 478, 498 (S.D. Fla. 2002) (finding defendants' request at class certification to re-open lead plaintiff process where class period extended in amended complaint untimely, "especially... where the Defendants did not object … at any time after the various amended complaints were filed with the Court"). Moreover, potential class members have been aware of the second corrective disclosure since it was publicly issued on May 30, 2019, ***nearly two years ago***, and of the expanded Class Period since the FAC was filed. Yet, the Trust is the only class member to come forward to represent the claims asserted for the second alleged corrective disclosure.

---

[6] Although the court in *Allergan* decided to re-open the lead plaintiff proceedings *sua sponte,* it appointed the only movant from the original lead plaintiff proceedings who thus complied with the PSLRA's "sixty-day statutory window" over the motions of investors with larger losses. *Allergan*, 2020 U.S. Dist. LEXIS 230270, at *6.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO WITHDRAW AS LEAD PLAINTIFF AND SUBSTITUTE AS LEAD PLAINTIFF

Defendants argue that the "circumstances have sufficiently changed since the initial lead plaintiff appointment to favor reopening the lead plaintiff appointment process." ECF 167 at 9. Defendants are incorrect. The factual predicate of this litigation has not changed. The May 30, 2019 alleged corrective disclosure arises from the same underlying fraud revealed in the February 28, 2019 alleged corrective disclosure. Courts faced with changes in the class period, as here, have rejected nearly identical arguments as a basis to re-open the lead plaintiff process. *Int'l Rectifier*, 2008 WL 4555794, at *23 (declining to require the plaintiffs to republish notice based on 32-month class period extension where amendments to pleading did not otherwise change legal theories or facts) (citing cases); *Cheney,* 211 F.R.D. at 498 ("[A]dditional notice is not required where the original complaint is amended to include, in part, an extension of the class period."). Defendants' belated purported concerns are nothing more than a transparent attempt to delay this litigation for months.[7]

Further, despite Defendants' protestations otherwise, the present motion, is not similar to the situations in *Snap* or *Neopharm*. In *Snap*, after moving for class certification, the lead plaintiff subsequently informed the court of his intent to withdraw as lead plaintiff once the court ruled on his class certification motion and motion to add two additional named plaintiffs ***who had not previously sought appointment***. *In re Snap Inc. Sec. Litig.*, 394 F. Supp. 3d 1156, 1157 (C.D. Cal. 2019). Since no other original movant who timely filed an application had sought appointment, the court re-opened the process. *Id*. Likewise, in *Neopharm* (an out-of-circuit case from seventeen years ago), the lead plaintiff sought to withdraw and substitute its own replacement, Local 66-Pittsburgh, which ***had not timely sought appointment*** within the 60-day window. *In re Neopharm, Inc. Sec. Litig.*, 2004 WL 742084, at *2-3 (N.D. Ill. Apr. 7, 2004). The court re-opened the lead plaintiff process because Local 66-Pittsburth did "not appear to satisfy part (aa) of the above PSLRA standards," which "requires that a potential lead plaintiff either file a complaint or make a motion to serve as lead plaintiff within 60

---

[7] By holding through the first alleged corrective disclosure, Flores suffered cognizable losses and can adequately serve as lead plaintiff. *In re MGM Mirage Sec. Litig.*, 2010 WL 4316754, *5 (D. Nev. Oct. 25, 2010) ("Although PPF's damages may be affected because they sold their shares following the partial, rather than the full, disclosure of the fraud, this will not prevent them from being able to prove loss causation."); *Richardson*, 2007 WL 1129344, at *5-6 (rejecting argument that presumptive lead plaintiff was inadequate because he did not hold through final partially corrective disclosure). *See also* pp. 10-11, *infra*.  Neither Defendants nor May dispute this.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO WITHDRAW AS LEAD PLAINTIFF AND SUBSTITUTE AS LEAD PLAINTIFF

days of being provided notice of the law suit." *Id.*[8] Here, unlike *Snap* and *Neopharm*, Mr. Flores is an ***original*** movant, who timely moved to be appointed lead plaintiff, possesses the second largest financial interest, and also satisfies the requirements of Rule 23. Thus, the Court need look no further and should appoint Mr. Flores without re-opening the lead plaintiff process.

## II.   FLORES IS THE ONLY ORIGINAL LEAD PLAINTIFF MOVANT TO SEEK APPOINTMENT TO REPLACE HEDVAT

As discussed above, courts faced with a withdrawing lead plaintiff have routinely turned to the original remaining lead movant with the largest financial interest still seeking to represent the interests of the class, as long as that movant has all the other prerequisites for appointment as lead plaintiff.  In *Zhu v. UCBH Holdings, Inc*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) (White, J.), the Court concluded that the plain language of the PSLRA precluded consideration of a financial loss of any lead plaintiff movant whose motion was first filed after "the sixty day window" for seeking appointment as

---

[8] Defendants' other cases are similarly distinguishable (ECF 167 at 6, n.4) because all those cases, **unlike here**, involved a situation where there was no original lead plaintiff movant who had timely sought appointment seeking to replace the withdrawing lead plaintiff. *See In re Bank of Am. Corp. Auction Rate Secs. Mktg. Litig.*, 2009 WL 2031764, at \*2-3 (N.D. Cal. July 9, 2009) (re-opening lead plaintiff process where there were no original movants who sought to replace the current lead plaintiff who withdrew due to lack of standing); *Reese v. Malone*, 2015 WL 1526567, at \*3 (W.D. Wash. Apr. 3, 2015); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 328 (S.D.N.Y. 2012) (re-opening lead plaintiff process for thirty days only because no original movant who had timely moved for lead plaintiff sought to intervene and/or seek appointment); *In re Imax Sec. Litig.*, 2011 WL 1487090, at \*8-9 (S.D.N.Y. Apr. 15, 2011) (re-opened lead plaintiff after denying motion for class certification where no original movant had stepped forward); *Endress v. Gentiva Health Servs., Inc.*, 278 F.R.D. 78, 83-84 (S.D.N.Y 2011) (re-opening lead plaintiff proceeding after original lead plaintiff withdrew because no original filers sought appointment, but holding that "additional publication of a notice is ***not necessary***" because "[a]ny interested putative class members will have followed the course of the case"); *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002) (re-opened lead plaintiff process where "none of the[] applicants" who filed a motion to substitute lead plaintiff "filed within 60 days of the initial notice of pendency").

lead plaintiff had closed.[9] The Court considered the filing of a 'timely motion' to be the threshold requirement to serve as lead plaintiff. *See also Allergan*, 2020 U.S. Dist. LEXIS 56164.

Flores is the only original lead plaintiff movant that has asked the Court to appoint him the lead plaintiff. While May has filed an opposition to lead plaintiff's motion and asked the Court to "deny Hedvat's substitution motion and [] reopen the lead plaintiff process" (ECF 168 at 3), May has not asked the Court to appoint him lead plaintiff. May did not submit a declaration in support of his motion, and he did not establish that he has been monitoring the litigation or is qualified to be a lead plaintiff.

May has failed to rebut the presumption in favor of Flores as the next "most adequate" lead plaintiff.   Nor could he. Flores has submitted a declaration detailing his efforts to monitor the case. *See* ECF 162-2. Flores (i) has received periodic updates about the case from his counsel, Wolf Popper; and (ii) has reviewed, among other filings, the FAC and the SAC, and the Court's decisions concerning Defendants' motions to dismiss those complaints. *See* ECF 162-2 at ¶6. Flores has demonstrated his willingness to serve as lead plaintiff by stating that he (i) understands his fiduciary duties towards the class; (ii) will supervise Wolf Popper and Levi Korsinsky to ensure efficient and zealous prosecution of the Action and (iii) has communicated with the Trust to discuss the progression of the litigation to date and their shared interests to ensure collaborative and efficient prosecution of the case. *See* ECF 162-2 at ¶12, 16 and 19. Flores also recognized the benefit to the Class of the Trust and its counsel remaining involved in the action, as it would maintain their institutional knowledge of the case to date. Accordingly, Flores should be appointed lead plaintiff.

---

[9] 15 U.S.C. § 78u-4(a)(3)(B)(i) ("Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.").

9

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO WITHDRAW AS LEAD PLAINTIFF AND SUBSTITUTE AS LEAD PLAINTIFF

### III.   FLORES IS A PROPER LEAD PLAINTIFF BECAUSE HE PURCHASED NUTANIX STOCK DURING THE CLASS PERIOD, HELD THROUGH A CORRECTIVE DISCLOSURE, AND SUFFERED A LOSS

Flores is a proper lead plaintiff. As this Court is aware, the PSLRA instructs the Court to appoint the lead plaintiff movant with the largest financial interest. Flores is the original lead plaintiff movant with the second largest financial interest, exceeded only by Hedvat. *See* ECF 161. As stated in Flores' initial motion for appointment as lead plaintiff, Flores purchased 274,380 shares of Nutanix common stock during the Class period. He also held 22,340 shares of Nutanix common stock as of February 28, 2019 and suffered a loss of $396,176 when the first alleged corrective disclosure was made.

Both May (ECF 168 at 2, 9-10) and Defendants (ECF 167 at 2) appear to argue that because Flores sold all of his shares before the May 30, 2019 disclosure, he has no losses and is atypical and inadequate under Rule 23. These arguments are incorrect. Even under the longer class period alleged in the SAC, Flores is still an adequate and typical lead plaintiff. Flores purchased Nutanix common stock and suffered losses as a result of the first alleged correct disclosure. That Flores sold his Nutanix common stock after March 1 and before May 30, 2019 does not make him inadequate or atypical. In fact, it is well settled that in order to satisfy the adequacy or typicality requirements of Rule 23, there is no requirement that a lead plaintiff personally have standing to seek recovery from each stock price decline in order to be adequate or typical. *See In re MGM Mirage*, 2010 WL 4316754, *5; *Richardson*, 2007 WL 1129344, at *5-6; *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 669 (C.D. Cal. 2005) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim."); *see also In re Countrywide Fin. Corp. Sec. Litig.,* 588 F. Supp. 2d 1132, 1157 (C.D. Cal. 2008) ("'nothing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims' so long as lead plaintiffs 'identify and include named plaintiffs who have standing'").

Flores's interests are aligned (if not the same) as those investors who held through the May 30, 2019 disclosure. That Flores cannot personally seek recovery for the May 30, 2019 disclosure does not

demonstrate he is atypical or inadequate. Stated differently, Flores and those who held through the May 30, 2019 disclosure must both prove the underlying fraud in order to recover, and thus have the same incentive to prove the fraud.

Further, to the extent Flores sold all of his stock before the May 30, 2019 disclosure presents any issue (which it clearly does not), the presence of the Trust as proposed class representative resolves that concern. *See Autobytel*, 226 F.R.D. at 669 ("the class may pursue any claim that at least one named plaintiff has standing to pursue."); *Countrywide*, 588 F. Supp. 2d at 1157.

**IV.   APPOINTING FLORES AND THE TRUST AS CO-LEAD PLAINTIFFS OR, FLORES AS LEAD PLAINTIFF WITH THE TRUST AS A NAMED PLAINTIFF, IS IN THE BEST INTERESTS OF THE CLASS BECAUSE IT PROVIDES INSTITUTIONAL KNOWLEDGE, STRONG LEADERSHIP, AND AVOIDS DUPLICATION AND DELAY**

Appointing Flores and the Trust as co-lead plaintiffs or, in the alternative, Flores as lead plaintiff and the Trust continuing as a named plaintiff, is in the best interests of the class because it provides important institutional knowledge of the facts and circumstances of this case and will ensure continuity of knowledge and that all claims asserted are represented without delay. The Trust has been involved in this Action as a named plaintiff since September 2019. ECF 162-3 at ¶5. As stated in the Trust's declaration, it has been actively involved throughout the litigation by, among other ways, reviewing all pleadings, substantive briefing and the Court's orders and by responding to Defendants' discovery requests. *Id.* at ¶¶5-7. Likewise, since seeking lead plaintiff appointment in May 2019, Flores has continued to monitor the process of this litigation by, among other ways, receiving periodic updates from his counsel and reviewing the SAC and other Court filings. ECF 162-2 at ¶6. No other applicant, including May, has come forward to seek appointment, or has asserted any continuing involvement or monitoring of the case to stay informed about the litigation.

Lead Counsel, Levi & Korsinsky, also has significant institutional knowledge of this case. Levi & Korsinsky, to date, has expended more than 3,600 hours for the benefit of the class, successfully prosecuting this case over Defendants' motions to dismiss, developing important relationships with the confidential witnesses cited in the SAC, serving more than 30 subpoenas on third parties resulting in the production of more than 10,000 documents and preparing a class certification motion. If new

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO WITHDRAW AS LEAD PLAINTIFF AND SUBSTITUTE AS LEAD PLAINTIFF

counsel were to come in at this late juncture, all this institutional knowledge will be lost while the litigation is likely delayed for months.

Accordingly, courts under similar circumstances have found that lead counsel's continued involvement in the action brings valuable knowledge and experience for the benefit of the class. *Tezos*, 2019 WL 2183448, at *5 ("in light of Anvari's counsels' extensive work and knowledge of the case, the class would benefit from their continued prosecution of this case"). This is consistent with the PSLRA, which defers to the lead plaintiff's choice of counsel. 15 U.S.C. §78u-4(a)(3)(B)(v). If appointed, Flores seeks to keep the Trust's counsel, Levi & Korsinsky, intimately involved in this Action on account of its experience representing similar classes of investors, successful track record in similar cases and knowledge of this case. ECF 162-2 at ¶¶15, 18, 20. Indeed, allowing Levi & Korsinsky and the Trust to continue involvement with Flores will allow this case to proceed without duplication or delay. Levi & Korsinsky has already negotiated a slightly revised class certification schedule that will allow the case to proceed on track. If the lead plaintiff process were to be upended, it would cause a substantial delay of months and duplicative work—both of which are a material detriment to the expeditious resolution of this case and will result in higher costs to the class.

Defendants' speculative assertion that Lead Counsel "accelerated" the issuance of subpoenas and discovery requests to secure a continuing position as Lead Counsel before announcing Hedvat's withdrawal (ECF 167 at 11-12) is unfounded. The Court held the Case Management Conference on October 27, 2020 and issued the CMO that same day. ECF 152. In accordance with the CMO, Plaintiffs began serving their discovery on Defendants and third parties on November 4, 2020 and November 6, 2020, respectively. Thus, Lead Counsel was not "accelerating" anything. Rather, as discussed below, Hedvat did not inform Lead Counsel until January 27, 2021 that he wished to withdraw as lead plaintiff. Thus, Lead Counsel was doing exactly what it was supposed to do— comply with the CMO and vigorously pursue this Action on behalf of its clients and the class.

**V.    HEDVAT HAS PROVIDED AN ADEQUATE BASIS FOR HIS WITHDRAWAL**

Defendants agree that Hedvat's request to withdraw is "appropriate." ECF 167 at 1. The remainder of Defendants' Opposition is devoted to making collateral attacks against Lead Counsel based on the timing of Hedvat's withdrawal. ECF 167 at 10-11. As detailed below and in the

12

accompanying Declaration of Shannon L. Hopkins ("Hopkins Decl."), there is nothing suspicious about the timing of Hedvat's withdrawal. Hedvat, understandably, prefers not to provide extensive detail about his personal circumstances for withdrawing. Nor is he required. A lead plaintiff need not provide detailed reasons for withdrawing and certainly not to the level Defendants are demanding. *Tezos*, 2019 WL 2183448, at *2 ("A plaintiff generally 'should not be compelled to litigate if it doesn't wish to'") (citing cases). Moreover, Hedvat's reasons are completely irrelevant to this case and have no bearing on the merits of the case. Defendants' requests are based on unfounded speculation and are clearly meant to harass.

As set forth in the accompanying Hopkins Declaration, Hedvat did not request to be withdrawn as the lead plaintiff until January 27, 2021 and Lead Counsel filed a motion to withdraw Hedvat that same day. Hopkins Decl. at ¶24. As recent as October 5, 2020, Hedvat had indicated his intention to comply with his discovery obligations and continue on into the discovery phase of this case. *Id.* at ¶13. It was not until a December 1, 2020 telephone call with Ms. Hopkins, which Hedvat ended abruptly, that Lead Counsel had the first inkling Hedvat may not be willing to proceed as a lead plaintiff. *Id.* at ¶17. Thereafter, Lead Counsel spent several weeks trying to reach Hedvat to confirm whether he intended to continue as the lead plaintiff. *Id.* at ¶18. Being unable to reach Hedvat, Ms. Hopkins reached out to defense counsel on December 17, 2020 and obtained a short extension on his discovery responses until January 4, 2021. *Id.* at ¶19.[10] Not being able to reach Hedvat by the deadline, Ms. Hopkins reached out to counsel for Defendants again on January 4, 2021 and obtained an additional one-week extension on Hedvat's discovery responses. *Id.* at ¶20.[11] On the morning of January 27, 2021, Joseph Levi, a co-founder of Levi & Korsinsky, reached Mr. Hedvat by telephone. *Id.* at ¶24. During this conversation, Mr. Hedvat requested to be withdrawn as the lead plaintiff in this case. *Id.*

---

[10] The Trust timely served its discovery responses on Defendants on January 4, 2020.

[11] Contrary to the Defendants' representation (ECF 167 at 3), during the parties' January 4, 2021 call, Lead Counsel conveyed that it was unsure if Hedvat would continue as Lead Plaintiff, ***not*** that Lead Counsel "expected" Hedvat would not continue. Lead Counsel had no expectation one way or another until speaking directly with Hedvat.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO WITHDRAW AS LEAD PLAINTIFF
AND SUBSTITUTE AS LEAD PLAINTIFF

Hedvat confirmed in writing his desire to withdraw by executing the declaration previously submitted to the Court. *See* ECF 162-1.

Defendants make the unsupported leap that the second the pandemic hit in March 2020, Hedvat's circumstances immediately changed. ECF 167 at 11. Not so. As set forth in the Hopkins Declaration, and contrary to Defendants' speculation (*id.*), it was not until very recently that Hedvat sought to withdraw. Moreover, at the time Lead Counsel was serving discovery, they understood that Hedvat was fully prepared to proceed with discovery and that Lead Counsel had an obligation to vigorously pursue discovery not only on Hedvat's behalf but on behalf of the Trust and the Class. Hopkins Decl. at ¶13. A lead plaintiff is not, as Defendants appear to insinuate (ECF 167 at 12, n.8), required to review and approve every single discovery request issued by lead counsel. *Zhu*, 682 F. Supp. 2d at 1056 ("Lead Plaintiff's Counsel shall have authority to speak for, and enter into agreements on behalf of, plaintiffs and putative class members in all matters regarding litigation including, but not limited to, pretrial procedures, discovery, motion practice, trial, and settlement negotiations."). Rather, plaintiffs are allowed and encouraged to rely on counsel for such procedural and strategic decisions. *Id.*

For the above reasons, Hedvat respectfully submits that he has adequately explained the reasons for his withdrawal. While not necessary, Lead Counsel has provided additional details on the timeline of Hedvat's withdrawal that Lead Counsel and Hedvat assume answers Defendants' "questions" about the timing for Hedvat's request to withdraw. Accordingly, Hedvat's participating at any hearings is not warranted and does not serve the bests interests of anyone. If the Court's prefers, Lead Counsel can provide its written communications with Hedvat to the Court *in camera*.

## CONCLUSION

Wherefore, for the reasons set forth above and in the Motion to Withdraw as Lead Plaintiff and Substitute Lead Plaintiff (ECF 161), the Court should grant Shimon Hedvat's request to withdraw as lead plaintiff, substitute Jose Flores and the Trust as co-lead plaintiffs on behalf of the Class, or in the alternative substitute Flores as lead plaintiff with the Trust as a named plaintiff, and approve their selection of Levi & Korsinsky and Wolf Popper as co-lead counsel.

14

DATED: February 17, 2021

**LEVI & KORSINSKY, LLP**
/s/ *Shannon L. Hopkins*
Shannon L. Hopkins
Kristina M. Mentone
Gregory M. Potrepka
Andrew W. Rocco
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: kentone@zlk.com
Email: gpotrepka@zlk.com
Email: arocco@zlk.com

Adam M. Apton
Adam C. McCall
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for Lead Plaintiff Shimon Hedvat,*
*Plaintiff City of Miami Fire Fighters' and*
*Police Officers' Retirement Trust, and*
*Lead Counsel for the Class*

**WOLF POPPER LLP**
Robert C. Finkel (admitted *pro hac vice*)
Joshua W. Ruthizer (admitted *pro hac vice)*
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 459-2093
Email: rfinkel@wolfpopper.com
Email: jruthizer@wolfpopper.com

*Attorneys for Movant Jose Flores and*
*Proposed Co-Lead Counsel for the Class*

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO WITHDRAW AS LEAD PLAINTIFF
AND SUBSTITUTE AS LEAD PLAINTIFF