NINA F. LOCKER (SBN 123838)
IGNACIO E. SALCEDA (SBN 164017)
EVAN L. SEITE (SBN 274641)
LAURA G. AMADON (SBN 321524)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:     (650) 493-9300
Facsimile:     (650) 565-5100
Email:          nlocker@wsgr.com
                isalceda@wsgr.com
                eseite@wsgr.com
                lamadon@wsgr.com

*Attorneys for Defendants Nutanix, Inc.,*
*Dheeraj Pandey, and Duston M. Williams*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

IN RE NUTANIX, INC.
SECURITIES LITIGATION

Case No. 3:19-cv-01651-WHO

## CLASS ACTION

**DEFENDANTS' RESPONSE TO LEAD COUNSEL'S OFFER TO PRODUCE CORRESPONDENCE WITH LEAD PLAINTIFF FOR *IN CAMERA* REVIEW; REQUEST FOR ORDER THAT LEAD PLAINTIFF ATTEND HEARING**

Hearing Date: March 3, 2021
Time: 2:00 P.M.
Courtroom: 2
Hon. William H. Orrick

DEFENDANTS' RESPONSE
TO LEAD COUNSEL'S OFFER
RE: *IN CAMERA* REVIEW
CASE: 3:19-CV-01651-WHO

Defendants[1] hereby submit this response to Lead Counsel's offer to produce its written communications with Lead Plaintiff Shimon Hedvat for the Court's *in camera* review.  Reply Memorandum of Law in Further Support of Motion to Withdraw as Lead Plaintiff and Substitute Lead Plaintiff, ECF No. 169 at 14.  In addition to urging the Court to review those communications *in camera*, Defendants further suggest that the Court order Mr. Hedvat to attend the upcoming video hearing on his Motion to Withdraw to directly answer the questions arising from the Motion to Withdraw.

## ARGUMENT

Defendants' Opposition demonstrated that there were significant questions regarding the timing and circumstances of Mr. Hedvat's withdrawal as the Lead Plaintiff in this action and the purported "plan" that Lead Counsel "developed" to "ensur[e] continuity of leadership" of this action that warranted the Court's further inquiry.  Opp. at 10-12.  In an attempt to dismiss to these concerns, Lead Counsel asserts that "there is nothing suspicious about the timing of Hedvat's withdrawal" and that Defendants' concerns are really motivated by "delay and harass[ment]."  ECF No. 169 at 4, 13.  To support this assertion, Lead Counsel submitted a declaration—which, notably, was from counsel and not Mr. Hedvat himself—purporting to set forth the circumstances of Mr. Hedvat's withdrawal (ECF No. 169-1) and offered to produce its written communications with Mr. Hedvat for *in camera* review.  ECF No. 169 at 14.  As explained below, a review of counsel's declaration demonstrates that Defendants' concerns are well-founded and deserve further inquiry so that the Court can make a fully informed decision as to how to proceed with the Lead Plaintiff appointment process.  Accordingly, Defendants respectfully request that the Court require the production of all communications between Mr. Hedvat and Lead Counsel for *in camera* review and that the Court order Mr. Hedvat to appear by video at the hearing scheduled for March 3, 2021, to personally address the circumstances and timing of his determination to withdraw as Lead Plaintiff.

---

[1] Unless expressly defined herein, all defined terms have the same definitions as set forth in Defendants' Opposition to Lead Plaintiff's Motion to Withdraw as Lead Plaintiff and Substitute Lead Plaintiff, ECF No. 167 (the "Opposition" or "Opp.").

DEFENDANTS' RESPONSE
TO LEAD COUNSEL'S OFFER
RE: *IN CAMERA* REVIEW
CASE: 3:19-CV-01651-WHO

In the Motion to Withdraw, Lead Counsel sought to assure the Court that Mr. Hedvat took an active role in this action until his recent decision to withdraw.  *E.g.*, ECF No. 161 at 2-3. However, as the below timeline of Lead Counsel's purported communications with Mr. Hedvat demonstrates, Mr. Hedvat's involvement in this action has been practically non-existent since well before the filing of the operative complaint:

- **March 20, 2020:**  Mr. Hedvat purportedly requested and received an update on the status of litigation.  ECF No. 169-1 ¶ 4.

- **April 17 and 20, 2020:**  An associate at Levi & Korsinsky, Ms. Muller, sent Mr. Hedvat copies of the draft and as-filed Second Amended Complaint.  Apparently, Mr. Hedvat did not respond to either message.  *Id.* ¶¶ 5, 6.

- **June 25, 2020:**  Ms. Muller sent Mr. Hedvat a draft opposition to Defendant's motion to dismiss.  Again, Mr. Hedvat apparently did not respond.  *Id.* ¶ 7.

- **September 11-18, 2020:**  On September 11 and 15, Ms. Muller emailed and texted Mr. Hedvat regarding the Court's order on the motion to dismiss and seeking to discuss the status of litigation.  *Id.* ¶¶ 8, 9.  Days later, on September 17, Mr. Hedvat responded to Ms. Muller via text and purportedly "indicat[ed] he would be in touch shortly."  *Id.* ¶ 10.  The next day, Mr. Hedvat sent another text message to Ms. Muller.  *Id.* ¶ 11.  That message is not described in counsel's declaration.  Despite the apparent absence of any prior—much less recent—discussion with Mr. Hedvat regarding discovery, counsel declares that based on this text message alone "Lead Counsel understood" Mr. Hedvat "inten[ded] to proceed with discovery."  *Id.*  It is not clear from counsel's declaration who had interpreted Mr. Hedvat's text message and "understood" it to reflect Mr. Hedvat's intent, or why the question of Mr. Hedvat's willingness to proceed with discovery was even at issue at this time (as Defendants did not serve their document requests until November 18, 2020).  *Id.* ¶ 16.

- **October 5, 2020:**  Ms. Muller texted Mr. Hedvat requesting to speak with him regarding his discovery obligations.  Mr. Hedvat did not agree to speak but, instead, requested a description of the discovery he would need to provide.  Ms. Muller provided a description via text message the same day.  Mr. Hedvat did not respond further.  *Id.* ¶¶ 12-14.

- **October 28, 2020:**  Ms. Muller again texted Mr. Hedvat regarding his discovery obligations.  Again, Mr. Hedvat did not respond.  *Id.* ¶ 15.

- **December 1, 2020:**  Counsel left a voicemail for Mr. Hedvat.  Mr. Hedvat called counsel back "shortly thereafter" but "abruptly ended the call."  *Id.* ¶ 17.

- **December 1, 2020 – January 27, 2021:**  Attorneys at Levi & Korsinsky attempted to reach Mr. Hedvat via phone calls, text messages, and WhatsApp messages to confirm whether he intended to continue as lead plaintiff.  *Id.* ¶¶ 17-24.

Among other things, this record is inconsistent with Lead Counsel's previous representation to the Court that Mr. Hedvat actively "participated in this lawsuit through the pleadings and into discovery[.]" ECF No. 161 at 3. Instead, Counsel's declaration demonstrates that over the course of the better part of a year—i.e., more than 44 weeks spanning from well before the filing of the operative complaint up until the very day the motion to withdraw was filed—Mr. Hedvat interacted with counsel a total of five times. And these communications also appear to have been almost entirely non-substantive, consisting of a single telephone call (well before the filing of the operative complaint); three text messages on September 17, 18, and October 5, 2020; and a call Mr. Hedvat "abruptly ended" on December 1, 2020. Thus, from no later than March 2020, plaintiffs' prosecution of this action appears to have proceeded without any involvement, for all practical purposes, by Lead Plaintiff.

It is also now clear that Lead Counsel's previous assertion that "Plaintiff[] Hedvat . . . through Lead Counsel, commenced a comprehensive discovery plan" in the period "[i]mmediately" following the Court's September 11, 2020 order lacked any factual basis. ECF No. 161 at 2. As of the beginning of September 2020, Mr. Hedvat had not responded to any message from Lead Counsel for nearly six months. And, when Mr. Hedvat did emerge from his silence, he sent a single text message—which counsel does not describe—that purportedly led some unidentified attorney at Levi & Korsinsky to "understand" that Mr. Hedvat would proceed with discovery. But, the claim that anyone reasonably "understood" that Mr. Hedvat would meet his discovery obligations based on this single text message deserves further examination. At that point in time, Defendants had not yet served discovery on Mr. Hedvat and, based on counsel's declaration, there had been no discussion with Mr. Hedvat regarding his discovery obligations any time in the nearly six months before that. By counsel's own admission, Mr. Hedvat was not provided with a summary of his anticipated obligations until weeks *after* the text message that purportedly indicated his "intent[] to proceed with discovery," on October 5. *See* ECF No. 169-1 ¶ 11.

In addition, nothing in Lead Counsel's submission meaningfully addresses Defendants' reasonable concern that Lead Counsel may have inappropriately delayed withdrawing Mr. Hedvat as Lead Plaintiff in order to "develop[]" and pursue a "plan" to ensure that Levi & Korsinsky could continue to control this litigation. *See* Opp. at 11-12. In this regard, the only response Lead Counsel offers is that "Hedvat did not inform Lead Counsel . . . that he wished to withdraw as Lead Plaintiff" until January 27, 2021, and that "Lead Counsel had **no expectation one way or another**" regarding whether Mr. Hedvat would continue as Lead Plaintiff until that date. ECF No. 169 at 12, 13 n.11 (emphasis added). However, these assertions are inconsistent with the declaration submitted by the City of Miami in support of the Motion to Withdraw. ECF No. 162-3. That declaration was executed on January 21, 2021—i.e., several days before Lead Counsel now claims to have formed its expectation that Mr. Hedvat would withdraw—and states:

> **The [City of Miami] understands that the Court-appointed Lead Plaintiff, Mr. Shimon Hedvat is no longer able to serve as Lead Plaintiff in this Action** and that another individual investor who suffered substantial losses as a result of the alleged fraud, Mr. Jose Flores, is ready, willing and able to serve as lead plaintiff in Mr. Hedvat's place or as co-lead plaintiff with the Trust.[2]

This contradiction in Lead Counsel's submissions is intractable.

In addition, at no point has the Court been informed of the reason for Mr. Hedvat's withdrawal. The Court deserves clarity regarding the circumstances and timing of Mr. Hedvat's withdrawal before determining how to proceed with the Lead Plaintiff appointment process, and there can be no reasonable dispute that Lead Counsel's submissions to date have not provided it. Accordingly, in addition to accepting Lead Counsel's offer to review the written communications between Mr. Hedvat and Lead Counsel *in camera*, Defendants suggest that the Court order Mr. Hedvat to appear at the upcoming hearing and answer these questions directly.[3]

---

[2] ECF No. 162-3 ¶ 9 (emphasis added).

[3] Courts regularly require Lead Plaintiffs to personally appear at hearings to respond to inquiries from the Court. *See, e.g.*, *Felix v. Symantec Corp.*, No. C 18-02902 WHA, slip op. (N.D. Cal. Aug. 7, 2018) (Ex. 1) (Exhibits ("Ex._") can be found attached to the Declaration of

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court order the production of Lead Counsel's written communications with Mr. Hedvat for *in camera* review, as Lead Counsel has offered, and require Mr. Hedvat to attend the hearing on his Motion to Withdraw to directly answer the Court's questions regarding his withdrawal.

Dated:  February 22, 2021                                  Respectfully Submitted,

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

 /s/ Ignacio E. Salceda
Ignacio E. Salceda

*Attorneys for Nutanix, Inc.,*
*Dheeraj Pandey, and Duston M. Williams*

---

Ignacio E. Salceda, filed concurrently); *Evellard v. LendingClub Corp.*, No. C 16-02670 WHA, slip op. (N.D. Cal. Aug. 12, 2016) (Ex. 2); *Kennedy v. Petroleo Brasileior S.A.*, No. 1:15-cv-00093 JSR, slip op. (S.D.N.Y. Feb. 9, 2015) (Ex. 3).  And, given that the March 3rd hearing on the Motion to Withdraw will proceed via a video conference and will not require travel, Mr. Hedvat will not be significantly burdened by being required to attend the hearing.