**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *pro hac vice*)
Kristina Mentone (admitted *pro hac vice*)
Gregory Potrepka (admitted *pro hac vice*)
Andrew Rocco (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: kmentone@zlk.com
Email: gpotrepka@zlk.com
Email: arocco@zlk.com

**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Proposed Lead Counsel for the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NUTANIX, INC. SECURITIES LITIGATION | Master File No. 3:19-cv-01651-WHO |
| | Hon. William H. Orrick |
| | **NOTICE OF MOTION AND MOTION OF THE NUTANIX INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** |
| | Date: April 28, 2021
Time: 2:00 p.m.
Courtroom: 2-17th Floor |

NOTION OF MOTION AND MOTION OF THE NUTANIX INVESTOR GROUP FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
No. 3:19-cv-01651-WHO

**NOTICE OF MOTION AND MOTION**

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE, that on April 28, 2021 at 2:00 p.m., or as soon as counsel may be heard, the undersigned will move before the Honorable William H. Orrick at the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, pursuant to the Private Securities Litigation Reform Act of 1995, and the Court's order dated March 1, 2021 (ECF 171), for an Order:

1.    Appointing Jose Flores, the City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Miami F&P") and John P. Norton, on behalf of the Norton Family Living Trust UAD 11/15/2002 ("Norton") (collectively the "Nutanix Investor Group") as Lead Plaintiff;

2.    Approving Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel; and

3.    Granting such other and further relief as the Court may deem just and proper.

In support of its motion the Nutanix Investor Group respectfully submits the following memorandum of points and authorities, and the accompanying Declaration of Shannon L. Hopkins, and all exhibits thereto.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE NUTANIX INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
No. 3:19-cv-01651-WHO
ii

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

I.      SUMMARY OF ARGUMENT.................................................................................. 1

II.     STATEMENT OF ISSUES TO BE DECIDED.................................................. 3

III.    STATEMENT OF FACTS.................................................................................... 3

IV.     PROCEDURAL HISTORY ................................................................................ 5

V.      ARGUMENT ...................................................................................................... 6

        A.  The Procedure Required by the PSLRA........................................................ 6

        B.  The Nutanix Investor Group Should be Appointed Lead Plaintiff.................. 7

            1.  The Nutanix Investor Group is Willing to Serve as Lead Plaintiff ............. 7

            2.  The Nutanix Investor Group Has the Largest Financial Interest in the Relief Sought by the Class.................................................................................... 7

            3.  The Nutanix Investor Group Satisfies the Adequacy and Typicality Requirements of Rule 23(a) of the Federal Rules of Civil Procedure ....................................... 9

                a.  The Nutanix Investor Group's Claims are Typical of the Claims of All Class Members ...................................................................................... 10

                b.  The Nutanix Investor Group Will Adequately Represent the Class.................... 11

        C.  The Nutanix Investor Group's Selection of Counsel Should be Approved .................... 13

VI.     CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Daniels Family 2001 v. Las Vegas Sands Corp.,*

   2021 WL 41301 (D. Nev. Jan. 5, 2021) ................................................................................. 13

*Armour v. Network Assocs., Inc.,*

   171 F. Supp. 2d 1044 (N.D. Cal. 2001).................................................................................. 12

*Dura Pharm., Inc. v. Broudo,*

   544 U.S. 336 (2005) .................................................................................................................. 8

Hanlon v. Chrysler Corp.,

   150 F.3d 1011 (9th Cir. 1998) ............................................................................................... 10

*Haung v. Acterna Corp.,*

   220 F.R.D. 255 (D. Md. 2004) .............................................................................................. 10

*Hessefort v. Super Micro Computer, Inc,*

   317 F.Supp.3d 1056 (N.D. Cal. 2018)..................................................................................... 9

*In re Cavanaugh,*

   306 F.3d 726 (9th Cir. 2002) ............................................................................................ 1, 10

*In re Drexel Burnham Lambert Grp.,*

   960 F.2d 285 (2d Cir. 1992) .................................................................................................. 11

*In re LendingClub Sec. Litig.,*

   282 F.Supp.3d 1171 (N.D. Cal. 2017)................................................................................... 10

*In re Milestone Sci. Sec. Litig.,*

   183 F.R.D. 404 (D.N.J. 1998) ............................................................................................... 10

*In re Olsten Corp. Sec. Litig.,*

   3 F. Supp. 2d 286 (E.D.N.Y. 1998)........................................................................................ 7

*In re Sauer-Danfoss, Inc. Stockholder Litigation*,

   C.A. No. 8396-VCL (Del. Ch.) ............................................................................................ 14

*In re Twitter, Inc. Sec. Litig.,*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE NUTANIX INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
No. 3:19-cv-01651-WHO

iv

326 F.R.D. 619 (N.D. Cal. 2018) ................................................................................... 10, 11

*Johnson v. OCZ Tech. Grp., Inc.*,

    2013 WL 75774 (N.D. Cal. Jan. 4, 2013)...................................................................... 9

*Kim v. Advanced Micro Devices, Inc.*,

    2018 WL 2866666 (N.D. Cal. June 11, 2018)............................................................. 13

*Kirkland, et. al., v. WideopenWest, Inc.*,

    Index No. 653248/2018 (N.Y. Sup. Ct. N.Y. County) ................................................ 14

*Mannkind Sec. Actions*,

    2011 WL 13218021 (C.D. Cal. Apr. 27, 2011)............................................................. 9

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance*

    *Corp. I*,

    No. 2:09-cv-01713 (E.D.N.Y.) .................................................................................... 14

*Veal v. LendingClub Corporation*,

    2018 WL 5879645 (N.D. Cal. Nov. 7, 2018) .............................................................. 10

*Zhu v. UCBH Holdings, Inc.*,

    682 F. Supp. 2d 1049 (N.D. Cal. 2010)......................................................................... 9

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)................................................................................... passim

**Other Authorities**

S. Rep. No. 104-98 (1995)............................................................................................ 11

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................ 1, 10, 11

## I.    SUMMARY OF ARGUMENT

This securities class action (the "Action") is brought on behalf of all persons who purchased, or otherwise acquired securities of Nutanix, Inc. ("Nutanix" or the "Company") between November 30, 2017 and May 30, 2019, inclusive.[1] The Action alleges violations of the Securities Exchange Act of 1934 (the "Exchange Act") against Nutanix, Dheeraj Pandey ("Pandey"), and Duston M. Williams ("Williams").[2]

The Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that they are a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See generally In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). The Nutanix Investor Group lost approximately **$2,905,633.77** as a result of the alleged fraud during the Class Period.[3] Moreover, the Nutanix Investor Group satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the Class, and its members will fairly and

---

[1] The Court's September 11, 2020 Order Regarding Motion to Dismiss ("MTD Order," ECF 140), held that alleged misstatements prior to March 1, 2018 were insufficiently pleaded (effectively truncating the earlier part of the Class Period). However, because the Class has the right to appeal aspects of the MTD Order affecting the longer Class Period starting on November 30, 2017, members of the Class retain a financial interest in those claims. Accordingly, the certifications filed by the Nutanix Investor Group account for the complete class period as alleged in the Second Amended Complaint ("SAC"). No members of the Nutanix Investor Group transacted in Nutanix securities in the period between November 30, 2017 and March 1, 2018, inclusive. *See* Declaration of Shannon L. Hopkins, dated March 22, 2021 ("Hopkins Decl."), Ex. 1. All citations to "Ex._" are to exhibits affixed to the Hopkins Decl.

[2] Specifically, the SAC alleged violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder against Defendants Nutanix, Pandey (Founder, Chief Executive Officer and Chairman of Nutanix's Board of Directors); and Williams (Chief Financial Officer of Nutanix).

[3] The Nutanix Investor Group's certifications identifying its members' transactions in Nutanix securities, as required by the PSLRA, as well as a chart identifying their losses, are attached to the Hopkins Decl. as Exhibits 1 and 2, respectively.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE NUTANIX INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
No. 3:19-cv-01651-WHO
1

adequately represent the interests of the Class.[4] As set forth in the accompanying Joint Declaration, the Nutanix Investor Group is a small, cohesive group of three investors. *See* Ex. 3.

Miami F&P is a sophisticated institutional investor of the type Congress envisioned when enacting the PSLRA. Miami F&P is a single employer defined benefit plan established in the City of Miami, Florida with over $1.7 billion assets under management. Miami F&P has been actively litigating this case as a named Plaintiff for a year and a half on behalf of the Class. Miami F&P has considerable experience serving in a representative capacity and monitoring lead counsel in securities class actions and has served as lead plaintiff in at least five securities cases in the past. Miami F&P's zealous representation in previous securities class actions has achieved substantial recoveries for similarly situated investors.

Mr. Flores is an original lead plaintiff movant with significant experience in the internet and software industry. Since seeking appointment, Mr. Flores has actively monitored this litigation through his counsel Wolf Popper, LLP ("Wolf Popper"). ECF 70 at 6.[5] Miami F&P and Flores have a pre-existing relationship, having previously sought appointment together as lead plaintiff. ECF 161.

Mr. Norton, has a substantial loss of more than ***$2.3 million*** and is highly motivated to prosecute this Action on behalf of the Class. Mr. Norton is a sophisticated investor, having invested in securities for over thirty years. He previously owned his own agricultural business from 1990 through the early 2000's. Mr. Norton thus has experience overseeing and hiring counsel for general litigation matters as a prior business owner. Mr. Norton seeks to serve as lead plaintiff with Miami F&P and Mr. Flores because of the substantial benefit the Class will receive from their prior involvement and institutional knowledge of the case, Miami F&P's sophistication

---

[4] The "Class" is comprised of all persons who purchased, or otherwise acquired Nutanix securities during the Class Period. Excluded from the Class are Nutanix and its subsidiaries and affiliates, the Individual Defendants, and any of Nutanix's officers and directors at all relevant times, and any of their immediate families, legal representatives, heirs, successors, or assigns, and any entity in which any excluded person ahs or had a controlling interest.

[5] If appointed as Lead Plaintiff, the Nutanix Investor Group intends for Wolf Popper to act as additional counsel under the direction and supervision of Lead Counsel.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE NUTANIX INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
No. 3:19-cv-01651-WHO
2

and prior experience successfully litigating complex class actions such as this, and Mr. Flores's expertise in the internet service and software industry.

The Nutanix Investor Group has selected Levi & Korsinsky, current Lead Counsel, to represent it in this Action. Levi & Korsinsky has substantial experience successfully prosecuting securities class actions like this and has already demonstrated its ability and zealous advocacy on behalf of the Class in this Action by defeating Defendants' motion to dismiss, serving discovery on Defendants and third parties, retaining experts and preparing for class certification.

Accordingly, the Nutanix Investor Group meets the requirements of the PSLRA and respectfully requests that it be appointed Lead Plaintiff and Levi & Korsinsky be approved as Lead Counsel.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Does the Nutanix Investor Group meet the requirements under the PSLRA, and should it be appointed Lead Plaintiff?

2.    Should the Nutanix Investor Group's choice of Lead Counsel be approved?

The Nutanix Investor Group submits the answer to both of these questions should be: Yes.

## III.    STATEMENT OF FACTS[6]

Nutanix (headquartered in San Jose, California) purports to be a cloud computing software company known for pioneering its "core" hyper-converged infrastructure ("HCI") software technology. ¶1. In order to obtain new customers and resulting sales, it is crucial for Nutanix to actively engage in lead generation activities to promote its products and generate qualified sales leads to fill the pipeline with new customers and increase sales productivity. ¶¶3, 14. Throughout the Class Period, Nutanix's inadequate investment in lead generation and pervasive sales attrition caused a massive decline in the Company's sales pipeline. Defendants attempted to mask the pipeline decline through an unsustainable "pull-in" scheme whereby

---

[6] Citations to "¶_" are to paragraphs of the SAC (ECF 124) filed in this Action. The facts set forth in the SAC are incorporated herein by reference.

Nutanix pulled in sales from future quarters into the current quarters to meet earnings forecasts. ¶¶15-16. The Company's sales pipeline eventually dried up such that there were no more new sales to "pull in" to meet sales forecasts. Yet, throughout the Class Period, Defendants falsely (among other facts) stated that Nutanix "add[ed] a record number of new customers" and had made a "huge contribution to overall mid market customer acquisition[,]" and further represented that Nutanix's "ramped rep sales productivity has increased sequentially for the last three six-month periods ending Q4 2017, Q2 2018, and Q4 2018[.]" ¶¶237-38, 287.

Defendants were ultimately forced to reveal the truth in two partially corrective disclosures. ¶20. First, on February 28, 2019, Nutanix announced fiscal Q2 2019 results and provided weak Q3 2019 guidance. *Id.* In explaining the reason for the weak Q3 guidance, Defendants admitted that Nutanix "***miss[ed] our pipeline targets***" for the second quarter of FY2019 because "***in fiscal 2018, we reallocated some of our lead generation spending to other priorities. As a result, there was a four quarter period from Q4 2017 to Q3 2018 that we basically kept lead generation spend flat***" and that in FY2019 "***we again reallocated capital away from lead generation spend during our planning process***." *Id.* According to Defendant Williams, "[t]he magnitude of the shift is in ***the few tens of millions."*** *Id.*

Defendants further admitted on February 28, 2019 that "***over the past few quarters, [Nutanix has] not kept pace with our bullish sales hiring goals***," which "plays a role in our sales pipeline development" and, therefore Nutanix was impacted "by a shortage of sales reps in the first half of the fiscal year, resulting in an under-spend by several million dollars" and that Nutanix suffered from poor sales execution as a result of insufficient staffing and sales training. ¶21.

Defendants also admitted that, contrary to their public statements touting Nutanix's purported "new" customer growth, the Company had actually been focusing its efforts on "existing" larger customers because they were "easier" sales to make:

> Now, looking back at it, we probably ***over rotated a bit to the existing customer base*** and large customers there, where those efficiency dollars are easier to get and probably underspent a little bit on new customers, which those efficiencies are little tougher to get on new customers. [¶22.]

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE NUTANIX INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
No. 3:19-cv-01651-WHO
4

In response to this news, Nutanix's stock dropped from a closing price of $50.09 per share on February 28, 2019 to a closing price of $33.70 per share on March 1, 2019, on usually high trading volume. ¶23.

On May 30, 2019, Defendants revealed that Nutanix had missed revenue and billing targets due to continuing sales execution issues that were far worse than what Defendants had previously represented on February 28, 2019. ¶28. On this news, Nutanix's stock plummeted on May 30, 2019 from a closing price of $32.67 per share to $28.07 on May 31, 2019, on unusually high trading volume. ¶29.

As a result of the fraud alleged herein, the Nutanix Investor Group and the putative Class have suffered significant harm. ¶35.

## IV.    PROCEDURAL HISTORY

Ryan Scheller, the initial plaintiff in this consolidated action, through his counsel Wolf Popper, filed the initial complaint and issued the PSLRA press release establishing the lead plaintiff deadline on March 29, 2019.  On May 28, 2019, class members, including former Lead Plaintiff Shimon Hedvat and Jose Flores, filed eight competing motions pursuant to the PSLRA for appointment as lead plaintiff in this Action. After full briefing, no movant contested that Hedvat had the largest financial interest of any movant. On July 10, 2019, the Court appointed Hedvat as the Lead Plaintiff in this Action and appointed his attorneys, Levi & Korsinsky, as Lead Counsel for the proposed Class. ECF 87. On September 9, 2019, Hedvat filed the Consolidated Amended Complaint for Violations of the Federal Securities Laws ("FAC") and Miami F&P joined the Action as an additional named Plaintiff and proposed Class representative. ECF 102.

After the Court dismissed the FAC, on April 17, 2020, Hedvat and Miami F&P filed the SAC. ECF 124.

On May 22, 2020, Defendants moved to dismiss the SAC. ECF 125.  After full briefing and oral argument, the Court denied the motion to dismiss on September 11, 2020. ECF 140. The Court found Defendants did not make any actionable misstatements prior to March 1, 2018,

resulting in an effective Class Period in this Action from March 1, 2018 through May 30, 2019. *Id*. at 1, fn. 1.

Thereafter, Plaintiffs, through Levi & Korsinsky, served discovery requests on Defendants, served more than 30 third-party subpoenas resulting in the production of more than 18,000 documents that counsel then reviewed, consulted with a market efficiency and damages expert in preparation for class certification, and drafted a class certification motion.

On January 27, 2021, Hedvat filed a motion requesting to withdraw as lead plaintiff and to substitute Miami F&P and Jose Flores as lead plaintiff in his place. ECF 161. On March 1, 2021, the Court granted Hedvat's request to withdraw as the lead plaintiff but denied the request to substitute Flores and Miami F&P as the lead plaintiff, without prejudice. ECF 171. The Court also ordered the re-opening of the lead plaintiff application process, with applications due by March 22, 2021. *Id*.

The Nutanix Investor Group makes this motion for appointment as Lead Plaintiff or, in the alternative, for appointment of an individual member of the Nutanix Investor Group as Lead Plaintiff.

## V.   ARGUMENT

### A.   The Procedure Required by the PSLRA

The PSLRA provides a presumption that the "most adequate plaintiff" is the "person or group of persons" that:

(aa)   has either filed the complaint or made a motion in response to a notice;

(bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of

adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, the Nutanix Investor Group satisfies the foregoing criteria and its members are not aware of any unique defenses that the Defendants could raise against it or its members. Therefore, the Nutanix Investor Group is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed Lead Plaintiff.

**B.  The Nutanix Investor Group Should be Appointed Lead Plaintiff**

**1.   The Nutanix Investor Group is Willing to Serve as Lead Plaintiff**

On March 1, 2021, the Court re-opened the Lead Plaintiff process and set March 22, 2021 as the deadline for applicants to move for appointment as lead plaintiff. ECF 171. The Nutanix Investor Group timely filed the instant motion on March 22, 2021.  The members of the Nutanix Investor Group have each reviewed the SAC and the MTD Order. *See* Ex. 3 at ¶5. Each group member understands his or its duties as a Lead Plaintiff and is ready, willing and able to serve as lead plaintiff together as a small cohesive group or individually if the Court should determine appointing a single lead plaintiff is more appropriate.  *Id.* at ¶22.

**2.   The Nutanix Investor Group Has the Largest Financial Interest in the Relief Sought by the Class**

As this Court has recognized, "[i]n assessing which class member has the 'largest financial interest' courts typically consider the *Lax-Olsten* factors, which include: '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." ECF 171 at 4 (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)).

The Nutanix Investor Group has the largest known financial interest in the relief sought by the Class. *See* Ex. 2.  Within the Class Period, the Nutanix Investor Group transacted in Nutanix securities in reliance upon Defendants' alleged materially false and misleading statements and were injured thereby.

The SAC alleges that on two distinct dates, March 1, 2019 and May 30, 2019, Nutanix common stock experienced statistically significant stock price declines traceable to new information coming into the securities markets revealing the truth with respect to previously misrepresented facts. Nutanix common stock declined $16.39 per share on March 1, 2019 (¶330) and $4.60 on May 31, 2019 (¶348). As a result, the Nutanix Investor Group has a substantial financial interest in this Action. In total, the Nutanix Investor Group: purchased or otherwise acquired a total of 432,610 shares of Nutanix common stock during the effective Class Period of March 1, 2018 through May 30, 2019; purchased or otherwise acquired 129,840 net shares of common stock during the Class Period through February 28, 2019 and 112,750 net shares of common stock through May 30, 2019; expended $6,341,400.33 in net funds on those shares during the effective Class Period of March 1, 2018 through May 30, 2019; and suffered approximately $2,905,663.77 in losses recoverable pursuant to *Dura Pharm.*, *Inc. v. Broudo*, 544 U.S. 336, 338 (2005) ("*Dura* LIFO" losses) during the effective Class Period of March 1, 2018 through May 30, 2019.[7]

The following charts summarized the Nutanix Investor Group's financial interest under the *Lax-Olsten* factors during the effective Class Period and during the longer class period alleged in the SAC of November 30, 2017 through May 30, 2019. Net funds expended and losses have been rounded to the nearest whole dollar.

---

[7] *See* Ex. 2 ("Disregarding losses not attributable to the alleged fraud from intra-class period sales matched to intra-class period purchases"). *Dura* LIFO losses are those recoverable in light of the Supreme Court's decision in *Dura*, 544 U.S. at 346-48. Under *Dura*, losses suffered from common stock purchased and sold and options contracts entered into and closed out **before** the revelation of any fraud alleged against Defendants (and corresponding drop in price) cannot be said to be proximately caused by Defendants' misrepresentations or omissions and are properly excluded from a movant's financial interest.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE NUTANIX INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
No. 3:19-cv-01651-WHO

| **Nutanix Investor Group's Financial Interest** | | | | | | |
|---|---|---|---|---|---|---|
| **Member** | **Shares Purchased** | **Net Shares Purchased Through 2/28/2019** | **Net Shares Purchased Through 5/30/2019** | **Net Funds Expended on Common Stock** | ***Dura* LIFO Loss** | **LIFO Loss** |
| **Norton** | 100,000 | 100,000 | 100,000 | $5,500,000 | $2,386,682 | $2,566,490 |
| **Flores** | 319,510 | 22,340 | 0 | $343,888 | $326,535 | $343,888 |
| **Miami F&P** | 13,100 | 7,500 | 12,750 | $497,512 | $192,447 | $197,447 |
| **Nutanix Investor Group** | **432,610** | **129,840** | **112,750** | **$6,341,400** | **$2,905,664** | **$3,102,825** |

The Nutanix Investor Group, thus, has a significant financial interest in the outcome of this case.  To the best of its knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest either individually or as a group and also satisfy Rule 23.[8]

### 3.  The Nutanix Investor Group Satisfies the Adequacy and Typicality Requirements of Rule 23(a) of the Federal Rules of Civil Procedure

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  At the lead plaintiff stage, only a "preliminary showing" of the typicality and adequacy elements of Rule 23 is required. *See Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010); *see also Hessefort v. Super Micro Computer, Inc,* 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018); *Veal v.*

---

[8] It is proper to appoint a small, cohesive group of investors who possess the largest financial interest in a securities class action and otherwise satisfy the requirements of Rule 23 as the lead plaintiff under the PSLRA. *Johnson v. OCZ Tech. Grp., Inc.*, 2013 WL 75774, at *3 (N.D. Cal. Jan. 4, 2013) ("Small, cohesive groups similar to the OCZ Investor Group are routinely appointed as Lead Plaintiff in securities actions when they have shown their ability to manage the litigation effectively in the interests of the class without undue influence of counsel."). Nevertheless, if the Court prefers appointing a sole lead plaintiff, it may select a member of the Nutanix Investor Group. *Mannkind Sec. Actions*, 2011 WL 13218021, at *5 (C.D. Cal. Apr. 27, 2011) (appointing member of a movant group lead plaintiff where member "has the largest financial stake" and satisfied "the typicality and adequacy requirements of Rule 23").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE NUTANIX INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
No. 3:19-cv-01651-WHO

*LendingClub Corporation,* 2018 WL 5879645, *4 (N.D. Cal. Nov. 7, 2018); *Cavanaugh,* 306 F.3d at 730, n.5, 732.  Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Cavanaugh,* 306 F.3d at 732; *see also Haung v. Acterna Corp.,* 220 F.R.D. 255, 259 (D. Md. 2004); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

As detailed below, the Nutanix Investor Group satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying its appointment as Lead Plaintiff.

**a.   The Nutanix Investor Group's Claims are Typical of the Claims of All Class Members**

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class."  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *In re Twitter, Inc. Sec. Litig.,* 326 F.R.D. 619, 629 (N.D. Cal. 2018) (citation and quotation omitted).  Rule 23 does not require that the named plaintiff be identically situated with all class members. It is enough if their situations share a common issue of law or fact. *See In re LendingClub Sec. Litig.,* 282 F.Supp.3d 1171, 1179 (N.D. Cal. 2017) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

The Nutanix Investor Group meets the typicality requirements of Rule 23(a).  The Nutanix Investor Group's claims are the same as, and neither compete nor conflict with, the claims of the other Class members. The Nutanix Investor Group, like the other members of the Class, purchased Nutanix securities during the Class Period at prices artificially inflated by the Defendants' materially false and misleading statements, and were damaged thereby when the truth concerning those false and misleading statements was revealed to the market. Thus, its claims are typical, if not identical, to those of the other members of the Class and the Nutanix Investor Group satisfies the typicality requirement of Rule 23(a)(3). *See In re LendingClub*, 282 F.Supp.3d at 1179; *see*

*also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

### b.  The Nutanix Investor Group Will Adequately Represent the Class

The Nutanix Investor Group is an adequate representative for the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Twitter Inc. Secs. Litig.*, 326 F.R.D. at 626 (citation and quotation omitted).

The Nutanix Investor Group's interests are clearly aligned with those of the Class. Not only is there no evidence of antagonism between the Nutanix Investor Group's interests and those of the Class, but the Nutanix Investor Group has a significant and compelling interest in prosecuting the Action based on the large losses it suffered as a result of the wrongful conduct alleged in the Action. This motivation, combined with the Nutanix Investor Group's similar interest with the members of the Class, demonstrates that the Nutanix Investor Group will vigorously pursue the interests of the Class.

Indeed, Miami F&P has already demonstrated its willingness and ability to adequately represent the interests of the Class by vigorously pursuing the claims asserted in the Action and defeating Defendants' motion to dismiss, responding to Defendants' discovery requests, serving extensive discovery on Defendants and third parties and preparing for class certification. Moreover, Miami F&P is a public pension fund with over $1.7 billion in assets under management and possesses the resources to effectively manage this litigation. Miami F&P has extensive experience serving as lead plaintiff in other similar cases where it has obtained substantial recoveries for the classes. Institutional investors like Miami F&P are exactly the kind of lead plaintiff envisioned by the PSLRA. *See* S. Rep. No. 104-98, at 11 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts"); *Armour v.*

*Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) ("By creating the PSLRA's lead plaintiff presumption, Congress sought to encourage the involvement of institutional investors in securities class actions, and thereby 'increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'") (citation omitted).

Mr. Flores, likewise, is willing and able to pursue the interests of the Class. Mr. Flores was an original lead plaintiff movant and, since seeking appointment, has stayed informed about the events occurring in the Action, including reviewing the SAC and the Court's MTD Order. *See* Ex. 3. Mr. Flores has significant experience in the same industry as Nutanix as a software engineer with a Bachelor's Degree in Computer Science Engineering. Mr. Flores is currently employed as a Salesforce Marketing Cloud Administrator and has approximately fifteen years of investing experience.

Mr. Norton has a Bachelor of Science degree in Agricultural Economics and has been investing in securities for over thirty years. Mr. Norton previously owned his own agricultural business from 1990 through the early 2000's. In running his business, Mr. Norton acquired significant experience overseeing and hiring counsel for general litigation matters. Mr. Norton has already demonstrated his willingness and ability to act in the best interests of the Class by seeking appointment with Miami F&P and Mr. Flores, recognizing their significant experience and institutional knowledge of the case will substantially benefit the Class.

The Nutanix Investor Group has submitted a Joint Declaration demonstrating it is a small and cohesive group that has processes in place to communicate and effectively and efficiently manage this litigation. The Joint Declaration attests to, *inter alia*, its members' education, occupation, and investment experience, as well as to the members' understanding of the strengths of this case, the responsibilities and duties of serving as lead plaintiff, the members' shared desire to obtain the best result for the Class, and the steps that the members have already taken and will continue to take to supervise this litigation. *See* Ex. 3.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE NUTANIX INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
No. 3:19-cv-01651-WHO

In addition, the Nutanix Investor Group has chosen Levi & Korsinsky, who is currently lead counsel in the litigation representing Miami F&P, to continue as lead counsel, and requests that Wolf Popper act as additional counsel under the supervision of lead counsel. Wolf Popper, on behalf of its client Scheller, filed the initial complaint in this consolidated action, and also has a continuing relationship with Miami F&P as monitoring counsel for Miami F&P's investment portfolio.

The Nutanix Investor Group has no conflicts with the Class, will prosecute the Action vigorously on behalf of the Class, and is therefore adequate under Rule 23(a).

\*      \*      \*

Accordingly, the Nutanix Investor Group has the largest financial interest and satisfies the adequacy and typicality requirements of Rule 23. As such, the Nutanix Investor Group is the presumptive most adequate plaintiff and should be appointed as lead plaintiff in the Action.

### C.  The Nutanix Investor Group's Selection of Counsel Should be Approved

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." *Kim v. Advanced Micro Devices, Inc.*, 2018 WL 2866666, \*2 (N.D. Cal. June 11, 2018) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)) (because lead plaintiff group's selection of counsel had "significant experience [in] securities fraud litigation and class actions" the group's selection was approved as there was "no reason to appoint different counsel to protect the proposed class").

The Nutanix Investor Group has selected and retained Levi & Korsinsky as proposed Lead Counsel for the Class. The members of Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as these and are well-qualified to represent the Class. *See* Exs. 4-5 (the firm resumes of Levi & Korsinsky and Wolf Popper); *see also*, *Daniels Family 2001 v. Las Vegas Sands Corp.*, 2021 WL 41301, at \*3 (D. Nev. Jan. 5, 2021) (appointing Levi & Korsinsky as lead counsel noting the firm's "extensive experience in complex securities class actions"). Levi & Korsinsky has also proved its adequacy to represent

the Class through its actions in *this* litigation to date, including defeating Defendants' motion to dismiss the SAC and aggressively serving discovery on Defendants and third parties, retaining experts and preparing for class certification.

In addition, if the Nutanix Investor Group is appointed as the lead plaintiff, then the Nutanix Investor Group intends that Wolf Popper will act as additional counsel to the Class under the supervision of Levi & Korsinsky, who will ensure an efficient prosecution of the Action without duplication of effort. Wolf Popper is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in its attached resume. For example, *in Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 2:09-cv-01713 (E.D.N.Y.), Wolf Popper represented the Lead Plaintiff and recovered $280 million for investors in residential mortgage-backed securities issued by JPMorgan Acceptance Corp.

Moreover, Levi & Korsinsky and Wolf Popper have significant experience working together as to achieve a positive resolution for the benefit of shareholders. *See, e.g., Kirkland, et. al., v. WideopenWest, Inc.*, Index No. 653248/2018 (N.Y. Sup. Ct. N.Y. County); *In re Sauer-Danfoss, Inc. Stockholder Litigation*, C.A. No. 8396-VCL (Del. Ch.) ($10 million settlement on behalf of the class).

As a result of Levi & Korsinsky's and Wolf Popper's extensive experience in litigation involving issues similar to those raised in this Action, they have the skill and knowledge to prosecute this Action effectively and expeditiously. The Court may be assured that by approving the Nutanix Investor Group's selection of Lead Counsel, the members of the Class will receive the highest caliber of representation.

## VI. CONCLUSION

For the foregoing reasons, the Nutanix Investor Group respectfully requests that this Court: (1) appoint the Nutanix Investor Group as Lead Plaintiff for the Class in the Action or, in the alternative appoint a member of its group as lead plaintiff; and (2) approve Levi & Korsinsky

as Lead Counsel for the Class.

Dated: March 22, 2021                    Respectfully submitted,

                                         **LEVI & KORSINSKY, LLP**

                                         _/s/ Shannon L. Hopkins_
                                         Shannon L. Hopkins (admitted _pro hac vice_)
                                         Kristina Mentone (admitted _pro hac vice_)
                                         Gregory Potrepka (admitted _pro hac vice_)
                                         Andrew Rocco (admitted _pro hac vice_)
                                         1111 Summer Street, Suite 403
                                         Stamford, CT 06905
                                         Tel: (203) 992-4523
                                         Email: shopkins@zlk.com
                                         Email: kmentone@zlk.com
                                         Email: gpotrepka@zlk.com
                                         Email: arocco@zlk.com

                                         Adam M. Apton (SBN 316506)
                                         Adam C. McCall (SBN 302130)
                                         388 Market Street, Suite 1300
                                         San Francisco, CA 94111
                                         Tel: (415) 373-1671
                                         Email: aapton@zlk.com
                                         Email: amccall@zlk.com

                                         _Proposed Lead Counsel for the Class_

                                         **WOLF POPPER LLP**
                                         Robert C. Finkel (admitted _pro hac vice_)
                                         Joshua W. Ruthizer (admitted _pro hac vice_)
                                         845 Third Avenue
                                         New York, NY 10022
                                         Telephone: (212) 759-4600
                                         Facsimile: (212) 459-2093
                                         Email: rfinkel@wolfpopper.com
                                         Email: jruthizer@wolfpopper.com

                                         _Proposed Additional Counsel for the Class_

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE NUTANIX INVESTOR GROUP'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
No. 3:19-cv-01651-WHO