LEVI & KORSINSKY, LLP
Shannon L. Hopkins (admitted *pro hac vice*)
Kristina Mentone (admitted *pro hac vice*)
Gregory Potrepka (admitted *pro hac vice*)
Andrew Rocco (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: kmentone@zlk.com
Email: gpotrepka@zlk.com
Email: arocco@zlk.com

LEVI & KORSINSKY, LLP
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for the Nutanix Investor Group and
Proposed Lead Counsel for the Class*

[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NUTANIX, INC. SECURITIES LITIGATION | Master File No. 3:19-cv-01651-WHO |
| | Hon. William H. Orrick |
| | CLASS ACTION |
| | **NUTANIX INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF** |
| | Date: April 28, 2021<br>Time: 2:00 p.m.<br>Courtroom: 2-17th Floor |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 3

    I.    THE NUTANIX INVESTOR GROUP IS THE MOST ADEQUATE PLAINTIFF..... 3

        A.  The Nutanix Investor Group has the Largest Financial Interest of Any
Movant.......................................................................................................... 3

        B.  The Nutanix Investor Group Satisfies the Requirements of Rule 23 ................. 6

        C.  No Movant Can Rebut the Presumption that the Nutanix Investor
Group is the Most Adequate Plaintiff.................................................................. 11

CONCLUSION .................................................................................................................... 12

**TABLE OF AUTHORITIES**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,

258 F.R.D. 260 (S.D.N.Y. 2009) ....................................................................................... 10

*Bruce v. Suntech Power Holdings Co.*,

No. CV 12-04061 RS, 2012 WL 5927985 (N.D. Cal. Nov. 13, 2012) .................................... 6

*In re Cavanaugh*,

306 F.3d 726 (9th Cir. 2002) ....................................................................................... 3, 11

*Chahal v. Credit Suisse Grp. AG*,

No. 18-CV-02268 (AT)(SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018*), objections

overruled sub nom. Chahal v. Credit Suisse Grp. AG*, No. 18CIV2268ATSN, 2018 WL

6803377 (S.D.N.Y. Aug. 27, 2018) ....................................................................................... 10

*Dura Pharm., Inc. v. Broudo*,

544 U.S. 336 (2005) ....................................................................................................... 5, 7

*Hansen v. Ferrellgas Partners, L.P.*,

No. 16-CV-7840 (RJS), 2017 WL 281742 (S.D.N.Y. Jan. 19, 2017) ...................................... 9

*Hodges v. Akeena Solar, Inc.*,

263 F.R.D. 528 (N.D. Cal. 2009) ....................................................................................... 6

*Hufnagle v. Rino Int'l Corp.*,

No. CV 10-8695-VBFVBKX, 2011 WL 710704 (C.D. Cal. Feb. 14, 2011), *adopted*, No. CV

10-1754-VBFVBKX, 2011 WL 710676 (C.D. Cal. Feb. 16, 2011) ......................................... 11

*Inchen Huang v. Depomed, Inc.*,

289 F. Supp. 3d 1050 (N.D. Cal. 2017) ....................................................................................... 5

*McCracken v. Edwards Lifesciences Corp.*,

No. 813CV1463JLSRNBX, 2014 WL 12694135 (C.D. Cal. Jan. 8, 2014)............................... 6

*In re Nutanix, Inc. Sec. Litig.*,

No. 19-CV-01651-WHO, 2021 WL 783579 (N.D. Cal. Mar. 1, 2021) ...................................... 3

*In re Olsten Corp. Sec. Litig.*,

3 F.Supp.2d 286 (E.D.N.Y.1998) ................................................................................................ 3

*Perlmutter v. Intuitive Surgical, Inc.*,

No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011) .................................... 5

*Richardson v. TVIA, Inc.*,

No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ................................ 3, 5

*In re Surebeam Corp. Sec. Litig.*,

No. 03 CV 1721JM(POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ................................. 6

*In re Versata, Inc., Sec. Litig.*,

No. C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) .......................................... 6

*Waterford Twp. Police v. Mattel, Inc.*,

No. CV 17-04732-VAP (KSx), 2017 WL 10667732 (C.D. Cal. Sept. 29, 2017) ...................... 4

*In re Wrap Techs., Inc. Sec. Exch. Act Litig.*,

No. CV208760DMGRAOX, 2021 WL 71433 (C.D. Cal. Jan. 7, 2021) ................................... 3

*Yousefi v. Lockheed Martin Corp.*,

70 F. Supp. 2d 1061 (C.D. Cal. 1999) ....................................................................................... 8

**Statutes**

15 U.S.C. §78u-4(a)(3)(B) ..................................................................................................... 1, 2

15 U.S.C. §78u-4(a)(3)(B)(i) ................................................................................................ 3, 11

15 U.S.C. §78u-4(a)(3)(B)(iii) .............................................................................................. 3, 11

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ..................................................................................... 3, 4

15 U.S.C. §78u-4(a)(3)(B)(iii)(II) .............................................................................................. 11

**Other Authorities**

S. Rep. No. 104-98, at 11 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679 ................................ 8

**PRELIMINARY STATEMENT**

The Private Securities Litigation Reform Act requires the Court to appoint as lead plaintiff the class member or members who will most adequately represent the Class and creates a presumption that the movant with "largest financial interest in the relief sought by the class" is the most adequate lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B). The Nutanix Investor Group[1] has the largest financial interest of any lead plaintiff movant and has submitted evidence demonstrating its typicality and adequacy as a representative of the Class. Accordingly, its motion should be granted.

A simple comparison of the factors considered by courts in the Ninth Circuit when assessing the relative financial interests of rival movants for lead plaintiff shows that the Nutanix Investor Group has an overwhelmingly larger financial interest than any other movant:

| Movant[2] | Total Shares Purchased | Net Shares Retained 2/28/19 | Net Shares Retained 5/30/19 | Net Funds Expended | LIFO Loss[3] |
|---|---|---|---|---|---|
| Nutanix Investor Group | 432,610 | 129,840 | 112,750 | $6,341,400 | $3,102,825 |
| Frank H. May | 537,735 | 72,000 | (55,000) | $1,199,930 | $742,901 |
| Cal. Ironworkers Field Pen. Trust ("Pension Trust") | 41,800 | 29,500 | 41,800 | $1,715,538 | $705,662 |
| Birmingham Ret. & Relief Sys. ("Birmingham") | 22,285 | 10,300 | 17,696 | $420,538 | $420,602 |

[1] Capitalized terms herein shall have the meaning ascribed to the in the Notice of Motion and Motion of the Nutanix Investor Group for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Motion", ECF No. 177).

[2] Movant Bristol County Retirement System has filed a non-opposition to the competing motions for appointment as the lead plaintiff. ECF No. 192.

[3] Based on a mean-trading price of $23.8898412698.

*See* ECF Nos. 178-2 (the Nutanix Investor Group); 185-2 (Pension Trust); 182-3 (May); 175-2 (Birmingham).[4]

With $3,102,825 in losses, the Nutanix Investor Group is by far the movant with the "largest financial interest" in the Action and, therefore, is presumptively the "most adequate plaintiff" pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B). The next largest LIFO loss is $742,901 (*$2,359,924 less* than the Nutanix Investor Group). The other remaining movants' losses suffered are also substantially smaller than the Nutanix Investor Group's losses.

In addition, each of the competing movants' losses are less than the losses of Norton, who is the member of the Nutanix Investor Group with the largest individual loss. Norton's LIFO losses total *$2,566,490*, over *$697,325 more than all of the remaining competing movants' LIFO losses combined.* On this basis alone, the Nutanix Investor Group should be appointed lead plaintiff.

The Nutanix Investor Group is ready, willing, and able to serve as the lead plaintiff in the Action. In support of its Motion, the Nutanix Investor Group submitted a joint declaration detailing amongst other things its: cohesiveness; decision-making procedures; the members' sophistication, experience, commitment to this litigation, and willingness and efforts to represent the Class; and the members dedication to fulfilling their fiduciary duties to the Class if appointed as the lead plaintiff (the "Joint Declaration", ECF No. 178-3). The Joint Declaration exceeds the requisite *prima facie* showing of typicality and adequacy necessary for the Nutanix Investor Group to be the "most adequate plaintiff" and to be appointed as the lead plaintiff. Moreover, the members of the Nutanix Investor Group submitted a supplemental declaration along with this opposition, which details their efforts concerning the litigation following the filing of the motions for appointment as lead plaintiff. This further evidences the cohesiveness of and oversight of counsel by the Nutanix Investor Group. Given that no movant will be able to rebut the statutory presumption afforded to it through proof or evidence against its typicality or adequacy, the Nutanix Investor Group respectfully submits that its Motion be granted in its entirety.

---

[4] All dollar figures rounded to the nearest dollar.

**ARGUMENT**

**I.     THE NUTANIX INVESTOR GROUP IS THE MOST ADEQUATE PLAINTIFF**

### A. *The Nutanix Investor Group has the Largest Financial Interest of Any Movant*

Under the PSLRA, this Court is directed to "appoint as lead plaintiff 'the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members.'" 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA provides a presumption that the "most adequate plaintiff" to serve as lead plaintiff is the movant with the "largest financial interest in the relief sought by the class." 15 U.S.C § 78u-4(a)(3)(B)(iii). "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status[.]" *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002). Thus, when deciding among competing lead plaintiff movants, the Court must first determine which investor possesses the largest financial interest, and then – absent any showing that could rebut such movant's adequacy or typicality – appoint that investor as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *In re Cavanaugh*, 306 F.3d at 730.

Courts in this District have considered four factors when identifying the movant with the greatest financial interest: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007) (quoting *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y.1998)); *see also In re Nutanix, Inc. Sec. Litig.*, No. 19-CV-01651-WHO, 2021 WL 783579, at *2 (N.D. Cal. Mar. 1, 2021) (Orrick, J.) (same). In this District and throughout the Ninth Circuit, the fourth factor, the "approximate losses suffered", is considered the "most determinative in identifying the plaintiff with the largest financial loss." *Richardson*, 2007 WL 1129344, at *4; *see also In re Wrap Techs., Inc. Sec. Exch. Act Litig.*, No. CV208760DMGRAOX, 2021 WL 71433, at *2 (C.D. Cal. Jan. 7, 2021) ("In this circuit, no case law requires the Court to give equal weight to the first three *Olsten-Lax* factors…. '[c]ourts in the

Ninth Circuit have tended to give the final factor the most emphasis and tend to use a last in, first out ('LIFO') methodology.'" (*quoting Waterford Twp. Police v. Mattel, Inc.*, No. CV 17-04732-VAP (KSx), 2017 WL 10667732, at *5 (C.D. Cal. Sept. 29, 2017)).

The other movants do not even come close to matching the Nutanix Investor Group's financial interest in the Action. The Nutanix Investor Group is entitled to the presumption of "most adequate plaintiff" because, relative to the other movants, it has the largest financial interest of any movant:[5]

| Movant | Total Shares Purchased | Net Shares Retained 2/28/19 | Net Shares Retained 5/30/19 | Net Funds Expended | LIFO Loss[6] |
|---|---|---|---|---|---|
| Nutanix Investor Group | 432,610 | 129,840 | 112,750 | $6,341,400 | $3,102,825 |
| May | 537,735 | 72,000 | (55,000) | $1,199,930[7] | $742,901 |
| Pension Trust | 41,800 | 29,500 | 41,800 | $1,715,538 | $705,662 |
| Birmingham | 22,285 | 10,300 | 17,696 | $420,538 | $420,602 |

*See* ECF Nos. 178-2 (the Nutanix Investor Group); 185-2 (Pension Trust); 182-3 (May); 175-2 (Birmingham).[8]

In its motion, the Nutanix Investor Group presented another, more refined, LIFO calculation, called "*Dura* LIFO", for calculating the approximate loss suffered by it and the competing movants. The *Dura* LIFO methodology employs the LIFO methodology, but removes from the calculation of the approximate loss suffered the losses that are not attributable to the disclosure of the alleged fraud. Specifically, it excludes those accounting losses that were realized

---

[5] All figures presented herein are rounded to the nearest dollar.

[6] Based on a mean-trading price of $23.8898412698.

[7] Based on the information provided by May, it was calculated that May's net funds expended was ($1,183,925) and not ($1,199,930). For the purposes of this evaluation, the Nutanix Investor Group will assume that May's figure for his net funds expended is correct.

[8] All dollar figures rounded to the nearest dollar.

when the artificial inflation was at the same level during the Class Period and the stock price decrease was related to something other than the disclosure of the alleged fraud, *i.e.* there was no intervening corrective disclosure that was alleged to have caused a decrease in the price of Nutanix securities between the times when the securities were acquired and sold. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005); *Richardson*, 2007 WL 1129344, at \*4. Under this more refined methodology, the losses suffered by the Nutanix Investor Group dwarf those suffered by the other movants:

| Movant | *Dura* LIFO Loss |
|---|---|
| The Nutanix Investor Group | $2,905,664 |
| Pension Trust | $705,662 |
| Birmingham | $420,202 |
| May | $162,259[9] |

Indeed, the next largest *Dura* LIFO loss is $705,662 (***$2,200,002 less*** than the Nutanix Investor Group). *Compare* ECF No. 178-2 (Nutanix Investor Group) *with* ECF No. 185-2 (Pension Trust's loss chart).

Notably, Norton alone has sustained *Dura* LIFO losses of over ***$2,386,682*** and therefore single-handedly possesses the largest financial loss relative to any other movant. *See* Motion at 9; ECF No. 178-2. This further supports the conclusion that the Motion should be granted and the Nutanix Investor Group should be appointed lead plaintiff. *See Inchen Huang v. Depomed, Inc.,* 289 F. Supp. 3d 1050, 1054 (N.D. Cal. 2017) (appointing group despite arguments against its appointment when an individual member of the group alone possessed the largest financial

[9] May's loss chart lists his *Dura* LIFO losses as $409,621. ECF No. 182-3. This loss figure, however, fails to offset May's losses from purchases and sales during the Class Period that resulted in gains (and any gains from sales during the Class Period that match to the 55,000 shares purchased prior to the Class Period for which May has not provided any trade information or cost basis). When calculating losses using a LIFO-based methodology, courts routinely offset any losses by gains on intra-class period purchases and matching sales in calculating the largest financial interest. *See, e.g., Perlmutter v. Intuitive Surgical, Inc.,* No. 10-CV-03451-LHK, 2011 WL 566814, at \*10 (N.D. Cal. Feb. 15, 2011) ("[t]he main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price."). As such, when offsetting May's losses by his gains on these specific matched purchases and sales, his *Dura* LIFO loss is $162,259.

interest of all competing movants and noting that the competing movant's request to be appointed over the group that "[t]he Court fails to see how that outcome furthers any goal of the PSLRA."); *Bruce v. Suntech Power Holdings Co.*, No. CV 12-04061 RS, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012) ("This is not a case . . . in which lawyers aggregated [movants] in order to overcome the largest stake requirement. Rather, [movant] meets that requirement on his own."); *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. 2009) (appointing movant group whose largest member had the "greatest financial stake in the litigation of any movant"); *McCracken v. Edwards Lifesciences Corp.,* No. 813CV1463JLSRNBX, 2014 WL 12694135, at *3 (C.D. Cal. Jan. 8, 2014) ("This Court, however, need not decide the issue. One member of the Investor Group alone claims a . . . loss [that] exceeds that of both [the two competing movants], the Court concludes that the Investor Group has the largest financial interest in the relief sought."); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *5 (S.D. Cal. Jan. 5, 2004) ("It makes no practical difference if [the individual movant with the largest financial interest] chooses to associate with other shareholders in order to further distance itself from the next proposed lead plaintiff. Therefore, the court will treat [the movant g]roup as the presumptive lead plaintiff with the largest financial interest without deciding the issue of aggregation."); *see also In re Versata, Inc., Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374, at *4-7 (N.D. Cal. Aug. 20, 2001) (aggregating losses of unrelated movants consisting of two institutional investors and one individual investors with no pre-existing relationship and noting that sophistication of the movants and their substantial interests in the outcome of the litigation supported the group's appointment).

### B.   The Nutanix Investor Group Satisfies the Requirements of Rule 23

The Nutanix Investor Group also meets the adequacy and typicality requirements of Rule 23. As detailed in its Motion (ECF No. 177 at 9-13) and the Joint Declaration (ECF No. 178-3), the Nutanix Investor Group is small cohesive group of sophisticated and experienced investors who can adequately represent the Class' interest as its fiduciary. The Nutanix Investor Group is typical of other investors in the Class as a result of its members' transactions in Nutanix securities

during the Class Period. The Class would benefit from the Nutanix Investor Group's collective appointment as lead plaintiff given its members' unique combination of experience, sophistication, and attributes that would confer benefits upon the Class.

First, Miami F&P is a public pension fund that has over $1.7 billion in assets under management and who is experienced in overseeing counsel in securities class actions. Joint Declaration at ¶3. Notably and importantly, Miami F&P has been involved in the Action as a named plaintiff since the filing of the Consolidated Amended Complaint for Violations of the Federal Securities Laws on September 9, 2019. *Id.*; *see* ECF 102. During this time, Miami F&P has been active in the Action and overseen counsel in the Action. Joint Declaration at ¶3. Miami F&P has a sizeable interest financial interest of $192,447.19 in *Dura* LIFO losses in the outcome of this litigation and is prepared to discharge his duties as a lead plaintiff. *Id.* In addition to its experience and sophistication, the Class would benefit from Miami F&P serving as a co-lead plaintiff given it is uniquely positioned to quickly resume the prosecution of this case based on its significant involvement over the past one and half years.

Second, Flores is an investor that originally sought appointment as a lead plaintiff in the Action. *Id.* at ¶2. Since seeking appointment as the lead plaintiff in the Action in May 2019, Flores has continued to monitor the litigation and communicate with his counsel at Wolf Popper, LLP regarding the litigation. Flores has a sizeable interest financial interest of $326,534.71 in *Dura* LIFO losses in the outcome of this litigation and is prepared to discharge his duties as a lead plaintiff. *Id.* In addition to his previous efforts in the Action, the Class will additionally benefit from his appointment as a lead plaintiff from his significant experience as a software engineer and knowledge of the very same industry in which Nutanix operates. *See id.*

Third, Norton is the type of movant that the Court would presumably expect to seek appointment as part of the reopened lead plaintiff appointment process. Norton approached Levi & Korsinsky, LLP to represent his and the Class's interests in response to the Court reopening the lead plaintiff process and the over $2.386 million dollar *Dura* LIFO loss Norton incurred due to his bullish investments in Nutanix securities during the Class Period. *See id.* at 4. Norton is a

sophisticated and experienced investor that has ran his own business and invested in securities for over 30 years. *Id*. Norton, individually and collectively as part of the group, is strongly motivated to seek to achieve the largest obtainable recovery in the Action on behalf of the Class and to recover his own losses as a result of the alleged fraud. *Id.* at ¶¶5, 16.

Even though Norton individually has a much more substantial financial interest in the outcome of the Action, Norton sought appointment with Miami F&P and Flores as a group of investors to collectively represent the interests of the Class because he believed that this grouping would benefit the Class. Specifically, he believed that his appointment as part of a group with Miami F&P would benefit the Class, in significant part, from Miami F&P's substantial participation in the Action over the past year and half, its experience in litigating securities class actions, and its additional experience and sophistication as a large institutional investor. *See id.* at ¶4. Likewise, Norton believed that the Class would further benefit from Flores being part of this small group of investors based on his continued demonstrated efforts concerning this litigation, including seeking appointment as the lead plaintiff in this Action in May 2019, and his relevant education and industry-specific experience in the same industry that Nutanix operates. *Id*.

As further evidence of the cohesiveness of the Nutanix Investor Group and the collective belief of its members that each of them is adequate, the members of the group have agreed that if this Court finds that only a single investor should be appointed as lead plaintiff, then each of the members would support the appointment of any member of the group as lead plaintiff. *See id.* at ¶22. Thus, in summary, Norton could have sought appointment alone given his sizable financial interest, but rather sought to present a group of likeminded investors that have significant and unique attributes by which the Class would benefit if they are collectively appointed as the lead plaintiff. *See, e.g., Yousefi v. Lockheed Martin Corp.,* 70 F. Supp. 2d 1061, 1071 (C.D. Cal. 1999) ("The Court also finds that with the appointment of one lead plaintiff who is an individual private investor and one lead plaintiff that is an institutional investor, the lead plaintiffs will represent a broader range of shareholder interests than if the Court appointed an individual or an institutional investor alone."); S. Rep. No. 104-98, at 11 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 690

("The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts").

As detailed in its Joint Declaration, the Nutanix Investor Group is a sophisticated and cohesive group of members that are committed to working together and serving as a faithful fiduciary to the Class. Specifically, the Joint Declaration details each of the members' individual and collective commitment to the litigation, to obtaining the best possible recovery for the Class, and willingness to discharge their fiduciary duties to the Class by overseeing and managing counsel, quickly making decisions concerning the litigation, attending depositions, producing documents, and ensuring that the Action is litigated effectively and efficiently.

In further support of its Motion, the Nutanix Investor Group submits herewith a supplemental declaration to evidence its members' ability to collectively communicate and discharge its oversight of the litigation. *See* Joint Declaration in Further Support of Motion for Appointment as Lead Plaintiff ("Supplemental Joint Declaration"). After the filing of the motions for appointment as the lead plaintiff, the members of the Nutanix Investor Group have remained informed about the status of the Action and the lead plaintiff motions. *Id.* at ¶4. On March 30, 2021, the members of the Nutanix Investor Group held a video teleconference with its counsel to discuss the competing motions for appointment as the lead plaintiff. *Id.* at ¶5. During this call, the members of the Nutanix Investor Group also re-affirmed their desire to work as a cohesive group and their commitment to obtain the greatest possible recovery for the Class. *Id.* at ¶6.

Here there can be little question that Nutanix Investor Group is already functioning as a cohesive unit with its group members having already convened two joint calls to discuss among other things, the topics highlighted in the Joint Declaration and the Supplemental Joint Declaration. Thus, the Joint Declaration and the Supplemental Joint Declaration evidences the Nutanix Investor Group's continued commitment to the litigation and its ability to function cohesively as a group. Under nearly identical facts, courts have repeatedly found groups to have "made a *prima facie* showing of adequacy." *Hansen v. Ferrellgas Partners, L.P.*, No. 16-CV-7840 (RJS), 2017 WL 281742, at *5 (S.D.N.Y. Jan. 19, 2017); *see id*. at *4 (noting that the group

submitted "two joint declarations" when making this finding); *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN), 2018 WL 3093965, at *5 (S.D.N.Y. June 21, 2018*), objections overruled sub nom. Chahal v. Credit Suisse Grp. AG*, No. 18CIV2268ATSN, 2018 WL 6803377 (S.D.N.Y. Aug. 27, 2018) ("Their supplemental declaration indicated that they subsequently held a second conference to discuss the progress of the litigation . . . This factor weighs in favor of their adequacy as lead plaintiff."); *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009).

By selecting Levi & Korsinsky to serve as lead counsel for the Class, the Nutanix Investor Group has selected experienced and competent counsel that has already zealously and effectively represented the Class. Levi & Korsinsky has already served as the Court-appointed lead counsel in this litigation. Prior to the reopening of the lead plaintiff appointment process, Levi & Korsinsky vigorously represented the interests of the Class and achieved a hard-fought success for the Class by defeating Defendants' motion to dismiss. In addition to developing the theories for the Action, drafting extensive amended complaints, and defeating Defendants' motion to dismiss, Levi & Korsinsky has also: (i) drafted the motion for class certification prior to the Court's March 1, 2021 order; (ii) retained a damages and loss causation expert and prepared for expert disclosures in connection with the expected motion for class certification; and (iii) commenced discovery in earnest, by amongst other things, reviewing 18,000 documents, issuing thirty Rule 45 subpoenas, and serving document requests and interrogatories on the Defendants. Joint Declaration at ¶¶6, 8. In order to achieve this and bring the case to its current procedural posture, Levi & Korsinsky has committed nearly 3,500 hours in the prosecution of the Action. *Id.* at ¶6. Given Levi & Korsinsky's extensive experience in the litigating the Action to date and experience in litigating complex securities litigation like the Action, the Nutanix Investor Group selection of counsel further evidences its adequacy.

In summary, the Nutanix Investor Group is a typical and adequate group to oversee litigation in the Action with each member contributing to the representation of the Class and their interests. *See* Motion at 9-13; Joint Declaration; Supplemental Joint Declaration. The Nutanix

Investor Group has evidenced its commitment to the Action, its commitment to discharging its duties as lead plaintiff if appointed by the Court, and its ability function as a small and cohesive group of investors who seek to achieve the best possible outcome for the Class. *See id.* This showing entitles the Nutanix Investor Group to be the "most adequate plaintiff."

### C. No Movant Can Rebut the Presumption that the Nutanix Investor Group is the Most Adequate Plaintiff

By having timely filed a motion for appointment as the lead plaintiff, possessing the largest financial interest in the Action, and sufficiently making a *prima facie* showing of typicality and adequacy, the Nutanix Investor Group has fulfilled the PSLRA's requirements to become the "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (discussing requirements to become the "most adequate plaintiff"). The Nutanix Investor Group, therefore, is entitled to the presumption that it shall be appointed as the lead plaintiff in the Action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (stating the court "shall appoint as lead plaintiff" the "most adequate plaintiff"). The Nutanix Investor Group's presumption as the "most adequate plaintiff" may only be rebutted upon ***proof*** by a class member that the Nutanix Investor Group "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *In re Cavanaugh,* 306 F.3d at 741. Absent *proof* rebutting the presumption, the Nutanix Investor Group is entitled to be appointed as the lead plaintiff. *See Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBFVBKX, 2011 WL 710704, at *6-9 (C.D. Cal. Feb. 14, 2011), *adopted*, No. CV 10-1754-VBFVBKX, 2011 WL 710676 (C.D. Cal. Feb. 16, 2011) (appointing the most adequate plaintiff where competing movants failed to submit proof of unique defense). The other lead plaintiff movants cannot meet this burden.

The Nutanix Investor Group is adequate to represent the Class. It consists of three Class members with years of experience in business, litigation, and investing that are all committed to working together effectively to achieve the best possible outcome for the Class in the Action. *See* Joint Declaration. Furthermore, the Nutanix Investor Group is typical of the Class as its members

purchased or acquired Nutanix securities during the Class Period. Finally, the Nutanix Investor Group has evidenced its commitment to the Action and to discharging its duties as lead plaintiff by its selection of counsel that is not only experienced in securities class actions, but specifically counsel that has intimate knowledge of the Action. Thus, any arguments raised by any of the competing movants against will therefore be purely speculative and will fail for lack of proof.

## CONCLUSION

For the foregoing reasons, the Nutanix Investor Group respectfully requests that this Court: (1) appoint it as lead plaintiff for the Class in the Action and (2) approve Levi & Korsinsky, LLP as lead counsel for the Class.

Dated: April 5, 2021                                  Respectfully submitted,

**LEVI & KORSINSKY, LLP**
*/s/ Shannon L. Hopkins*
Shannon L. Hopkins (admitted *pro hac vice*)
Kristina Mentone (admitted *pro hac vice*)
Gregory Potrepka (admitted *pro hac vice*)
Andrew Rocco (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: kmentone@zlk.com
Email: gpotrepka@zlk.com
Email: arocco@zlk.com

Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

Nicholas I. Porritt (*pro hac vice* forthcoming)
Alexander A. Krot III (*pro hac vice* forthcoming)
1101 30th Street, NW
Suite 115
Washington, DC 20007
Tel: (202)524-4290

Email: nporritt@zlk.com
Email: akrot@zlk.com

*Proposed Lead Counsel for the Class*

**WOLF POPPER LLP**
Robert C. Finkel (admitted *pro hac vice*)
Joshua W. Ruthizer (admitted *pro hac vice*)
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 459-2093
Email: rfinkel@wolfpopper.com
Email: jruthizer@wolfpopper.com

*Proposed Additional Counsel for the Class*