**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone:     (858) 997-0860
Facsimile:     (858) 369-0096

[Additional Counsel Listed On
Signature Page]

*Counsel for Proposed Lead Plaintiff City of
Birmingham Retirement and Relief System
and Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NUTANIX, INC. SECURITIES LITIGATION | No. 3:19-cv-01651-WHO<br><br>CLASS ACTION<br><br>**CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION FOR LEAD PLAINTIFF APPOINTMENT**<br><br>DATE: April 28, 2021<br>TIME: 2:00 p.m.<br>COURTROOM: 2 – 17th Floor<br>JUDGE: William H. Orrick |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   ARGUMENT ....................................................................................................................... 3

      A.    Birmingham Should Be Appointed Lead Plaintiff.................................................. 3

            1.    Birmingham Has The Largest Financial Interest Of The Two
                  Original Timely Applicants, Which Are The Only Applicants
                  The Court Should Consider, And Its Adequacy And Typicality
                  Are Undisputed .......................................................................................... 4

            2.    Frank May Does Not Have A Larger Financial Interest Than
                  Birmingham And Does Not Satisfy Rule 23's Adequacy And
                  Typicality Requirements ............................................................................ 6

      B.    No "Rare Circumstances" Justify Consideration Of New, Untimely
            Movants.................................................................................................................. 9

            1.    The Short Extension Of The Class Period Does Not Justify
                  Consideration Of California Ironworkers' Motion ................................... 10

            2.    The Court Also Should Not Consider The "Nutanix Investor
                  Group," An Improper Lawyer-Driven Assemblage That Is Not
                  Permitted To Serve As Lead Plaintiff In This District............................. 12

III.  CONCLUSION .................................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Applestein* v. *Medivation, Inc.,*
2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) ..................................................................... 8, 12

*Bodri v. Gopro, Inc.,*
2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ........................................................................ 12

*Born v. Quad/Graphics, Inc.,*
2020 WL 994427 (S.D.N.Y. Mar 2, 2020) .............................................................................. 7

*Borteanu v. Nikola Corp.,*
2020 WL 7392795 (D. Ariz. Dec. 15, 2020) ........................................................................... 8

*Deering v. Galena Biopharma, Inc.,*
2014 WL 4954398 (D. Or. Oct. 3, 2014) ................................................................................. 7

*Dube v. Signet Jewelers Ltd.,*
2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017) ..................................................................... 10, 11

*Dura Pharmaceuticals, Inc. v. Broudo,*
544 U.S. 336 (2005) ........................................................................................................... 4, 7

*Ferreira v. Funko, Inc.,*
2020 WL 3246328 (C.D. Cal. June 11, 2020) ......................................................................... 7

*Hurst v. Enphase Energy, Inc.,*
2020 WL 7025085 (N.D. Cal. Nov. 30, 2020) ......................................................................... 8

*In re Allergan PLC Sec. Litig.,*
2020 WL 8620082 (S.D.N.Y. Dec. 7, 2020) ................................................................... *passim*

*In re Cavanaugh,*
306 F.3d 726 (9th Cir. 2002) ............................................................................................ 1, 4, 6

*In re Nutanix, Inc. Sec. Litig.,*
2021 WL 783579 (N.D. Cal. Mar. 1, 2021) ......................................................................... 1, 4, 6

*In re Olsten Corp. Sec. Litig.,*
3 F. Supp. 2d 286 (E.D.N.Y. 1998) ......................................................................................... 4

*In re Stitch Fix, Inc., Sec. Litig.,*
393 F. Supp. 3d 833 (N.D. Cal. 2019) ................................................................................... 12

*In re Tezos Sec. Litig.*,
  2019 WL 2183448 (N.D. Cal. Apr. 8, 2019) .......................................................................... *passim*

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  947 F.Supp.2d 366 (S.D.N.Y.2013)........................................................................................ 11

*Perlmutter v. Intuitive Surgical, Inc.*,
  2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ............................................................................ 7

*Plaut v. Goldman Sachs Grp., Inc.*,
  2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)........................................................................... 9

*Reese v. Malone*,
  2015 WL 1526567 (W.D. Wash. Apr. 3, 2015)........................................................................ 10

*Richardson v. TVIA, Inc.*,
  2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .......................................................................... 7

*Rieckborn v. Velti PLC*,
  2013 WL 6354597 (N.D. Cal. Dec. 3, 2013) ............................................................................ 8

*Thomas v. Magnachip Semiconductor Corp.*,
  2015 WL 3749784 (N.D. Cal. 2015)....................................................................................... 11

*Tsirekidze v. Syntax-Brillian Corp.*,
  2008 WL 942273 (D. Ariz. 7, 2008).................................................................................... 8, 13

*Zhu v. UCBH Holdings, Inc.*,
  682 F. Supp. 2d 1049 (N.D. Cal. 2010) .................................................................................... 5

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(A) ........................................................................................................ 4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................... 1

## I.  INTRODUCTION

Of the four pending motions for Lead Plaintiff appointment, the Court need only consider two—those of Birmingham and May, the only remaining applicants who originally sought appointment within the 60-day period mandated by the PSLRA.[1]  Of these two timely applicants, Birmingham is clearly the "most adequate plaintiff" and should be appointed as the Lead Plaintiff. Birmingham's financial interest is larger than May's under a proper assessment of the applicable *Lax-Olsten* factors, and its adequacy and typicality are undisputed.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see In re Nutanix, Inc. Sec. Litig.*, 2021 WL 783579, at *2 (N.D. Cal. Mar. 1, 2021) (describing the *Lax-Olsten* factors widely utilized by courts to assess the class member with the "largest financial interest" under the PSLRA).

Courts overwhelmingly apply a two-step process for selecting a new lead plaintiff where, as here, a previously appointed lead plaintiff must be replaced.  *First*, the court asks whether there are any willing plaintiffs from the original movant pool.  If the answer to this threshold question is yes, the court looks ***exclusively*** at these original applicants in selecting the "most adequate plaintiff" pursuant to the PSLRA's sequential process.  *In re Tezos Sec. Litig.*, 2019 WL 2183448, at *3 (N.D. Cal. Apr. 8, 2019) (Seeborg, J.) (collecting cases and appointing "the only existing sequential plaintiff … who is willing to take the lead and timely applied for lead plaintiff"); *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) (describing "the clear path that the district court must follow in selecting the lead plaintiff" under the PSLRA's sequential process).  *Second*, ***if, and only if***, there are no willing and qualified movants from the original pool, does the court ***potentially*** move on to consider the applications of "latecomers" who failed to timely seek appointment within the PSLRA's 60-day window.  *In re Tezos*, 2019 WL 2183448, at *3 (courts may select among those that "did not move for an appointment in the initial period" "only where sequential plaintiffs are

---

[1] All capitalized but undefined terms herein have the meanings give to them in Birmingham's opposition to the competing motions for Lead Plaintiff appointment, ECF No. 195.

unavailable or unwilling to take the lead" or "there is no opposition from other class members"); *In re Allergan PLC Sec. Litig.*, 2020 WL 8620082, at *2 (S.D.N.Y. Dec. 7, 2020) (refusing to consider the motions of "latecomer applicant[s]" that claimed a larger financial interest than the original, timely movants).

Here, Birmingham has the largest financial interest of any of the remaining movants that originally sought Lead Plaintiff status. Indeed, Birmingham has a significant loss of over $420,000 that has actually *increased* nearly three-fold since its original motion was filed and the Class Period was expanded, further incentivizing it to obtain the best possible recovery on behalf of the Class. Birmingham also purchased substantially more shares than it sold during the Class Period, with over $860,000 in net expenditures. Moreover, Birmingham's trading history is exceptionally clean: *all* of its losses were incurred on shares purchased before the two corrective disclosures and retained through the end of the Class Period, thus giving rise to *recoverable* damages. Finally, Birmingham's adequacy and typicality have not been challenged by *any* other movant—either when the motions were originally filed, or presently.

The only other original, timely movant is Frank May. However, his application is beset by fatal deficiencies. While May claims larger trading losses than Birmingham, he is both a "net seller" and a "net gainer" in Nutanix stock during the Class Period. May's status as a net seller and a net gainer seriously undermines his claimed financial interest and effectively disqualifies him from serving as Lead Plaintiff under well-settled law. In addition, May is a quintessential day trader with an extraordinary number of rapid in-and-out trades, which renders him atypical and subject to unique defenses. Appointing May will at *minimum*, cause the litigation to be sidetracked by these numerous individualized issues, and at worst, jeopardize class certification due to inadequate representation. There is no need for the Class to be subject to these risks—particularly where there is an institutional investor with a large financial stake in this litigation that is ready, willing, and

BIRMINGHAM'S REPLY IN FURTHER SUPPORT OF ITS
MOTION FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:19-CV-01651-WHO

ideally suited to represent the Class.

Finally, there are no "rare circumstances" here that justify consideration of the two "latecomer" competitors, California Ironworkers and the Nutanix Investor Group. *See Allergan*, 2020 WL 8620082, at *2. Both of these untimely movants had losses in the original class period and could have moved for lead plaintiff appointment within the PSLRA's 60-day limitation. Unlike Birmingham, both chose to sit on the sidelines and have offered no justification whatsoever to side-step courts' clear preference for plaintiffs that comply with the PSLRA's 60-day time limitation, and the Ninth Circuit's instruction that courts strictly follow the PSLRA's statutory scheme in selecting a lead plaintiff. Notably, the Class Period has not been dramatically expanded, and the nature of the claims, allegations, and theories of liability remain substantially the same as when the case was filed. Appointment of the Nutanix Investor Group – which was clearly cobbled together by its lawyers at the eleventh hour in an attempt to retain control of the litigation – would also go against the clear weight of authority in this District and nationwide finding that such lawyer-driven "groups" undercut the primary purpose of the PSLRA—to prevent lawyer-driven litigation.

## II. ARGUMENT

### A. Birmingham Should Be Appointed Lead Plaintiff

Birmingham should be appointed as Lead Plaintiff because it has the largest financial interest of any qualified applicant that originally sought appointment in accordance with the PSLRA, and its adequacy and typicality are undisputed.[2]

Specifically, Birmingham (1) purchased 22,285 shares of Nutanix common stock during the Class Period; (2) purchased 18,346 net shares during the Class Period; (3) expended a total of $867,120 in net funds on such transactions; and (4) suffered approximate losses of $420,538 on

---

[2] Bristol County and Jose Flores, individually, also moved for Lead Plaintiff appointment within the statutory deadline. However, Bristol County filed a statement of non-opposition to the competing movants, effectively withdrawing its motion from consideration. ECF No. 192. Flores lost his original bid for appointment and now moves again in an improper amalgamation of unrelated investors created by counsel. *See infra* Part II.B.2.

either a LIFO or FIFO basis.  *See Nutanix*, 2021 WL 783579, at *2 (describing the *Lax-Olsten* factors typically considered by courts "[i]n assessing which class member has the "largest financial interest") (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)).  Accordingly, Birmingham has a large financial stake in the litigation under ***all*** of the applicable *Lax-Olsten* factors.  Additionally, Birmingham has an exceptionally clean trading history, with ***all*** of its losses incurred on shares purchased before the first two corrective disclosures and held through the end of the Class Period, thus giving rise to recoverable damages under the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005).

> **1.     Birmingham Has The Largest Financial Interest Of The Two Original Timely Applicants, Which Are The Only Applicants The Court Should Consider, And Its Adequacy And Typicality Are Undisputed**

The PSLRA requires that "any member of the purported class" interested in serving as lead plaintiff file a motion "not later than 60 days after notice [of the pendency of the action] is published."  15 U.S.C. § 78u-4(a)(3)(A).  Limiting consideration of potential "replacement" lead plaintiffs to original, timely applicants who complied with the PSLRA is in accordance with the great weight of authority within this District and across the nation, and complies with the Ninth Circuit's mandate in *Cavanaugh* that courts strictly adhere to the PSLRA's statutory framework in selecting a lead plaintiff.  *See Cavanaugh*, 306 F.3d at 729-31 (directing district courts to follow the PSLRA's "simple three-step process for identifying the lead plaintiff").  In *Cavanaugh*, the Ninth Circuit emphasized that the "first step" of this process – publication of "notice explaining the nature of [the] claim and advising other potential plaintiffs that they may move to be appointed lead plaintiff" – was "among the most important" requirements established by the PSLRA as it eliminated a "race to the courthouse" by giving potential plaintiffs ample time to "get involved and seek lead plaintiffs status."  *Id.* at 737-38 (citing 15 U.S.C. § 78u-4(a)(3)(A)).

While *Cavanaugh* did not address the selection of a "replacement" lead plaintiff, the district

court's recent decision in *Tezos* is on-point.  Facing a similar situation as here, Judge Seeborg conducted a thoughtful and thorough analysis of relevant case law from the past fifteen years and concluded that, in selecting a new lead plaintiff under the PSLRA, the proper procedure is to first "consider timely applicants" – *i.e.*, those that sought lead plaintiff appointment within the PSLRA's initial 60-day window – and only consider new applicants if "sequential plaintiffs are unavailable or unwilling to take the lead; or when there is no opposition from other class members."  *In re Tezos*, 2019 WL 2183448, at *3-4 (rejecting proposed substitute lead plaintiff who did not timely file a motion for appointment at the outset of the case) (citing *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) (White, J.) ("[T]he plain language of the [PSLRA] precludes consideration of a financial loss asserted for the first time in … any pleading … filed after the sixty (60) day window has closed.")).  Accordingly, the *Tezos* court appointed as the new lead plaintiff "the only existing sequential plaintiff with financial interests in the case who is willing to take the lead and timely applied for lead plaintiff." *Id.* at *3, 5.

Just months ago in *Allergan*, the Chief Judge of the Southern District of New York reached the exact same conclusion: in selecting a new lead plaintiff, "latecomer" movants should not be considered if there is a willing applicant that timely moved for appointment at the outset of the litigation. *Allergan*, 2020 WL 8620082, at *2.  In granting the application of the "one and only contender that initially and timely sought lead plaintiff status," the *Allergan* court relied on *Tezos* as well as other decisions from this District and across the nation, and found it unnecessary to consider the applications of "three new competitors" who claimed greater financial interests— including a movant that claimed over $32 million in losses, over forty times that of the timely applicant that was appointed. *Id.*

Finding that Birmingham and May are the only applicants the Court should consider for appointment is entirely consistent with Ninth Circuit law.  "If the plaintiff with the greatest financial

stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Cavanaugh*, 306 F.3d at 730.  Following the withdrawal of the former Court-appointed Lead Plaintiff, Birmingham and May are "the only existing sequential plaintiff[s] with financial interests in the case who [are] willing to take the lead and timely applied for lead plaintiff." *In re Tezos*, 2019 WL 2183448, at *3 (citing *Cavanaugh*, 306 F.3d at 732).  While the Court should reject May for a multitude of reasons discussed in Birmingham's opposition brief (ECF No. 195) and detailed further below, Birmingham strictly adhered to the PSLRA's mandates, has a substantial financial interest in the litigation under all of the *Lax-Olsten* factors and other relevant financial interest metrics, and is the "presumptively most adequate plaintiff" to lead this action.

Moreover, unlike May, Birmingham's adequacy and typicality are undisputed.  Indeed, Birmingham is an ideal Lead Plaintiff in this case, and has been certified as a suitable and qualified class representative after extensive discovery in several other highly successful cases.  *See* ECF No. 174 at 9-10.

### 2.    Frank May Does Not Have A Larger Financial Interest Than Birmingham And Does Not Satisfy Rule 23's Adequacy And Typicality Requirements

May argues that he has a larger financial interest in the litigation than Birmingham, but he relies only on the final *Lax-Olsten* factor, approximate losses, and ignores the first three *Lax-Olsten* factors.  *See* ECF No. 194 at 2, 16 (asserting approximately $743,104 in LIFO losses compared to Birmingham's $420,538 in LIFO losses).  May's conspicuous failure to address all four of the *Lax-Olsten* factors that "courts typically consider" in "assessing which class member has the "largest financial interest," *see Nutanix*, 2021 WL 783579, at *2, is simple: as a "net seller" and a "net gainer," he is effectively disqualified from serving as the Lead Plaintiff.

Courts overwhelmingly refuse to appoint net sellers who are also net gainers, recognizing

that they likely profited from the fraud. *See Deering v. Galena Biopharma, Inc.*, 2014 WL 4954398, at *11 (D. Or. Oct. 3, 2014) ("[C]ourts around the country consistently have rejected applications for lead plaintiff made by net sellers and net gainers …."); *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *8-9 (N.D. Cal. Feb. 15, 2011) (Koh, J.) (collecting cases concluding that a net seller who is also a net gainer should not be appointed because it "arguably profits more from the fraud than suffers from it"). Courts have gone so far as to admonish a net seller movant's failure to account for net gains as "wast[ing] the Court's time." *Ferreira v. Funko, Inc.*, 2020 WL 3246328, at *7 (C.D. Cal. June 11, 2020). May concedes that courts typically weigh all four *Lax-Olsten* factors, but asserts that courts place the "greatest weight" on "losses suffered." ECF No. 194 at 2. Tellingly, May does not cite a single case where a court appointed a "net seller" who was also a "net gainer." Indeed, May's own cases make the point that net sellers who are also net gainers are unfit to serve as lead plaintiff because they likely "profited from the purchase and sale of defendants' shares during the class period" and may have "trouble proving damages." *See Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *3-4 (N.D. Cal. Apr. 16, 2007). In contrast, Birmingham suffered significant losses and is both a "net purchaser" and a "net loser," and thus its appointment "comes with no such risks." *See Born v. Quad/Graphics, Inc.*, 2020 WL 994427, at *2 (S.D.N.Y. Mar 2, 2020) (disqualifying net seller and net gainer movant and appointing institutional investor).

Birmingham's larger financial interest in the litigation is also manifest when Birmingham's and May's losses are compared under the lens of the Supreme Court's decision in *Dura*, to isolate only ***recoverable*** losses that may be attributable to fraud. *See Dura*, 544 U.S. at 342 (recoverable losses exclude "economic losses" incurred on pre-corrective disclosure sales). As noted above, ***all*** of Birmingham's $420,538 in losses were incurred on shares purchased before the first two corrective disclosures and held through the end of the Class Period. Accordingly, Birmingham's

recoverable *Dura* loss of over $420,000 is larger than May's claimed *Dura* loss of $409,621 (ECF No. 182-3 at 13), and substantially larger than May's claimed *Dura* losses after properly offsetting gains on shares sold into the fraud. *See* ECF No. 193 at 5 n.9 (calculating May's *Dura* loss at $162,259 after offsetting gains).

Furthermore, as a quintessential day trader, May cannot satisfy Rule 23(a)'s "typicality" and "adequacy" requirements. *See Hurst v. Enphase Energy, Inc.*, 2020 WL 7025085, at *8 (N.D. Cal. Nov. 30, 2020) (Freeman, J.) (disqualifying day trader movants where the Court had "serious concerns about their vulnerability to a defense that they were trading in response to information other than the alleged misstatements and omissions made"); *Borteanu v. Nikola Corp.*, 2020 WL 7392795, at *6 (D. Ariz. Dec. 15, 2020) (day trader disqualified when doubts about his adequacy were raised by trading that "seems to show he did not rely on [company's] false statements"). May reports 600 trades over a three-month period, including as many as 67 trades in a single day. This type of daily trading activity clearly demonstrates a lack of reliance on Defendants' false statements in May's buy/sell/hold decisions, rendering May atypical.[3] *See Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. 7, 2008) (finding day trading "belies any true reliance on company reports or even on the integrity of the stock price itself"). In contrast, Birmingham has a clean trading pattern with only six blocks of trades—all purchases—which Birmingham retained though the end of the Class Period. *See Applestein* v. *Medivation, Inc.,* 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010) (Patel, J.) (finding atypical a movant who made as many as 44 trades in a single day, and a total of 407 trades in approximately 21-months, and appointing institutional investor with the "cleanest transaction history" of the movants).

Moreover, one of the two sworn certifications May submitted to the Court is inaccurate,

---

[3] May's high frequency, in-and-out trading patterns – including large blocks of purchases and sales occurring on the same day, only hours apart – distinguish this case from the Court's decision in *Rieckborn v. Velti PLC*, 2013 WL 6354597, at *4 (N.D. Cal. Dec. 3, 2013) that unsupported claims of "day trading or in-and-out trading" are insufficient to challenge typicality.

which only raises further questions about his adequacy to represent the Class. May's most recent sworn certification included four additional trades from July 2018 that are not listed in the sworn certification that May filed with his original motion. *Compare* ECF 182-2 with 37-3. May either omitted these trades from his original certification and did not inform the Court of this error in connection with his present motion for appointment, or improperly included someone else's trades in his most recent certification. Even if May's inaccurate entries (past or present) were inadvertent and could somehow be chalked up to excusable neglect, May himself has previously argued that submitting a false PSLRA certification amounts to *prima facie* evidence of inadequacy. *See* ECF No. 69 at 5; *Plaut v. Goldman Sachs Grp., Inc.,* 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (finding applicant inadequate in light of clerical errors in PSLRA certification).

**B.**    **No "Rare Circumstances" Justify Consideration Of New, Untimely Movants**

As discussed above, in selecting a "replacement" lead plaintiff, courts in this District and nationwide strictly enforce the PSLRA's 60-day limitation and look beyond the original movant pool only under "rare circumstances." *See infra* Part II.B.1. Here, there is "no need" for the Court to "look further afield" from the original pool of movants, given that Birmingham has a substantial financial stake in the claims and is willing to step forward and assume leadership of the case. *See Allergan*, 2020 WL 8620082, at *1-2 (declining to consider the applications of new movants).

Like the new lead plaintiff appointed in *Allergan*, Birmingham timely applied for appointment within the PSLRA's initial 60-day notice period, "satisfies all the prerequisites for appointment as lead plaintiff," and "was denied the [original] appointment only because its claimed loss was less than that of [the original lead plaintiff]." *Id.* at *2. Similarly, in *Tezos*, the court rejected a proposed "substitute" lead plaintiff who had not originally moved for appointment and failed to explain "why the adequacy purposes of the PSLRA should be ignored for a plaintiff who failed to apply within the allotted time period." *See In re Tezos*, 2019 WL 2183448, at *3, n.1. The *Tezos* court outlined some of the markedly distinct situations that might justify departing from the

general rule, such as where none of the original lead plaintiff applicants stepped forward to reapply and no class member objected to the court's consideration of new applicants. *Id.* at *4 (collecting cases). Other courts that have permitted new applicants have done so because of sea changes in the securities laws that eliminated an entire class of securities from the lawsuit, *see Reese v. Malone*, 2015 WL 1526567 (W.D. Wash. Apr. 3, 2015), or where the lead plaintiff filed a new complaint that "alter[ed] dramatically the gravamen of the claims alleged against Defendants" by asserting "categorically different theories of securities fraud." *See Dube v. Signet Jewelers Ltd.*, 2017 WL 1379385, at *1 (S.D.N.Y. Apr. 14, 2017).

No such "rare circumstances" are present here. To the contrary, the Class Period has been extended by a mere three months, the original movants continue to have standing to pursue the claims, and the gravamen of the case remains essentially the same as when it was originally brought.

### 1.  The Short Extension Of The Class Period Does Not Justify Consideration Of California Ironworkers' Motion

California Ironworkers has offered no explanation as to why it did not apply for lead plaintiff status at the outset of the case. California Ironworkers suffered a material loss in the initial class period and could have sought to serve as lead plaintiff within the 60-day period mandated by the PSLRA. Indeed, California Ironworkers' loss in the initial class period was approximately $120,000 – similar to that of Birmingham's and over 10 times the loss reported by another original movant, Bristol County. *See Allergan*, 2020 WL 8620082, at *2 (rejecting new lead plaintiff applicants that failed to offer "any explanation – let alone a satisfactory explanation – for why it did not make a timely application to be lead plaintiff").

Moreover, the operative Class Period has expanded by a mere three months and the operative complaint asserts the same claims, against the same defendants, based on substantially

the same theory of liability as when the case was filed.[4]  Accordingly, there is no legitimate reason to depart from the PSLRA's clear framework and consider latecomer movants.  *See Signet Jewelers*, 2017 WL 1379385, at *1 (reopening lead plaintiff process to new applicants where amended complaint expanded the class period by more than ***three years*** and asserted "entirely *new* alleged misconduct during an entirely *new* time period") (emphasis in original).  Expansion of a class period is an extremely common occurrence in securities litigation.[5]  It is so ubiquitous that re-opening the lead plaintiff appointment process to new movants is generally ***not*** required unless the amended complaint "substantially alters the claims or class members." *See Thomas v. Magnachip Semiconductor Corp.,* 2015 WL 3749784 at *4 (N.D. Cal. 2015) (Tigar, J) (citing *Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F.Supp.2d 366, 367 (S.D.N.Y.2013)).  A short extension of the class period does not suffice.  *Id.* (collecting cases).

Here, the Court properly re-opened the lead plaintiff process recognizing that Flores – who was attempting to substitute himself as co-lead plaintiff – might not have any financial interest under the extended class period.  ECF No. 171.  But the Court's concerns about the financial interest calculus being "upended" as to other would-be Lead Plaintiffs have simply not materialized.  Birmingham continues to have a significant financial stake under the extended Class Period, which is now the largest of any "existing sequential plaintiff … who is willing to take the lead and timely applied for lead plaintiff." *See In re Tezos,* 2019 WL 2183448 at *3.  That California Ironworkers, too, has a larger financial interest now than at the time the case was filed is unremarkable and does not excuse its failure to comply with the PSLRA.  *See id.* at *3 n.1 (The "latecomer" movants here cannot demonstrate "why the adequacy purposes of the PSLRA should be ignored for a plaintiff

---

[4] On April 17, 2020, the Consolidated Amended Complaint was filed, extending the class period end date from February 28, 2019 to May 30, 2019.  *See* ECF No. 102.

[5] *See* Cornerstone Research, Securities Class Action Settlements-2019 Review and Analysis, available at www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis.pdf (noting that "plaintiffs often amend their initial complaints to capture longer alleged class periods").

BIRMINGHAM'S REPLY IN FURTHER SUPPORT OF ITS
MOTION FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:19-CV-01651-WHO

who failed to apply within the allotted time period for the lead plaintiff appointment altogether."); *Allergan*, 2020 WL 8620082, at *2-3 (appointing institutional investor with $753,097 in losses that timely filed a lead plaintiff application within the PSLRA's 60-day window over three "new applicants," including one with over $32 million in losses).

### 2.    The Court Also Should Not Consider The "Nutanix Investor Group," An Improper Lawyer-Driven Assemblage That Is Not Permitted To Serve As Lead Plaintiff In This District

Given Birmingham's continued willingness to step up and serve as the Lead Plaintiff, there is also no reason for the Court to consider the application of the "Nutanix Investor Group."

The Court should also refuse to consider the Nutanix Investor Group for two separate and independent reasons. First, it is an assemblage of unrelated investors cobbled together by its lawyers to retain control of the case. Such lawyer-driven groups are at odds with the purpose of the PSLRA and are virtually always denied lead plaintiff status in this District. *See In re Stitch Fix, Inc., Sec. Litig.,* 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019) (Donato, J.) (finding "the clear consensus in our district is that a group of investors who had no pre-existing relationship with one another, and whose relationship and group status were forged only by a lawyer, is not appropriate to be lead plaintiff"); *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *4 (N.D. Cal. Apr. 28, 2016) (Tigar, J.) (rejecting "amalgamation of previously unrelated individuals" where the group was made "for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff").

In addition to being inadequate, the Nutanix Investor Group is atypical. The member with the largest claimed financial interest, Norton, is an options trader, which clearly subjects him to unique defenses and renders him unsuitable to serve as the Lead Plaintiff. *See Stitch Fix,* 393 F.Supp.3d at 836 (rejecting movant who only traded in put options and did not purchase or sale common stock); *Applestein*, 2010 WL 3749406, at *4 (holding "because [movant] traded only in

options, the court holds that [movant] should not be appointed"). While other members of the Nutanix Investor Group traded in common stock, Norton has by far the largest claimed loss of any member and thus the group's application – if considered by the Court at all – must stand or fall as a whole. *See Tsirekidze,* 2008 WL 942273, at *4 (declining to break apart group to consider individual member because the group "moved for lead plaintiff as a group and will be evaluated as such").

### III.   CONCLUSION

For the foregoing reasons, Birmingham respectfully requests the Court: (1) appoint Birmingham as Lead Plaintiff; (2) approve its selection of Saxena White to serve as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated:  April 12, 2021

Respectfully submitted,

**SAXENA WHITE P.A.**

*/s/ David R. Kaplan*
David R Kaplan (SBN 230144)
dkaplan@saxenawhite.com
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096

Maya Saxena
msaxena@saxenawhite.com
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382

Steven B. Singer
Kyla Grant
ssinger@saxenawhite.com
kgrant@saxenawhite.com
10 Bank Street, 8th Floor
White Plains, New York 10606
Telephone: (914) 437-8551
Facsimile: (888) 216-2220

*Counsel for Proposed Lead Plaintiff City of Birmingham Retirement and Relief System and Proposed Lead Counsel for the Class*

BIRMINGHAM'S REPLY IN FURTHER SUPPORT OF ITS
MOTION FOR LEAD PLAINTIFF APPOINTMENT
CASE NO. 3:19-CV-01651-WHO