**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *pro hac vice*)
Kristina Mentone (admitted *pro hac vice*)
Gregory Potrepka (admitted *pro hac vice*)
Andrew Rocco (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: kmentone@zlk.com
Email: gpotrepka@zlk.com
Email: arocco@zlk.com

**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for the Nutanix Investor Group and*
*Proposed Lead Counsel for the Class*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NUTANIX, INC. SECURITIES LITIGATION | Master File No. 3:19-cv-01651-WHO |
| | Hon. William H. Orrick |
| | CLASS ACTION |
| | **NUTANIX INVESTOR GROUP'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS THE LEAD PLAINTIFF** |
| | Date: April 28, 2021<br>Time: 2:00 p.m.<br>Courtroom: 2-17th Floor |

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ....................................................................................... 1

II.   ARGUMENT ................................................................................................................... 2

    A.   The Nutanix Investor Group is the Most Adequate Plaintiff .......................................... 2

    B.   The Competing Movants Have Not Rebutted the Presumption that the Nutanix Investor Group is the Most Adequate Plaintiff ............................................................................... 3

        1.   No Movant Has Proven that the Nutanix Investor Group is Atypical or Inadequate ..................................................................................................................... 3

        2.   Norton is a Typical and Adequate Investor that is Not Subject to Any Unique Defenses ................................................................................................................... 7

            a)   Norton is Adequate to Represent the Interests of the Class ............................... 7

            b)   Norton is Typical of Other Class Members and is Not Subject to Any Unique Defense ................................................................................................................. 8

    C.   The Remaining Purported Unique Defenses are Baseless Speculation ........................ 12

III.  CONCLUSION .............................................................................................................. 15

**TABLE OF AUTHORITIES**

**Cases**

*Andrada v. Atherogenics, Inc.,*
   No. 05 CIV. 00061 (RJH), 2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) ................................ 12

*Apple v. LJ Int'l Inc.*,
   No. CV076076GAFJWJX, 2008 WL 11343371 (C.D. Cal. Feb. 8, 2008)............................... 8

*Applestein v. Medivation Inc*,
   No. C 10-00998 MHP, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010)................................... 12

*Arciaga v. Barrett Bus. Servs. Inc.*,
   No. C14-5884 BHS, 2015 WL 791768 (W.D. Wash. Feb. 25, 2015) ...................................... 6

*In re Aqua Metals Sec. Litig.*,
   No. 17-CV-07142-HSG, 2018 WL 4860188 (N.D. Cal. May 23, 2018).............................. 4, 5

*Ballan v. Upjohn Co.*,
   159 F.R.D. 473 (W.D. Mich. 1994) ...................................................................................... 12

*Brown v. China Integrated Energy, Inc.*,
   2011 U.S. Dist. LEXIS 151131 (C.D. Cal. Aug. 29, 2011) ...................................................... 7

*Bruce v. Suntech Power Holdings Co.*,
   No. CV 12-04061 RS, 2012 WL 5927985 (N.D. Cal. Nov. 13, 2012) ...................................... 5

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002).................................................................................................. 9

*In re Cheetah Mobile, Inc. Sec. Litig.*,
   No. CV 20-5696-MWF-AFMx, 2021 WL 99635 (C.D. Cal. Jan. 12, 2021)............................. 2

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018) ........................................................................................................... 3

*In re Critical Path Secs. Litig.,*
   156 F. Supp. 2d 1101 (N.D. Cal. 2001) ............................................................................ 8, 12

*Crossen v. CV Therapeutics*,

  No. C 03-03709 SI, 2005 WL 1910928 (N.D. Cal. Aug. 10, 2005) ......................................... 12

*In re Elan Corp. Sec. Litig.*,

  No. 1:08-CV-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009 ) ........................... 12

*In re Enron Corp. Litig.*,

  529 F. Supp. 2d 644 (S.D. Tex. 2006) ................................................................................ 11

*Faris v. Longtop Fin. Techs. Ltd. (Longtop)*,

  No. 11 CIV. 3658 SAS, 2011 WL 4444176 (S.D.N.Y. Oct. 4, 2011) ...................................... 5

*Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*,

  No. 220CV00368JNPDBP, 2021 WL 913934 (D. Utah Mar. 10, 2021)................................ 12

*In re Glob. Crossing, Ltd. Sec. Litig.*,

  313 F. Supp. 2d 189 (S.D.N.Y. 2003)................................................................................... 14

*Hall v. Medicis Pharm. Corp.*,

  No. CV08-1821PHX-GMS, 2009 WL 648626 (D. Ariz. Mar. 11, 2009) ................................ 9

*Halman Aldubi Provident & Pension Funds Ltd., v. Teva Pharm. Inds. Ltd.*,

  No. CV 20-4660-KSM, 2021 WL 1217395 (E.D. Pa. Mar. 26, 2021) ................................... 13

*In re HealthSouth Corp. Sec. Litig.*,

  257 F.R.D. 260 (N.D. Ala. 2009)......................................................................................... 10

*Hodges v. Akeena Solar, Inc.*,

  263 F.R.D. 528 (N.D. Cal. 2009) .......................................................................................... 5

*Hufnagle v. Rino Int'l Corp.*,

  No. CV 10-8695-VBFVBKX, 2011 WL 710704 (C.D. Cal. Feb. 14, 2011).......................... 15

*Hunt v. Bloom Energy Corp.*,

  No. 19-CV-02935-HSG, 2021 WL 1110260 (N.D. Cal. Mar. 23, 2021) ............................... 14

*Inchen Huang v. Depomed, Inc.*,

  289 F. Supp. 3d 1050 (N.D. Cal. 2017) ................................................................................. 5

*Johnson v. OCZ Tech. Grp., Inc.*,

No. CV12-05265 RS, 2013 WL 75774 (N.D. Cal. Jan. 4, 2013)................................................. 4

*In re Lyft Sec. Litig.*,

No. 19-CV-02690-HSG, 2020 WL 1043628 (N.D. Cal. Mar. 4, 2020) ................................... 7

*McCracken v. Edwards Lifesciences Corp.*,

No. 813CV1463JLSRNBX, 2014 WL 12694135 (C.D. Cal. Jan. 8, 2014)............................. 5

*McIntire v. China MediaExpress Holdings, Inc.*,

38 F. Supp. 3d 415 (S.D.N.Y. 2014).................................................................................... 10

*Melucci v. Corcept Therapeutics, Inc.*,

No. 19-CV01372-LHK, 2019 WL 4933611 (N.D. Cal. Oct. 7, 2019) ................................... 7

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,

No. CIV.A. 05-1151 SRC, 2013 WL 396117 (D.N.J. Jan. 30, 2013)................................... 10

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,

No. 13-CV-05368-LHK, 2014 WL 2604991 (N.D. Cal. June 10, 2014)................................. 3

*Micholle v. Ophthotech Corp.*,

No. 17-CV-1758 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)............................... 12

*Mortimer v. Diplomat Pharmacy Inc.*,

No. 19 C 1735, 2019 WL 4934602 (N.D. Ill. Oct. 7, 2019) .................................................. 14

*Moskowitz v. Lopp,*

128 F.R.D. 624 (E.D. Pa. 1989) ........................................................................................ 11

*In re Nutanix, Inc. Sec. Litig.*,

No. 19-CV-01651-WHO, 2021 WL 783579 (N.D. Cal. Mar. 1, 2021)................................... 2

*In re Oxford Health Plans, Inc. Sec. Litig.*,

199 F.R.D. 119 (S.D.N.Y. 2001) ........................................................................................ 11

*Perez v. Hexo Corp.,*

No. 19-cv-10965, 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020)............................................. 1

*In re Petrobras Securities Litigation,*

    104 F. Supp. 3d 618 (S.D.N.Y. May 17, 2015) ...................................................................... 6, 8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.,*

    229 F.R.D. 395 (S.D.N.Y. 2004) .......................................................................................... 14

*In re Priceline.com, Inc.,*

    236 F.R.D. 89 (D. Conn. 2006)............................................................................................. 11

*Richardson v. TVIA, Inc.,*

    No. 06-cv-06304-RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007)................................. 2

*Rieckborn v. Velti PLC,*

    No. 13-CV-03889-WHO, 2013 WL 6354597 (N.D. Cal. Dec. 3, 2013) ................................. 7

*In re Sci.-Atlanta, Inc. Secs. Litig.,*

    571 F. Supp. 2d 1315 (N.D. Ga. 2007) ............................................................................. 9, 10

*Schonfield v. Dendreon Corp.,*

    No. C07-800MJP, 2007 WL 2916533 (W.D. Wash. Oct. 4, 2007) ......................................... 8

*In re Snap Inc. Sec. Litig.,*

    No. 217CV03679SVWAGR, 2019 WL 2223800 (C.D. Cal. Apr. 1, 2019)............................. 4

*In re Stitch Fix, Inc. Sec. Litig.,*

    393 F. Supp. 3d 833 (N.D. Cal. 2019) ................................................................................. 12

*In re Surebeam Corp. Sec. Litig.,*

    No. 03 CV 1721JM(POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ................................. 5

*Tan v. NIO Inc.,*

    No. 19CV1424NGGVMS, 2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020) ................................ 6

*In re Tesla, Inc. Sec. Litig.,*

    No. 18-CV-04865-EMC, 2018 WL 6609569 (N.D. Cal. Dec. 17, 2018 ................................ 11

*Tolan v. Computervision Corp.,*

    696 F. Supp. 771 (D .Mass. 1988) ....................................................................................... 11

*Tsirekidze v. Syntax-Brillian Corp.*,

   CV-07-2204-PHX-FJM, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ......................................... 8

*White Pine Invs. v. CVR Ref., LP*,

   No. 20 CIV. 2863 (AT), 2021 WL 38155 (S.D.N.Y. Jan. 5, 2021) ........................................... 5

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ....................................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................................. 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................ 3

**Other Authorities**

Fischer Black and Myron Scholes,

   *The Pricing of Options and Corporate Liabilities*, 81 JOURNAL OF POLITICAL ECONOMY

   (1973) ...................................................................................................................................... 10

JOHN C. HULL,

   OPTIONS, FUTURES, AND OTHER DERIVATIVES (7th ed. 2009) ............................................. 10

## I.   PRELIMINARY STATEMENT

The Nutanix Investor Group's Motion and supporting papers, including two joint declarations,[1] evidence that it has the largest financial interest in the Action of any lead plaintiff movant and that it meets the requirements of typicality and adequacy. Thus, the Court only need look to the Nutanix Investor Group to appoint a lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B).

The Nutanix Investor Group asserts a loss of $3,102,825 in LIFO losses due to its purchases of Nutanix securities during the Class Period, ***$2.35 million more than the next largest movant***. The Nutanix Investor Group is small and cohesive, made up of three movants who each will confer benefits to the Class by their appointment as the lead plaintiff and who have evidenced their commitment and ability to vigorously prosecute this matter on behalf of the Class: (1) Norton, who single-handily has a larger loss than any other competing movant, and is not only a sophisticated investor but also the very type of investor the PSLRA seeks to appoint as the movant that has the most at stake in the outcome of the litigation; (2) Miami F&P, a sophisticated and experienced institutional investor that has been actively involved in the Action for over a year and half and who will provide continuity to the litigation; and (3) Flores, a movant who originally sought appointment as the lead plaintiff in May 2019 and that has specific and relevant knowledge and experience concerning the same industry that Nutanix operates. Although the Nutanix Investor Group is *per se* adequate by virtue of Norton possessing a financial interest larger than any other competing movant, the Nutanix Investor Group and its members are collectively and individually adequate to represent the Class as demonstrated by their declarations.

Faced with an insurmountable amount of losses and evidence supporting the adequacy of the Nutanix Investor Group, the competing movants seek to rebut the presumption of the Nutanix Investor Group as the "most adequate plaintiff" through speculative and faulty arguments. Each of these arguments fail. The competing movants have not and cannot present proof to rebut the

---

[1] *See Perez v. Hexo Corp.,* No. 19-cv-10965, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020), *reconsideration denied sub nom. In re HEXO Corp. Sec. Litig.,* 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) (finding detailed declaration sufficient to support movants' adequacy and appointing movants as lead plaintiff because competing movant's arguments lacked evidence to establish a unique defense).

presumption in favor of the Nutanix Investor Group. Thus, the Court should appoint the Nutanix Investor Group as the lead plaintiff and grant the Motion in its entirety.

## II.  ARGUMENT

### A.  The Nutanix Investor Group is the Most Adequate Plaintiff

The Nutanix Investor Group has the largest financial interest of any movant. *See* ECF No. 193 (Nutanix Investor Group Opp.) at 8. Courts in this District and throughout the Ninth Circuit have repeatedly found that the approximate loss suffered is factor that is the "most determinative in identifying the plaintiff with the largest financial loss." *Richardson v. TVIA, Inc.*, No. 06-cv-06304-RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007); *see also In re Cheetah Mobile, Inc. Sec. Litig.*, No. CV 20-5696-MWF-AFMx, 2021 WL 99635, at *3 (C.D. Cal. Jan. 12, 2021) (collecting cases).[2] The Nutanix Investor Group suffered over $3.1 million in LIFO losses and $2.9 million of *Dura* LIFO losses due to purchases of Nutanix securities during the Class Period, the largest loss of any movant. This loss, moreover, is ***over $2.35 million (LIFO) and $2.2 million (Dura LIFO) more than the next largest movants***, and is larger than all of losses suffered by the remaining three competing movants combined.[3] ECF Nos. 193 (Nutanix Investor Group Opp.) at 8; 178-2 (the Nutanix Investor Group); 185-2 (Pension Trust); 182-3 (May); 175-2 (Birmingham). Moreover, Norton's individual losses are more than the next largest movant and again larger than all the remaining competing movants' losses combined.

The Nutanix Investor Group has also made the *prima facie* showing of its typicality and adequacy. *See, e.g.* ECF Nos. 177, 178-3, 193, 193-1. Therefore, there is no question that the Nutanix Investor Group is entitled to the presumption of "most adequate plaintiff."

---

[2] "In assessing which class member has the 'largest financial interest' courts typically consider the *Lax-Olsten* factors, which include: '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period.'" *In re Nutanix, Inc. Sec. Litig.*, No. 19-CV-01651-WHO, 2021 WL 783579, at *2 (N.D. Cal. Mar. 1, 2021) (Orrick, J.) (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)).

[3] The Bristol County Retirement System filed a Notice of Non-Opposition to the other motions for appointment as lead plaintiff. ECF No. 192.

**B. The Competing Movants Have Not Rebutted the Presumption that the Nutanix Investor Group is the Most Adequate Plaintiff**

The PSLRA directs courts to appoint the presumptive most adequate plaintiff as the lead plaintiff unless the presumption is rebutted by "proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The competing movants have submitted no proof and have failed to rebut the PSLRA presumption in favor of the Nutanix Investor Group. The Nutanix Investor Group should therefore be appointed the lead plaintiff.

**1. No Movant Has Proven that the Nutanix Investor Group is Atypical or Inadequate**

The PLSRA directs that the Court shall appoint the "person or group of persons" that has the largest financial interest and satisfies the requirements for typicality and adequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Notably, the PSLRA does not prohibit a group of persons from being appointed as the lead plaintiff even if the members have no pre-existing relationship. *Id.* As the Supreme Court has recognized, "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups, so even a small shareholder could apply for lead-plaintiff status, hoping to join with other shareholders to create a unit with the largest financial interest." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) (citation omitted). Thus, Courts in the Ninth Circuit routinely appoint a group of investors when a group has established its adequacy. *See, e.g., Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 WL 2604991, at *5 (N.D. Cal. June 10, 2014) (collecting cases finding the adequacy of groups of individual investors, especially when supported by declarations attesting to the group's readiness and willingness to serve collectively on behalf of the class).

As detailed in its Motion papers (ECF Nos. 177 at 9-13; 193 at 10-15) and two joint declarations (ECF Nos. 178-3; 193-1), the Nutanix Investor Group is small cohesive group of sophisticated and experienced investors who can adequately and vigorously represent the Class' interest as its fiduciary. The Nutanix Investor Group is made up of three sophisticated investors

who have decided to prosecute this litigation together. Norton is a sophisticated and experienced investor that has run his own business and invested in securities for over 30 years. ECF No. 178-3, ¶4. Miami F&P is a pension fund that has over $1.7 billion in assets under management, and has substantial institutional knowledge of the facts and proceedings in this case by having served as a named plaintiff in this litigation since September 2019. *Id.*, ¶¶3-4; 162-3, ¶¶5-7 (detailing Miami F&P's efforts in the Action). Flores is an investor who has managed his own investments for 15 years, was an original movant for lead plaintiff, and has experience working in Nutanix's industry. ECF No. 178-3, ¶2. The Joint Declaration details each of the members' individual and collective commitment to the litigation, to obtaining the best possible recovery for the Class, and willingness to discharge their fiduciary duties to the Class by overseeing and managing counsel, quickly making decisions concerning the litigation, attending depositions, producing documents, and ensuring that the Action is litigated effectively and efficiently. Moreover, the declarations evidence that Norton, Miami F&P and Flores have met twice via conference calls with their counsel to discuss the lead plaintiff motion papers. *Id*., ¶12; ECF No. 193-1 at 5. This is clearly sufficient to evidence the Nutanix Investor Group's adequacy. *See In re Snap Inc. Sec. Litig.,* No. 217CV03679SVWAGR, 2019 WL 2223800, at *4 (C.D. Cal. Apr. 1, 2019) (appointing group of unrelated investors and reappointing its counsel as the lead counsel after the reopening of the lead plaintiff process at the class certification stage because the group of unrelated investors established their adequacy in a joint declaration); *In re Aqua Metals Sec. Litig.*, No. 17-CV-07142-HSG, 2018 WL 4860188, at *4 (N.D. Cal. May 23, 2018) ("[A] group of previously-unrelated investors may show that it is an adequate class representative if it demonstrates that the group is small and cohesive, and that the individual members have demonstrated an ability to work together effectively on behalf of the class."); *Johnson v. OCZ Tech. Grp., Inc.*, No. CV12-05265 RS 2013 WL 75774, at *3 (N.D. Cal. Jan. 4, 2013) ("Small, cohesive groups similar to the OCZ Investor Group are routinely appointed as Lead Plaintiff in securities actions when they have shown their ability to manage the litigation effectively in the interests of the class without undue influence of counsel.").

The competing movants' arguments against the Nutanix Investor Group's adequacy are simply ill founded. *See* ECF Nos. 194 at 8, 10-12; 195 at 14-16; 196 at 14-16. First, "[t]his is not a case . . . in which lawyers aggregated [the members of the Nutanix Investor Group] in order to overcome the largest stake requirement. Rather, [Norton] meets that requirement on his own." *Bruce v. Suntech Power Holdings Co.*, No. CV 12-04061 RS, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012). Throughout the Ninth Circuit, Courts routinely reject arguments against a group's adequacy based on aggregation of losses or the lack of pre-existing relationship where, as here, one member of the group (Norton) has a larger financial interest than any competing movant. *See Inchen Huang v. Depomed, Inc.,* 289 F. Supp. 3d 1050, 1054 (N.D. Cal. 2017); *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. 2009); *see also McCracken v. Edwards Lifesciences Corp.,* No. 813CV1463JLSRNBX, 2014 WL 12694135, at *3 (C.D. Cal. Jan. 8, 2014); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *5 (S.D. Cal. Jan. 5, 2004).

Second, contrary to the unsupported contentions (ECF Nos. 194 at 7; 195 at 11; 196 at 10 n.7) that using an arbitrator to resolve disputes, if any arise, between the members of the Nutanix Investor Group is improper, the use of an arbitrator evidences a well-thought-out plan to resolve potential disputes. Courts have found arbitration among group members to be an acceptable mechanism for handling disputes and demonstrating cohesiveness. *See In re Aqua Metals Sec. Litig*., No. 17-CV-07142-HSG, 2018 WL 4860188, at *4 (N.D. Cal. May 23, 2018) (appointing group as lead plaintiff and rejecting the argument that arbitration of disputes among the group "creates logistical issues and outsources its decision-making process to an uninterested outsider"); *see also White Pine Invs. v. CVR Ref., LP*, No. 20 CIV. 2863 (AT), 2021 WL 38155, at *2 (S.D.N.Y. Jan. 5, 2021) (noting that the use of an arbitrator for deadlocked decisions as part of a group's procedures are the "sort of concrete commitments and plans for cooperation have been found to be positive indications that a group will act cohesively."); *Faris v. Longtop Fin. Techs. Ltd. (Longtop)*, No. 11 CIV. 3658 SAS, 2011 WL 4444176, at *7 & n.50 (S.D.N.Y. Oct. 4, 2011)

(declaration with arbitration provision found to "demonstrate[] [a group's] commitment to protecting the members of th[e] putative class action.").[4]

Third, the Nutanix Investor Group's proposal for Wolf Popper to act as additional counsel, under the direction of lead counsel Levi & Korsinsky, does not evidence the inadequacy of the group. ECF No. 194 at 8. As set forth in its Joint Declaration, the Nutanix Investor Group believes that Wolf Popper's involvement, under the supervision of Levi & Korsinsky, will be a benefit to the Class. ECF No. 178-3, ¶¶10-11. Wolf Popper is a law firm experienced in securities litigation and that has represented Mr. Flores in this matter since May 2019, filed the initial complaint in this consolidated action, and has a continuing relationship with Miami F&P. *Id.* at ¶¶2,10. Wolf Popper's involvement in this case will not result in duplicative work and will not increase costs or fees to the Class. Courts routinely appoint more than one law firm to serve as co-lead counsel or to serve as additional counsel in complex litigation. *See China Agritech*, 138 S. Ct. at 1807 n.3 ("80% of securities class actions in post-PSLRA data sample had two or more co-lead counsel firms" (citation omitted)); *In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 16-CV-05541-JST, 2017 WL 130282, at *3 (N.D. Cal. Jan. 12, 2017)) (appointing Birmingham and its counsel as co-lead plaintiff and co-lead counsel in derivative litigation); *see also Rice v. Genworth Fin. Inc.*, No. 3:17CV59, 2017 WL 3699859, at *13 (E.D. Va. Aug. 25, 2017) (appointing May's counsel as co-lead counsel for group of two investors); *Sokolow v. LJM Funds Mgmt., Ltd.*, No. 18-CV-01039, 2018 WL 3141814, at *8 (N.D. Ill. June 26, 2018) (appointing Pension Trust's counsel as co-lead counsel on behalf of group of seven investors).[5]

[4] May's citation to *Tan v. NIO Inc.*, No. 19CV1424NGGVMS, 2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020) is distinguishable. In *Tan*, the court excluded a group based on a boilerplate declaration submitted by the group that failed to show that they could cohesively work together for the benefit of the class. *Id.* at *4. After excluding the group on this basis, it merely noted in a footnote that the arbitration provision was additional support for its conclusion that the declaration was "boilerplate." *Id.* at *4 n.6. This concern over boilerplate language is not present here.

[5] The decisions cited by the competing movants are readily distinguishable. In *In re Petrobras Securities Litigation,* 104 F. Supp. 3d 618, 622 (S.D.N.Y. May 17, 2015), the second law firm had no previously attorney-client relationship with any of the group's members. Here, Wolf Popper has a relationship with Flores and also with Miami F&P. *See* ECF No. 178-3, ¶10. In *Arciaga v. Barrett Business Services*, No. C14-5884 BHS, 2015 WL 791768 (W.D. Wash. Feb. 25, 2015), the two firms sought appointment as co-lead counsel. Here, the Nutanix Investor Group asks that Levi & Korsinsky be appointed lead counsel and Wolf Popper serve as additional

Finally, May's arguments that members of the Nutanix Investor Group are inadequate for not using the net retained share methodology or holding shares at the end of the Class Period are simply incorrect. ECF No. 194 at 14-15. The net retained share methodology should not be used to measure the approximate loss suffered when more than one corrective disclosure is alleged. *See In re Lyft Sec. Litig.*, No. 19-CV-02690-HSG, 2020 WL 1043628, at *4 (N.D. Cal. Mar. 4, 2020) (declining to use the net retained share methodology because of this limitation); *Melucci v. Corcept Therapeutics, Inc.,* No. 19-CV01372-LHK, 2019 WL 4933611, at *3 (N.D. Cal. Oct. 7, 2019) (same). Further, the fact that subsequent disclosures occurred after [Flores] no longer owned [Nutanix] stock does not show that [Flores] will be an inadequate lead plaintiff." *Brown v. China Integrated Energy, Inc.*, 2011 U.S. Dist. LEXIS 151131, 39 (C.D. Cal. Aug. 29, 2011); *see also Rieckborn v. Velti PLC,* No. 13-CV-03889-WHO, 2013 WL 6354597, at *4 n.11 (N.D. Cal. Dec. 3, 2013) (Orrick, J.) (noting that holding shares over some of the corrective disclosures would "likely meet Rule 23's requirements for typicality at this juncture.").

**2.    Norton is a Typical and Adequate Investor that is Not Subject to Any Unique Defenses**

**a)    Norton is Adequate to Represent the Interests of the Class**

The fact that Norton, who has the largest individual loss of any lead plaintiff movant, chose to jointly move with the Nutanix Investor Group does not impact his adequacy. Norton alone is a typical and adequate investor who can be appointed as the sole lead plaintiff and was aware that he could have sought appointment as such. *See* John P. Norton's Supplemental Declaration in Further Support of Motion for Appointment as Lead Plaintiff ("Norton Decl."), ¶¶2-3, 7-10. Norton, however, sought appointment with Miami F&P and Flores as a group of investors to collectively represent the interests of the Class because he believed that this grouping would better represent the Class. *Id.* at ¶¶4-6. Specifically, he believed that his appointment as part of a group with Miami F&P would benefit the Class, in significant part, from Miami F&P's substantial participation in the Action over the past year and half, the continuity that this would provide to the litigation, its experience in litigating securities class actions, and its additional counsel.

experience and sophistication as a large institutional investor. *See id.*, ¶5; ECF No. 178-3, ¶4. Norton further believed that the Class would also benefit from Flores being part of this small group of investors due in significant part to his education and industry-specific experience as well as his continued demonstrated efforts concerning this litigation, including seeking appointment as the lead plaintiff in this Action in May 2019. Norton Decl., ¶6; ECF No. 178-3, ¶4.

It is not disqualifying that the members of the Nutanix Investor Group support appointment of one of its members in the event the Court determines that a sole lead plaintiff is sufficient. The cases cited to the contrary are easily distinguished. *See Takata v. Riot Blockchain, Inc., No.*, CV182293FLWTJB, 2018 WL 5801379, at *5 n.5 (D.N.J. Nov. 6, 2018) (the group belatedly requested only in its reply brief that an individual group member be appointed lead plaintiff in the alternative, which supported that it was not the movants controlling the litigation); *Apple v. LJ Int'l Inc.*, No. CV076076GAFJWJX, 2008 WL 11343371, at *4 (C.D. Cal. Feb. 8, 2008) (finding that group members failure to submit declarations setting forth their understanding of a lead plaintiff's role instilled no confidence in the Court that the individual group members desired to take an active role in the case). Likewise, the argument that this was not requested as part of the Motion or that it is inappropriate is also misplaced. *See* ECF Nos. 177 at 6, 7, 14; 178-3, ¶22; *In re Critical Path Secs. Litig.,* 156 F. Supp. 2d 1101, 1111 & n.3 (N.D. Cal. 2001) (Orrick, J.) (noting that a member of a group "was not presented as a prospective lead plaintiff on its own" and concluding "[i]t is reasonable to expect that, given the scrutiny given groups by many courts, a prospective lead plaintiff might make such an attempt."); *Schonfield v. Dendreon Corp.*, No. C07-800MJP, 2007 WL 2916533, at *1 (W.D. Wash. Oct. 4, 2007) (appointing individual group member as lead plaintiff when requested in the alternative as part of the motion).[6]

**b)  Norton is Typical of Other Class Members and is Not Subject to Any Unique Defense**

As set forth in the chart attached to his certification, Norton sold put options during the

---

[6] May's other citations are distinguishable for the same reason. *Petrobras,* 104 F. Supp. 3d at 624 n.4 (individual member "at no time sought to serve as an individual lead plaintiff."); *Tsirekidze v. Syntax-Brillian Corp.*, CV-07-2204-PHX-FJM, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) ("There [was] no suggestion" of how the group planned "to work together as a cohesive unit" and the group "moved for lead plaintiff as a group and will be evaluated as such.").

Class Period and purchased/acquired 100,000 shares of Nutanix stock in October 2018 when the option contracts were assigned to him. ECF No. 178-1. Norton sold his put options during the Class Period relying on both the market price of Nutanix stock and the Nutanix put options. ECF No. 178-3, ¶4 ("In making my investment decisions concerning Nutanix securities, I relied upon the then-current market prices of Nutanix's securities."). After assignment of his put options, Norton continued his bullish investment strategy by holding on to his entire position of 100,000 shares throughout the remainder of the Class Period and was harmed when Nutanix's stock price fell in response to disclosure of the fraud on both February 28, 2019 and May 30, 2019. *See* ECF No. 178-2[7] Thus, like other members of the Class, Norton was harmed from his transactions in Nutanix securities by his reliance upon the market prices of Nutanix securities and the alleged fraud. Courts have repeatedly found that options traders can satisfy the typicality requirement and serve as a lead plaintiff. *Hall v. Medicis Pharm. Corp.*, No. CV08-1821PHX-GMS, 2009 WL 648626, at *4 (D. Ariz. Mar. 11, 2009) (collecting cases); *cf. In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status ....").

The Pension Trust and May, however, argue that Norton's purchase/acquisition of 100,000 shares of Nutanix stock during the Class Period was not reliant on the market prices for Nutanix securities, including the price of Nutanix common stock. *See* ECF Nos. 194 at 12-14; 196 at 12-14. They conclude in error that Norton is inadequate and faces unique defenses.

First, it is critical to understand that the decision to sell put options and the willingness to contractually commit to acquiring the stock underlying the options at the designated strike price was made in reliance on both the market price of the Nutanix put option contracts and the price of Nutanix stock. Options on common stock, as in the case of the put options sold by Norton, are considered "derivative" securities because they derive their value from the value of the underlying

[7] The sale of put option contracts, like the sales undertaken by Norton are a bullish investment. *See In re Sci.-Atlanta, Inc. Secs. Litig.*, 571 F. Supp. 2d 1315, 1330 (N.D. Ga. 2007) ("A put options seller, like the purchaser of stock, generally profits only when a stock maintains or increases its value.").

asset, which in this case is the price of Nutanix common stock. *See* JOHN C. HULL, OPTIONS, FUTURES, AND OTHER DERIVATIVES, 291 and 231 (detailing the inputs of the Black-Scholes option pricing model that includes the underlying market price of the common stock) (7th ed. 2009)*; Fischer Black and Myron Scholes, *The Pricing of Options and Corporate Liabilities*, 81 JOURNAL OF POLITICAL ECONOMY 637(1973) (same). As aptly stated by the court in *In re Sci.- Atlanta, Inc. Securities Litigation* a put option seller relies on the market's integrity and is typical:

> A put options seller, like the purchaser of stock, generally profits ***only when a stock maintains or increases its value***. … Stated another way, by betting that the stock price will maintain or increase, the put option seller generally relies--in like fashion to a stock purchaser--on the integrity of the price of the underlying stock. He does so both in deciding to sell the option and in setting the premium and strike prices. The put option seller also suffers a harm similar to that suffered by a stock investor when the revelation of the truth concerning prior fraudulent conduct causes an artificially inflated stock price to fall. In such a case, the put option seller is forced to bear the brunt of the injury caused by the fraud. Once the option buyer predictably exercises the option, the seller is effectively forced to ***purchase the stock at the fraudulently inflated strike price--retroactively placing the put options seller in the shoes of a defrauded stock purchaser***.
>
> ***In sum, therefore, where a put options seller demonstrates market efficiency in the underlying security, he is generally entitled to rely on the fraud on the market theory. . .Because Defendants offer nothing which could suffice to rebut the presumption of Vigilant's reliance under the fraud on the market theory, the Court declines to find that Vigilant is atypical due to the lack of evidence of efficiency in the market for SA put options.***

571 F. Supp. 2d 1315, 1330 (N.D. Ga. 2007) (emphasis added); *see id.* at 1345 (appointing the put options seller as co-class representative). Because of this, the Court routinely recognizes this dependency of options on the market price of the underlying common stock by finding that the fraud-on-the market presumption applies to options traders when the underlying stock trades in an efficient market. *See id*. at 1330.[8]

---

[8] *See also McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 434 (S.D.N.Y. 2014) ("The Court has found that the market for CCME stock was efficient and is not persuaded that there are any special circumstances that would preclude applying the fraud-on-the-market presumption to options traders"); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. CIV.A. 05-1151 SRC, 2013 WL 396117, at *12 (D.N.J. Jan. 30, 2013) ("insofar as the alleged Rule 10b–5 violations are predicated on put or call options transactions, the trading of Merck stock on the efficient NYSE suffices to establish that the options also traded on an efficient market."); *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 282 (N.D. Ala. 2009) (finding that "Stockholder Plaintiffs' evidence establishes that HealthSouth common stock traded in an

As Judge Chen explained in *In re Tesla, Inc. Securities Litigation*, a put seller is a typical investor because "[w]hen a fraud is disclosed, the stock will lose the artificial inflation, and the seller of the put option is injured 'either by paying an increased cost to repurchase the put option or ***paying the now above market strike price*** [that the buyer of the put option can command]' . . . [t]hus a seller of a put, like the buyer of common stock, pays an artificially high price if he/she sells the put during the class period." No. 18-CV-04865-EMC, 2018 WL 6609569, at *3 (N.D. Cal. Dec. 17, 2018) (emphasis added) (internal quotation marks omitted). Here, the documents filed in support of the Motion show that during the Class Period, like other Class member, Norton relied upon the market prices for Nutanix securities and was harmed by the alleged fraud when he purchased the shares that were assigned to him during the Class Period and held them over the corrective disclosures. *See* ECF Nos. 178-1; 178-2; 178-3, ¶4 (stating Norton's reliance on the market prices for Nutanix securities). Norton, therefore, is typical of other class members. *See In re Tesla,* 2018 WL 6609569, at *3 (declining to reconsider the appointment of a movant as the lead plaintiff, in part, because the movant could lose money from selling puts during the class period as a result of the alleged fraud); *In re Priceline.com, Inc.,* 236 F.R.D. 89, 100 (D. Conn. 2006) (finding put options trader presumptively relied on integrity of market price in underlying stock and thus was adequate and typical class representative); *cf. In re Oxford Health Plans, Inc. Sec. Litig.,* 199 F.R.D. 119, 123–24 (S.D.N.Y. 2001) (holding that options traders were typical and adequate class representatives in action proceeding under fraud on the market theory); *Tolan v. Computervision Corp.,* 696 F. Supp. 771, 779 (D .Mass. 1988) ("Traders in puts and calls rely on the integrity of the information disseminated in the market just as do purchasers and sellers of the underlying security."); *Moskowitz v. Lopp,* 128 F.R.D. 624, 631 (E.D. Pa. 1989) (holding that options trader could rely upon the fraud on the market presumption and was an adequate class representative).[9]

---

efficient market during the Class Period…entitles them to invoke the presumption of reliance in support of all their claims under Rule 10b–5"); *In re Enron Corp. Litig.*, 529 F. Supp. 2d 644, 754 (S.D. Tex. 2006) ("The Court finds that Dr. Nye's evidence applying the *Cammer/Unger/Bell* factors to the stock, is sufficient to trigger the fraud-on-the-market presumption for Plaintiffs' § 10(b) claims based on the options.").

[9] The authorities cited by the Pension Trust, May, and Birmingham are inapposite because Norton

Norton selling call contracts during the Class Period does not make him an atypical investor. Here, Norton's investment strategy was always bullish on the stock as evidenced by his retention of the 100,000 shares after their acquisition for the remainder of the Class Period. ECF No. 178-3, ¶4; *see also* ECF No. 178-2 (holding 100,000 shares of stock during the time he was primarily selling covered calls). The Pension Trust attempts to refute Norton's typicality by taking issue with certain of these call contracts being uncovered during the Class Period. As stated by the Court in *Crossen v. CV Therapeutics*, No. C 03-03709 SI, 2005 WL 1910928 (N.D. Cal. Aug. 10, 2005), however, even selling uncovered call options "does not defeat the presumption of reliance" or render a plaintiff atypical when the transactions and supporting evidence shows that the investor sought to profit from his investment from the appreciation of the stock. *Id.* at *5. Here, Norton selling puts and then retaining the 100,000 shares was a bullish investment that was meant to benefit from the appreciation of Nutanix stock. As specifically noted by the Pension Trust, the sales of the call contracts merely reduced his millions of dollars in losses. Therefore, Norton is a typical investor.

## C.  The Remaining Purported Unique Defenses are Baseless Speculation

Grasping at straws, the Pension Trust and May argue that the Nutanix Investor Group's retention of Levi & Korsinsky somehow disqualifies its appointment. *See* ECF Nos. 194 at 9-10;

---

purchased Nutanix stock during the Class Period underlying the exchange-listed put options contracts that he sold on the open market during the Class Period and held these shares over both of the alleged corrective disclosures. *See Applestein v. Medivation Inc*, No. C 10-00998 MHP, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010) (movant transacted only in options with no purchases of stock, including from the assignment of options, during the class period); *Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, No. 220CV00368JNPDBP, 2021 WL 913934, at *4 (D. Utah Mar. 10, 2021) (movant purchased only call options that expired the very next day); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (movant only sold put options and purchased none of the underlying stock during the class period including from the assignment of puts); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1110–11 (N.D. Cal. 2001) (discussing a privately-negotiated transaction for the acquisition of a company and not a trade of an exchange-listed option); *Andrada v. Atherogenics, Inc.*, No. 05 CIV. 00061 (RJH), 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) (movant only purchased call options and none of the underlying stock during the class period); *In re Elan Corp. Sec. Litig.*, No. 1:08-CV-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009 ) (same); *Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (movants traded only in options and purchased none of the underlying stock during the class period); *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 480-81 (W.D. Mich. 1994) (purchasing 1,000 of 1,200 shares "after the curative disclosure").

196-at 2-3. These baseless arguments are being proffered as a last-ditch attempt to sully the Nutanix Investor Group and its counsel in the absence of legitimate arguments against their appointments. The Court should not be swayed by such tactics.

First, the Pension Trust and May recycle the same speculative arguments about the advertising practices that were raised as part of the original lead plaintiff process. *Id*. At the July 2019 hearing, the Court quickly dispelled with these arguments and further stated that this was not the appropriate venue for such arguments. *See* ECF No. 96, 5:19-22 ("So I have this case and I'm interested in this case. And if you are -- want to launch a -- which it seems that you have in some other courts -- a broad-based attack on another Plaintiff's Counsel firm, don't do it here."); *id.* at 4:18 – 7:24. Here, Norton contacted Levi & Korsinsky directly in response to advertisements issued by the firm after the Court reopened the lead plaintiff process and only retained Levi & Korsinsky after evaluating the firm's work in the Action and experience in litigation securities class actions. *See* Norton Decl., ¶¶2-3. Notifying Class members of the pendency of litigation through notices or advertisements and encouraging them to step forward as potential lead plaintiffs is the purpose of the PSLRA's notice provision and does not render a movant or its counsel unable to represent the class. *See, e.g., Halman Aldubi Provident & Pension Funds Ltd., v. Teva Pharm. Inds. Ltd.*, No. CV 20-4660-KSM, 2021 WL 1217395, at *18 (E.D. Pa. Mar. 26, 2021) (appointing May's counsel as lead counsel when one of the group members retained the firm based on an advertisement requesting investors to contact the firm to seek appointment as lead plaintiff). Moreover, Miami F&P has an existing attorney-client relationship with Levi & Korsinsky and Wolf Popper (ECF No. 178-3, ¶¶3, 10) and Flores had retained Wolf Popper since the original lead plaintiff process (*id.* at ¶¶1-2, 10). Thus, these speculative arguments are simply unfounded.

May also argues, based on conjecture raised by Defendants' concerning the reasons and timing of Mr. Hedvat's withdrawal that the withdrawal will lead to claims of unique defenses.[10]

---

[10] The Pension Trust also raises speculative arguments against the Nutanix Investor Group's ability to function as a group, its counsel, and implies that the timing of Miami F&P's involvement in the litigation is suspicious. ECF No. 196 3-4. There is, however, nothing suspicious. Miami F&P was added as a plaintiff because it provides better representation for the Class and Hedvat,

ECF Nos. 194 at 9-10. Notably, this speculative argument was already raised to the Court, and Levi & Korsinsky offered to provide proof to the Court to refute these baseless allegations. *See* ECF No. 169 at 14. The Court rightfully declined to consider the underlying reasons for Mr. Hedvat's withdraw and Defendants' speculation as it was "unnecessary." *See* ECF No. 171 at 2. These types of purely speculative allegations of impropriety fail to rise to the level of proof to evidence a unique defense. *See Mortimer v. Diplomat Pharmacy Inc.*, No. 19 C 1735, 2019 WL 4934602, at *4 (N.D. Ill. Oct. 7, 2019) ("there is nothing in the record indicating that [counsel] misstated, misrepresented, or concealed any facts in this proceeding and the Court has no reason to question the firm's fitness to serve as lead counsel in this case."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 416 (S.D.N.Y. 2004) (finding, *inter alia*, that although "honesty and trustworthiness are relevant factors in assessing a candidate's ability to serve as an adequate fiduciary for a class," it would not be appropriate to deny the presumptive lead plaintiff's candidacy based on alleged wrongdoing that was not "actually proven or otherwise established on the record.").

To date, Levi & Korsinsky has vigorously represented the Class by, *inter alia*, investigating and drafting comprehensive pleadings, successfully defeating Defendants' motion to dismiss, and bringing the case to its current procedural posture on the eve of a motion for class certification. The fact that the Nutanix Investor Group has retained the same very counsel that has expended nearly 3,500 hours in successfully litigating the case prior to the reopening of the lead plaintiff process clearly weighs in favor of its adequacy. Thus, in light of the overwhelming evidence proffered by the Nutanix Investor Group in support of their appointment as the lead plaintiff, the competing movants' conjecture and speculation fails. *See Hufnagle v. Rino Int'l*

---

as the court-appointed lead plaintiff, had authority to make decisions concerning the litigation, including the involvement of other class members. *See, e.g.*, *Hunt v. Bloom Energy Corp.*, No. 19-CV-02935-HSG, 2021 WL 1110260, at *2 (N.D. Cal. Mar. 23, 2021) (approving the inclusion of additional plaintiffs as "[t]he Court agrees with Plaintiffs that the additions are permissible and consistent with the Lead Plaintiff's duties."); *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) ("Lead Plaintiffs have a responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims. By naming additional plaintiffs . . . the Lead Plaintiffs in this case have simply exercised that responsibility.").

*Corp.*, No. CV 10-8695-VBFVBKX, 2011 WL 710704, at \*6-9 (C.D. Cal. Feb. 14, 2011), *adopted*, No. CV 10-1754-VBFVBKX, 2011 WL 710676 (C.D. Cal. Feb. 16, 2011) (appointing the most adequate plaintiff where competing movants failed to submit proof of unique defense).[11]

**III. CONCLUSION**

For the foregoing reasons, the Nutanix Investor Group respectfully requests that this Court: (1) appoint it as lead plaintiff for the Class in the Action or, in the alternative appoint a member of its group as lead plaintiff; and (2) approve Levi & Korsinsky, LLP as lead counsel for the Class.

Dated: April 12, 2021                                Respectfully submitted,

**LEVI & KORSINSKY, LLP**
*/s/ Shannon L. Hopkins*
Shannon L. Hopkins (admitted *pro hac vice*)
Kristina Mentone (admitted *pro hac vice*)
Gregory Potrepka (admitted *pro hac vice*)
Andrew Rocco (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: kmentone@zlk.com
Email: gpotrepka@zlk.com
Email: arocco@zlk.com

Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

Nicholas I. Porritt (*pro hac vice* forthcoming)

---

[11] Birmingham argues that it should be appointed as the lead plaintiff as it the only single movant seeking appointment as the lead plaintiff who sought appointment during the original lead plaintiff process. ECF No. 195 at 8-16. The Court, however, rejected the argument that the lead plaintiff process should only be reopened to those movants. *See* ECF No. 171 at 3-4 (concluding "it is appropriate to briefly re-open the lead plaintiff application process and allow any interested putative class members to submit an application to serve as lead counsel.").

Alexander A. Krot III (*pro hac vice* forthcoming)
1101 30th Street, NW
Suite 115
Washington, DC 20007
Tel: (202)524-4290
Email: nporritt@zlk.com
Email: akrot@zlk.com

*Proposed Lead Counsel for the Class*


**WOLF POPPER LLP**
Robert C. Finkel (admitted *pro hac vice*)
Joshua W. Ruthizer (admitted *pro hac vice*)
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 459-2093
Email: rfinkel@wolfpopper.com
Email: jruthizer@wolfpopper.com

*Proposed Additional Counsel for the Class*