ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
        – and –
DANIELLE S. MYERS (259916)
TRICIA L. McCORMICK (199239)
MICHAEL ALBERT (301120)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
tmccormick@rgrdlaw.com
malbert@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re NUTANIX, INC. SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:19-cv-01651-WHO <br><br> <u>CLASS ACTION</u> <br><br> CALIFORNIA IRONWORKERS FIELD PENSION TRUST'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS LEAD PLAINTIFF MOTION |
| This Document Relates To: <br><br> ALL ACTIONS. | | |

DATE:        Wednesday, April 28, 2021
TIME:        2:00 p.m.
CTRM:        2, 17th Floor
JUDGE:      Hon. William H. Orrick

4845-5954-0964.v1

The only substantive challenge to the California Ironworkers Field Pension Trust's (the "Pension Trust") ability to lead this case stems from City of Birmingham Retirement and Relief System's ("Birmingham") disagreement with the Court's March 1, 2021 Order (ECF No. 171) ("Reopening Order").  Recognizing that it suffered the fourth largest loss – and a smaller loss than the Pension Trust – Birmingham argues that the Court should limit the movants to the original lead plaintiff candidates without expressly asking the Court to reconsider its Reopening Order, which states:

> The parties agree that the PSLRA is "silent on the proper procedure for substituting a new lead plaintiff when the previously certified one withdraws," *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002), and that courts have discretion in how they handle such substitutions.  Some courts appoint the next most adequate class member from the original group of applicants, while others re-open the application process and accept ***new applications.  Here, I conclude that the latter process is appropriate*** given that the relevant class period has changed since the original lead plaintiff applications were filed, altering the "largest financial interest" calculus.

> \* \* \*

> Since the original lead plaintiff applications were filed, the end of the relevant class period in this case has been extended from February 28, 2019 to May 30, 2019.  This impacts all four of the *Lax-Olsten* factors and may upend the largest financial interest calculus, as Nutanix and May point out. . . .  [P]utative class members who purchased large numbers of Nutanix shares between February and May 2019, or who retained large numbers of shares through this period, may now have a larger financial interest than under the original class period.

> For these reasons, I conclude it is appropriate to briefly re-open the lead plaintiff application process and allow ***any interested putative class members to submit an application to serve as lead counsel.***

ECF No. 171 at 3-5.[1]

---

[1]  Birmingham's instant arguments were rejected in the Reopening Order ***after*** the Court received robust briefing from Mr. May and the defendants.  *See, e.g.*, ECF No. 167 at 8-10 (defendants advising the Court that "[w]hen appointing new lead plaintiffs under the PSLRA, courts have generally followed one of two approaches.  They have either: (1) reopened the process to all shareholders willing to serve; or (2) reopened the process and accorded priority to those candidates that originally sought to serve . . . .  Defendants respectfully submit that circumstances have sufficiently changed since the initial lead plaintiff appointment to favor reopening the lead plaintiff appointment process to any potential applicants.  Specifically, since the initial lead plaintiff appointment process, the end of the class period for this action has lengthened by 90 days—from February 28, 2019 to May 30, 2019. . . .  As a result, shareholders could have transacted in that new portion of the class period and, thereby, have claimed losses that would make them presumptively more adequate representatives of the class.")  Unless otherwise noted herein, all emphasis is added and citations are omitted.

CALIFORNIA IRONWORKERS FIELD PENSION TRUST'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS LEAD PLAINTIFF MOTION - 3:19-cv-01651-WHO          - 1 -
4845-5954-0964.v1

The Court's decision to reopen lead plaintiff proceedings pursuant to the Private Securities Litigation Reform Act of 1995's ("PSLRA") sequential process was fully supported by the case law and the facts of this case, including that the May 30, 2019 corrective disclosure in this case **had not even occurred** when the first round of lead plaintiff motions were filed, and – as the Court and defendants posited – there were class members like the Pension Trust, with a significantly larger financial interest in the operative Class Period ($705,000) than in the original class period ($120,000).[2]  The authorities Birmingham relies on (many of which were presented to the Court by defendants) are distinguishable on this point alone.[3]

[2]    *See* ECF No 167 at 6 n.4 (defendants' opposition to Mr. Hedvat's motion to substitute lead plaintiff collecting cases that have reopened the lead plaintiff process to all applicants); *In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, at *1 (C.D. Cal. Apr. 1, 2019) and 394 F. Supp. 3d 1156, 1159 (C.D. Cal. 2019) (Applying the "PSLRA's 'sequential' process" as articulated by *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) following previous lead plaintiff's withdrawal and after allowing 21 days for "*any* party to move for appointment as lead plaintiff."); *In re Neopharm, Inc. Sec. Litig.*, 2004 WL 742084, at *3 (N.D. Ill. Apr. 7, 2004) (Consistent with the PSLRA, "[t]he better approach is to . . . allow for *any* prospective lead plaintiffs to make a motion for appointment."); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 326 (S.D.N.Y. 2012) (finding that "[a]bsent statutory guidance, courts are thus left to craft an order that best adheres to the policy behind the PSLRA," and deeming "timely any movant for appointment as lead plaintiff who either (a) filed the complaint, (b) moved to be appointed lead plaintiff in response to the initial notice of pendency, or (c) moved to be appointed lead plaintiff within 30 days of the withdrawal of the previous lead plaintiff"); *In re HealthSouth Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP, ECF No. 287 at 2-3 (N.D. Ala. Nov. 30, 2004) (Allowing "[a]ny party wishing to serve as lead plaintiff" to file a motion because this approach "permit[s] the court to make a reasoned analysis in accordance with the factors outlined by the PSLRA."); *see also Sayce v. Forescout Techs., Inc.*, 2020 WL 6802469 (N.D. Cal. Nov. 19, 2020) (considering new applications from any putative class members after reopening lead plaintiff process and applying the PSLRA's sequential lead plaintiff process); *Kipling v. Flex Ltd.*, 2019 WL 1472358, at *2 (N.D. Cal. Apr. 3, 2019) (same); *In re Leapfrog Enters., Inc. Sec. Litig.*, 2005 WL 5327775, at *4 (N.D. Cal. July 5, 2005) (same); *Reese v. Malone*, 2015 WL 1526567, at *3 (W.D. Wash. Apr. 3, 2015) (same).

[3]    In *In re Allergan PLC Sec. Litig.*, No. 1:18-cv-12219 (S.D.N.Y), there were no additional corrective disclosures upheld (or even pled) between the successive rounds of lead plaintiff proceedings, and the end of the class period was not extended to incorporate share price declines (much less those that occurred following the first round of lead plaintiff application submissions); *see also In Re Tezos Sec. Litig.*, No. 3:17-cv-06779 (N.D. Cal.) (same); *In re MicroStrategy Inc. Sec. Litig.*, No. 00-cv-00473, ECF Nos. 43, 45 (E.D. Va.) (same; lead plaintiff asked to withdraw only **two weeks** after appointment and before an amended complaint was filed); *In re SLM Corp. Sec. Litig.*, No 1:08-cv-01029 (S.D.N.Y.) (lead plaintiff proceedings reopened during the pleading stage, before any additional corrective disclosures or changes to the class period were upheld); *Endress v. Gentiva Health Servs., Inc.*, 276 F.R.D. 62, 64 (E.D.N.Y. 2011) (same).  *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1057 (N.D. Cal. 2010) is a run-of-the-mill lead plaintiff order entered at case inception that does not deal with a lead plaintiff withdrawing or proceedings being reopened. The quoted language from *Zhu* is actually a direct quote itself of *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999), a case that makes clear that the PSLRA's "sixty (60) day window" would *not* apply to situations where the lead plaintiff process is reopened.  *See id.* at 824

CALIFORNIA IRONWORKERS FIELD PENSION TRUST'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS LEAD PLAINTIFF MOTION - 3:19-cv-01651-WHO                    - 2 -
4845-5954-0964.v1

Birmingham did not attempt to assist the Court in the briefing on the issues concerning Mr. Hedvat's departure, nor did it seek timely reconsideration of the Reopening Order.  Nor does it explain now any change in circumstances warranting reconsideration.  *See Khasin v. R.C. Bigelow, Inc.*, 2015 WL 5569161, at \*1 (N.D. Cal. Sept. 21, 2015) (Orrick, J.) (denying motion for leave to file reconsideration motion).  In fact, while Birmingham's newest proposed lead counsel commends its own "conduct thus far in this litigation" and praises itself for "contin[uing] to ***closely*** monitor the progress of the litigation," (ECF No. 174 at 3), it is silent as to why it failed to take any steps to protect absent class members while "Levi & Korsinsky LLP and Wolf Popper LLP . . . attempt[ed] to substitute certain of their other clients as the new Lead Plaintiff and appoint themselves as the Co-Lead Counsel for the Class."  *See* ECF No. 195 at 10.  As such, it is not clear what "conduct thus far in this litigation" (apart from its client filing a lead plaintiff motion in 2019 proposing a different law firm as its choice of lead counsel – and abandoning that motion two weeks later) merits Birmingham's legally-untenable appointment.  *See Cavanaugh*, 306 F.3d at 732 (explaining the "sequential" process for evaluating lead plaintiff applications and noting that "the Reform Act provides in categorical terms that the ***only*** basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy. . . .  That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence.") (emphasis in original); *Leapfrog*, 2005 WL 3801587, at \*2 (refusing to grant priority to movant after reopening the lead plaintiff process, finding that "the Cupples Movants argue that 'they have already conferred substantial benefits to the class through their vigorous prosecution of the case.'. . . Nevertheless, *Cavanaugh* squarely holds that such peripheral issues cannot be the basis for elevating a particular plaintiff to lead status.").[4]

n.37 ("the Court might be forced to reopen applications for lead plaintiff to others [after the sixty day window]").

[4]    For his part, Mr. May – who ***has*** actually remained involved in the litigation and has taken steps to protect the class  – similarly suggests that it would be reasonable for the Court to give priority to his lead plaintiff application.  *See* ECF No. 194 at 16-17.  Putting aside the deficiencies in his application that independently preclude his appointment, Mr. May's belated request is doomed by the fact that the Court has already ruled that it would follow the majority of courts that have allowed any class member to file a lead plaintiff motion in light of the altered case contours.  Ironically, the Reopening Order may have been informed by Mr. May's own briefing, which urged the Court to

CALIFORNIA IRONWORKERS FIELD PENSION TRUST'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS LEAD PLAINTIFF MOTION - 3:19-cv-01651-WHO                - 3 -
4845-5954-0964.v1

Birmingham's counsel goes a step further by characterizing the Pension Trust's decision not to seek lead plaintiff status in 2019 (when the Pension Trust's financial interest was approximately one-sixth of what it is today) as "prior apathy" and "s[itting] on its hands,"(ECF No. 195 at 15-16), yet nothing could be further from the truth. In fact, the entire purpose of the PSLRA was to encourage institutional investors with significant losses to take a judicious approach to seeking lead plaintiff status. *See, e.g.*, 15 U.S.C. §78u-4(a)(3)(B)(vi) ("a person may be a lead plaintiff . . . in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period").[5] And while the Pension Trust commends Birmingham's active service as a lead plaintiff in securities litigation on behalf of investors over the last five years (*see* ECF 175-1), it is simply false to suggest that the Pension Trust's more discerning approach has been any less effective. *See, e.g.*, *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) (the Pension Trust recovering $600 million dollars as a lead plaintiff in what remains the largest securities class action recovery in Sixth Circuit history). In fact, the Pension Trust has recovered more as a lead plaintiff in securities fraud class actions than all of the other lead plaintiff movants *combined*.

Lastly, Birmingham's counsel speculates that the Pension Trust would somehow have difficulty overseeing Robbins Geller (which the Pension Trust has utilized as counsel over a 15-year period) because of the Firm's significant resources, experience, and unparalleled track record of success. *See* ECF No. 195 at 16. Aside from the commonsense-defying nature of counsel's claim, the Pension Trust has already demonstrated that it is able to oversee and direct Robbins Geller by achieving a record recovery together in *Cardinal Health*, where Chief Judge Marbley concluded that "[t]he quality of the representation [was] demonstrated by the substantial benefit achieved for the

follow five courts that have dealt with this issue, four of which reached the result that May wants the Court to now depart from. *See* ECF No. 168 at 1 (requesting that the Court "reopen[] the PSLRA's lead plaintiff appointment process" in line with *Reese*, *Snap*, *JP Morgan*, and *Neopharm*).

[5]    *Compare, e.g.*, *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1112 (N.D. Cal. 2001) (permitting institutional investor to avoid the bar of the PSLRA's professional plaintiff provision because it was "the only acceptable institutional investor" before the Court) *with Cunha v. Hansen Nat. Corp.*, 2009 WL 2029797, at *7 (C.D. Cal. July 13, 2009) (declining to lift the PSLRA's professional plaintiff bar for an institutional investor "given the presence of an alternative institutional investor" who had not served as lead plaintiff in more than 5 cases in 3 years).

CALIFORNIA IRONWORKERS FIELD PENSION TRUST'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS LEAD PLAINTIFF MOTION - 3:19-cv-01651-WHO          - 4 -
4845-5954-0964.v1

Class and the efficient, effective prosecution and resolution of this action." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 756 (S.D. Ohio 2007).[6]  This time around, the Pension Trust has assembled another efficient, cohesive, and highly competent Robbins Geller prosecution team led by Shawn Williams, Managing Partner of the Firm's San Francisco office.[7]  If appointed as lead counsel, Robbins Geller's extensive litigation resources – human, financial, and technological  – as well as the Firm's presence in the District, will yield cost savings for the class and efficiencies for the Court and the litigants (not to mention, continued compliance with the Local Civil Rules).[8]

---

[6]    In addition to the Pension Trust in *Cardinal Health*, Robbins Geller's clients have successfully overseen the Firm in the largest securities fraud class action recoveries in the Fifth, Seventh, Eighth, Tenth, and Eleventh Circuits.  *See* ECF No. 184 at 6 n.3.

[7]    Most recently, Mr. Williams was a lead lawyer overseeing Robbins Geller's *Facebook Biometric* prosecution team, where the largest all cash privacy settlement was obtained.  *See In re Facebook Biometric Info. Privacy Litig*, 2021 WL 757025, at *1 (N.D. Cal. Feb. 26, 2021) (Judge Donato approving the settlement and noting that "[b]y any measure, the $650 million settlement in this biometric privacy class action is a landmark result.").  Robbins Geller's other recent record recoveries in the District include *In re LendingClub Sec. Litig.*, No. 3:16-cv-02627-WHA, ECF No. 383 (N.D. Cal. July 20, 2018) (finalizing $125 million securities fraud class action settlement, a recovery that ranks among the top ten largest securities fraud class action recoveries in the District) and *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 3:15-md-02672-CRB (N.D. Cal.) (Robbins Geller partner Paul J. Geller appointed to serve on Plaintiffs' Steering Committee in what was to be the largest consumer auto industry class action settlement in U.S. history).

[8]    *Compare* Civil L.R. 3-7(c) (requiring any party seeking to serve as lead plaintiff "at the time of initial appearance" to "state that the party has reviewed a complaint filed in the action and either: (1) Adopts its allegations or, if not, (2) Specifies the allegations the party intends to assert.") *with* ECF No. 20-2 (Birmingham's non-compliant Certification in 2019) *and* ECF No. 175-1 (Birmingham's newest non-compliant Certification in 2021).  *See also* Civil L.R. 3-7(d) (requiring each lawyer seeking to serve as class counsel in any PSLRA action to detail direct or beneficial interest in securities that are the subject of the action); Civil L.R. 3-15(a) ("Upon making a first appearance in any proceeding in this Court, each party must file with the Clerk a 'Certification of Interested Entities or Persons . . . .'"); Civil L.R. 5-1(c)(2)(A) ("A Notice of Appearance must be e-filed whenever counsel joins a case."); Civil L.R. 5-1(c)(2)(E) ("The replacement of one firm by another as counsel for a party is governed by Civil L.R. 11-5 and requires an order of the Court.").

For the reasons discussed in its opposition brief (ECF No. 196), the Pension Trust is the presumptive lead plaintiff.[9] No movant, including Birmingham, has rebutted the presumption in the Pension Trust's favor.  The Pension Trust should be appointed Lead Plaintiff.

DATED:  April 12, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP

s/ Michael Albert
MICHAEL ALBERT

DANIELLE S. MYERS
TRICIA L. McCORMICK
MICHAEL ALBERT
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
tmcormick@rgrdlaw.com
malbert@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

---

[9]   The LK Group submits a vacuous second joint declaration (ECF No. 193-1) with its opposition brief, seemingly for the sole purpose of making sure that the Court is aware that its members attended *two* (as opposed to one) lawyer-organized and conducted conference calls.  *See* ECF No. 193 at 9-10.  This performative display of "cohesion" during the pendency of LK's lead counsel motion is belied by, among other things, the 18 months of the apparent *lack* of any cohesion between Mr. Hedvat, Miami, and LK when there was no lead counsel motion pending.  Even without the benefit of case-specific hindsight, courts have declined to credit nearly identical "second" joint declarations submitted by similar LK-created groups.  *See* Declaration of Michael Albert in Support of California Ironworkers Field Pension Trust's Reply Memorandum of Law in Further Support of Its Lead Plaintiff Motion, Exs, 1-2; *see also In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835-36 (N.D. Cal. 2019) ("Nothing in the two joint declarations submitted by the group demonstrates that it is the group members, and not the lawyers, who are driving their lead plaintiff application. . . .  The declaration allegations are conclusory and cursory, and indicate only that the group members -- who reside in Texas, Virginia and Pennsylvania -- have exchanged a few calls and emails with each other since being introduced by their common lawyer."); *Tan v. NIO Inc.*, 2020 WL 1031489, at *4 n.4 (E.D.N.Y. Mar. 3, 2020) ("The NIO Investor Group submitted a second joint declaration (Dkt. 33-5) that adds no useful information.  As such, the court disregards it.").

CALIFORNIA IRONWORKERS FIELD PENSION TRUST'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS LEAD PLAINTIFF MOTION - 3:19-cv-01651-WHO          - 6 -
4845-5954-0964.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 12, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Michael Albert
MICHAEL ALBERT

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  malbert@rgrdlaw.com

4845-5954-0964.v1

## Mailing Information for a Case 3:19-cv-01651-WHO Scheller v. Nutanix, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com,MAlbert@ecf.courtdrive.com

- **Laura G. Amadon**
  lamadon@wsgr.com,vshreve@wsgr.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Stephanie A. Bartone**
  sbartone@zlk.com,files@zlk.com,shalliday@zlk.com

- **David Bricker**
  dbricker@tenlaw.com

- **Robert C. Finkel**
  RFinkel@wolfpopper.com,cdunleavy@wolfpopper.com

- **Richard W. Gonnello**
  rgonnello@faruqilaw.com,ecf@faruqilaw.com,dbehnke@faruqilaw.com

- **Benjamin Heikali**
  Bheikali@faruqilaw.com,ealdo@faruqilaw.com,rglezakos@faruqilaw.com,ecf@faruqilaw.com,tpeter@faruqilaw.com

- **Shannon L Hopkins**
  shopkins@zlk.com,mkeating@zlk.com,shalliday@zlk.com,ecf@zlk.com

- **John T. Jasnoch**
  jjasnoch@scott-scott.com,scott-scott@ecf.courtdrive.com,efile@scott-scott.com

- **David Reuven Lev Kaplan**
  dkaplan@saxenawhite.com,e-file@saxenawhite.com,lmix@saxenawhite.com

- **Nancy A. Kulesa**
  nkulesa@bfalaw.com

- **Nicole Catherine Lavallee**
  nlavallee@bermantabacco.com,sfservice@bermantabacco.com

- **Katherine M. Lenahan**
  klenahan@faruqilaw.com

- **Nina F. Locker**
  nlocker@wsgr.com,lkoontz@wsgr.com,calendar@wsgr.com

- **Adam Christopher McCall**
  amccall@zlk.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Kristina M Mentone**
  kmentone@zlk.com,files@zlk.com,shalliday@zlk.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Gregory Mark Nespole**
  gnespole@zlk.com,ecf@zlk.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,tcrockett@pomla

- **Aidan Chowning Poppler**
  cpoppler@bermantabacco.com,sfservice@bermantabacco.com

- **Lesley F. Portnoy**
  LPortnoy@glancylaw.com,info@glancylaw.com,clinehan@glancylaw.com,lesley-portnoy-3007@ecf.pacerpro.com,charles-linehan-8383@ecf.pacerpro.com

- **Gregory M Potrepka**
  gpotrepka@zlk.com,files@zlk.com,shalliday@zlk.com

- **Andrew W. Rocco**
  arocco@zlk.com,files@zlk.com,shalliday@zlk.com

- **Joshua Wolf Ruthizer**
  jruthizer@wolfpopper.com,cdunleavy@wolfpopper.com

- **Ignacio Evaristo Salceda**
  isalceda@wsgr.com,rlustan@wsgr.com

- **Shane Palmesano Sanders**
  ssanders@robbinsllp.com,notice@robbinsllp.com

- **Evan L Seite**
  eseite@wsgr.com,vhernandez@wsgr.com

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com,johnson@wvbrlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)