**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *pro hac vice*)
Kristina Mentone (admitted *pro hac vice*)
Gregory Potrepka (admitted *pro hac vice*)
Andrew Rocco (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: kmentone@zlk.com
Email: gpotrepka@zlk.com
Email: arocco@zlk.com

**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for the Nutanix Investor Group and*
*Proposed Lead Counsel for the Class*

[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NUTANIX, INC. SECURITIES LITIGATION | Master File No. 3:19-cv-01651-WHO |
| | Hon. William H. Orrick |
| | CLASS ACTION |
| | **NUTANIX INVESTOR GROUP'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR APPOINTMENT AS THE LEAD PLAINTIFF** |

**PRELIMINARY STATEMENT**

John P. Norton, on behalf of the Norton Family Living Trust UAD 11/15/2002 ("Norton"), a member of the Nutanix Investor Group, acquired 100,000 Nutanix, Inc. shares from October 2, 2018 to October 19, 2018 at a cost to him of $5,500,000. As a result of this purchase, Norton lost $2,386,682 when the price of Nutanix stock declined on March 1, 2019 and May 30, 2019 following revelations of the Defendants' fraud. This purchase and loss are undisputed and, therefore, Norton is indisputably a member of the class alleged in this case of "all persons or entities that purchased or otherwise acquired Nutanix securities between November 30, 2017 and May 30, 2019, inclusive, seeking to pursue remedies under the Securities Act and Exchange Act of 1934." Dkt. No. 124 at ¶435.

Contrary to the suggestions of other movants, Norton does not claim any losses from his sale of put options on Nutanix shares during the Class Period. The fact that he acquired his Nutanix shares after they were assigned to him pursuant to those options does not make him any less of a purchaser of shares. It has been established law for almost 50 years that sellers of put options who subsequently acquire shares are the same as any other purchaser of common stock. There is economically no difference between the two and the contrary position defies both logic and precedent. The few cases which have excluded sellers of put options from a class of stock purchasers are readily distinguishable as they involve options traders who never acquired the underlying stock or who otherwise claimed losses from the trading of option contracts themselves.

The competing movants further argue that even if Norton is part of the Class that he is atypical and/or inadequate because he did not rely on the market price as part of this purchase of these 100,000 shares as it was a "private non-open market transaction at prices that were entirely divorced from where the stock was trading those days." Dkt. No. 214 at 1. These arguments have no basis in fact, are unsupported by any evidence as required under the terms of the Private Securities Litigation Reform Act of 1995, and are contrary to established law. Norton, like other Class members, purchased common stock during the Class Period that was trading at inflated prices as a result of the fraud. This purchase was based on an investment decision to transact in Nutanix exchange-listed securities on the open market during the Class Period while relying on

the market price of Nutanix securities. When news entered the market correcting the fraud, Norton, like other members of the class, was harmed. In situations such as this, courts have routinely found that those investors who "purchased" common stock from the assignment of puts are typical of the other members of the class. *See e.g.*, *Hoexter v. Simmons*, 140 F.R.D. 416 (D. Ariz. 1991). Indeed, "many courts have appointed options traders as lead plaintiffs to represent the interests of common stockholders." *Hall v. Medicis Pharm. Corp.*, No. CV08-1821PHX-GMS, 2009 WL 648626, at *4 (D. Ariz. Mar. 11, 2009) (collecting cases). To disqualify a purchaser of stock via put options, a party must introduce "specific evidence" that suggests "that the nature of his options, the history of their purchase and sale, or some other factor made him inadequate to represent the class…." *Id*. No such "proof" has been submitted in this case, and none exists. The Court should therefore conclude that Norton and the Nutanix Investor Group are typical and adequate and grant the motion for appointment as lead plaintiff.

## NORTON IS A MEMBER OF THE CLASS

Since as early as 1978, it is settled law that sellers of put options who acquired shares upon assignment of these options are properly members of a class that is defined as including investors who "purchased" common stock and that these same investors are typical and adequate to represent a class of these investors. In 1978, in *Hochschuler v. G. D. Searle & Co.,* 82 F.R.D. 339 (N.D. Ill. 1978), plaintiff, who sold a put during the class period and purchased his shares as a result of the shares being assigned to him, was appointed as a class representative of a class of "all persons who purchased G. D. Searle common stock" during the class period. *Id.* at 343, 346-48. The fact that the plaintiff acquired the shares through the exercise of put options was immaterial: "Gordon sold the put voluntarily, allegedly ignorant of the alleged scheme" and "*[a]t the relevant sale date, his decision was voluntary*." *Id.* at 347 (emphasis added).

In the Ninth Circuit, the law is identical. In *Hoexter v. Simmons*, 140 F.R.D. 416 (D. Ariz. 1991), the court found that put sellers who purchased their shares from an assignment of the puts were included in a proposed class that was defined only as those who "purchased" common stock during the class period. *Id.* at 419-21. The *Hoexter* court rejected defendants' arguments that put option sellers should not be included in the class because "even if an option trader does not rely

on price when purchasing stock pursuant to the holder's exercise of a put option, the option trader may have relied on the market's integrity in entering into the option contract in the first place, which may have occurred during the Class Period." *Id.* at 421. Thus, "[t]raders in puts and calls rely on the integrity of the information disseminated in the market just as do purchasers and sellers of the underlying security." *Id.* (quotation marks and citation omitted).

## NORTON IS TYPICAL OF THE CLASS

Norton sold his put options relying on the market price of Nutanix securities. Dkt. No. 178-3, ¶4. Norton then acquired Nutanix common stock from the assignment of those put options. Therefore, during the Class Period, Norton, like other Class members, purchased or acquired Nutanix common stock that was trading at inflated prices as a result of defendants' alleged fraud. When news entered the market correcting the fraud, Norton and all other members of the class were harmed when the price of Nutanix common stock declined. "Indeed, courts typically treat both stockholders and options holders as members of the same plaintiff class." *Hall*, 2009 WL 648626, at *5 (citing cases). Norton suffered the same or similar injury based on the wrongful conduct alleged in the Complaint as every other Class member. He is therefore typical.

Pension Trust and the other movants suggest that Norton is atypical because he is not a member of the Class and/or is not entitled to the fraud-on-the-market presumption. This is simply not true. In *Lifschitz v. Hexion Specialty Chemicals, Inc.*, 1:08-cv-06394 (S.D.N.Y. Feb. 17, 2009), the district court appointed an investor, Burch, as a co-lead plaintiff for a class of investors "who purchased the common stock of Huntsman" during the class period. *See Lifschitz*, (Declaration of Shannon Hopkins dated May 20, 2021, Ex. A, "Order"). The court rejected the opposing movant's argument that Burch, as an investor who only sold puts during the class period who was assigned shares after the class period, "'[wa]s not a proper lead plaintiff because he is not a member of the Class' and/or 'will be subject to unique defenses that the Class of common stock purchasers will not face.'" *Id.* at 5; *reconsideration denied*, 2009 WL 734040, at *2 (S.D.N.Y. Mar. 18, 2009). In finding that Burch was both a typical and adequate investor to represent the class, the court further noted that a put seller upon assignment of a put was retroactively a "defrauded stock purchaser." *See* Order, at 5-6. ("[o]nce the option buyer

predictably exercises the option, the seller is effectively forced to purchase the stock at the fraudulently inflated strike price - retroactively placing the put options seller in the shoes of a defrauded stock purchaser" (quoting *In re Sci.-Atlanta, Inc. Secs. Litig.*, 571 F. Supp. 2d 1315, 1330 (N.D. Ga. 2007)). Thus, the court found that Burch was both typical and adequate because an option seller's interests "are sufficiently aligned with those of [the purported Class]." *Id*. at 5 (quoting *In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 99 (D. Conn. 2006)). Further, Pension Trust's argument would exclude all potential class members that purchased common stock pursuant to an option (either from the exercise of a purchased call or the assignment of a sold put) from the Class.[1] There is no suggestion that such investors did not suffer losses as a result of defendants' fraud, the same sort of losses as suffered by Class members here and nowhere in the operative complaint does it exclude investors that purchased Nutanix common stock as a result of an option exercise or assignment. *See* Dkt. No. 124; at ¶435.

Pension Trust also contends that even if Norton is a member of the proposed class, he is still atypical because "Mr. Norton's losses stem from him getting assigned 100,000 shares pursuant to a private non-open market transaction…." Dkt. No. 214 at 1. This is factually untrue. Norton's purchase was the result of trading a U.S.-exchange-listed equity options on Nutanix common stock that was sold on the open-market relying only on public information and without any direct communication or negotiation with the option holder.[2] Thus, the notion that this was a "private" transaction is wrong and the Pension Trust have provided no "specific evidence" or "proof" to support their contention. *Hall*, 2009 WL 648626, at *4.

### NORTON IS AN ADEQUATE CLASS REPRESENTATIVE

"To determine whether named plaintiffs will adequately represent a class, courts must

---

[1] Notably, accepting the argument that an investor's reliance on the market price for purchasing a stock pursuant to an option is not tied to the underlying option trade would mean that ***any investor*** that purchased stock as a result of an exercise or assignment of ***any U.S. exchange-listed equity option*** could not recover the resulting damages in a securities class action because these investors would not qualify for the fraud-on-the-market presumption for these purchases. This is contrary to established law in the Ninth Circuit and elsewhere. *See*, *e.g.*, *Hall*, 2009 WL 648626, at *4; *Sci.-Atlanta*, 571 F. Supp. 2d at 1330; *Priceline.com*, 236 F.R.D. at 99.

[2] Exchange-listed options in the United States, such as the put options sold by Norton, are standardized securities that trade on U.S. exchanges and are cleared through the Option Clearing Corporation which "is the buyer to every seller and the seller to every buyer in the U.S. listed-options markets[.]" OCC, https://www.theocc.com/ (last visited May 20, 2021).

resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Twitter Inc. Secs. Litig.*, 326 F.R.D. 619, 626 (N.D. Cal. 2018) (citation and quotation omitted). There are no conflicts of interest between Norton and any other member of the Class. Norton sold his put options relying on the market price of Nutanix securities, as did the purchases of Nutanix common stock. Both Norton and the Class will rely on the efficient market presumption and the fraud-on-the-market theory in litigating this case. Norton and his counsel will also vigorously prosecute this case, evidenced by, among other things, Norton's significant loss as a result of the alleged fraud and counsel's success in litigating this case to date. As such, Norton is an adequate representative.

*In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002), is entirely consistent with Norton's appointment as lead plaintiff. In *Critical Path*, the Court concluded that option traders who never acquired Critical Path shares were properly excluded from a class where the complaint never sought to include such investors. *Id.* at *5. Accordingly, there was "nothing unfair" to exclude them. *Id*. Here, there is no question that Norton is specifically part of the Class because he purchased Nutanix stock during the Class Period. In *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 CIV. 5865 (NRB), 2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020), the put seller was assigned securities *after* the initial corrective disclosure of the fraud to the market and his losses were attributed by the court to his sales of put options rather than his acquisition of the relevant security.[3] That is not the case here where Norton's losses resulted directly from his ownership of Nutanix shares when its stock price declined on March 1, 2019 and May 30, 2019 when Defendants' fraud was revealed, ***not*** from any trading in Nutanix options. To the extent that the Court in *ProShares* ruled that acquirers of shares via option transactions are atypical to other stock purchasers, such a ruling is directly contrary to decades of precedent in that district and elsewhere.

Accordingly, the motion of the Nutanix Investor Group should be granted.

---

[3] In making its ruling, the Court found that the movant's failure to present any authority to support his typicality and adequacy "has not satisfied the Court that his investment history will not continue to be an issue in the case." *Id.* at *4 n.3.

Dated: May 20, 2021                              Respectfully submitted,

                                                 **LEVI & KORSINSKY, LLP**
                                                 */s/ Shannon L. Hopkins*
                                                 Shannon L. Hopkins (admitted *pro hac vice*)
                                                 Kristina Mentone (admitted *pro hac vice*)
                                                 Gregory Potrepka (admitted *pro hac vice*)
                                                 Andrew Rocco (admitted *pro hac vice*)
                                                 1111 Summer Street, Suite 403
                                                 Stamford, CT 06905
                                                 Tel: (203) 992-4523
                                                 Email: shopkins@zlk.com
                                                 Email: kmentone@zlk.com
                                                 Email: gpotrepka@zlk.com
                                                 Email: arocco@zlk.com

                                                 Adam M. Apton (SBN 316506)
                                                 Adam C. McCall (SBN 302130)
                                                 388 Market Street, Suite 1300
                                                 San Francisco, CA 94111
                                                 Tel: (415) 373-1671
                                                 Email: aapton@zlk.com
                                                 Email: amccall@zlk.com

                                                 Nicholas I. Porritt (*pro hac vice* forthcoming)
                                                 Alexander A. Krot III (*pro hac vice* forthcoming)
                                                 1101 30th Street, NW
                                                 Suite 115
                                                 Washington, DC 20007
                                                 Tel: (202)524-4290
                                                 Email: nporritt@zlk.com
                                                 Email: akrot@zlk.com

                                                 *Proposed Lead Counsel for the Class*

                                                 **WOLF POPPER LLP**
                                                 Robert C. Finkel (admitted *pro hac vice*)
                                                 Joshua W. Ruthizer (admitted *pro hac vice*)
                                                 845 Third Avenue
                                                 New York, NY 10022
                                                 Telephone: (212) 759-4600
                                                 Facsimile: (212) 459-2093
                                                 Email: rfinkel@wolfpopper.com
                                                 Email: jruthizer@wolfpopper.com

                                                 *Proposed Additional Counsel for the Class*