NINA F. LOCKER (SBN 123838)
IGNACIO E. SALCEDA (SBN 164017)
EVAN L. SEITE (SBN 274641)
LAURA G. AMADON (SBN 321524)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:    (650) 493-9300
Facsimile:    (650) 565-5100
Email:    nlocker@wsgr.com
          isalceda@wsgr.com
          eseite@wsgr.com
          lamadon@wsgr.com

*Attorneys for Defendants Nutanix, Inc.,*
*Dheeraj Pandey, and Duston M. Williams*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NUTANIX, INC. SECURITIES LITIGATION | Case No. 3:19-cv-01651-WHO <br><br> **CLASS ACTION** <br><br> **DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT THE SECOND AMENDED COMPLAINT** <br><br> Hearing Date: August 18, 2021 <br> Time: 2:00 P.M. <br> Hon. William H. Orrick |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1

RELEVANT PROCEDURAL BACKGROUND ...........................................................................2

ARGUMENT ................................................................................................................................3

    I.    The Motion To Supplement Is Fatally Flawed ...............................................4

    II.   The Motion To Supplement Is Futile Because It Violates Rule 11 ........................9

        A.    The Motion to Supplement Would Violate Rule 11(a) ...............................9

        B.    Robbins Geller Cannot Adopt the SAC's Allegations Without Investigation ...................................................................................................10

CONCLUSION ...........................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
No. 19 Civ. 10067 (PAE), 2020 WL 4734989 (S.D.N.Y. Aug. 14, 2020),
*appeal filed*, No. 20-3074 (2d Cir. Sept. 10, 2020) .......................................................... 14

*Bolling v. Gold*,
No. C13-0872JLR, 2015 WL 6870617 (W.D. Wash. Nov. 9, 2015) ............................... 11

*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995) ............................................................................................... 9

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
498 U.S. 533 (1991) ..................................................................................................... 9, 10

*Christian v. Mattel, Inc.*,
286 F.3d 1118 (9th Cir. 2002) ......................................................................................... 10

*City of Livonia Emps.' Ret. Sys. v. Boeing Co.*,
306 F.R.D. 175 (N.D. Ill. 2014) ................................................................................. 11, 12

*City of Livonia Emps.' Ret. Sys. v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013) ........................................................................................... 12

*Conley v. Gibson*,
355 U.S. 41 (1957) ............................................................................................................. 8

*Cunningham v. Medtronic Inc.*,
No. 14-cv-04818, 2015 U.S. Dist. LEXIS 164530 (N.D. Cal. Dec. 8, 2015) ................ 5, 7

*Del Guidice v. S.A.C. Cap. Mgmt., LLC*,
No. 06-1413 (SRC), 2009 WL 424368 (D.N.J. Feb. 19, 2009) .................................. 12, 13

*Foman v. Davis*,
371 U.S. 178 (1962) ........................................................................................................... 4

*Garr v. U.S. Healthcare, Inc.*,
22 F.3d 1274 (3d Cir. 1994) ............................................................................................. 13

*In re Connetics Corp. Sec. Litig.*,
542 F. Supp. 2d 996 (N.D. Cal. 2008) .......................................................................*passim*

*In re Crude Oil Commodity Litig.*,
No. 06 Civ 6677(NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ........................... 13

*In re Lehman Bros. Sec. & ERISA Litig.*,
Nos. 10 Civ. 6637(LAK), 09 MD 2017(LAK),
2013 WL 3989066 (S.D.N.Y. July 31, 2013) .................................................................. 14

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*,
701 F.2d 1276 (9th Cir. 1983) ........................................................................................... 9

*Ko v. Mut. Pharm. Co.*,
No. C-13-00890-RMW, 2013 WL 3338596 (N.D. Cal. July 1, 2013) ............................ 10

*Lam v. City & Cnty. of San Francisco*,
No. C 10-4641 PJH, 2015 WL 2198505 (N.D. Cal. May 11, 2015) .................................. 5

*McKean v. Hernandez*,
No. 09-CV-1129 WJ/LAM, 2010 WL 8752033 (D.N.M. Sept. 30, 2010) ...................... 10

*In re Millennial Media, Inc. Sec. Litig.*,
No. 14 Civ. 7923(PAE), 2015 WL 3443918 (S.D.N.Y. May 29, 2015) ..................... 11, 12

*Montoya v. City of San Francisco*,
No. 17-cv-06534-JD, 2021 WL 197659 (N.D. Cal. Jan. 20, 2021) ................................ 4, 5

*Moore v. PetSmart, Inc.*,
728 F. App'x 671 (9th Cir. 2018) ................................................................................... 10

*Obregon v. Sessions*,
No. 17-cv-01463-WHO, 2017 WL 3478774 (N.D. Cal. Aug. 14, 2017) ................... 3, 4, 9

*Ouziz v. Cap. One Servs.*,
No. C 08-02201 WHA, 2008 WL 5115215 (N.D. Cal. Dec. 4, 2008) ............................... 5

*Ross v. Slabach*,
No. C 02-1349 SI, 2002 WL 31689386 (N.D. Cal. Nov. 26, 2002) .................................. 8

*Saul v. United States*,
928 F.2d 829 (9th Cir. 1991) ........................................................................................... 9

*Strojnik v. Landry's Inc.*,
No. 4:19-CV-01170, 2019 WL 7461681 (S.D. Tex. Dec. 9, 2019), *report
and recommendation adopted,* 2020 WL 42454 (S.D. Tex. Jan. 2, 2020) ....................... 9

*United States v. Cain*,
130 F.3d 381 (9th Cir. 1997) ......................................................................................... 10

*United States v. Thompson*,
No. Civ. S 03-1532 FCD GGH, 2003 WL 23112782
(E.D. Cal. Nov. 18, 2003) ................................................................................................ 9

*Urias v. Astrue*,
No. 1:07-cv-01444-AWI-SMS, 2007 WL 2994691
(E.D. Cal. Oct. 12, 2007) ............................................................................................... 10

*VNB Realty, Inc. v. Bank of Am. Corp.*,
No. 11 Civ. 6805(DLC), 2013 WL 5179197 (S.D.N.Y. Sept. 16, 2013) ................... 13, 14

**STATUTES**

15 U.S.C. § 78u-4(c) ................................................................................................................ 11

**RULES**

Civ. L. R. 10-1 ...................................................................................................................... 4, 5

Fed. R. Civ. P. 10(a) ........................................................................................................... 6

Fed. R. Civ. P. 11 ........................................................................................................ *passim*

Fed. R. Civ. P. 15 ...................................................................................................... 3, 5, 7

Defendants Nutanix, Inc. ("Nutanix" or the "Company"), Dheeraj Pandey, and Duston M. Williams (together, with Nutanix, "Defendants") hereby submit this opposition in response to the Motion For Leave To Supplement the Second Amended Complaint For Violations of the Federal Securities Laws (the "Motion to Supplement") filed by new Lead Plaintiff, California Ironworkers Field Pension Trust ("Ironworkers"), and new Lead Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller").

**INTRODUCTION**

Through the Motion to Supplement, Robbins Geller and Ironworkers seek to adopt all the substantive allegations in the Second Amended Complaint for Violations of the Federal Securities Laws (the "SAC") that was filed by the prior lead counsel and lead plaintiff. ECF No. 124. As a matter of longstanding pleading rules and practices, the Motion to Supplement is fatally flawed in several respects. Among other things, although the Motion to Supplement purports to modify the SAC, it fails to provide a copy of the entire proposed operative complaint, as required by this District's Local Rules. In addition, when read into the SAC, the proposed revisions are impermissibly ambiguous and confusing. It is not clear what specific entities are serving as the plaintiffs in the action, or who represents them. Moreover, the proposed revisions fail to identify what counsel performed the investigation that forms the basis for the allegations in this action. These flaws alone require denial of the Motion to Supplement.

More fundamentally, it appears that Ironworkers is seeking to adopt the SAC and to prosecute this action based on it without fulfilling its nondelegable investigatory obligations under Federal Rule of Civil Procedure 11 ("Rule 11"). Robbins Geller and Ironworkers did not perform the investigation that provided the basis of the SAC; the prior lead counsel did. That investigation purportedly included interviews of various confidential witnesses ("CWs") that the prior lead plaintiff relied upon extensively throughout the SAC. As numerous authorities recognize, Robbins Geller and Ironworkers cannot meet their Rule 11 obligations by relying on the prior counsel's work—instead, they must conduct their own investigation to confirm and verify the allegations in the SAC, including the CW statements contained therein.

Defendants' request that Robbins Geller and Ironworkers be held accountable to their Rule 11 obligations is not a mere formality. In fact, Defendants' preliminary efforts to evaluate the accuracy of the CW allegations in the SAC have uncovered significant issues with the purported investigation underlying those allegations and raise serious questions regarding the reliability of all of the CW allegations in the SAC. Thus, it is critically important that Robbins Geller and Ironworkers conduct their own Rule 11 investigation to verify the allegations they seek to pursue. Because they have not done so, the Motion to Supplement should be denied.

## RELEVANT PROCEDURAL BACKGROUND

In July 2019, following the lead plaintiff application process mandated under the Private Securities Litigation Reform Act (the "PSLRA"), Shimon Hedvat, and the prior lead counsel, Levi & Korsinsky LLP ("L&K") to head this class action. ECF No. 87. On September 9, 2019, Hedvat, through L&K, filed a Consolidated Amended Complaint (the "CAC"), along with a new plaintiff City of Miami Fire Fighters' and Police Officers' Retirement Trust ("City of Miami"). ECF No. 102. The allegations in the CAC were premised on the then-plaintiffs' purported "information and belief" based "on the investigation of [L&K]," including "interviews with former employees of Nutanix." *Id.* at 1. The CAC included allegations based on statements purportedly made by seven former Nutanix employees who were identified as CWs. *E.g.*, *id.* ¶¶ 50-56. Defendants moved to dismiss the CAC, and the Court granted the motion on March 9, 2020. ECF No. 121. With respect to the CAC's CW allegations, the Court held that the CWs were "not adequate" because they lacked personal knowledge or were "insufficiently specific" to show any Defendant's awareness of the falsity of any challenged statements. *Id.* at 20-21.

On April 17, 2020, plaintiffs filed the SAC. ECF No. 124. The SAC added numerous new allegations based on purported statements made during L&K's interviews of five new CWs. *See, e.g.*, *id.* at 14. Like the CAC, the SAC allegations were made based on the plaintiffs' "information and belief," which was premised entirely on L&K's investigation, including interviews with CWs. *Id.* at 1. Defendants again moved to dismiss the SAC, and the Court issued an order granting the motion in part and denying it in part on September 11, 2020, which credited statements attributed to the CWs in holding that the SAC "adequately alleged falsity and scienter

for a few statements regarding new customer growth and sales productivity."  ECF No. 140 at 1; *see also, e.g., id.* at 2, 16.

Following the Court's order, the parties and their counsel began to engage in the initial stages of discovery on the surviving challenged statements.  Shortly thereafter, L&K moved to withdraw Hedvat as lead plaintiff, claiming that, while Hedvat had actively "participated in this lawsuit through the pleadings and into discovery," he was "no longer able to continue to represent the putative class" due to the COVID-19 pandemic and "attendant personal circumstances."  *E.g.,* ECF No. 161 at 3.  Ultimately, the Court permitted Hedvat to withdraw and re-opened the PSLRA lead plaintiff appointment process for a limited period to appoint a replacement.  ECF No. 171 at 2.  On June 10, 2021, the Court appointed Robbins Geller and Ironworkers as Lead Counsel and Lead Plaintiff, respectively.  ECF No. 224 at 13.  Following that, defense counsel and Robbins Geller began discussions regarding the case schedule going forward.  Declaration of Evan L. Seite In Support of Defendants' Opposition to Lead Plaintiff's Motion for Leave to Supplement the SAC ("Seite Decl.") ¶ 2.  Defendants requested that the first event on any proposed schedule be Ironworkers and Robbins Geller's filing of their own complaint.  *Id.* ¶ 3.  Robbins Geller initially resisted that request (*id.*), but ultimately filed the Motion to Supplement pursuant to Federal Rule of Civil Procedure 15(d) ("Rule 15(d)").

Through their Motion to Supplement, Robbins Geller and Ironworkers propose to "supplement" the SAC by replacing Hedvat's name with Ironworkers and by removing a reference to "Lead Counsel" in a sentence summarizing the investigation by L&K as the basis for plaintiffs' information and belief.  *See* ECF No. 229-2 at 1; ECF No. 229-1 at 1.  Robbins Geller and Ironworkers otherwise seek to adopt the SAC in full.

### **ARGUMENT**

Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  The legal standard for granting or denying a motion to supplement a complaint under Rule 15(d) is the same standard as amending a complaint under Federal Rule of Civil Procedure 15(a).  *Obregon v.*

*Sessions*, No. 17-cv-01463-WHO, 2017 WL 3478774 (N.D. Cal. Aug. 14, 2017).  The Court has broad discretion in whether, and when, to permit leave to supplement a pleading.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Leave can be denied for "any apparent or declared reason," including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Id.*

As explained herein, the Motion should be denied for two independent reasons.  Section I demonstrates the Motion to Supplement is fatally flawed because it fails to meet basic and longstanding pleading rules and practice, including, among other things, this District's Civil Local Rules.  Section II shows that the Motion to Supplement is futile because Robbins Geller and Ironworkers have not conducted an independent investigation to verify the allegations of the SAC, as required by Rule 11.

## I.    THE MOTION TO SUPPLEMENT IS FATALLY FLAWED

The Motion should be denied because it fails to comply with the pleading requirements that apply to complaints, which were cogently summarized in the recent decision *Montoya v. City of San Francisco*, No. 17-cv-06534-JD, 2021 WL 197659 (N.D. Cal. Jan. 20, 2021).  There, Judge Donato rejected an attempt by a plaintiff to offer a "supplemental" complaint that purported to incorporate earlier complaints by reference, explaining:

> [T]his will not do under longstanding pleading rules and practice.  ***Complaints are not patchwork quilts stitched together from portions of multiple documents.***  Civil Local Rule 10-1 makes this abundantly clear: "Any party filing or moving to file an amended pleading must reproduce the entire proposed pleading and may not incorporate any part of a prior pleading by reference."  In addition, "[i]t is well-established in our circuit that an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'  In other words, 'the original pleading no longer performs any function.'"  ***To be clear, these rules are not an empty gesture at procedural niceties.***  A defendant is entitled to a simple and plain notice of the claims that it has been called into court to answer.  A farrago of allegations hashed together from multiple documents defeats that basic expectation of due process and fair play.  It also invites confusion and inefficiency.

*Id.* at *5 (second alteration in original) (emphases added) (citation omitted).

The Motion to Supplement the SAC violates these longstanding precepts of pleading.  Instead of providing a single operative complaint, it merely offers a pleading styled as a

"[Proposed] Supplement" that makes three piecemeal changes to the SAC—specifically, two interlineated line edits to the first page of the SAC and the replacement of a single paragraph to identify Ironworkers as the Lead Plaintiff. ECF No. 229-1. Otherwise, the proposed "supplement" operates to incorporate the remainder of the substantive allegations in the SAC by reference. *See id.* At the outset, this approach violates Civil Local Rule 10-1 by failing to "reproduce the ***entire*** proposed pleading." Civ. L. R. 10-1 (emphasis added); *see also Cunningham v. Medtronic Inc.*, No. 14-cv-04818, 2015 U.S. Dist. LEXIS 164530, at *5 (N.D. Cal. Dec. 8, 2015) (applying Local Rule 10-1 to deny a motion to file a supplemental complaint). This alone is enough reason to deny the Motion to Supplement. *See Montoya*, 2021 WL 197659, at *2; *Cunningham*, 2015 U.S. Dist. LEXIS 164530, at *4 (denying motion to supplement under Rule 15(d) for failure to comply with Local Rule 10-1; "[p]arties may not file piecemeal complaints or amendments that contain portions of claims and defendants").[1]

Even if the Court were to ignore that failing, a review of the revisions Robbins Geller and Ironworkers propose to interlineate in the SAC demonstrates that the resultant complaint would fail to meet even minimum pleading requirements. For example, the text below reflects the first proposed supplementation to the first page of the SAC in redline.

> Lead Plaintiff ~~Shimon Hedvat~~ <u>California Ironworkers Field Pension Trust</u> and plaintiff City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Plaintiffs") bring this action . . . pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder . . . .[2]

---

[1] *See also, e.g., Lam v. City & Cnty. of San Francisco*, No. C 10-4641 PJH, 2015 WL 2198505, at *1-2 (N.D. Cal. May 11, 2015) (failure to comply with Local Rule 10-1 was fatal to motion to amend complaint); *Ouziz v. Cap. One Servs.*, No. C 08-02201 WHA, 2008 WL 5115215, at *1 (N.D. Cal. Dec. 4, 2008) (same).

[2] *See* ECF No. 229-1 ("the words 'Shimon Hedvat' on page 1 of the complaint are replaced with 'California Ironworkers Field Pension Trust'"); SAC at 1. In the redlined excerpts herein, the original text of the SAC is reflected in black font; the text Robbins Geller and Ironworkers propose to remove is interlineated in red font with a strikethrough line; and the text they propose to add is interlineated in underlined blue font.

Based on this revision—as well as other portions of the SAC that Ironworkers and Robbins Geller do not propose to change[3]—it seems that Lead Plaintiff Ironworkers **and City of Miami** will be the "Plaintiffs" in the operative complaint in this action going forward. But Robbins Geller and Ironworkers do not appear to have authority to name City of Miami as a plaintiff. Robbins Geller does not represent City of Miami in this action; L&K does. *See, e.g.*, ECF No. 183 at 1 (Robbins Geller's notice of appearance for Ironworkers). In fact, City of Miami was a member of the "Nutanix Investor Group" that unsuccessfully submitted a lead plaintiff application and opposed the appointment of Robbins Geller and Ironworkers as Lead Counsel and Lead Plaintiff. *See* ECF Nos. 177, 178, 193, 201. And the Motion to Supplement was filed only on behalf of Ironworkers as Lead Plaintiff, not City of Miami, and was signed by Robbins Geller, not L&K. *E.g.*, ECF No. 229 at 2; ECF No. 229-1 at 1-2. Thus, City of Miami's role in this action, to the extent it even has one, is entirely unclear—on its face, the Motion to Supplement appears to seek to have it continue as a party, even though it has no role in prosecuting this action on behalf of the class. Perhaps this was merely an error and the references to City of Miami that would remain in the "supplemented" SAC were inadvertently left unrevised in the Motion to Supplement. Even so, this lack of clarity and the resulting confusion it invites violates basic pleading practices because Defendants are entitled to notice of the parties that they are litigating against. *E.g.*, Fed. R. Civ. P. 10(a) (requiring complaints to include the names of all parties to the action).

The second proposed supplementation to the first page of the SAC, reflected in the redlined excerpt below, further highlights the flaws in Robbins Geller and Ironworkers' proposal to "supplement" the SAC:

> Plaintiffs allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters. Plaintiffs' information and belief is based on the investigation of their ~~undersigned Lead Counsel~~ counsel, which included, among other things, review and analysis of: (i) Nutanix's public filings with the U.S. Securities and Exchange Commission ("SEC"); (ii)

_____

[3] For example, while Robbins Geller and Ironworkers propose to replace paragraph 40 of the SAC, which identified Hedvat as Lead Plaintiff, they do not propose to modify paragraph 41 of the SAC, which identifies City of Miami as a plaintiff. *See* ECF No. 229-1; SAC ¶¶ 40-41. Hedvat and City of Miami both appear on the caption and L&K is on the signature block in the SAC, which remain unchanged by the Motion to Supplement. *See generally* ECF No. 229-1 at 1.

Nutanix's other public statements, including press releases and investor conference calls; (iii) interviews with former employees of Nutanix; (iv) reports of securities and financial analysts, news articles, and other commentary and analysis concerning Nutanix and the industry in which it operates; and (v) court filings.[4]

The meaning of this revised sentence—and, in particular, the word "counsel" as used therein—is impermissibly ambiguous and confusing. Perhaps the most reasonable interpretation is that, by removing the phrase "undersigned Lead Counsel" and replacing it with merely "counsel," the sentence reflects that the current Lead Counsel, Robbins Geller, did not perform the investigation that forms the basis for plaintiffs' purported "information and belief." Instead, "counsel" refers to L&K, and "plaintiffs"—*i.e.*, Ironworkers **and** City of Miami—are relying on that investigation as the basis for their allegations in this action. But that interpretation results in an inaccurate representation: Ironworkers is represented by Robbins Geller, not L&K, and, therefore, Ironworkers' "information and belief" **could not have been** based on L&K's investigation.

An alternative interpretation is that "counsel" refers to **both** Robbins Geller and L&K.[5] But this interpretation is also impermissible because it is likewise factually inaccurate. Specifically, Robbins Geller did not perform the pre-filing investigation that provided the basis for the allegations in the SAC, which occurred long before Robbins Geller's appointment as Lead Counsel.[6] For example (and among other things), that investigation purportedly included "interviews with former employees of Nutanix"—*i.e.*, the twelve CWs identified in the SAC. Robbins Geller did not conduct those purported interviews, L&K did.

[4] *See* ECF No. 229-1 ("the words 'undersigned Lead Counsel' on page 1 of the Complaint are replaced with 'counsel'"); SAC at 1.

[5] It appears that "counsel" cannot refer to Robbins Geller alone because, as previously explained, Robbins Geller does not represent plaintiff City of Miami. Moreover, if that were the intended meaning, the revision could have simply used "Lead Counsel," rather than deleting it.

[6] Indeed, because this revision modifies the description of who conducted the investigation that was conducted *before* the SAC was filed, it does not appear to be properly subject to Rule 15(d), which permits only "transaction[s], occurrences[s], or event[s] that happened *after* the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added). Such a modification would be an amendment under Rule 15(a). *See Cunningham*, 2015 U.S. Dist. LEXIS 164530, at *2-3.

As explained in Section II, *infra*, Ironworkers and Robbins Geller's apparent reliance on L&K's investigation for the basis of the allegations in this action violates Rule 11, which is itself enough reason to deny the Motion to Supplement.  But even setting that aside, these competing, and inherently inaccurate, possible interpretations of the proposed supplemented SAC demonstrate that far from providing "simple and plain notice" of the basis of the claims in this action as required, the Motion to Supplement leaves the Defendants to guess at which law firm and parties are responsible for the investigation that forms the basis for the allegations at issue in this action.  This, too, violates basic principles of pleading.  *E.g.*, *Ross v. Slabach*, No. C 02-1349 SI, 2002 WL 31689386, at *1 (N.D. Cal. Nov. 26, 2002) ("A complaint must 'give the defendant fair notice of what the plaintiff's claim is **and the grounds upon which it rests**.'") (emphases added) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Robbins Geller and Ironworkers' failure to meet threshold pleading requirements is not merely a technicality—the rules of pleading are much more meaningful than that.  They determine whether and how plaintiffs will stand behind the factual representations in the SAC and whether Defendants will have an opportunity to test them in discovery.  For example, as it stands, it is not clear whether City of Miami will be subject to party discovery.  And the practical effect of Robbins Geller's failure to clearly identify what "counsel" performed the investigation underlying the SAC would render litigation untenable going forward.  For instance, if Defendants were to serve straightforward contention interrogatories regarding the CW allegations asking plaintiffs to set forth the basis for their allegations—as is their right—Robbins Geller and Ironworkers would presumably be unable to offer any response.  Indeed, they could not even confirm the **identities** of the CWs, much less the underlying facts regarding what they said.  Beyond the manifest violation of Rule 11 that would occur (*infra* Section II), such an outcome is facially absurd.  The Motion to Supplement should be denied.

## II. THE MOTION TO SUPPLEMENT IS FUTILE BECAUSE IT VIOLATES RULE 11

The Motion to Supplement should be denied because, as proposed, it is violative of Rule 11 and therefore futile. *Obregon*, 2017 WL 3478774, at *2 ("futile amendments should not be permitted") (quoting *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983); *see also Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). An amendment is futile where it would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). As explained below, because Robbins Geller and Ironworkers have not complied with Rule 11, the allegations in the "supplemented" SAC would be subject to a motion to strike. *See, e.g.*, *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1004-06 (N.D. Cal. 2008) (granting motion to strike portions of complaint for failure to conduct "reasonable investigation" of allegations in accordance with Rule 11).[7] Thus, the Motion to Supplement is futile.

### A. The Motion to Supplement Would Violate Rule 11(a)

As a threshold matter, the Motion to Supplement, if granted, would violate the signature requirement of Rule 11(a), which provides that "[e]very pleading . . . must be signed by at least one attorney of record in the attorney's name." Fed. R. Civ. P. 11(a). The signature requirement is more than a technicality. The United States Supreme Court has explained that "the message conveyed by signing of a document" is the signatory's certification to a court that he or she "has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991). "The essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a

---

[7] *See also, e.g.*, *Strojnik v. Landry's Inc.*, No. 4:19-CV-01170, 2019 WL 7461681, at *5 (S.D. Tex. Dec. 9, 2019) (denying leave to amend due to futility because "nothing in the record or Plaintiff's arguments suggests that Plaintiff could amend his pleadings[] in a manner consistent with Fed. R. Civ. P. 11"), *report and recommendation adopted,* 2020 WL 42454 (S.D. Tex. Jan. 2, 2020); *United States v. Thompson*, No. Civ. S 03-1532 FCD GGH, 2003 WL 23112782, at *2-3 (E.D. Cal. Nov. 18, 2003) (granting motion to strike portion of pleading that lacked "factual foundation" required by Rule 11).

message to the district court that this document is to be taken seriously." *Id.* at 546; *see also United States v. Cain*, 130 F.3d 381, 383 (9th Cir. 1997) ("[A]n attorney's signature carries great legal consequences."). As the Ninth Circuit has recognized, "[f]iling a complaint in federal court is no trifling undertaking. An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002); *see also Connetics*, 542 F. Supp. 2d at 1004 (same). Rule 11(a) states unequivocally that "[t]he court *must strike* an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a) (emphasis added). Thus, Rule 11(a) is mandatory and automatic; it "does not provide the Court discretion in making its decision." *McKean v. Hernandez*, No. 09-CV-1129 WJ/LAM, 2010 WL 8752033, at *4 (D.N.M. Sept. 30, 2010); *see also Bus. Guides*, 498 U.S. at 543 (where "a required signature is missing and the omission is not corrected promptly, the document will be stricken"); *Moore v. PetSmart, Inc.*, 728 F. App'x 671, 673 (9th Cir. 2018) ("Rule 11 also provides that a 'court *must strike* an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention'"); *Ko v. Mut. Pharm. Co.*, No. C-13-00890-RMW, 2013 WL 3338596, at *2 (N.D. Cal. July 1, 2013) (striking unsigned complaint per Rule 11(a)); *Urias v. Astrue*, No. 1:07-cv-01444-AWI-SMS, 2007 WL 2994691, at *3 (E.D. Cal. Oct. 12, 2007) (same).

Notably, Robbins Geller does not propose to "supplement" the SAC with their signature in the Motion to Supplement. ECF No. 229-1. This fact, in conjunction with the Motion to Supplement's otherwise patchwork and confusing approach (Section I, *supra*), suggests Robbins Geller may be strategically attempting to avoid responsibility for the SAC's substantive allegations and the investigation underlying them. ECF No. 229-1. In any event, given that L&K does not represent the current Lead Plaintiff and no longer represents the class in this action, the "supplemented" SAC that Ironworkers and Robbins Geller propose to adopt would be unsigned, and would be stricken. This renders the Motion to Supplement futile.

**B.      Robbins Geller Cannot Adopt the SAC's Allegations Without Investigation**

Robbins Geller and Ironworkers' Motion to Supplement seeks to adopt all of the substantive allegations of the SAC, including the numerous allegations based on purported

statements provided by CWs during interviews ostensibly conducted by the previous lead counsel, L&K.  *Id.*  This approach violates Rule 11(b), which provides that by presenting to the Court a pleading—"whether by signing, filing, submitting, or later advocating it—[counsel] certifies that to the best of [their] knowledge, information, and belief, ***formed after an inquiry reasonable under the circumstances*** . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(1)-(3) (emphasis added).  "Under Rule 11(b) an attorney has a 'nondelegable responsibility' to 'personally . . . validate the truth and legal reasonableness of the papers filed,' and 'to conduct a reasonable factual investigation.'"  *Connetics*, 542 F. Supp. 2d at 1005 (alteration in original) (citations omitted).  In securities class actions such as this one, "the PSLRA requires counsel to conduct a more diligent pre-filing investigation in cases involving securities fraud than in other contexts."  *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 180-81 (N.D. Ill. 2014) ("*Livonia II*") (citations omitted). Indeed, the PSLRA expressly emphasizes the importance of compliance with Rule 11 by requiring the courts overseeing securities fraud suits to determine whether all parties and attorneys have complied with each requirement of Rule 11(b) "as to ***any complaint***, responsive pleading, or dispositive motion" and mandating the imposition of sanctions if a violation is found. 15 U.S.C. § 78u-4(c)(1)-(2) (emphasis added).

Here, counsel's Rule 11 obligations are particularly heightened because the SAC relies extensively on statements attributed to unnamed CWs.  The practice of using confidential witness statements to overcome the PSLRA's heightened pleading standards has resulted in significant abuses by the plaintiffs' bar, with firms failing to vet and confirm the work of investigators; failing to notify witnesses that they would be quoted or designated as CWs in complaints; improperly characterizing confidential witness allegations; and in some instances fabricating statements attributed to CWs.  *E.g.*, *In re Millennial Media, Inc. Sec. Litig.*, No. 14 Civ. 7923(PAE), 2015 WL 3443918, at *5-14 (S.D.N.Y. May 29, 2015) (providing an extensive critique of plaintiffs' counsel's approach to attributing statements to CWs and setting forth the practices to be used in interacting with CWs); *Bolling v. Gold*, No. C13-0872JLR, 2015 WL

6870617, at *7 (W.D. Wash. Nov. 9, 2015) (similar; acknowledging the "growing body of cases chronicling the repudiation" of CW statements in securities fraud actions and gathering examples); *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 760, 762 (7th Cir. 2013) (counsel "made confident assurances in their complaints about a confidential source" even though "none of the lawyers had spoken to the source" who "[n]o one had bothered to show the complaint"; gathering other examples of other instances of CW-related misconduct by counsel).

Confronted with these practices, courts have explained the baseline expectations regarding the ethical means of conducting CW investigations and the use of CW statements in securities complaints. For example, plaintiffs' counsel should inform CWs that they will be relied upon in complaints. *Livonia II*, 306 F.R.D at 181; *Millennial Media*, 2015 WL 3443918, at *13. And, as a matter of "basic decency," counsel should also explain that such designation might lead to a CW's identification so that the person may evaluate how that may affect them. *Millennial Media*, 2015 WL 3443918, at *14. Perhaps most importantly, where, as here, CW allegations are "critical" to plaintiffs' claims, the CW must be "interviewed [by counsel] before the complaint [is] filed." *Livonia II*, 306 F.R.D. at 181; *see also Millennial Media*, 2015 WL 3443918, at *12-13. Counsel cannot merely rely on the work of others, such as investigators, to discharge this obligation, and the "failure to interview [the CW] before filing their securities fraud complaint constitutes a failure to conduct a reasonable pre-filing investigation as required by the PSLRA." *E.g.*, *Livonia II*, 306 F.R.D. at 181.

In light of these Rule 11 obligations, it is clear that Robbins Geller and Ironworkers[8] cannot rely on L&K's investigation, including its interviews of CWs, to avoid conducting their own investigation. Indeed, a significant body of authority expressly recognizes that counsel cannot fulfill Rule 11 by relying on complaints filed by different counsel. For example, in *Connetics*, plaintiffs in a securities class action included paragraphs in their complaint that were taken from a complaint filed by the SEC against two of the defendants. 542 F. Supp. 2d at 1004.

---

[8] Although Rule 11 requires counsel to conduct the required pre-filing investigation, the parties are likewise bound by the rule and are subject to sanctions where their counsel fails to meet its obligations. *E.g.*, *Del Guidice v. S.A.C. Cap. Mgmt., LLC*, No. 06-1413 (SRC), 2009 WL 424368, at *10 (D.N.J. Feb. 19, 2009) (citing authorities).

The court granted a motion to strike those paragraphs, explaining that the duty to conduct a Rule 11 investigation "cannot be delegated to another member of the attorney's firm[] [and] it would make little sense that an attorney 'somehow can rely on the analysis of attorneys in *different actions* and who are presumably from different law firms.'"  *Id.* at 1005 (citations omitted); *see also Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1280-81 (3d Cir. 1994) (Rule 11 violated where plaintiffs copied allegations from a complaint prepared by another attorney); *Del Guidice*, 2009 WL 424368, at *8 (Rule 11 violated where counsel relied on a complaint filed by another law firm without conducting an independent investigation; "[o]ne attorney cannot rely solely on another's pre-filing investigation"); *cf. In re Crude Oil Commodity Litig.*, No. 06 Civ 6677(NRB), 2007 WL 1946553, at *8 (S.D.N.Y. June 28, 2007) (granting motion to dismiss; "plaintiffs cannot be permitted to free ride off . . . complaints of other parties filing similar lawsuits").

With respect to Robbins Geller's apparent effort to adopt allegations attributable to CWs purportedly interviewed during an investigation by L&K, *VNB Realty, Inc. v. Bank of America Corp.* is particularly instructive.  No. 11 Civ. 6805(DLC), 2013 WL 5179197 (S.D.N.Y. Sept. 16, 2013).  There, the plaintiff, VNB, filed a complaint alleging securities fraud against Bank of America.  *Id.* at *1-2.  That complaint reproduced significant passages from complaints filed in another action in which AIG was the plaintiff, including allegations attributed to confidential sources.  *Id.* at *4, *7.  In granting the motion to dismiss these claims, the court explained:

> By drawing its factual allegations from the statements of confidential witnesses in AIG's complaint, VNB is attempting to rely on the substance of those allegations without being held responsible for certifying that they are supported by some factual basis, or at least that the witnesses did in fact make such statements.  Unlike AIG, VNB presumably does not even know who these witnesses are.  ***Such reliance is impermissible, particularly in light of counsel's "personal, non-delegable responsibility" under Rule 11 to "validate the truth and legal reasonableness of the papers filed."***

*Id.* at *7 (emphasis added) (citations omitted).

The parallels to this action are clear.  Robbins Geller and Ironworkers, like VNB, appear to be attempting to rely on the substance of CW allegations without being held responsible for certifying that those statements are supported by fact and are accurate.  They are doing so despite the fact that they presumably do not even know who the witnesses are.  Rule 11 prohibits this

approach to litigation. *Id.*; *see also Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, No. 19 Civ. 10067 (PAE), 2020 WL 4734989, at *10 (S.D.N.Y. Aug. 14, 2020) (the Rule 11 certification "means that counsel has spoken with [the] confidential witnesses and knows who they are"; "[a]llowing counsel to rely on confidential witness statements recounted in a separate complaint would provide the Court little assurance that the factual contentions have any evidentiary support") (citation omitted), *appeal filed*, No. 20-3074 (2d Cir. Sept. 10, 2020); *In re Lehman Bros. Sec. & ERISA Litig.*, Nos. 10 Civ. 6637(LAK), 09 MD 2017(LAK), 2013 WL 3989066, at *4 (S.D.N.Y. July 31, 2013) (same).

Robbins Geller and Ironworkers may attempt to dismiss Defendants' insistence that they comply with Rule 11 as overly formalistic and unfounded. Not so. Defendants have significant reason to be concerned about the integrity of the investigation L&K undertook to support CW statements in the SAC. As part of the factual analysis of the SAC, defense counsel recently attempted to contact some of the CWs cited in the SAC to determine whether the statements attributed to them were accurately portrayed. Although counsel has not yet been able to contact most of the CWs in the SAC, the few preliminary conversations that have occurred have been unsettling. Three of the CWs—who are collectively referenced over fifty times in in the SAC— confirmed that they had no understanding that they would be CWs cited in a complaint. Seite Decl. ¶ 5. One CW did not recall making statements attributed to him/her in the SAC and did not think that s/he was ever questioned about lead generation activities at Nutanix, despite the fact that there were several statements on that topic attributed to him/her. *Id.* ¶ 6.[9] That CW further stated that s/he did not use the phrases used in the SAC, so the statements attributed to him/her did not even sound like something s/he would say. Seite Decl. ¶ 6. That CW stated that s/he was really surprised to be used in a case against Nutanix because s/he had no issues with the Company. *Id.*

---

[9] Due to the discomfort and frustration expressed by the CWs about being involved in this action, Defendants continue to maintain their anonymity here. Should the Court wish to have further information regarding the identities of the CWs, Defendants are prepared to provide that information to the Court for *in camera* review.

Another CW, who is cited in over two dozen paragraphs and even directly quoted in the SAC, confirmed that s/he never spoke to counsel at L&K and never gave permission to be used as a CW in SAC. *Id.* ¶ 7. That CW stated that s/he only had a single short conversation with an investigator and that s/he was led to believe that s/he would be contacted again to obtain his/her specific consent to be part of the litigation. *Id.* S/he never gave that consent and reported feeling frustrated and misled that s/he was used in the SAC. *Id.* The CW only learned of his/her involvement in the action when s/he later received a copy of the SAC in the mail. *Id.* S/he found the fact that s/he was cited in the SAC very upsetting[10] and stated that there were absolutely attributions to him/her in the SAC s/he did not agree with or were incorrect. Seite Decl. ¶ 7.

Rule 11 requires that Robbins Geller and Ironworkers do their own investigation before they can be permitted to stand behind the SAC. That the Defendants' preliminary findings show there is a significant basis to doubt the reliability of the pre-filing investigation underlying the SAC further underscores the importance of Robbins Geller and Ironworkers actually conducting their own investigation as required by Rule 11.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully submit that the Motion to Supplement should be denied.

Dated: July 21, 2021                     Respectfully Submitted,

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

 */s/ Ignacio E. Salceda*
Ignacio E. Salceda

*Attorneys for Nutanix, Inc.,*
*Dheeraj Pandey, and Duston M. Williams*

---

[10] Apparently due to his/her significant (and understandable) frustration with being relied upon in the SAC without his/her consent, the CW has not, to date, been willing to discuss each specific statement attributed to him/her in the SAC with defense counsel.