# EXHIBIT D

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| DAVID BROWN CAUDLE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> AAC HOLDINGS, INC., et al., <br><br> Defendants. | ) Civil Action No. 3:19-cv-00407 <br> ) <br> ) CLASS ACTION <br> ) <br> ) Judge Eli J. Richardson <br> ) Magistrate Judge Alistair E. Newbern <br> ) <br> ) SUPPLEMENT TO CONSOLIDATED <br> ) COMPLAINT FOR VIOLATIONS OF <br> ) THE SECURITIES EXCHANGE ACT OF <br> ) 1934 <br> ) |

Pursuant to Federal Rule of Civil Procedure 15(d), Lead Plaintiff Indiana Public Retirement System hereby supplements its Consolidated Complaint for Violations of the Securities Exchange Act of 1934 (ECF No. 45) ("Complaint" or "Compl."). Through this supplement, subheading VII.B. and ¶145 in the Complaint are replaced in their entirety with the following:

**B.     Defendants Concealed an SEC Subpoena Regarding AAC's Accounts Receivable and Concealed and Refused to Respond to an SEC Letter Questioning the Company's Restatement and Accounting Policies**

145.     Despite receiving an SEC subpoena that underscored AAC's improper treatment of its accounts receivable, defendants concealed the SEC investigation for over seven months. Not only did AAC and Cartwright conceal the SEC subpoena and investigation, they also refused to address or substantively respond to an August 29, 2019 letter from the SEC's Division of Corporation Finance to Cartwright questioning the Company's disclosures regarding, among other things, its restatement, revenue recognition practices, and allowance for doubtful accounts, and requesting that the Company respond and supplement its disclosures.

(a)     With respect to the restatement, the SEC's letter questioned how AAC failed to appropriately account for uncollectable accounts, describing AAC's disclosures regarding these issues as "unclear" and needing to be "expand[ed]":

> It is unclear why you were unable to determine the collectibility of accounts receivable prior to the development of financial database analytical tools. Please expand the disclosure to explain the timing and nature of the restatements, including the reasons why you did not identify these adjustments when evaluating your accounts receivable aging and how you determined the amounts adjusted for each of the periods presented.

As alleged in ¶¶61-62 of the Complaint, there was no reason AAC could not determine the collectability of accounts receivable during the Class Period because the "historical cash collection trends by customer" that required the restatement "existed at the time of the issuance of the historical financial statements."

- 1 -

4835-3324-8176.v1

(b)    The SEC also questioned how AAC determined that its revenue was recognizable in the periods covered by the Company's restatement, including "how payor class and in-network compared to out-of-network status impacted [AAC's] assessment of collectibility":

In light of both your change in estimate and restatement involving collectibility of accounts receivable, please explain the specific ways in which you, prior to recognizing revenue, determined that revenue was realizable (ASC 605-10-25-1) or that it was probable you would collect substantially all of the consideration you were entitled to (ASC 606-10-25-1 and 606-10-25-7).  Please address this comment with respect to each type of revenue stream for all periods presented using the applicable accounting guidance for that period.  Please also separately address how payor class and in-network compared to out-of-network status impacted your assessment of collectibility.

(c)    With respect to AAC's description of its accounting policies and revenue recognition, the SEC questioned AAC's basis for estimating net realizable value for the period in which services are provided where AAC is uncertain of the source of payment:

We note your disclosure on page F-13 that a majority of your payments from commercial payors are at out-of-network rates.  In your risk factor disclosure on page 16, you indicate that third-party payors have "become increasingly aggressive in attempting to minimize use of out-of-network providers by disregarding the assignment of payment from clients to out-of-network providers".  Each of the examples provided in the risk factor disclosure, such as sending payments directly to clients, capping out-of-network benefits, waiving out-of-pocket amounts and initiating litigation all would create uncertainty in the amount of reimbursement to be ultimately received.  On page F-13 you disclose that you recognize client related revenues at estimated net realizable value "from clients, third-party payors and others" for services provided.  Please tell us the basis for your belief that you can estimate net realizable value in the period in which services are provided or can estimate reimbursement if you are unsure of the exact source of the payment at the time services are provided (*i.e.* whether commercial insurers will pay directly, the client will need to forward payments they receive from their insurance, etc.).  Please also tell us how your determination of estimated net realizable value is consistent with disclosure on page 56 which states that you "do not recognize revenue for any amounts not collected from the clients" for services that you expect to receive from the insurance company but that the insurance company remits directly to the client.

By highlighting the inconsistency between AAC's statement that it did "not recognize revenue for any amounts not collected from the clients" and AAC's recognition of revenue at net realizable value for services where the insurance company sends payment directly to the client, the SEC again drew

- 2 -

attention to the reality that, as alleged in ¶¶52-62 of the Complaint, an analysis considering payor class and in- or out-of-network status would have revealed, from at least the beginning of the Class Period, that AAC was recognizing revenues (or failing to record bad debt) where it was clear it was unlikely ever to be paid.

        (d)    The SEC also focused on AAC's disclosure of "increased client concentration" in states where insurers are allowed to pay out-of-network claims directly to patients and questioned AAC's accounting for those payments:

> We note your risk factor disclosure on page 18 that there has been increased client concentration in states that permit commercial insurance companies to pay out-of-network claims directly to the client instead of the provider. For out-of-network claims paid by the third-party directly to the client, please tell us how you determine both the timing and amount of revenue to be recognized and how you evaluate collectibility of these amounts prior to providing services.

The SEC's inquiry reflects the inconsistency between AAC's description of how it determined collectability (*i.e.*, "based on . . . historical collection experience," *see, e.g.*, Compl., ¶114) and its failure to perform that analysis for an increasingly significant portion of its accounts. The SEC's questioning of AAC's treatment of amounts paid to clients in this context also reinforces the significance of Cartwright's personal involvement with the "Pay to Patient" department. *See id*., ¶141. Defendants were well aware of the difficulties AAC faced in collecting those payments from patients, but nonetheless, they disregarded that information in preparing AAC's financial statements. *Id.*

        (e)    The SEC further sought information about AAC's failure to properly account for "the differing risks associated with accounts receivable from commercial insurers and individual clients":

> Refer to disclosure on page 41 that amounts paid to clients from commercial insurance companies continue to be reflected in your accounts receivable aging as amounts due from commercial payors. In light of the differing risks associated with accounts receivable from commercial insurers and individual clients described on page 57, clarify for us whether you assess collectibility on a client by client basis or

- 3 -

for a portfolio of similar contracts as described in ASC 606-10-10-4. If you assess collectibility for a portfolio of similar contracts, please tell us if your analysis differentiates between amounts paid to clients and amounts due from commercial payors.

The SEC's questioning of AAC's treatment of amounts paid to clients compared to amounts due from commercial payors further underscores the importance of Cartwright's direct knowledge of the difficulties AAC faced in collecting amounts paid to clients by insurers. *See* Compl., ¶141.

(f)       The SEC requested a response within ten business days, *i.e.*, by September 13, 2019. On that date, AAC responded only to acknowledge that it had been "unable to respond to [the SEC's] comments within the time frame requested" and to explain that AAC had "been focused on other pressing matters." AAC claimed to be "working diligently with our auditors, accountants and counsel to respond as soon as possible," saying it expected to "be able to respond by September 25, 2019" and would "advise if additional time is needed." September 25 passed with no substantive response. On October 8, 2019, the SEC wrote back to Cartwright, stating that the SEC's comments "remain outstanding and unresolved" and stating that the SEC "expect[ed] [Cartwright] to provide a complete, substantive response to these comments by October 23, 2019." On November 5, 2019, the SEC again wrote to Cartwright, stating that AAC had still failed to provide a substantive response and that, "consistent with our obligations under the federal securities laws," the SEC would be publicly releasing the "comment and response letters relating to disclosure filings it has reviewed." The SEC released the comment and response letters on December 5, 2019.

DATED: January 13, 2020                    ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                           CHRISTOPHER M. WOOD, #032977
                                           CHRISTOPHER H. LYONS, #034853


                                                   s/ CHRISTOPHER M. WOOD
                                           _____
                                                   CHRISTOPHER M. WOOD

- 4 -

4835-3324-8176.v1

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com
clyons@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
DARREN J. ROBBINS
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com

Lead Counsel for Lead Plaintiff

BARRETT JOHNSTON MARTIN
        & GARRISON, LLC
JERRY E. MARTIN, #20193
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com

Local Counsel

- 5 -

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on January 13, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ CHRISTOPHER M. WOOD
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
 & DOWD LLP
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  800/449-4900
615/252-3798 (fax)

E-mail:  cwood@rgrdlaw.com

4821-2115-7297.v1

# Mailing Information for a Case 3:19-cv-00407 Caudle v. AAC Holdings, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Robert P. Bramlett**
  robert@bramlettlawoffices.com

- **Lisa R. Bugni**
  lbugni@kslaw.com

- **Jessica Perry Corley**
  jpcorley@kslaw.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Michael T. Harmon**
  michael.harmon@wallerlaw.com,TAPDocketingClerk-Nash@wallerlaw.com,shelli.dimarco@wallerlaw.com

- **Logan R. Hobson**
  lhobson@kslaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,lpvega@pomlaw.com

- **Jonathan Lindenfeld**
  jlindenfeld@pomlaw.com

- **Christopher Hamp Lyons**
  clyons@rgrdlaw.com,crosini@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,eseaborn@barrettjohnston.com,nchanin@barrettjohnston.com,jmartin@rgrdlaw.com,ggilbert@barrettjohnston.com

- **W. Travis Parham**
  travis.parham@wallerlaw.com,TAPDocketingClerk-Nash@wallerlaw.com,shelli.dimarco@wallerlaw.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,cbarrett@rgrdlaw.com,CWood@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)