ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
KENNETH J. BLACK (291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
kennyb@rgrdlaw.com
        – and –
JAMES E. BARZ
FRANK A. RICHTER
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

*Lead Counsel for Lead Plaintiff California*
*Ironworkers Field Pension Trust*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NUTANIX, INC. SECURITIES LITIGATION | Case No. 3:19-cv-01651-WHO |
| | CLASS ACTION |
| | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(c)** |
| | Hearing Date:  September 14, 2022 |
| | Time:  2:00 P.M. |
| | Courtroom: 2 |
| | Hon. William H. Orrick |

Case No. 3:19-cv-01651-WHO

PLS.' OPP. TO DEFS.' RULE 12(c) MOT. FOR PARTIAL J. ON PLEADINGS

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ............................................................................................................1

II.     STATEMENT OF ISSUES .............................................................................................3

III.    STATEMENT OF RELEVANT FACTS .........................................................................3

IV.     LEGAL STANDARDS ...................................................................................................5

V.      ARGUMENT...................................................................................................................5

        A.      Plaintiffs Sufficiently Allege Loss Causation as to the May 30 Disclosures ..........6

        B.      Defendants' Challenges to the May 30 Disclosures Are Unavailing .....................7

VI.     CONCLUSION...............................................................................................................17

**TABLE OF AUTHORITIES**

**Page**

CASES

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988).................................................................................................14

*Berson v. Applied Signal Tech., Inc.,*
527 F.3d 982 (9th Cir. 2008) ..................................................................................12

*Bonanno v. Cellular Biomedicine Grp., Inc.,*
2016 WL 2937483 (N.D. Cal. May 20, 2016)........................................................16

*Bonanno v. Cellular Biomedicine Grp., Inc.,*
2016 WL 4585753 (N.D. Cal. Sept. 2, 2016) .........................................................16

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC,*
752 F.3d 82 (1st Cir. 2014)......................................................................................17

*Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
637 F.3d 1047 (9th Cir. 2011) ...................................................................................2

*Dalberth v. Xerox Corp.,*
766 F.3d 172 (2d Cir. 2014).....................................................................................17

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005)......................................................................................... *passim*

*Dworkin v. Hustler Magazine Inc.,*
867 F.2d 1188 (9th Cir. 1989) ...................................................................................5

*Emps.' Ret. Sys. of Puerto Rico Elec. Power Auth. v. Conduent Inc.,*
2020 WL 3026536 (D.N.J. June 5, 2020) .................................................................9

*Evanston Police Pension Fund v. McKesson Corp.,*
2021 WL 4902420 (N.D. Cal. Oct. 21, 2021).........................................................15

*Fleming v. Pickard,*
581 F.3d 922 (9th Cir. 2009) ...........................................................................2, 5, 14

*Herrera v. Zumiez, Inc.,*
953 F.3d 1063 (9th Cir. 2020) ...................................................................................5

*In re Barclays Bank PLC Sec. Litig.,*
756 F. App'x 41 (2d Cir. 2018) ...............................................................................17

*In re BofI Holding, Inc. Sec. Litig.,*
977 F.3d 781 (9th Cir. 2020) ......................................................................... *passim*

*In re Boston Sci. Corp. Sec. Litig.,*
708 F. Supp. 2d 110 (D. Mass. 2010) ......................................................................17

**Page**

*In re Daou Sys., Inc. Sec. Litig.*,
411 F.3d 1006 (9th Cir. 2005) ................................................................................2, 12, 13

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ...........................................................................2, 9, 13, 17

*In re LeapFrog Enters., Inc. Sec. Litig.*,
527 F. Supp. 2d 1033 (N.D. Cal. 2007) ...............................................................................16

*In re Mattel, Inc. Sec. Litig.*,
2021 WL 1259405 (C.D. Cal. Jan. 26, 2021) .......................................................................13

*In re Maximus, Inc. Sec. Litig.*,
2018 WL 4076359 (E.D. Va. Aug. 27, 2018)........................................................................17

*In re Nektar Therapeutics Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022) .........................................................................................15, 16

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010).................................................................................................17

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ........................................................................................14, 15

*In re QuantumScape Sec. Class Action Litig.*,
2022 WL 137729 (N.D. Cal. Jan. 14, 2022)........................................................................13

*In re Splunk Inc. Sec. Litig.*,
2022 WL 2525735 (N.D. Cal. Mar. 21, 2022)................................................................ *passim*

*John P. Norton, on Behalf of the Norton Family Living Trust*
*UAD 11/15/2002 v. Nutanix, Inc.*,
No. 3:21-cv-04080-WHO (N.D. Cal. Nov. 1, 2021) ..............................................................2

*Karinski v. Stamps.com, Inc.*,
2020 WL 281716 (C.D. Cal. Jan. 17, 2020) ..........................................................................9

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ........................................................................................6, 11

*Lopes v. Fitbit, Inc.*,
2020 WL 1465932 (N.D. Cal. Mar. 23, 2020).......................................................................16

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)..................................................................................................................5

*Mauss v. NuVasive, Inc.*,
2016 WL 3681831 (S.D. Cal. July 6, 2016) ...........................................................................9

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ..............................................................................................15

**Page**

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) ........................................................................................17

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) ...................................................................................6, 8, 9, 11

*N.Y. Hotel Trades Council & Hotel Assoc. of N.Y.C., Inc. Pension
Fund v. Impax Labs., Inc.*,
843 F. App'x 27 (9th Cir. 2021) ..........................................................................................9

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ..........................................................................................9, 15

*Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*,
411 F. Supp. 2d 1172 (N.D. Cal. 2005) ..............................................................................10

*Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014) ..............................................................................................9

*Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*,
564 F. Supp. 3d 1272 (N.D. Ga. 2021) ................................................................................9

*Rok v. Identiv, Inc.*,
2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ...........................................................................16

*Rosner v. Star Gas Partners, L.P.*,
344 F. App'x 642 (2d Cir. 2009) .........................................................................................17

*Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*,
2019 WL 4597518 (N.D. Ill. Sept. 23, 2019) ..............................................................2, 7, 9

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ............................................................................................15

Lead plaintiff California Ironworkers' Field Pension Trust and named plaintiff City of Miami Fire Fighters' and Police Officers' Retirement Trust (collectively, "Plaintiffs"), by and through their counsel, hereby submit this Memorandum of Points and Authorities in Opposition to Defendants' Notice of Motion and Motion for Partial Judgment on the Pleadings under Fed. R. Civ. P. 12(c) [ECF No. 270] ("Motion" or "Mem.").

## I.    INTRODUCTION

There is no dispute that the Second Amended Complaint for Violations of the Federal Securities Laws [ECF No. 124] ("Complaint")[1] sufficiently alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against all Defendants, Nutanix, Inc. ("Nutanix" or "Company"), Dheeraj Pandey ("Pandey"), and Duston M. Williams ("Williams") (collectively, "Defendants"). Specifically, the Complaint alleges that Defendants made false and misleading statements during the Class Period (March 1, 2018 through May 30, 2019, inclusive) that concealed from the investing public that Nutanix was experiencing significant declines in its sales pipeline and high levels of attrition in its sales force, negatively impacting sales and revenue. With this information concealed, Nutanix's stock price traded at artificially inflated prices. When the true facts were revealed, Nutanix's stock price collapsed, resulting in massive investor losses.

Indeed, Defendants already moved to dismiss on the pleadings, arguing only that the Complaint failed to plead the elements of falsity and scienter, and this Court denied that motion. *See* Order Regarding Motion to Dismiss [ECF No. 140] ("Order"). With the instant Motion, Defendants are moving to dismiss on the pleadings again – more than *two years* after the Complaint was filed and *eighteen months* after they filed their Answer – but have styled the Motion as a Rule 12(c) motion for judgment on the pleadings. Defendants now argue that, although the Complaint adequately pleads loss causation as to corrective disclosures on February 28, 2019 ("February 28 disclosures"), this Court should remove from the case, at the pleading stage and as a matter of law, a second set of partial corrective disclosures on May 30, 2019 ("May 30 disclosures"). Defendants

---

[1]    Citations to "¶__" refer to paragraphs of the Complaint.

PLS.' OPP. TO DEFS.' RULE 12(c) MOT. FOR PARTIAL J. ON PLEADINGS

could have raised this argument in their prior motion, but apparently decided it was too weak to include.[2]  However, the law has not changed in the intervening two years to make the argument any better.  The Motion should be denied.

Loss causation does not impose a high bar at the pleading stage.  For motions under Rule 12(c), like motions under Rule 12(b)(6), the allegations must be accepted as true and all reasonable inferences must be drawn in favor of Plaintiffs.  *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009); *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  Loss causation is adequately pled if the allegations give defendants "notice of plaintiffs' loss causation theory and provide the court some assurance that the theory has a basis in fact."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).[3]  As discussed, Defendants concede that standard has been met here as to the February 28 disclosures.  And, as to the May 30 disclosures, the Complaint alleges that new information was revealed concerning the scope, severity, and financial impact of the Company's pipeline and salesforce problems, causing the Company's stock price to plummet.  ¶¶343-347.  Courts have repeatedly upheld such allegations as adequately pleading loss causation.  *See, e.g.*, *In re Splunk Inc. Sec. Litig.*, 2022 WL 2525735, at *19-22 (N.D. Cal. Mar. 21, 2022); *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, 2019 WL 4597518, at *7-8 (N.D. Ill. Sept. 23, 2019); §IV.B, *infra*.  This Court should do the same.  To the extent Defendants assert that the more than 14% decline in Nutanix's stock price immediately following the May 30 disclosures was attributable to other factors, the appropriate place to do so is at summary judgment or trial, not a belated Rule 12(c) motion.  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057-58 (9th Cir. 2008); *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1025 (9th Cir. 2005).

---

[2]  Defendants also decided not to challenge loss causation in a separate Section 10(b) case before this Court filed by Nutanix options investors.  *See John P. Norton, on Behalf of the Norton Family Living Trust UAD 11/15/2002 v. Nutanix, Inc.*, No. 3:21-cv-04080-WHO (N.D. Cal. Nov. 1, 2021), ECF No. 41.

[3]  Citations, internal quotations, and footnotes omitted and emphasis added unless otherwise noted.

PLS.' OPP. TO DEFS.' RULE 12(c) MOT. FOR PARTIAL J. ON PLEADINGS

## II.    STATEMENT OF ISSUES

Whether the allegations in the Complaint, accepted as true and with all inferences drawn in Plaintiffs' favor, adequately plead that the May 30 disclosures further support the element of loss causation under Section 10(b) of the Exchange Act.

## III.    STATEMENT OF RELEVANT FACTS

As alleged in the Complaint, Nutanix trailed competitors in getting a public cloud product to market prior to the Class Period.  ¶¶5-6, 66, 70-73.  This was critical because competitors such as VMware and Amazon Web Services had launched their public cloud products years ago and Nutanix was losing market share.  *Id.*   Indeed, analysts recognized that Nutanix's "long-run success" was dependent on launching its public cloud product, Xi, which was still in development due to setbacks from engineering and software issues.  ¶¶6, 72.

To fix the engineering issues plaguing Xi, Defendants admittedly "made a decision" in the "planning process" for fiscal years 2018 and 2019 to keep critical lead generation spending "flat" and reallocated these funds to research and development.  ¶117.  Lead generation activities are the main component of marketing and are necessary to generate new sales leads and, eventually, customers.  ¶¶3, 88.  Defendants' decision to keep lead generation spending flat had an almost immediate negative effect on Nutanix's sales pipeline.  ¶¶14, 116-126.  However, because the sales data reported by Nutanix is a lagging indicator of lead generation spending, Defendants were able to conceal the declining sales pipeline during the Class Period.  ¶¶324, 327, 353, 383-385.  Defendants also concealed the declining sales pipeline by instructing sales personnel to "pull-in" sales to existing customers that were scheduled for future quarters.  ¶¶173-190. Nutanix's suffering pipeline was exacerbated by salesforce attrition.  As a result of sales personnel being unable to meet unrealistic sales quotas due to a depleted pipeline and insufficient resources, demoralized sales personnel left the Company in droves after being employed for only six to twelve months.  ¶¶12, 142-160.  This hurt the Company's sales productivity and revenue growth.  ¶¶12, 14, 161-164.

Rather than disclose any of this to investors during the Class Period, Defendants concealed Nutanix's significant declines in the sales pipeline and severe salesforce attrition by  misleadingly

PLS.' OPP. TO DEFS.' RULE 12(c) MOT. FOR PARTIAL J. ON PLEADINGS

telling investors, for example, that they "add[ed] a record number of new customers," made a "huge contribution to overall mid market customer acquisition," "had a renewed focus with the channel on new customer logos," were "really excited about what's happening in the channel with the pipeline for new logos," and that Nutanix was experiencing "ramped rep sales productivity" and "record sales productivity." ¶¶9, 14, 236-238, 269, 287, 363. This Court has held that the Complaint adequately alleges that these statements were false or misleading when made, and that Defendants made the statements with the requisite scienter. Order at 10-17.

As alleged in the Complaint, "Defendants were ultimately forced to reveal the truth in two partially corrective disclosures." ¶20. First, on February 28, 2019, Defendants issued revenue guidance for the Company's third fiscal quarter of 2019 ("3Q19") below analyst expectations because, in large part, Nutanix "miss[ed] our pipeline targets" in the second fiscal quarter of 2019 ("2Q19"). ¶¶20, 114, 324. In explaining the significant pipeline problems, Defendants further admitted, for example, that the Company had "reallocated some of our lead generation spending to other priorities," and that in "the past few quarters" Nutanix's "pipeline development" was negatively impacted "by a shortage of sales reps in the first half of the fiscal year." ¶¶323-324. Following these disclosures, Nutanix's common stock price declined 32.7%, from a closing price of $50.09 per share on February 28, 2019 to a closing price of $33.70 per share on March 1, 2019. ¶¶330, 422.

Then, on May 30, 2019, Defendants revealed that the problems were far worse than previously disclosed. Defendants disclosed that, beyond having just "missed" its pipeline targets in 2Q19, the Company needed to entirely "rebuild our pipeline." ¶346. Defendants further disclosed that Nutanix missed even the low range of the already weak revenue and billing guidance in 3Q19[4] due to, in part, the Company's sales pipeline problems, adding that the problems would have a negative impact on the fourth quarter of 2019 ("4Q19") as well. ¶¶343-347, 424. On this

---

[4] Defendants attempt to downplay the revenue and billings misses as "less than one percent" and "approximately 3.8 percent," respectively, of the low-end of the 3Q19 guidance ranges. Mem. at 6. But, the fact that Nutanix missed even the low-end of already weak guidance by *any* amount is significant, as reflected by the market's reaction. ¶¶29-30, 348-350.

PLS.' OPP. TO DEFS.' RULE 12(c) MOT. FOR PARTIAL J. ON PLEADINGS

news, Nutanix's common stock dropped 14.1%, from a closing price of $32.67 per share on May 30, 2019, to a closing price of $28.07 per share on May 31, 2019.  ¶¶348, 424.

## IV.    LEGAL STANDARDS

Because a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim, "the same standard of review" applies to both motions.  *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  In evaluating a motion for judgment on the pleadings, a court must "accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party."  *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th Cir. 2020).  Therefore, plaintiffs are entitled to have any and all plausible inferences draw in their favor, and defendants are not.  Judgment on the pleadings is only proper "when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Fleming*, 581 F.3d at 925.

## V.    ARGUMENT

The Court upheld several alleged statements concerning the Company's sales pipeline and new customer growth[5] and sales productivity[6] as adequately pled, rejecting Defendants' Rule 12(b)(6) challenges to falsity and scienter.  Order at 10-17.  Defendants do not challenge any aspect of that ruling, and, in fact, concede that Plaintiffs have amply pled each of the six elements required to establish a violation of Section 10(b) and Rule 10b-5.[7]  Defendants only argue that, while one corrective disclosure has been adequately pled, a second alleged corrective disclosure should be stricken from this case, without fact or expert discovery, as a matter of a law.

---

[5]    *See* ¶237 (misleadingly touting "a record number of new customers"); ¶238 (a "huge contribution to overall mid market customer acquisition"); ¶269 ("we've actually had a renewed focus with the channel on new customer logos" and "really excited about what's happening in the channel with the pipeline for new logos"); ¶271 (denying that smaller customer growth was negatively impacted by a transition to software-only products).

[6]    *See* ¶¶236, 363 (misleadingly touting "record sales productivity"); ¶287 (increased "ramped rep sales productivity").

[7]    To establish a violation of Section 10(b) and Rule 10b-5, plaintiffs must plead: "(1) a material misrepresentation or omission by the defendant ['falsity']; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).

A.    **Plaintiffs Sufficiently Allege Loss Causation as to the May 30 Disclosures**

Plaintiffs satisfy the requisite standards for pleading loss causation as to both of the alleged corrective disclosures. *Dura* requires that a plaintiff "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." 544 U.S. at 347. As the Ninth Circuit explained, "Rule 9(b)'s particularity requirement usually adds little to the plaintiff's burden. . . . [T]he plaintiff's allegations will suffice so long as they give the defendant notice of plaintiffs' loss causation theory and provide the court some assurance that the theory has a basis in fact." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020); *see also Dura*, 544 U.S. at 346-47 (the loss causation inquiry is a "simple test" that does not "impose a great burden upon a plaintiff").

In the Ninth Circuit "loss causation is a context-dependent inquiry, as there are an infinite variety of ways for a tort to cause a loss." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016); *see also Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753-54 (9th Cir. 2018) (per curiam). One way for plaintiffs to allege loss causation is to identify one or more "corrective disclosures," when "information correcting the misstatement or omission that is the basis for the action is disseminated to the market." *BofI*, 977 F.3d at 790. A corrective disclosure "need not consist of an admission of fraud by the defendant or a formal finding of fraud by a government agency." *Id*. Nor must a corrective disclosure "precisely mirror the earlier misrepresentation." *Id*. Rather, "[i]t is enough if the disclosure reveals new facts that, taken as true, render **some aspect** of the defendant's prior statements false or misleading." *Id*.; *see also Lloyd*, 811 F.3d at 1210 ("[t]he disclosure need not precisely mirror the earlier misrepresentation"; rather, it need only "relate back to the misrepresentation"). Further, "the true facts concealed by the defendant's misstatements may be revealed over time through a series of partial disclosures." *BofI*, 977 F.3d at 790. As an alternative to alleging corrective disclosures, loss causation may be alleged by showing that a foreseeable risk of the alleged fraud, such as missed guidance resulting from financial problems concealed by defendants, manifested and caused the company's stock price to decline. *See First Solar*, 881 F.3d at 754 (loss causation may be alleged by "showing that

the stock price fell upon the revelation of an earnings miss, even if the market was unaware at the time that fraud had concealed the miss").

Here, the Complaint alleges that the truth of Defendants' fraud was revealed through two partial disclosures, which caused the artificial inflation to leak out through massive stock price declines of 32.7% and 14.1% on unusually high trading volume. ¶¶330, 348. The Complaint connects these partial disclosures to Defendants' prior misstatements and omissions, and pleads how the disclosures operated to inform the market of Nutanix's true financial condition. On February 28, 2019, Defendants announced that Nutanix had missed its sales pipeline targets due to a failure to achieve new customer growth, sales execution problems, a lack of lead generation spending, and a shortage of sales representatives. ¶¶320, 322-329. The Company also issued lower-than-expected guidance for 3Q19 as a result of these problems. ¶¶321-322. However, Defendants downplayed the severity of the pipeline problems, claimed increases to spending and hiring were already having a positive impact, and said they would offset the problems by "doubl[ing] down on driving further business from within our large existing enterprise customer base." ¶¶320, 323-324, 327, 338-340.

Despite these reassurances, the truth was further revealed on May 30, 2019, when Defendants disclosed that the problems were significantly worse than they previously disclosed, failing to hit even the low-end of the reduced revenue and billing guidance announced on February 28, 2019. ¶¶343-347. Defendants attributed the surprisingly poor results to sales pipeline issues, which not only impacted 3Q19 but would also extend into 4Q19. ¶¶346-347. These disclosures individually and collectively related back to Defendants' misstatements regarding the sales pipeline, new customer growth, and sales productivity and informed the market that they were false and misleading. Nothing more is required at the pleading stage. *See Dura*, 544 U.S. at 347; *Splunk*, 2022 WL 2525735, at *19-22; *Walgreen*, 2019 WL 4597518, at *7-8; §V.B, *infra*.

**B.     Defendants' Challenges to the May 30 Disclosures Are Unavailing**

Defendants do not dispute that Plaintiffs have pled loss with particularity as to the first corrective disclosure, putting them on notice of Plaintiffs' loss causation theory. Rather, they argue that Nutanix's announcement of missed guidance on May 30, 2019 could not be a corrective

PLS.' OPP. TO DEFS.' RULE 12(c) MOT. FOR PARTIAL J. ON PLEADINGS

disclosure because the issues causing the guidance miss were purportedly already disclosed on February 28, 2019. Mem. at 9-19. Aside from being a premature question of fact, which is more appropriate for a jury to decide, this argument fails for several reasons.

*First*, to adequately allege loss causation, "[i]t is enough if the disclosure reveals new facts that, taken as true, render some aspect of the defendant's prior statements false or misleading." *BofI*, 977 F.3d at 790. The May 30 disclosures revealed new information concerning the increased scope, severity, and financial impact of the Company's pipeline and productivity problems that were previously concealed and misrepresented by Defendants during the Class Period. ¶¶236-238, 269, 271, 287; Order at 10-13.

Specifically, Defendants announced for the first time that Nutanix's sales results failed to meet even the low-end of 3Q19 guidance issued just a few months earlier, on February 28, 2019. ¶¶321, 343-344 (revenue of $287.6 million, below the guidance range of $290-$300 million, and billings of $346.0 million, below the guidance range of $360-$370 million). The results also declined on a year-over-year basis, *i.e.*, compared to the Company's third quarter results from the previous year (revenue of $287.6 million vs. $289.4 million and billings of $346.0 million vs. $351.2 million). Therefore, the sales results were significantly worse than what Defendants told the market in the February 28 disclosures. Moreover, Defendants linked these new, disappointing results directly to the alleged pipeline and productivity problems and said they would extend into the next quarter, 4Q19. ¶¶346-348. Pandey attributed the miss to "rebuild[ing] our pipeline by doubling down on lead generation and increasing our focus on sales hiring and execution, especially in the Americas" while Williams attributed it to "some issues we're working through and the pipeline we said we're going to work on that . . . we're going to work on sales hiring. . . . [and] we've got some leadership changes we're working through and that's clearly impacted the Q3 and it will, as I said, impact also Q4." ¶¶346-347.[8] Plaintiffs further allege that, as soon as the

---

[8] On May 30, 2019, Defendants also revealed for the first time that one of the Company's top executives, Chief Product Development Officer Sunil Potti ("Potti"), suddenly resigned (¶¶351, 401), the latest in a string of executive departures that occurred in quick succession over a three-month period (¶¶323, 337, 342, 398-401). Reacting to the news, analyst Raymond James stated that Potti's departure "concerns us, particularly in light of the company's recent challenges" and "will further fuel investor concern." Mem. Ex. 9 at 1. This new disclosure, when viewed in

PLS.' OPP. TO DEFS.' RULE 12(c) MOT. FOR PARTIAL J. ON PLEADINGS

market reopened following the new May 30 disclosures, they caused the Company's stock price to plummet 14.1% on extremely high volume.  ¶348.

Courts recognize that a second disclosure that reveals the magnitude of problems are larger than revealed by an initial disclosure can support loss causation.  *See Karinski v. Stamps.com, Inc.*, 2020 WL 281716, at *17-18 (C.D. Cal. Jan. 17, 2020) (loss causation adequately alleged by two corrective disclosures, the first of which announced a reduction of financial guidance and the second of which announced a further reduction of financial guidance).[9]  Plaintiffs' allegations attribute the loss (14.1% stock price decline) to "the very facts about which the defendant lied" concerning Nutanix's pipeline and productivity problems.  *First Solar*, 881 F.3d at 753.  This is sufficient to plead loss causation.  *See, e.g.*, *Gilead*, 536 F.3d at 1058 (loss causation sufficiently pleaded by the disclosure of a U.S. Food and Drug Administration warning letter regarding improper off-label marketing, followed by a surprise announcement of "less-than-expected revenues" three months later, causing a further decline in the company's stock price); *N.Y. Hotel Trades Council & Hotel Assoc. of N.Y.C., Inc. Pension Fund v. Impax Labs., Inc.*, 843 F. App'x 27, 31 (9th Cir. 2021) ("The district court erred by ruling plaintiffs did not allege causation for the losses following these [two] earnings announcements" regarding missed guidance that plaintiffs traced to back to the alleged fraud); *Splunk*, 2022 WL 2525735, at *19-22 (disclosures regarding a company's missed financial guidance, followed by a stock price decline, were sufficient to allege loss causation).

context with the other alleged disclosures discussed above, further supports loss causation.  *See, e.g.*, *Mauss v. NuVasive, Inc.*, 2016 WL 3681831, at *11 (S.D. Cal. July 6, 2016) (an executive's resignation can qualify as a partial corrective disclosure); *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 322-23 (5th Cir. 2014) (executive resignations may be considered as part of the totality of loss causation allegations).

[9]   *See also, e.g.*, *Walgreen*, 2019 WL 4597518, at *8 (loss causation adequately alleged based on a disclosure that "provided the full magnitude or scope of the FY earnings shortfall and reasons for the shortfall"); *Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*, 564 F. Supp. 3d 1272, 1306 (N.D. Ga. 2021) (loss causation adequately alleged by three partial disclosures of declining sales, declining margins, and excess inventory); *Emps.' Ret. Sys. of Puerto Rico Elec. Power Auth. v. Conduent Inc.*, 2020 WL 3026536, at *9 (D.N.J. June 5, 2020) (revelation of missed revenue expectations and revised guidance sufficient to plead loss causation).

PLS.' OPP. TO DEFS.' RULE 12(c) MOT. FOR PARTIAL J. ON PLEADINGS

***Second***, it is clear that the February 28 disclosures did not reveal the full extent of the Company's pipeline and productivity problems. As discussed above, Defendants issued 3Q19 revenue and billings guidance on February 28, 2019 that was overly positive and, therefore, misinformed investors by understating the pipeline and productivity problems. ¶321. Defendants also signaled that they were in the process of resolving the problems by increasing lead generation spending and sales hiring. ¶¶320, 322-324, 327. Moreover, they conveyed that the increased lead generation spending was ***already*** having a positive impact and would continue to do so. Specifically, Pandey stated that "[t]he changes we implemented are ***already showing early positive signs*** at the top of the [sales] funnel and we expect to see increasing traction in our sales pipeline over the coming quarters." ¶323. Similarly, Williams echoed that "we've ***corrected***" the lead generation spending issue. ¶327. While Defendants also said the increased lead generation spending would "take a couple of quarters to show meaningful results" (¶324; *see also* Mem. at 18 (noting similar statements)), they tempered these statements by pointing to 3Q19 guidance, which understated the problems, and adding that "[i]n the meantime, we will double down on driving further business from within our large existing enterprise customer base, while the augmented lead generation spending works its way into the pipeline" (¶324). Finally, Defendants downplayed the extent to which the sales pipeline was depleted, suggesting that it was a recent phenomenon arising in 2Q19 when, in fact, the pipeline was declining throughout the Class Period and needed to be "rebuil[t]." ¶¶338-340.

Thus, the market was prevented from appreciating the true extent of the pipeline and productivity problems, keeping the share price artificially inflated. As Judge Tigar recently held: "A theory of loss causation predicated on the revelation of an earnings miss is not defeated if some information about the matters that caused the earnings miss was made public prior to the earnings miss and the plaintiff alleges facts that raise the inference that the market did not understand the significance of that information at the time it was made public." *Splunk*, 2022 WL 2525735, at *22 (citing *BofI*, 977 F.3d at 794); *see also, e.g.*, *Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*, 411 F. Supp. 2d 1172, 1178 (N.D. Cal. 2005) (loss causation adequate where the first partial disclosure was diluted by an "assurance [that] allegedly allowed Cisco's stock to

continue to trade at artificially inflated prices"). Here, it was not until the May 30 disclosures that Defendants revealed the pipeline and productivity problems were worse than previously disclosed (down year-over-year and missing the guidance issued just three months earlier), causing the remaining artificial inflation to come out of the stock price. ¶¶343-348.

***Third***, loss causation "is simply a variant of proximate cause" that may be alleged through an "infinite variety" of causation theories not limited to a corrective disclosure theory. *Lloyd*, 811 F.3d at 1210. As an alternative to pleading corrective disclosures, plaintiffs may plead loss causation by "showing that the stock price fell upon the revelation of an earnings miss, even if the market was unaware at the time that fraud had concealed the miss." *First Solar*, 881 F.3d at 754. Here, Plaintiffs also met this standard by alleging that the Company's stock price fell after the Company reported its 3Q19 guidance miss, which was a foreseeable risk of Defendants' actions that ultimately materialized. ¶¶343-348. In other words, Defendants purposefully decided to underspend on lead generation and under hire sales personnel, which led to a diminished sales pipeline, lower sales productivity, and reduced revenue and billings. Upon the Company's announcement that revenue and billings were worse than expected (*i.e.*, the foreseeable risk of Defendants' decision to underspend and under hire), the stock price declined swiftly and sharply, suffering a drop of more than 14%.

These allegations are sufficient to plead loss causation and are similar to those upheld by Judge Tigar's recent opinion in *Splunk*, which also involved pipeline and salesforce issues. Applying Ninth Circuit law from *First Solar*, Judge Tigar held that the plaintiff "need not allege that the matters that were concealed by the defendants' allegedly false or misleading statements were revealed to investors before the drop in the stock price." *Splunk*, 2022 WL 2525735, at *19 (citing *First Solar*, 881 F.3d at 754). Rather, the court held that allegations "rais[ing] the inference that Defendants' concealed suspension of marketing investments and hiring freeze as to sales personnel resulted in the company lacking adequate capacity in terms of sales execution and in failing to build sufficient pipeline for Q3 2020, which, in turn, resulted in lower-than-expected earnings in Q3 2020. . . . are sufficient under *First Solar* to establish the requisite causal connection between the Q3 2020 earnings miss that led to a sharp decline in Splunk's stock price, and the

PLS.' OPP. TO DEFS.' RULE 12(c) MOT. FOR PARTIAL J. ON PLEADINGS

matters about which Defendants allegedly misled investors during the Class Period." *Id.* at \*20; *see also Daou*, 411 F.3d at 1026 (loss causation adequately alleged where the company's "stock fell precipitously after defendants began to reveal figures showing the company's true financial condition"); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989-90 (9th Cir. 2008) (finding loss causation where stock price dropped after earnings miss, even though the market was unaware of the fraud).

*Fourth*, Defendants' argument regarding analyst reports following the May 30 disclosures raises premature factual disputes regarding what information caused investor reaction. Mem. at 16-17. Plaintiffs do not allege loss causation based on new information revealed by the analysts. The alleged analyst reactions (¶¶349-350) illustrate the market's negative reaction to the new information disclosed by *Defendants* (¶¶343-347). For example, on May 30, 2019, Raymond James discussed the 3Q19 guidance miss announced by Defendants earlier that day, calling the results "worse than expected" and adding that "[w]e think it could take several quarters for Nutanix to return to double digit year-over-year growth." ¶30; Mem. Ex. 9 at 1. The following day, on May 31, 2019, Morgan Stanley and Piper Jaffray both downgraded Nutanix's stock and slashed their Nutanix stock price targets significantly in reaction to the May 30 disclosures. ¶¶349-350. Additionally, Piper Jaffray discussed the 3Q19 revenue and billings misses caused by "continued execution issues"; called the Company's business model "unsustainable" based on the Company's "massive amounts of spending just to support modest revenue growth"; and noted that, despite new lead generation spending, "the pipeline will take a number of quarters before it has an impact." ¶¶30, 350; Mem. Ex. 10 at 1. Also on May 31, 2019, William Blair discussed the 3Q19 revenue and billings misses announced by Defendants, and said that "the situation at Nutanix is definitely worse than we expected." ¶30; Mem. Ex. 8 at 1.[10]

---

[10] The importance that the market placed on new information concerning Nutanix's revenue and billings, such as the unexpected declines revealed on May 30, 2019, is further supported by the fact that Defendants reported, discussed, and responded to analyst questions on Nutanix's revenue and billings every quarter. ¶¶3, 114, 116, 118, 227, 230, 237, 251, 254, 261, 279, 282, 299, 302, 311, 314, 321, 324, 343-344, 346-347, 353, 402. Defendants also informed the market that they regularly monitored billings, and called it one of their "key performance measures, to help us evaluate our growth and operational efficiencies, measure our performance and identify trends in our sales activity, and establish our budgets." ¶394.

These reactions support that the May 30 disclosures were in fact new; otherwise the analysts would not have reacted so negatively. *See Gilead*, 536 F.3d at 1058 (loss causation supported by analyst commentary regarding the alleged company disclosure). Similarly, if Defendants were correct that the problems had been fully disclosed on February 28, 2019, the stock price would not have fallen as swiftly and sharply as it did following the May 30 disclosures, a massive 14.1% decline on extremely high trading volume. ¶348; *BofI*, 977 F.3d at 792 (loss causation supported by a steep stock price decline on extremely heavy trading volume immediately after the disclosure); *In re QuantumScape Sec. Class Action Litig.*, 2022 WL 137729, at *18 (N.D. Cal. Jan. 14, 2022) (Orrick, J.) (loss causation supported by "a stock price drop [that] comes immediately after the revelation of fraud"). Thus, Defendants' argument – that all of the allegedly concealed information was disclosed on February 28, 2019 – is directly counter to the market's reaction following the May 30 disclosures.

*Fifth*, for purposes of pleading loss causation, Plaintiffs are not required to allege a sole cause nor rule out possible alternative reasons for a stock price decline. *See Daou*, 411 F.3d at 1025 ("A plaintiff is not required to show that a misrepresentation was the *sole* reason for the investment's decline in value in order to establish loss causation. [A]s long as the misrepresentation is one substantial cause of the investment's decline in value, other contributing forces will not bar recovery under the loss causation requirement . . . .") (emphasis in original); *Splunk*, 2022 WL 2525735, at *21 (rejecting argument that loss causation was not adequately alleged because defendants identified other causes of an earnings miss); *In re Mattel, Inc. Sec. Litig.*, 2021 WL 1259405, at *12 (C.D. Cal. Jan. 26, 2021) ("[C]onclusively deciding reasons for the market's reaction is premature, and reasonable theories concerning that reaction do not warrant Rule 12 dismissal."). As discussed above, Plaintiffs' allegations are sufficient to show that the decline was substantially caused by a revelation of new information relating back to the pipeline and productivity problems misrepresented and concealed by Defendants.

Defendants' unsupported speculation that "other factors" "such as Nutanix's better-than-expected transition to the subscription model and perceived increased competition" may have caused the decline (Mem. at 18-19) is a factual dispute to be decided after full fact and expert

13

discovery at summary judgment or trial, not at the pleading stage. *See Fleming*, 581 F.3d at 925 (judgment on the pleadings is not proper when there is a disputed issue of material fact).[11] Moreover, Defendants' argument defies common sense. If, as Defendants claim, the 3Q19 miss was caused by a "better-than-expected transition to subscription model," then the market and sophisticated financial analysts following the Company would recognize this as a positive development and the stock price would have increased. But, Nutanix's stock price declined significantly and analysts slashed their price targets. This confirms loss causation, as the negative market and analyst reaction was clearly in response to news of the negative contributions to the miss – *e.g.*, greater-than-disclosed pipeline problems – rather than positive developments for the Company.[12]

**Sixth**, the cases cited by Defendants are factually distinguishable as none involved disclosures such as those here revealing new information about the scope and impact of the alleged fraud contrary to Defendants' prior guidance and reassurances. Further, several of the cases cited by Defendants addressed loss causation at the summary judgment stage rather than the pleading stage.

In *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010), the Ninth Circuit did not hold that a guidance miss is never sufficient to plead loss causation. Mem. at 14. Rather, the Court held – at the summary judgment stage after fact and expert discovery – that despite an earnings miss there was "simply no evidence" that the stock price dropped because the market learned that earnings were overstated due to the alleged accounting fraud. *Oracle*, 627 F.3d at 394. At this stage of the proceedings, Plaintiffs are not required to present "evidence" in order to plead loss

---

[11]     Defendants cite three analyst reports for their own counter-narrative, but each report also discussed the disclosures alleged in the Complaint. *See* Mem. Ex. 8 at 1 (discussing "revenue and billings [that] came in below guidance" and "weak sales execution, including disruptions related to changes in sales management globally and in the Americas"); Mem. Ex. 9 at 1 (discussing Nutanix's missed revenue and billings guidance); Mem. Ex. 10 at 1 (discussing "continue[d] . . . execution issues, which caused total revenue and billings to miss guidance").

[12]     In fact, Defendants concede market efficiency (Mem. at 13), supporting Plaintiffs' allegations that the negative information revealed in the May 30 disclosures caused Nutanix's stock price to decline as soon as the market reopened on May 31, 2019. *See Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988) (the "market price of shares traded on well-developed markets reflects all publicly available information").

Case No. 3:19-cv-01651-WHO

PLS.' OPP. TO DEFS.' RULE 12(c) MOT. FOR PARTIAL J. ON PLEADINGS

causation.  Rather, loss causation is adequately pled by giving Defendants "notice of plaintiffs' loss causation theory and provid[ing] the court some assurance that the theory has a basis in fact." *BofI*, 977 F.3d at 794; *see also Dura*, 544 U.S. at 347.  Plaintiffs easily meet this standard. Defendants themselves specifically tied the earnings miss to the very fraud alleged by Plaintiffs – Defendants' concealment and misrepresentation of the alleged pipeline and productivity problems. ¶¶345-347.  This is not a case like *Oracle* where there was no connection between the guidance miss and the alleged fraud.[13]

In *Wochos v. Tesla, Inc.* (Mem. at 8, 11, 14), the Court's loss causation analysis was limited to a single allegedly false statement that Tesla's automated production of the Model 3 started in July 2017.  985 F.3d 1180, 1197-98 (9th Cir. 2021).  The Court determined that a *Wall Street Journal* article revealing that production actually had ***not*** started in July 2017 provided "a singularly appropriate context for assessing the adequacy of Plaintiffs' theory of loss causation." *Id.* at 1198.  Because the full truth was revealed in that article, the Court found that there was no reason to focus on a subsequent blog post regarding supply and production delays at Tesla.  *Id.* at 1198 n.4.  Here, in contrast, Plaintiffs adequately allege that the truth regarding the scope of the Company's pipeline and productivity issues leaked out over time through the February 28 and May 30 disclosures, which were directly linked to the alleged fraud by Defendants themselves.  ¶¶320-329, 343, 346-347, 351.

The facts in *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838-40 (9th Cir. 2022), were also nothing like the facts here.  There, the Court found that alleged disclosures were based

[13]    Similarly, *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063-64 (9th Cir. 2008), is distinguishable because the Court found that a company earnings announcement and a *Financial Times* article had no connection to the alleged fraud, which was based on a company-wide manipulation of student enrollment figures to procure excess funding, rather than anything revealed or even suggested by the earnings announcement and article.  *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 608-609 (9th Cir. 2014), found no causal connection between the alleged false statements and   corrective disclosures by the Department of Education and Government Accountability Office.  In *Evanston Police Pension Fund v. McKesson Corp.*, 2021 WL 4902420, at *3-6 (N.D. Cal. Oct. 21, 2021), a summary judgment opinion, the court found that the plaintiffs could not show loss causation based on an article concerning non-party drug manufacturers that was "only tangentially related to McKesson's alleged fraud."  No such issues are present here with respect to the May 30 disclosures, which Defendants themselves related back to the alleged false statements.

PLS.' OPP. TO DEFS.' RULE 12(c) MOT. FOR PARTIAL J. ON PLEADINGS

the results of a completely different clinical trial (Phase 1/2 PIVOT) than the one plaintiffs alleged to have been falsely reported (Phase 1 EXCEL), and, therefore, the disclosures regarding Phase 1/2 PIVOT did not reveal any falsehoods regarding Phase 1 EXCEL. *Id.* at 839. Here, the May 30 disclosures were directly tied to the pipeline and productivity problems that were the basis of Plaintiffs' falsity allegations, and thus there is no disconnect like the one in *Nektar*. ¶¶346-347.[14]

The two *Bonanno* opinions cited by Defendants are distinguishable because the plaintiffs in that case "argued that a blogger report revealed new facts." Mem. at 17; *Bonanno v. Cellular Biomedicine Grp., Inc.*, 2016 WL 4585753, at *4 (N.D. Cal. Sept. 2, 2016) (Orrick J.); *Bonanno v. Cellular Biomedicine Grp., Inc.*, 2016 WL 2937483, at *5-6 (N.D. Cal. May 20, 2016) (Orrick J.). The Court rejected that argument because the report "only collected and opined on already public information." *Bonanno*, 2016 WL 4585753 at *5; *see also Bonanno*, 2016 WL 2937483, at *5-6. Here, in contrast, Plaintiffs' loss causation allegations are not premised on anyone collecting, reporting, or opining on already public information. Rather, the alleged disclosures are based on new information revealing the larger magnitude of the concealed problems that Defendants disclosed to the market for the first time. ¶¶343, 346-347, 351. The analyst reports are alleged in the Complaint (along with the stock price decline) to demonstrate the market's reaction to the new facts disclosed by Defendants. ¶¶348-350.[15]

Defendants' reliance on *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *12 (N.D. Cal. Mar. 23, 2020), is also misplaced. Mem. at 14-16. There were no allegations in *Fitbit* like here, where the February 28 disclosures were accompanied by overstated guidance and reassurances that the problems were being corrected, thus preventing the market from learning the full truth until the

---

[14]    *Rok v. Identiv, Inc.*, 2017 WL 35496, *16-20 (N.D. Cal. Jan. 4, 2017), is also inapposite. The court found myriad deficiencies in loss causation allegations involving "SEC filings announcing and discussing an internal investigation of allegations in a filed complaint." Mem. at 12. Two of the filings were rejected because they merely confirmed that the internal investigation of the complaint (revealed previously) was still ongoing. *Rok*, 2017 WL 35496 at *17-18. As discussed above, the May 30 disclosures at issue here were much different and revealed new information to the market about the alleged fraud.

[15]    *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1051-52 (N.D. Cal. 2007), addressed falsity, not loss causation, and found that plaintiffs could not use analyst statements as false statements because the analysts repackaged defendants' statements in vague and impressionistic terms rather than simply reporting them. There is no such issue here.

PLS.' OPP. TO DEFS.' RULE 12(c) MOT. FOR PARTIAL J. ON PLEADINGS

May 30 disclosures revealed material new facts regarding the scope, severity, and financial impact of the problems.  ¶¶320, 322-324, 327.[16]  As discussed above, the Ninth Circuit has held that new facts regarding worse-than-expected financial results tied to the alleged fraud, like the May 30 disclosures here, are sufficient to allege loss causation.  *See, e.g.*, *Gilead*, 536 F.3d at 1058.

In sum, Defendants' flawed arguments fail because the Complaint adequately alleges that the May 30 disclosures revealed new information tied to the alleged fraud, thus giving Defendants "notice of plaintiffs' loss causation theory and provid[ing] the court some assurance that the theory has a basis in fact."  *BofI*, 977 F.3d at 794; *see also Dura*, 544 U.S. at 347.

## VI.   CONCLUSION

For the reasons stated herein, the Motion should be denied.

DATED:  July 11, 2022
                                                    ROBBINS GELLER RUDMAN
                                                    & DOWD LLP


                                                    */s/ Stephen R. Astley*
                                                    STEPHEN R. ASTLEY

---

[16]     The out-of-circuit cases Defendants rely on are also distinguishable.  In *Dalberth v. Xerox Corp.*, 766 F.3d 172, 188 (2d Cir. 2014), a summary judgment opinion, the court held that, unlike here, based on the significant factual record before the court, there was no genuine dispute that the subject of the alleged omissions was actually disclosed to the public throughout the class period, and, therefore, neither of the alleged corrective disclosures "even purported to reveal some then-undisclosed fact."  *In re Barclays Bank PLC Sec. Litig.*, 756 F. App'x 41, 48-52 (2d Cir. 2018), yet another summary judgment opinion, held that the alleged omissions were completely revealed by public data concerning capital ratios and monoline insurers, unlike the facts here where the February 28 disclosures were accompanied by overstated guidance and reassurances.  *See also Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 94-95 (1st Cir. 2014) (summary judgment opinion holding that analyst reports were insufficient corrective disclosures because they provided no more than a gloss on already public information); *Meyer v. Greene*, 710 F.3d 1189, 1195-201 (11th Cir. 2013) (alleged corrective disclosures based on analyst reports and investigation-related announcements were insufficient); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511-14 (2d Cir. 2010) (summary judgment opinion holding that there was no nexus between the alleged accounting fraud and stock price decline); *Rosner v. Star Gas Partners, L.P.*, 344 F. App'x 642, 643-44 (2d Cir. 2009) (alleged misrepresentations were puffery and concealed nothing from the market); *In re Boston Sci. Corp. Sec. Litig.*, 708 F. Supp. 2d 110, 129 (D. Mass. 2010) (summary judgment opinion holding that there was insufficient proof of loss causation where plaintiff's expert conceded that the market was aware of complaints regarding a product prior to its recall); *In re Maximus, Inc. Sec. Litig.*, 2018 WL 4076359, *16-18 (E.D. Va. Aug. 27, 2018) (information about a particular contract were revealed prior to any alleged corrective disclosures).

STEPHEN R. ASTLEY (admitted *pro hac vice*)
ROBERT J. ROBBINS (admitted *pro hac vice*)
ANDREW T. REES (admitted *pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sastley@rgrdlaw.com
rrobbins@rgrdlaw.com
arees@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
KENNETH J. BLACK (291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
kblack@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (Admitted *pro hac vice*)
FRANK A. RICHTER (Admitted *pro hac vice*)
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

*Lead Counsel for Plaintiffs*

LEVI & KORSINSKY, LLP
Shannon L. Hopkins (admitted *pro hac vice*)
Gregory M. Potrepka (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT  06905
Tel: (203) 992-4523
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com

Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA  94111
Telephone: 415/373-1671
415/484-1294 (fax)
aapton@zlk.com
amccall@zlk.com

*Additional Counsel for Plaintiff City of Miami Fire Fighters' and Police Officers' Retirement Trust*

Case No. 3:19-cv-01651-WHO

PLS.' OPP. TO DEFS.' RULE 12(c) MOT. FOR PARTIAL J. ON PLEADINGS

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on July 11, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*/s/ Stephen R. Astley*
STEPHEN R. ASTLEY

Case No. 3:19-cv-01651-WHO
PLS.' OPP. TO DEFS.' RULE 12(c) MOT. FOR PARTIAL J. ON PLEADINGS