NINA F. LOCKER, State Bar No. 123838
IGNACIO E. SALCEDA, State Bar No. 164017
EVAN L. SEITE, State Bar No. 274641
BETTY CHANG ROWE, State Bar No. 214068
LAURA G. AMADON, State Bar No. 321524
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:   (650) 493-9300
Facsimile:   (650) 565-5100
Email:        nlocker@wsgr.com
              isalceda@wsgr.com
              eseite@wsgr.com
              browe@wsgr.com
              lamadon@wsgr.com

*Attorneys for Defendants Nutanix, Inc.,
Dheeraj Pandey, and Duston M. Williams*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NUTANIX, INC. SECURITIES LITIGATION | CASE NO.:  3:19-cv-01651-WHO |
| | **DEFENDANTS' NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION** |
| | Hearing Date: To Be Determined |
| | Courtroom: 2 |
| | Hon. William H. Orrick |

MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
CASE NO. 3:19-CV-01651-WHO

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................................1

STATEMENT OF ISSUES (CIVIL L.R. 7-4(a)(3)) ...........................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................1

I.    Factual and Procedural Background ..................................................................2

II.   The Ninth Circuit's Published Opinion in *Align* ...........................................3

III.  The Court Has the Inherent Authority to Reconsider and Modify Its Order ..........7

IV.   The Court Should Reconsider Its MTD Order with Respect to Corporate Puffery in Light of *Align* ...................................................................................8

V.    The Court Should Reconsider Its MTD Order with Respect to Accurate Statements of Past Performance in Light of *Align* ...........................................9

CONCLUSION ...................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amarel v. Connell*,
102 F.3d 1494 (9th Cir. 1996)......................................................................................... 7

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir.2002)............................................................................................. 5

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001)........................................................................................... 7

*Doe By & Through Doe v. Petaluma City Sch. Dist.*,
949 F. Supp. 1415 (N.D. Cal. 1996) ............................................................................ 7, 8

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999).............................................................................................. 6

*In re Align Tech., Inc. Sec. Litig.*,
No. 20-CV-02897-MMC, 2021 WL 1176642 (N.D. Cal. Mar. 29, 2021),
*aff'd sub nom. Macomb Cty. Employees' Ret. Sys. v. Align Tech., Inc.*, 2022
WL 2525306 (9th Cir. July 7, 2022) ......................................................................... 9, 10

*In re Convergent Techs. Sec. Litig.*,
948 F.2d 507 (9th Cir. 1991)......................................................................................... 5, 6

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010)......................................................................................... 9

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017)....................................................................................... 5, 6

*In re Sofamor Danek Grp., Inc.*,
123 F.3d 394 (6th Cir. 1997)........................................................................................... 6

*In re Syncor Int'l Corp. Sec. Litig.*,
239 F. App'x 318 (9th Cir. 2007)..................................................................................... 5

*In re VeriFone Sec. Litig.*,
11 F.3d 865 (9th Cir. 1993)............................................................................................. 5

*In re Wells Fargo Sec. Litig.*,
12 F.3d 922 (9th Cir. 1993)........................................................................................... 5, 6

*Kona Enters, Inc. v. Estate of Bishop*,
229 F.3d 877 (9th Cir. 2000)........................................................................................... 7

*Macomb Cty. Employees' Ret. Sys. v. Align Tech., Inc.*,
--- F.4th ----, No. 21-15823, 2022 WL 2525306 (9th Cir. July 7, 2022) ...................*passim*

*Melot v. JAKKS Pac., Inc.*,
No. LA CV13-05388 JAK(SSx), 2014 WL 12589334
(C.D. Cal. June 6, 2014) ........................................................................................... 6

*Murphy v. Precision Castparts Corp.*,
No. 3:16-cv-00521-SB, 2021 WL 2080016 (D. Or. May 24, 2021), *aff'd sub nom. AMF Pensionsforsakring AB v. Pension Castparts Corp.*,
2022 WL 2800825 (9th Cir. July 18, 2022) ................................................... 7, 8

*Nadoff v. Duane Reade, Inc.*,
107 F. App'x 250 (2d Cir. 2004) ............................................................................. 6

*Roberts v. AT&T Mobility LLC*,
801 F. App'x 492 (9th Cir. 2020) .......................................................................... 7

*Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*,
5 F.3d 1255 (9th Cir. 1993) ..................................................................................... 7

*Serabian v. Amoskeag Bank Shares, Inc.*,
24 F.3d 357 (1st Cir. 1994) ..................................................................................... 6

*Strassman v. Fresh Choice, Inc.*,
No. C-95-20017 RPA, 1995 WL 743728 (N.D. Cal. Dec. 7, 1995) ................... 6

*United States v. Martin*,
226 F.3d 1042 (9th Cir. 2000) ................................................................................ 7

**RULES**

Fed. R. Civ. P. 54(b) ............................................................................................ 1, 7

9th Cir. R. 36-2 ......................................................................................................... 3

N.D. Cal. Civ. L.R. 7-4(a)(3) ................................................................................. 1

N.D. Cal. Civ. L.R. 7-9 ....................................................................................... 1, 7

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, on a date to be determined by the Honorable William H. Orrick, Defendants Nutanix, Inc. ("Nutanix" or the "Company"), Dheeraj Pandey, and Duston M. Williams (collectively, "Defendants") will and hereby move this Court pursuant to Federal Rule of Civil Procedure 54(b) and Northern District of California Civil Local Rule 7-9 for leave to file a motion for reconsideration of this Court's September 11, 2020 order (ECF No. 140, the "MTD Order") denying dismissal of certain challenged statements relating to Defendants' statements regarding Nutanix's pipeline for new customer growth and sales productivity.  This Motion is based on this Notice of Motion and Motion; Defendants' accompanying Memorandum of Points and Authorities; the papers on file in this action; and such other and further evidence or argument that the Court may consider.

**STATEMENT OF ISSUES (CIVIL L.R. 7-4(a)(3))**

Whether the Ninth Circuit's recent decision in *Macomb County Employees' Retirement System v. Align Technology, Inc.*, --- F.4th ---, No. 21-15823, 2022 WL 2525306 (9th Cir. July 7, 2022), warrants leave for Defendants to seek reconsideration of the MTD Order.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants respectfully request leave to seek reconsideration of the MTD Order denying dismissal of certain challenged statements in light of the Ninth Circuit's recent decision in *Macomb County Employees' Retirement System v. Align Technology, Inc.*, --- F.4th ---, No. 21-15823, 2022 WL 2525306 (9th Cir. July 7, 2022).[1]  Following the MTD Order, only five statements remain at issue in this action: three statements regarding Nutanix's pipeline for new customers and two statements about Nutanix's sales productivity.  In *Align*, the Ninth Circuit provided important clarifications regarding the falsity element of Section 10(b) of the Securities Exchange Act of 1934 with respect to corporate puffery and accurate statements regarding historical performance.  *Id.* at *4-5.  These directly on-point holdings in *Align* foreclose each of the five remaining challenged

---

[1] A copy of the Ninth Circuit's opinion is attached hereto as Exhibit 1.

MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
CASE NO. 3:19-CV-01651-WHO

-1-

statements in this action, and dismissal should, therefore, be granted as to the remaining challenged statements.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Following two rounds of motion to dismiss practice, the only statements that remain at issue in this action are five of Defendants' statements regarding (i) Nutanix's pipeline for new customers and (ii) Nutanix's sales productivity.  ECF No. 124 (the "SAC") ¶ 237 ("Q2 [of 2018] saw [Nutanix] add a record number of new customers"); ¶ 238 (Nutanix's past new customer add was attributable to the "huge contribution to overall mid market customer acquisition."); ¶ 269 ("[W]e've actually had a renewed focus with the channel on new customer logos. . . . But really excited about what's happening in the channel with the pipeline for new logos and things like that."); ¶ 236 (Nutanix's EMEA and APAC sales regions "experienced record sales productivity in the [Q2'18] quarter"); ¶ 287 (Nutanix had "ramped rep sales productivity has increased sequentially for the last three six-month periods ending Q4 2017, Q2 2018, and Q4 2018").

After a lead plaintiff appointment process, then-lead plaintiff Shimon Hedvat[2] filed the Class Action Consolidated Amended Complaint, ECF No. 102 (the "CAC"), and Defendants filed a Motion to Dismiss the CAC on October 24, 2019, ECF No. 108.  In that motion, Defendants explained that some of the challenged statements were non-actionable puffery or statements of corporate optimism, while other statements were not false or misleading because they were accurate statements pertaining to Nutanix's past performance.  ECF No. 108 at 10-11, 13-14.  This Court dismissed the CAC with leave to amend, holding specifically that the pipeline-related statements were not actionable "for lack of specificity" and that the lead plaintiff had failed to adequately allege falsity as to the sales productivity-related statements.  ECF No. 121 at 8, 12-13.

Hedvat then filed his Second Amended Complaint (the SAC), repeating his allegations with respect to many of the same dismissed challenged statements from the CAC.  *Compare* CAC ¶¶ 227, 245, *with* SAC ¶¶ 269, 287.  Defendants again moved to dismiss the SAC, explaining that

---

[2] Following the Court's MTD Order, Hedvat withdrew as lead plaintiff, and California Ironworkers Field Pension Trust was appointed as lead plaintiff with City of Miami Fire Fighters' & Police Officers' Retirement Trust remaining as a co-plaintiff (collectively, "Plaintiffs").  ECF No. 171; ECF No. 224.

certain challenged statements were non-actionable puffery or non-actionable accurate statements of Nutanix's past performance. ECF No. 125 at 21-24. On September 11, 2020, the Court granted Defendants' motion to dismiss the SAC in part, but held that the above five challenged statements regarding Nutanix's customer pipeline and sales productivity were actionable. MTD Order at 12-13.

This time, the Court did not expressly rule on Defendants' arguments on puffery and non-actionable accurate statements of past performance. *See* ECF No. 125 at 24; MTD Order. For example, although the Court previously dismissed the statement that the Company was "really excited" about the channel for mid-market customer acquisition for "lack of specificity," ECF No. 121 at 8, the MTD Order did not consider whether the identical statement contained in SAC ¶ 269 was puffery, MTD Order at 12. Additionally, the Court held that the statement contained in SAC ¶ 287—that Nutanix's "ramped rep sales productivity has increased sequentially for the last three six-month periods"—was actionable, despite expressly acknowledging its factual accuracy. *See* ECF No. 121 at 12 (dismissing identical challenged statement for failure to allege falsity); MTD Order at 11 (explaining that "Plaintiffs do not allege that Nutanix's statements were numerically inaccurate.").

In light of the Ninth Circuit's clarification of the law in *Align*, Defendants respectfully submit that the Court should reconsider the MTD Order and address the application of the doctrines of non-actionable puffery and accurate statements regarding past performance, both of which were subject to important clarification in *Align*.

## II.    THE NINTH CIRCUIT'S PUBLISHED OPINION IN *ALIGN*

Earlier this month, the Ninth Circuit issued its decision in *Align* and, notably, designated it as a binding, published opinion. Thus, according to the Ninth Circuit's rules governing the publication of an opinion, *Align* "(a) [e]stablishes, alters, modifies or clarifies a rule of federal law, or (b) [c]alls attention to a rule of law that appears to have been generally overlooked, or (c) [c]riticizes existing law . . . ." 9th Cir. R. 36-2.

In *Align*, the plaintiff alleged that Align's senior executives made material misstatements throughout the second quarter of 2019 regarding Align's growth prospects in the China market,

claiming "great," "strong," and "tremendous" growth, even though Align's rate of growth in China had slowed significantly by the start of 2019. 2022 WL 2525306, at *1-2, *4. Specifically, during "every quarter in 2017 and 2018, Align's year-over-year revenue growth rate in China hovered between 70 percent and 100 percent." *Id.* at *1. But, unbeknownst to investors, the growth rate had dropped to between 20 and 30 percent in the second quarter of 2019, apparently due to increased competitive pressure and diminished consumer demand. *Id.* at *2. The district court dismissed the action, holding that Align's rosy characterizations of growth in China made during the second quarter of 2019 were non-actionable puffery. *Id.* In affirming dismissal, the Ninth Circuit directly analyzed the questions of non-actionable puffery and non-actionable accurate statements of past performance.

First, the Ninth Circuit clarified the breadth of the umbrella of non-actionable puffery by affirming the dismissal of six challenged statements because they "plainly fit beneath the umbrella of puffery." *Id.* at *4. The Ninth Circuit explained:

> All [six challenged statements] use vague, generically positive terms, describing China as "a great growth market," "a huge market opportunity," "a market that's growing significantly for use," and possessing "really good" "dynamics," and describing Align's performance there as "tremendous" and "great." Such characterizations are not "objectively verifiable." None of these six statements present the kind of precise information on which investors rely "when valuing corporations."

*Id.* (citations omitted).

Second, the Ninth Circuit affirmed the dismissal of the statement, "whether it's in China or U.S. or other places, we've been competing against many of these companies that I mentioned for a number of years and ***still been able to grow as we have***." *Id.* at *5 (emphasis added). Notably, the Ninth Circuit found that plaintiffs credibly alleged that "Align's growth in China had slowed materially when the challenged statements were made." *Id.* at *3 (finding that Align's rate of growth had significantly declined at the time of the challenged statements based, in part, on the "short period of time[,]" just three months, between the first challenged statement and the public revelation of Align's downturn in China). Despite the credible evidence that the defendants were touting Align's past growth rate in China at the same time that the company was experiencing a material slowdown in growth, the Ninth Circuit held that the reference to "be[ing] able to grow as

MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
CASE NO. 3:19-CV-01651-WHO

-4-

we have" was "an accurate assessment of Align's ***past growth***" that would not "'give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists.'" *Id.* at *5 (citation omitted).

This appears to be the first time that the Ninth Circuit has so clearly held that accurate assessments of a company's ***past performance*** cannot be interpreted as a representation regarding the Company's ***current performance***.  The Ninth Circuit has long held that an accurate statement of past performance is not an actionable representation regarding future performance where it does not imply a comparison between past and future growth.  *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991).  Similarly, the Ninth Circuit has previously recognized that an accurate statement of past performance is not rendered misleading by omitted facts that "future prospects may not be as bright[.]"  *In re VeriFone Sec. Litig.*, 11 F.3d 865, 869 (9th Cir. 1993); *see also In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 928, 930 (9th Cir. 1993) (factually accurate statements pertaining to a company's past performance are not a materially misleading representation of "favorable future prospects for growth and profit").  Now, *Align* provides even further clarity by holding that an accurate statement pertaining to a company's ***past*** performance, without more, does not give reasonable investors any misleading impression regarding the company's ***current*** performance and, therefore, is not actionable based on allegations of poor, undisclosed current performance.[3]

---

[3] The holding in *Align* does not alter established law that an accurate statement regarding facts in the past can be actionable where it misleadingly omits information about the past state of affairs.  *See, e.g.*, *In re Syncor Int'l Corp. Sec. Litig.*, 239 F. App'x 318, 320 (9th Cir. 2007).  For example, in *Syncor*, the defendants made numerous statements specifically attributing the company's past overseas earnings growth to a variety of legitimate business practices, but omitted that the company's past earnings growth was due in significant part to an undisclosed illegal payment scheme.  *Id.*  The Ninth Circuit held that such statements were incomplete and misleading because they implicitly and falsely warranted that there were no illegal practices contributing to that past overseas success.  *Id.*  Such incomplete statements are misleading since they "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exist[ed]."  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir.2002).

Similarly, *Align* does not affect established law that an otherwise accurate statement about current performance can be rendered misleading by a materially misleading omission regarding that current performance.  *See, e.g.*, *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1148 (9th Cir. 2017).  In *Quality Systems*, the "[d]efendants repeatedly told investors that they could rely on

*Align* thus brings the Ninth Circuit closer in line with its sister circuits and trial courts within this Circuit, which have more broadly recognized that accurate statements about past performance are not actionable under the securities laws. *E.g.*, *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir. 1994) ("[D]efendants may not be held liable under the securities laws for accurate reports of past successes, even if present circumstances are less rosy."); *Nadoff v. Duane Reade, Inc.*, 107 F. App'x 250, 252 (2d Cir. 2004) ("Accurate statements about past performance are self evidently not actionable under the securities laws . . . ."); *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 538 (3d Cir. 1999) ("Factual recitations of past earnings, so long as they are accurate, do not create liability under Section 10(b)."); *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 401 n.3 (6th Cir. 1997) ("a violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data" (citing *Convergent*)); *Strassman v. Fresh Choice, Inc.*, No. C-95-20017 RPA, 1995 WL 743728, at *6 (N.D. Cal. Dec. 7, 1995) ("Reports of [a company's] past performance, without a showing that figures reported therein are false, are not actionable." (citing *Wells Fargo*)); *Melot v. JAKKS Pac., Inc.*, No. LA CV13-05388 JAK(SSx), 2014 WL 12589334, at *10 (C.D. Cal. June 6, 2014) ("'Accurate statements of past performance' are not actionable as a matter of law." (citation omitted)).

These two holdings in *Align* directly pertain to the law controlling the remaining five challenged statements in this action and merit reconsideration of the MTD Order.[4]

predictions of growth in revenue and earnings because ***the current state of QSI's sales pipeline was consistent with, or better than, the state of the pipeline in previous quarters***." *Id.* (emphasis added). The Ninth Circuit held that such statements "provided a concrete description of the . . . ***present state of the pipeline***" and were actionably misleading because the pipeline was, in fact, currently declining when the statements were made. *Id.* at 1144, 1148 (emphasis added). Here, in stark contrast, the challenged historical statements about Nutanix's "record sales productivity in [Q2'18]" and sequential "ramped rep sales productivity . . . increase[s] . . . for the last three six-month periods" (SAC ¶¶ 236, 287) were factually accurate, numerical descriptions of Nutanix's past pipeline and sales productivity performance. *See* MTD Order at 11 ("Plaintiffs do not allege that Nutanix's statements were numerically inaccurate"); *cf. id.* at 13 ("As discussed in my prior Order, Nutanix's statements regarding numeric increases in sales and marketing personnel hired were facially true."). In light of *Align*, Defendants' accurate descriptions of Nutanix's ***past*** pipeline and sales productivity cannot be interpreted as representations about Nutanix's ***current*** pipeline or sales productivity. *See infra* § V.

[4] A chart of the remaining challenged statements and the relevant portions of the *Align* decision is attached hereto as Appendix A.

MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
CASE NO. 3:19-CV-01651-WHO

-6-

## III.    THE COURT HAS THE INHERENT AUTHORITY TO RECONSIDER AND MODIFY ITS ORDER

In the Northern District, leave to seek reconsideration of an interlocutory order is appropriate when there has been "a change of law occurring after the time of such order." N.D. Cal. Civ. L.R. 7-9(b)(2). The Ninth Circuit has interpreted Civil Local Rule 7-9(b)(2)'s "change of law" language as an "intervening change in the controlling law." *Roberts v. AT&T Mobility LLC*, 801 F. App'x 492, 494 (9th Cir. 2020) (quoting *Kona Enters, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). Reconsideration is appropriate where the intervening change of law is a clarification of the applicable legal standard. *See, e.g.*, *Doe By & Through Doe v. Petaluma City Sch. Dist.*, 949 F. Supp. 1415, 1422 (N.D. Cal. 1996) (granting reconsideration where a new decision "clarified" the legal standard).

Even if a motion does not satisfy Civil Local Rule 7-9, this Court has the inherent authority to reconsider and modify its interlocutory orders at any point prior to final judgment. Fed. R. Civ. P. 54(b); *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996); *see also City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001) ("[A]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." (citation omitted)). The "authority of district courts to reconsider their own orders before they become final, absent some applicable rule or statute to the contrary, allows them to correct not only simple mistakes, but also decisions based on shifting precedent, rather than waiting for the time-consuming, costly process of appeal." *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law[,]" or any "other highly unusual circumstances warranting reconsideration." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Where, as here, the Ninth Circuit publishes an opinion clarifying the governing law, it is appropriate for the district court to reconsider its ruling in light of that opinion. *See, e.g.*, *Murphy v. Precision Castparts Corp.*, No. 3:16-cv-00521-SB, 2021 WL 2080016, at \*4-5 (D. Or.

May 24, 2021) (granting reconsideration where challenged statements that previously survived summary judgment were "indistinguishable" from those dismissed in recent Ninth Circuit opinion), *aff'd sub nom. AMF Pensionsforsakring AB v. Pension Castparts Corp.*, 2022 WL 2800825 (9th Cir. July 18, 2022); *Petaluma City Sch. Dist.*, 949 F. Supp. at 1422 (granting reconsideration where "the benefit of hindsight" and subsequent decisions "clarified" the legal standard for Title IX action).

Here, *Align* changed controlling law by clarifying that statements that are substantively identical to the challenged statement that remain in this action are nonactionable as a matter of law. In light of this new case law, it would be manifestly unjust not to reconsider the MTD Order.

**IV.     THE COURT SHOULD RECONSIDER ITS MTD ORDER WITH RESPECT TO CORPORATE PUFFERY IN LIGHT OF *ALIGN***

Two of the five remaining challenged statements here fall squarely within the "umbrella of puffery" as described by the Ninth Circuit in *Align*. SAC ¶ 238 (Pandey's statement during Nutanix's March 1, 2018 earnings call attributing the increase in new customers during Q2'18 (*i.e.*, the quarter ending January 31, 2018) to a "***huge contribution to overall mid market customer acquisition***."); ¶ 269 (William's statement during Nutanix's May 24, 2018 Q3'18 earnings call that, "***[W]e've actually had a renewed focus with the channel on new customer logos*. . . . *But really excited about what's happening in the channel with the pipeline for new logos and things like that***."). The MTD Order held that these statements were actionable because they "could lead a reasonable investor to conclude that Nutanix's pipeline for new customers was robust when, in fact, it was facing a significant decline." MTD Order at 12.

However, *Align* now leaves no room to construe these two statements as anything other than non-actionable puffery. Just as the statements in *Align* describing China as "a great growth market" or "a huge market opportunity" were "vague, generically positive terms" that were "not 'objectively verifiable[,]'" *Align*, 2022 WL 2525306, at *4 (citation omitted), Defendants' statement regarding a "***huge contribution*** to overall mid market customer acquisition" in Q2'18 is likewise vague, generically positive, and impossible to objectively verify. SAC ¶ 238 (emphasis

added).  It is, therefore, non-actionable puffery.[5]  Likewise, Defendants' statements that they had a "renewed focus" or were "really excited" about the customer pipeline are just as vague and, thus, do not "present kind of precise information on which investors rely 'when valuing corporations.'" *Align*, 2022 WL 2525306, at \*4 (quoting *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010)) (dismissing Align's statements regarding its "great business," "tremendous growth," and "great economics" in China).  Because the statements here are materially indistinguishable from the dismissed statements in *Align*, Defendants seek reconsideration of the MTD Order, which did not expressly consider, or rule on, Defendants' puffery arguments.[6]

## V.    THE COURT SHOULD RECONSIDER ITS MTD ORDER WITH RESPECT TO ACCURATE STATEMENTS OF PAST PERFORMANCE IN LIGHT OF *ALIGN*

The other three remaining challenged statements should likewise be dismissed in light of the Ninth Circuit's clarification that an accurate statement of a company's ***past*** performance cannot be interpreted as a representation about the company's ***current*** performance.  *Align*, 2022 WL 2525306, at \*5.

In *Align*, the plaintiff argued that the statement, "we've been competing against many of these companies . . . for a number of years ***and still been able to grow as we have***," falsely represented that competition was not materially affecting Align's growth at the time the statement was made.  *In re Align Tech., Inc. Sec. Litig.*, No. 20-CV-02897-MMC, 2021 WL 1176642, at \*5 (N.D. Cal. Mar. 29, 2021), *aff'd sub nom. Macomb Cty. Employees' Ret. Sys. v. Align Tech., Inc.*, 2022 WL 2525306 (9th Cir. July 7, 2022).  The Northern District of California disagreed with the

---

[5] Even if the statement attributing the increase in new customers during Q2'18 to a "huge contribution to overall mid market customer acquisition" (SAC ¶ 238) was objectively verifiable, that statement was clearly limited to Nutanix's new customer adds ***in the past*** (*i.e.*, in Q2'18) and cannot be read as a representation about the Company's ***current*** number of new customer adds, much less its ***current*** pipeline overall.  *See infra* § V.

[6] Plaintiff's additional factual allegations regarding confidential witnesses in the SAC only spoke as to scienter, MTD Order at 2, and cannot render immaterial puffery into actionable statements.  *Compare* MTD Order at 12 *with* ECF No. 121 at 8 (denying dismissal of the statement contained in SAC ¶ 269 (that the Company was "really excited" about the channel for mid-market customer acquisition), despite having previously dismissed that identical statement as pled in the CAC for "lack of specificity").

MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION                                    -9-
CASE NO. 3:19-CV-01651-WHO

plaintiff's interpretation of the statement and held that the statement did not make any representation regarding the impact that competition was currently having on Align's growth. *Id.* In affirming that dismissal, the Ninth Circuit explained that "an accurate assessment of Align's ***past growth***" would not "'give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists' sufficient to make the statement actionably misleading." *Align*, 2022 WL 2525306, at *5 (emphasis in original). The Ninth Circuit notably reached that holding despite its conclusion that the plaintiff had alleged "sufficient evidence to support the inference that Align's growth rate in China had slowed materially when the challenged statements were made[.]" *Id.* at *3.

Here, the three remaining challenged statements—*i.e.*, two statements regarding pipeline and sales productivity made in March 2018 (SAC ¶¶ 236, 237) and one statement regarding sales productivity made in August 2018 (¶ 287)—fall squarely within *Align*'s holding regarding accurate statements of past performance.

***Pipeline Statements***. The Court previously held that Nutanix's statement that it "add[ed] a record number of new customers [in Q2'18—*i.e.*, the quarter spanning November 1, 2017 to January 31, 2018]" was facially accurate but nevertheless was adequately alleged to be misleading because it gave the misleading impression that "Nutanix's pipeline for new customers was robust when, in fact, it was facing a significant decline[.]" MTD Order at 12. The Court's holding expressly turned on its finding "that [the sales] pipeline . . . was in decline ***at the time that Nutanix made the allegedly misleading statements.***" *Id.* at 16 (emphasis added).[7]

Taken at face value, however, the challenged statement is plainly an accurate assessment of Nutanix's ***past pipeline performance*** in Q2'18 and cannot be misconstrued as a representation of the status of Nutanix's ***current pipeline performance*** at the time the statement was made (*i.e.*,

---

[7] This finding was based on the Court's review of allegations attributable to three CWs— CW1, CW5, and CW8—who claimed that Nutanix's pipeline was in decline in "spring of 2018" (CW1 and CW8) and/or "summer of FY2018" (CW5). *See* MTD Order at 10-11, 14-16. Thus, in declining to credit Plaintiffs' falsity allegations regarding a declining pipeline during earlier time periods, *i.e.*, during Q2'18, the Court held that Plaintiffs' "allegations reflect that Nutanix's pipeline was 'drying up' after this point [during Q2'18], ***in mid-2018 at the earliest***." *Id.* at 12 (emphasis added).

on March 1, 2018).  *See Align*, 2022 WL 2525306, at *5; MTD Order at 12; SAC ¶ 236.  Thus, under *Align*, the challenged statement is not actionable and should be dismissed.

**___Productivity Statements___**.  Similarly, the Court previously held that Nutanix's sales productivity-related statements made on March 1, 2018 and August 30, 2018—*i.e.*, that Nutanix experienced "record sales productivity in the quarter [for Q2'18 ended January 31, 2018]" for the EMEA and APAC sales regions and experienced "ramped rep sales productivity . . . increase[s] sequentially for the last three six-month periods ending Q4 2017, Q2 2018, and Q4" (SAC ¶¶ 236, 287)—were misleading.  MTD Order at 13, 17.  These challenged statements clearly pertain to Nutanix's ***past performance*** and the SAC does not allege that they were factually inaccurate.  *See id.* at 11 ("Plaintiffs do not allege that Nutanix's statements were numerically inaccurate.").  Nevertheless, the Court reasoned that the statements were actionable in light of Plaintiffs' allegations that Nutanix was in fact experiencing poor sales productivity and attrition problems at the time the statements were made.  *See id.* at 13, 17.

Under *Align*, the challenged sales productivity statements are plainly accurate assessments of past performance.[8]  2022 WL 2525306, at *5.  *Align* makes clear that Plaintiffs cannot state a claim for securities fraud based on accurate statements regarding past performance by claiming those statements misrepresented performance at the time the statements were made.  *Supra* § II.

**CONCLUSION**

For the reasons set out above, this Court should grant Defendants leave to file a motion for reconsideration of the MTD Order, and grant dismissal of the remaining challenged statements in light of the Ninth Circuit's recent *Align* decision.

---

[8] The falsity and scienter allegations were even stronger in *Align* than here, as Align's executives were touting the company's growth rate in China only three months before the public revelation of Align's downturn in China.  2022 WL 2525306, at *3.  Here, the challenged statements about Nutanix's past pipeline and productivity performance were made during earnings calls for Q2'18 and Q4'18, *i.e.*, many months before the Company reported a lower-than-expected guidance for Q3'19.  SAC ¶¶ 236-237, 287, 320.

Dated:  July 20, 2022

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  /s/  Nina F. Locker
          Nina F. Locker

*Attorneys for Defendants Nutanix, Inc., Dheeraj Pandey, and Duston M. Williams*