# EXHIBIT 1

2022 WL 2525306
United States Court of Appeals, Ninth Circuit.

MACOMB COUNTY EMPLOYEES'
RETIREMENT SYSTEM, Lead
Plaintiff, Plaintiff-Appellant,
and

City of Roseville Employees' Retirement
System, individually and on behalf of
all others similarly situated, Plaintiff,

v.

ALIGN TECHNOLOGY, INC.;
Joseph M. Hogan; John F. Morici;
Julie Tay, Defendants-Appellees.

No. 21-15823
|
Argued and Submitted March 10,
2022 San Francisco, California
|
Filed July 7, 2022

**Synopsis**
**Background:** Michigan-based pension plan brought putative class action against manufacturer of clear, plastic braces and several of manufacturer's senior executives, alleging that executives misrepresented manufacturer's growth in China in violation of securities laws. The United States District Court for the Northern District of California, Maxine M. Chesney, J., 2021 WL 1176642, dismissed action. Pension plan appealed.

**Holdings:** The Court of Appeals, McKeown, Circuit Judge, held that:

[1] pension plan alleged sufficient evidence to support inference that growth of manufacturer in China had slowed materially when senior executives purportedly made statements misrepresenting the growth, so as to support plan's securities fraud claims;

[2] statements made by senior executives describing China as a great growth market and huge opportunity and describing

manufacturer's performance as tremendous and great were non-actionable puffery; and

[3] statements made by senior executives did not create false impression of manufacturer's growth in China, and thus were not actionable under § 10(b) and Rule 10b-5.

Affirmed.

West Headnotes (15)

**[1]** **Federal Courts** 🔑 Pleading
**Federal Courts** 🔑 Dismissal for failure to state a claim

Court of Appeals reviews de novo a district court's dismissal for failure to state a claim, taking all allegations of material fact as true and construing them in the light most favorable to the nonmoving party. Fed. R. Civ. P. 12(b).

**[2]** **Securities Regulation** 🔑 Manipulative, Deceptive or Fraudulent Conduct

To recover damages for violations of § 10(b) of the Securities Exchange Act and Rule 10b-5, a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. Securities Exchange Act of 1934 § 10, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[3]** **Federal Civil Procedure** 🔑 Fraud, mistake and condition of mind
**Securities Regulation** 🔑 Pleading

A complaint alleging a violation of § 10(b) of the Securities Exchange Act must meet both the heightened pleading requirements for fraud claims, which requires that the complaint state with particularity the circumstances constituting fraud, and the exacting pleading requirements

of the Private Securities Litigation Reform Act (PSLRA). Securities Exchange Act of 1934 §§ 10, 21D 15 U.S.C.A. §§ 78j(b), 78u-4; Fed. R. Civ. P. 9(b).

**[4]    Securities Regulation**  👈 Pleading

The Private Securities Litigation Reform Act (PSLRA) requires securities fraud plaintiffs to state with particularity the facts constituting the alleged violation of § 10(b) of the Securities Exchange Act. Securities Exchange Act of 1934 §§ 10, 21D 15 U.S.C.A. §§ 78j(b), 78u-4.

**[5]    Securities Regulation**  👈 Misrepresentation

Michigan-based pension plan alleged sufficient evidence to support inference that growth of manufacturer of clear, plastic braces in China had slowed materially when manufacturer's senior executives purportedly made statements misrepresenting the growth, so as to support plan's securities fraud claims under § 10(b) and Rule 10b-5; just three months, a short period of time, passed between first challenged statement and revelation of manufacturer's downturn in China, and analyst's report described early indications that manufacturer's growth in China had slowed and that the data was available to executives to monitor. Securities Exchange Act of 1934 § 10, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[6]    Securities Regulation**  👈 Misrepresentation, nondisclosure, and insider trading

The passage of just a short period of time between executives' rosy statements about their company's prospects and a downturn in those prospects is circumstantial evidence that the challenged statements were false when made for purposes of a securities fraud claim. Securities Exchange Act of 1934 § 10, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[7]    Securities Regulation**  👈 Facts or opinions

"Corporate puffing" involves expressing an opinion that is not capable of objective verification; these vague statements of optimism like "good," "well-regarded," or other feel good monikers, are not actionable under § 10(b) of the Securities Exchange Act and Rule 10b-5 because professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives. Securities Exchange Act of 1934 § 10, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[8]    Securities Regulation**  👈 Facts or opinions

Statements made by senior executives for manufacturer of clear, plastic braces describing China as a great growth market and huge opportunity and describing manufacturer's performance as tremendous and great were "puffery," and thus not actionable under § 10(b) of the Securities Exchange Act and Rule 10b-5; statements all used vague, generically positive terms, statements were not objectively verifiable and did not contain precise information on which investors would rely when valuing manufacturer, and the feel-good descriptions did not affirmatively create impression of state of affairs that differed in material way from the one that actually existed as manufacturer's sales were still growing in China, albeit at diminished rate, when statements were made. Securities Exchange Act of 1934 § 10, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

1 Cases that cite this headnote

**[9]    Securities Regulation**  👈 Forecasts, estimates, predictions or projections

General statements of optimism made against a clearly pessimistic backdrop may form a basis for a securities fraud claim. Securities Exchange Act of 1934 § 10, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[10]    Securities Regulation**  👈 Misrepresentation

Statement made by senior executive for manufacturer of clear, plastic braces that

manufacturer had been competing against many companies for years and had still been able to grow did not create false impression of manufacturer's growth in China, and thus was not actionable under § 10(b) of the Securities Exchange Act and Rule 10b-5; reasonable investor would understand the phrase "grow as we have" to refer to manufacturer's historical growth rate in China, and statement was accurate assessment of manufacturer's past growth. Securities Exchange Act of 1934 § 10, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[11]    Securities Regulation** 🔑 Misrepresentation

Statement made by senior executive for manufacturer of clear, plastic braces that competitor's entry into market in China would not have dramatic effect on the market did not create false impression of manufacturer's growth in China, and thus was not actionable under § 10(b) of the Securities Exchange Act and Rule 10b-5, absent showing that competitor's presence in China caused the slowdown in manufacturer's growth. Securities Exchange Act of 1934 § 10, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[12]    Federal Courts** 🔑 Waiver of Error in Appellate Court

Michigan-based pension plan waived on appeal argument that statement contained in manufacturer's financial report that demand for manufacturer's clear, plastic braces might not increase as rapidly as anticipated created false impression of manufacturer's growth in China so as to be actionable under § 10(b) of the Securities Exchange Act and Rule 10b-5; pension plan never argued on appeal that statement was actionable. Securities Exchange Act of 1934 § 10, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[13]    Securities Regulation** 🔑 Financial or periodic reports;  accounting data and valuations

Statement contained in manufacturer's financial report that demand for manufacturer's clear, plastic braces might not increase in China as rapidly as anticipated was not actionable under § 10(b) of the Securities Exchange Act and Rule 10b-5, since statement presented no concrete assertions that could render it actually false or trigger duty to disclose additional information. Securities Exchange Act of 1934 § 10, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

**[14]    Securities Regulation** 🔑 Controlling persons

To prevail on claims for violations of section of Securities Exchange Act creating joint and several liability for any person who controls a person liable for violating the Act or section creating liability for anyone who violates the Act or its regulations by purchasing or selling a security while in possession of material, nonpublic information, a plaintiff must first allege a violation of § 10(b) or Rule 10b-5. Securities Exchange Act of 1934 §§ 10, 20, 20A, 15 U.S.C.A. §§ 78j(b), 78t(a), 78t-1(a); 17 C.F.R. § 240.10b-5(b).

**[15]    Securities Regulation** 🔑 Matters to Be Disclosed

Securities laws do not create an affirmative duty to disclose any and all material information. Securities Exchange Act of 1934 § 10, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b).

Appeal from the United States District Court for the Northern District of California Maxine M. Chesney, District Judge, Presiding, D.C. No. 3:20-cv-02897-MMC

**Attorneys and Law Firms**

Javier Bleichmar (argued), Bleichmar Fonti & Auld LLP, New York, New York, for Plaintiffs-Appellants.

Shay Dvoretzky (argued) and Peter A. Bruland, Skadden Arps Slate Meagher & Flom LLP, Washington, D.C.; Peter B. Morrison, Virginia F. Milstead, and Mayra Aguilera, Skadden

Arps Slate Meagher & Flom LLP, Los Angeles, California; for Defendants-Appellees.

Before: J. Clifford Wallace, Sidney R. Thomas, and M. Margaret McKeown, Circuit Judges.

## OPINION

McKEOWN, Circuit Judge:

Securities actions often ask courts to distinguish between corporate braggadocio and genuinely false or misleading statements. This is one of those cases. In reviewing the dismissal of this class action, we consider whether corporate executives misrepresented their company's prospects in China to such an extent that their statements were actionable under our securities laws. After a careful review of the record, we conclude that the district court did not err in determining that all twelve challenged statements were non-actionable.

## BACKGROUND

For the better part of twenty years, Align Technology, Inc. ("Align")—a medical device manufacturer that is best known for selling clear, plastic "Invisalign" braces—enjoyed skyrocketing growth. At the beginning of 2002, the company had served roughly 44,000 customers, but by 2019 that number had grown to 7 million. During much of that period, the growth was driven primarily by international sales, especially in China: Between 2013 and 2017, shipments of Invisalign cases to China increased by an average of 88 percent each year, and then by another 91 percent in 2018. Indeed, every quarter in 2017 and 2018, Align's year-over-year revenue growth rate in China hovered between 70 percent and 100 percent.

**\*2** But then the trouble began. At the start of 2019, Align's Chinese growth rate dipped slightly, apparently due to increased competitive pressure and diminished consumer demand, and in the second quarter of that year the rate fell to between 20 and 30 percent. As news of this fall reverberated across the market, Align's stock dropped by roughly 27 percent, from $275.16 per share on July 24, 2019, to $200.90 per share on July 25, 2019, erasing approximately $5.4 billion in shareholder value.

A year later, Macomb County Employees' Retirement System ("Macomb"), a Michigan-based pension plan, filed suit against Align (and several of its senior executives) on behalf of itself and all others that acquired Align common stock between April 25, 2019, and July 24, 2019 (the "Class Period"), and were damaged thereby. Macomb alleged that several Align senior executives had "misrepresent[ed]" Align's growth in China throughout the second quarter of 2019, claiming strong numbers despite knowing (or recklessly disregarding) that the growth rate in China had slowed significantly. According to Macomb, Align executives made twelve statements during the Class Period that are actionable under Sections 10(b), 20(a), and 20A, as well as Rule 10b-5, of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. ("Exchange Act" or "Act").

The district court dismissed the action with leave to amend, holding that the majority of the challenged statements constituted non-actionable puffery and the rest were not false or misleading. Instead of amending the complaint, Macomb requested a final judgment, so the district court dismissed the action with prejudice. Macomb appealed.

## ANALYSIS

 **[1]** We review de novo a district court's dismissal for failure to state a claim, "tak[ing] all allegations of material fact as true and constru[ing] them in the light most favorable to the nonmoving party." In re Quality Sys., Inc. Sec. Litig. (Quality Systems), 865 F.3d 1130, 1140 (9th Cir. 2017).

 **[2]** Section 10(b) of the Act prohibits using "any manipulative or deceptive device" that contravenes "such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Pursuant to this section, Rule 10b-5 prohibits making "any untrue statement of a material fact" or omitting "a material fact necessary" to make a statement "not misleading." 17 C.F.R. § 240.10b-5(b); see also In re Cutera Sec. Litig., 610 F.3d 1103, 1108 (9th Cir. 2010). To recover damages for violations of Section 10(b) and Rule 10b-5, as Macomb is seeking to do, "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 267, 134 S.Ct. 2398, 189 L.Ed.2d 339 (2014) (internal citations and quotation marks omitted). Only the first two elements are at issue here.

**[3]** **[4]** A complaint alleging a violation of Section 10(b) of the Exchange Act must meet both the heightened pleading requirements for fraud claims under Fed. R. Civ. P. 9(b), which requires that the complaint "state with particularity the circumstances constituting fraud," and the "[e]xacting pleading requirements" of the Private Securities Litigation Reform Act ("PSLRA"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* (*Tellabs*), 551 U.S. 308, 313, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). The PSLRA requires plaintiffs to state with particularity the facts constituting the alleged violation. *Id.* These "heightened pleading requirements for securities fraud cases ... present no small hurdle for the securities fraud plaintiff." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (citation omitted).

## I. Unsupported Premise

 **\*3** **[5]** As a threshold matter, Align asks this court to affirm the district court on the narrow ground that Macomb's complaint is based on an unsupported premise. Macomb's complaint rests on the premise that Align's rate of growth had, in fact, "significantly declined" by the time Align's executives were touting the company's growth in China in May and June of 2019. But, according to Align, it is possible that the rate of growth only started to decline "significantly" *during* the Class Period (which lasts until July 24, 2019). Because, Align continues, Macomb has not alleged sufficient facts to make plausible the inference that the rate of growth had begun to decline "significantly" by the time the Align executives made the challenged statements, the statements cannot be considered false at the time they were made, and therefore they are not actionable. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) (holding that for statements to be actionable under the PSLRA, they must have been "false or misleading at the time they were made"). We reject this argument as unsupported.

 **[6]** It is settled precedent that the passage of just a short period of time between executives' rosy statements about their company's prospects and a downturn in those prospects is "circumstantial evidence" that the challenged statements "were false when made." *Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995). In *Fecht*, for instance, the passage of two-and-a-half months was a sufficient "shortness of time" to be considered "circumstantial evidence that the challenged statements were false when made." *Id.* Here, just three months passed between the first challenged statement and the revelation of Align's downturn in China.

In addition, *Fecht* demands that we accord such circumstantial evidence "more weight" where there is no "intervening catastrophic event" that might suggest a later, abrupt downturn, such that the executives' earlier statements may not, in fact, have been false. *Id.* at 1083–84. Here, as in *Fecht*, there was no such catastrophic event.

Macomb has provided additional evidence to support the inference that Align's growth rate was declining substantially at the time of the challenged statements. Multiple reports from former employees support the inference that Align's growth in China had slowed materially when the challenged statements were made in late April, May, and June 2019. For instance, one analyst's report described "clear, early indications as of April 1, 2019 that Align's growth in China had slowed ... and that data was available to executives to monitor." Viewed alongside the short period of time between the challenged statements and the downturn in Align's prospects in China, Macomb has alleged sufficient evidence to support the inference that Align's growth in China had slowed materially when the challenged statements were made in late April, May, and June 2019. Macomb's complaint does not rest on an unsupported premise.[1]

## II. Puffery

 **[7]** Turning to the challenged statements, we hold that the district court correctly found that six were non-actionable "puffery." Corporate "puffing" involves "expressing an opinion" that is not "capable of objective verification." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) (quoting *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014)). These "vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers, are not actionable because professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.* (*Intuitive Surgical*), 759 F.3d 1051, 1060 (9th Cir. 2014) (internal quotation marks omitted) (quoting *In re Cutera Sec. Litig.*, 610 F.3d at 1111).

 **\*4** **[8]** The six challenged statements that the district court determined to be puffery are as follows:

1. During an April 24, 2019, earnings call, Chief Executive Officer Joseph Hogan stated in response to analyst questions about Align's international business, "[w]e still have a great business in APAC from a growth standpoint overall," and "China is a great growth market for us."

2. At a healthcare conference on May 14, 2019, Chief Financial Officer John Morici said, "China ... gets a lot of attention. And rightly so, it's a huge market opportunity for us."

3. At a dental and veterinary conference on May 29, 2019, in response to an analyst question about growth rates in the Asia-Pacific (i.e., APAC) region, Morici responded, "we see tremendous growth in APAC, in China in particular."

4. At the same conference, in response to an analyst question probing deeper about China, Morici stated, "we're seeing tremendous growth."

5. At the same conference, Morici said, "[t]he dynamics in China are really good for us .... [T]he appetite for growth and new technology adoption in China has been great for us. And as you mentioned, the economics work well for us."

6. At a healthcare conference on June 5, 2019, Morici also described China as "a market that's growing significantly for us" with "[g]reat economics."

These six statements plainly fit beneath the umbrella of puffery. All use vague, generically positive terms, describing China as "a great growth market," "a huge market opportunity," "a market that's growing significantly for us," and possessing "really good" "dynamics," and describing Align's performance there as "tremendous" and "great." Such characterizations are not "objectively verifiable." *Retail Wholesale*, 845 F.3d at 1276. None of these six statements present the kind of precise information on which investors rely "[w]hen valuing corporations." *In re Cutera Sec. Litig.*, 610 F.3d at 1111.

 **[9]** Contrary to Macomb's assertions, the district court did not err by failing to "consider the context" in which these six statements were made. Although "general statements of optimism" made against a clearly pessimistic backdrop "may form a basis for a securities fraud claim," *Intuitive Surgical*, 759 F.3d at 1060 (citation omitted), this was not the case here. Significantly, at the time Align's executives made the six challenged statements, the company's sales were *still growing* in China, albeit at a diminished rate, so these feel-good descriptions from Align's executives did not "affirmatively create[ ] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Quality*

*Systems*, 865 F.3d at 1144 (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).

### III. Otherwise Non-actionable Statements

We next hold that the district court correctly found that the remaining six statements did not create a false impression of Align's growth in China and so were not actionable. We briefly address each of these six statements below.

Three of the statements contained factual assertions that Macomb's complaint does not contradict:

**\*5** 1. At a dental and veterinary conference on May 29, 2019, in response to an analyst question whether he saw China as "fastest growth, highest [average sales price] that should remain in place for the next couple of years," Morici stated, "[China] is higher [average sales price]. They start with a higher list price. They have very complicated cases, comprehensive cases, and we've invested from a treatment planning to be in country, speak the same language, reduce the cycle time between having iTero [a digital scanner of patients' teeth sold by Align] in China. We introduced that in second quarter of last year. We went from almost no cases sent digitally to almost 50% of the cases sent digitally within China.

2. At a healthcare conference on June 5, 2019, in response to an analyst question about competition in China, Morici responded, "Great economics there from the standpoint that massive population, growing middle class, we have higher list prices, higher [average sales prices] in China, very complicated cases, a lot of orthodontists that we sell to, selling more and more to hospitals ...."

3. At a healthcare conference on June 11, 2019, an analyst asked whether Align had seen the same increase in Invisalign uptake after placing iTero scanners into the market as the company had in the U.S. Morici responded, "Yes ... [iTero] drives higher and higher amount of Invisalign volume."

We observe that Macomb's complaint contains no allegations contrary to the assertions regarding Align's average sales price in China, the relative complexity of the cases, the "cycle time," China's "massive population," China's growing middle class, iTero's effects on driving higher Invisalign volume, etc. As a result, these three statements are not actionable under our securities laws.

**[10]** A fourth statement was an accurate assessment of Align's *past growth* when considered in context:

> 4. At a healthcare conference on May 14, 2019, in response to an analyst question about competitors absorbing market share over a period of several years, Morici stated, "whether it's in China or U.S. or other places, we've been competing against many of these companies that I mentioned for a number of years and still been able to grow as we have."

Read in light of the analyst's question, a reasonable investor would understand the phrase "grow as we have" to refer to Align's historical growth rate in China over at least the prior year if not longer. Considering the context, this statement would not "give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists" sufficient to make the statement actionably misleading. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 691 (9th Cir. 2011) (internal quotation marks and citation omitted).

**[11]** A fifth statement was an assessment of the effect of a competitor's entry into the market:

> 5. During an April 24, 2019, earnings call, Hogan stated in response to analyst questions about how Align could continue to grow in China as quickly as they historically had, "China is a great growth market for us," and "Straumann's [the competitor] move with third-or fourth-tier player from a clear aligner standpoint, I don't see that as dramatic effect on this market now or in the immediate future at all."

The Align executive's optimistic prediction was not a clearly untrue or misleading gloss. Macomb failed to plead sufficient facts to establish that the competitor's presence in China *caused* the slowdown in Align's growth, especially considering that the complaint referenced at least two other competitors in addition to Straumann (SmileDirectClub and Angel Align) that were putting pressure on Align in China. So, the executive's assertion was not "false when made." *Fecht*, 70 F.3d at 1083.

**\*6** **[12]** **[13]** This leaves a final statement contained in Align's May 2, 2019, Form 10-Q:

> 6. "Demand for our products may not increase as rapidly as we anticipate due to a variety of factors including a weakness in general economic conditions."

Macomb never argued on appeal that this sixth statement was actionable, so that argument was waived. *Brown v. Rawson-Neal Psychiatric Hosp.*, 840 F.3d 1146, 1148 (9th Cir. 2016). Even if this argument were not waived, the statement presents no concrete assertions that could render it actually false or trigger a duty to disclose additional information. "Disclosure is required ... only when necessary 'to make ... statements made, in the light of the circumstances under which they were made, not misleading.' " *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44, 131 S.Ct. 1309, 179 L.Ed.2d 398 (2011) (quoting 17 C.F.R. § 240.10b-5(b)).

### IV. Remaining Matters

**[14]** Having determined that all of the challenged statements are non-actionable, we can quickly dispense with Macomb's remaining arguments. We decline to reach the matters of scienter and control-person or insider-trading liability.[2]

**[15]** And we reject Macomb's argument that because Align touted "positive facts about China," the company had "a duty to disclose negative facts in order to make the statements not misleading." Our securities laws "do not create an affirmative duty to disclose any and all material information." *Id.* Because all twelve challenged statements are non-actionable, Align had no duty to provide additional information to render those statements "not misleading." *See Retail Wholesale*, 845 F.3d at 1278 (no duty to disclose where statements did not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists").

**AFFIRMED.**

**All Citations**

--- F.4th ----, 2022 WL 2525306, 2022 Daily Journal D.A.R. 7218

---

Footnotes

1    Align contends that *Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001), supports the opposite conclusion. This case is not like *Ronconi*. There, the plaintiffs inadequately pleaded falsity because the complaint "fail[ed] to describe, chart or graph what sales actually did" and failed to "identify any documents or facts suggesting that the defendants knew that the growth rate was not accelerating." *Ronconi*, 253 F.3d at 431. By contrast, Macomb has explained "what sales actually did" (i.e.,

**Macomb County Employees' Retirement System v. Align..., --- F.4th ---- (2022)**
2022 Daily Journal D.A.R. 7218

sales growth in China fell from close to 70% to 20–30% in one quarter), *id.*, and Macomb pointed to specific systems and reports that executives allegedly reviewed indicating slowing growth.

2     To prevail on claims for violations of Section 20(a), 15 U.S.C. § 78t(a) (creating joint and several liability for any person who controls a person liable for violating the Act), or Section 20A, 15 U.S.C. § 78t-1(a) (creating liability for anyone who violates the Act or its regulations "by purchasing or selling a security while in possession of material, nonpublic information"), "[a] plaintiff[ ] must first allege a violation of § 10(b) or Rule 10b-5." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002). Thus, whether Align violated Section 10(b) or Rule 10b-5 is a threshold issue. Because we agree with the district court that Macomb failed to state a claim under Section 10(b) or Rule 10b-5, Macomb is likewise unable to state a claim under Sections 20(a) or 20A.

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.