NINA F. LOCKER, State Bar No. 123838
IGNACIO E. SALCEDA, State Bar No. 164017
EVAN L. SEITE, State Bar No. 274641
BETTY CHANG ROWE, State Bar No. 214068
LAURA G. AMADON, State Bar No. 321524
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100
Email:      nlocker@wsgr.com
            isalceda@wsgr.com
            eseite@wsgr.com
            browe@wsgr.com
            lamadon@wsgr.com

*Attorneys for Defendants Nutanix, Inc.,*
*Dheeraj Pandey, and Duston M. Williams*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE NUTANIX, INC. SECURITIES LITIGATION | CASE NO.:  3:19-cv-01651-WHO<br>CASE NO.:  3:21-cv-04080-WHO |
| | **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OMNIBUS MOTION TO DISMISS COMPLAINTS FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| JOHN P. NORTON, ON BEHALF OF THE NORTON FAMILY LIVING TRUST UAD 11/15/2002, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS,<br><br>        Defendants. | Hearing Date: February 15, 2023<br>Time: 2:00 PM<br>Courtroom: 2<br>Hon. William H. Orrick |

Defendants Nutanix, Inc. ("Nutanix"), Dheeraj Pandey and Duston M. Williams (collectively, "Defendants") hereby request that the Court consider under the doctrine of incorporation by reference, or take judicial notice of, the documents attached as Exhibit Nos. 1-26 to the concurrently filed Declaration of Laura G. Amadon ("Amadon Decl.") submitted in support of Defendants' Omnibus Motion to Dismiss (the "Motion to Dismiss") the Third Amended Complaint ("TAC") in *In re Nutanix, Inc. Securities Litigation*, Case No. 3:19-cv-01651-WHO (the "*Nutanix* Action"; ECF No. 281-3) and the Revised First Amended Complaint ("RFAC" and together with the "TAC", the "Complaints") in the related case *Norton Family Living Trust v. Nutanix, Inc. et al.*, Case No. 3:21-cv-04080-WHO (the "*Norton* Action"; ECF No. 94-3).[1]

## ARGUMENT

The Supreme Court has directed that, in ruling on a motion to dismiss a securities fraud complaint, the Court "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) ("In reviewing the sufficiency of a complaint, we limit ourselves to the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice."); *see also Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1185 (9th Cir. 2021) ("We may also consider 'materials incorporated into the complaint by reference' and any 'matters of which we may take judicial notice.'") (citation omitted). In addition to documents incorporated by reference or matters of judicial notice, the Court may also consider documents attached to the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). As explained below, the exhibits submitted in connection with the motion to dismiss are incorporated by reference in and/or attached to the TAC and RFAC, and many also are appropriate subjects of judicial notice.

---

[1] Unless otherwise noted, the abbreviations used herein are the same as identified in the Table of Abbreviations in Defendants' Omnibus Motion to Dismiss.

## I.    THE COURT MAY CONSIDER DOCUMENTS REFERENCED IN AND/OR ATTACHED TO THE TAC AND RFAC

Under the "'incorporation by reference' doctrine in this Circuit, 'a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment.'" *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (quoting *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)); *see also, e.g.*, *In re Autodesk, Inc., Sec. Litig.*, 132 F. Supp. 2d 833, 837-38 (N.D. Cal. 2000) ("[A] defendant may attach to a 12(b)(6) motion the documents referred to in the complaint to show that they do not support plaintiff's claim"). A document is incorporated by reference into a complaint "if the plaintiff refers extensively to the document [in its complaint] or the document forms the basis of the plaintiff's claim." *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020) (quoting *Ritchie*, 342 F.3d at 908); *see also, e.g.*, *In re Nektar Therapeutics*, 2020 WL 3962004, at *7 (N.D. Cal. July 13, 2020) (Gilliam, J.) ("[T]he incorporation by reference doctrine is a judicially-created doctrine that allows a court to consider certain documents as though they were part of the complaint itself.").

As the Ninth Circuit has explained, the incorporation by reference doctrine is designed to prevent plaintiffs from "selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see Park v. GoPro, Inc.*, 2019 WL 1231175, at *6 (N.D. Cal. Mar. 15, 2019) (similar). Accordingly, the full text of documents referenced or cited in a complaint may be considered even where the complaint only quotes or relies upon selected portions. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996); *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043 (9th Cir. 2015) (considering "entire content" of various SEC filings incorporated by reference); *NVIDIA*, 768 F.3d at 1058 n.10 (where plaintiffs "rely[] on portions of [a document] in their complaint, we may properly consider [it] in its entirety") (citing *Tellabs*, 551 U.S. at 322). "'Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties—and the Court—are free to refer to any of its contents.'" *Eventbrite*, 2020 WL

2042078, at *7 (N.D. Cal. Apr. 28, 2020) (quoting *NVIDIA*, 768 F.3d at 1058 n.10); *see also Haideri v. Jumei Int'l Hold'g Ltd.*, 2021 WL 4170791, at *11 (N.D. Cal. Sept. 14, 2021) ("a court may assume that an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6).") (citation omitted).

Accordingly, Defendants request that the Court consider the following documents, which are attached to and/or referenced throughout the Complaints and which form the basis of Plaintiffs' claims:

- Exhibit No. 2:  excerpts from Nutanix's Form 10-K for the fiscal year 2019, filed with the SEC on September 24, 2019.  It is referenced in ¶¶ 53 (TAC) and 52 (RFAC).

- Exhibit No. 4:  S&P Global's Transcript of Nutanix's Q1 2018 Earnings Conference Call dated November 30, 2017.  The Q1'18 Earnings Conference Call is referenced in ¶¶ 289-291.

- Exhibit No. 5:  S&P Global's Transcript of Nutanix's Q2 2018 Earnings Conference Call dated March 1, 2018.  The Q2'18 Earnings Conference Call is referenced in ¶¶ 132 (n.21 TAC, n.22 RFAC), 313-317, and 496.

- Exhibit No. 6:  S&P Global's Transcript of Nutanix's Q3 2018 Earnings Conference Call dated May 24, 2018.  The Q3'18 Earnings Conference Call is referenced in ¶¶ 342-349, 351, 496-497, and 515.

- Exhibit No. 7:  excerpts of Nutanix's Form 10-Q for the first quarter of fiscal year 2018, filed with the SEC on December 13, 2017.  It is referenced in ¶¶ 292-304, 335, 363, 386, 399, and 496-497.

- Exhibit No. 8:  excerpts of Nutanix's Form 10-Q for the third quarter of fiscal year 2018, filed with the SEC on June 12, 2018.  It is referenced in ¶¶ 352-363, 389, and 399.

- Exhibit No. 9:  excerpts of Nutanix's Form 10-K for the fiscal year 2018, filed with the SEC on September 24, 2018.  It is referenced in ¶¶ 53, 375-386, 393, 399, 530 (n.48 TAC, n.49 RFAC), and 536(f).

- Exhibit No. 10: S&P Global's Transcript of Nutanix's Q4 2018 Earnings Conference Call dated August 30, 2018. It is referenced in ¶¶ 89, 368-374, 496, and 515.

- Exhibit No. 11: Nutanix's press release dated February 28, 2019 and titled "Nutanix Reports Second Quarter Fiscal 2019 Financial Results," filed with the SEC as Exhibit 99.1 to Nutanix's Form 8-K on February 28, 2019. It is referenced in ¶¶ 26, 400-402, 448, and 527.

- Exhibit No. 12: S&P Global's Transcript of Nutanix's Q3 2019 Earnings Conference Call dated May 30, 2019. The Q3'19 Earnings Conference Call is referenced in ¶¶ 433-438.

- Exhibit No. 13: a PowerPoint titled "Marketing Update 11/8/2018", bearing Bates number NTNX-0027526, attached to the Complaints as Exhibit No. 25. It is referenced in ¶¶ 20, 194 (n.30 TAC, n.32 RFAC), 227, and 290 (& n.40 TAC, n.42 RFAC).

- Exhibit No. 14: an excerpt of data contained in an Excel spreadsheet titled "FP&A Q1'19 Projection - wk4.xlsx", bearing Bates number NTNX-0013197, attached to the Complaints as Exhibit No. 51.[2] It is referenced in ¶ 220.

- Exhibit No. 15: a PowerPoint titled "War Room Update 11/7/2018", bearing Bates number NTNX-0020950, attached to the Complaints as Exhibit No. 28. It is referenced in ¶¶ 194 (n.30 TAC, n.32 RFAC), 228 (n.36 TAC, n.38 RFAC), and 290 (n.40 TAC, n.42 RFAC).

- Exhibit No. 16: a PowerPoint titled "Pipeline Projection Q2'19", bearing Bates number NTNX-0062119, attached to the Complaints as Exhibit No. 29. It is referenced in ¶¶ 194, 228 (n.36 TAC, n.38 RFAC), and 290 (n.40 TAC, n.42 RFAC).

---

[2] Plaintiffs cite to and attach the cover email of Exhibit 14 to the Complaints (TAC Ex. 51 *Nutanix* ECF No. 281-6; RFAC Ex. 51 *Norton* ECF No. 84) but omit the attachment reflected in Exhibit 14. *See* Motion to Dismiss at 22, Amadon Decl. ¶ 14. Under well-established discovery practices for electronically stored information ("ESI"), where an email includes attachments, the complete "document" is both the email and its attachments. *See e.g.*, *Pom Wonderful LLC v. Coca Cola Co.*, 2009 WL 10655335, at *2-3 (C.D. Cal. Nov. 30, 2009) (defining a "document" or "document family" or "message unit" to be synonymous and including an email that contains an attachment in such definition) (citation omitted); *see also* The Sedona Conference Glossary: eDiscovery & Digital Information Management, Fifth Edition, 21 SEDONA CONF. J. 263, at 299, 327 (2020).

- Exhibit No. 17:  a PowerPoint titled "Nutanix Board Meeting Finance February 2018", bearing Bates number NTNX-0019027, attached to the Complaints as Exhibit No. 8. It is referenced in ¶ 157.

- Exhibit No. 18:  a PowerPoint titled "2Q18 BoD-2-21.pptx", bearing Bates number NTNX-0072552, attached to the Complaints as Exhibit No. 6.  It is referenced in ¶¶ 156 and 205.

- Exhibit No. 19: an email dated May 28, 2018 with the subject line "New Logo Pipeline Growth for 4Q", bearing Bates number NTNX-0035300, attached to the Complaints as Exhibit No. 44.  It is referenced in ¶ 209.

- Exhibit No. 20:  an Excel Spreadsheet titled "Nutanix Weekly HC Tracker_1-31-19.xlsx", bearing Bates number NTNX-0021002, attached to the Complaints as Exhibit No. 13.  It is referenced in ¶ 160.

- Exhibit No. 21:  Nutanix's press release dated August 30, 2018 and titled "Nutanix Reports Fourth Quarter Fiscal 2018 Financial Results," filed with the SEC as Exhibit 99.1 to Nutanix's Form 8-K on August 30, 2018.  It is referenced in ¶¶ 364-367 and 374-375.

- Exhibit No. 22:  Nutanix's press release dated March 1, 2018 and titled "Nutanix Reports Second Quarter Fiscal 2018 Financial Results," filed with the SEC as Exhibit 99.1 to Nutanix's Form 8-K on March 1, 2018.  It is referenced in ¶¶ 132 n.21, 308-311, and 317.

- Exhibit No. 23:  an Excel Spreadsheet titled "Termination Report.xlsx", bearing Bates number NTNX-0013454, attached to the Complaints as Exhibit No. 9.  It is referenced in ¶ 158 (n.26 TAC, n.27 RFAC).

- Exhibit No. 24:  S&P Global's Transcript of Nutanix's Q2 2019 Earnings Conference Call dated February 28, 2019.  The Q2'19 Earnings Conference Call is referenced in ¶¶ 26-30, 33, 102, 103 & n.18, 123, 184, 192, 230-231, 285, 295, 297, 307, 326, 328, 339, 344, 350, 355, 357, 378, 380, 390, 392, 403-414, 425-427, 431, 434, 448, 452, and 457.

- Exhibit No. 25: excerpts of Nutanix's Form 10-Q for the second quarter of fiscal year 2018, filed with the SEC on March 15, 2018. It is referenced in ¶¶ 97 (n.15 TAC, n.16 RFAC) 323-335, 363, 386, 399, and 497.

## II. DOCUMENTS OF WHICH THE COURT MAY TAKE JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, courts take judicial notice of information "not subject to reasonable dispute." Facts are not subject to reasonable dispute if they are either "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Ritchie*, 342 F.3d at 909. For example, "a court may take judicial notice: (1) of matters of public record, . . . (2) that the market was aware of information contained in news articles, . . . and (3) publicly accessible websites whose accuracy and authenticity are not subject to dispute." *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1008 (N.D. Cal. 2020) (citing *Khoja*, 899 F.3d at 999) (citations omitted); *see also* Fed. R. Evid. 201. The Court may consider such facts "at any stage of the proceeding" (Fed. R. Evid. 201(d)), "even if they are not referenced in the pleading, so long as they meet the requirements for judicial notice set forth in Federal Rule of Evidence 201." *Cement Masons & Plasterers Joint Pension Tr. v. Equinix, Inc.*, 2012 WL 685344, at *8 n.5 (N.D. Cal. Mar. 2, 2012).

### A. SEC Filings are Properly Subject to Judicial Notice

Exhibit Nos. 1-2, 7-9, 11, 21-22, and 25-26 are all materials filed with the United States Securities and Exchange Commission ("SEC"), which are publicly available on the SEC's website. Courts in securities actions routinely take judicial notice of SEC filings. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (judicial notice of SEC filings is "proper"); *see, e.g.*, *Facebook*, 477 F. Supp. 3d at 1009 ("Judicial notice of these exhibits is appropriate because they are public filings made by Facebook with the SEC . . . and are therefore matters of public record not subject to reasonable dispute."); *Kipling v. Flex Ltd.*, 2020 WL 2793463, at *7 (N.D. Cal. May 29, 2020) (judicial notice of "SEC filings such as Forms 10-K, 10-Q, and 8-K"); *Golub v. Gigamon Inc.*, 2019 WL 4168948, at *5-6 (N.D. Cal. Sept. 3, 2019) (judicial notice of 19 SEC filings), *aff'd*, 994 F.3d 1102 (9th Cir. 2021); *In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *7 (N.D. Cal. Mar. 29, 2019) ("SEC filings are routinely subject to

judicial notice"). Judicial notice of SEC filings is proper regardless of whether the filings are referenced in the Complaint. *In re Netflix, Inc. Sec. Litig.*, 2005 WL 1562858, at *5 (N.D. Cal. June 28, 2005) (holding that "SEC filings are appropriately noticed by the Court" on a motion to dismiss). Here, Exhibit Nos. 1-2, 7-9, 11, 21-22, and 25-26 are SEC filings that are also referenced in the Complaint.[3]

Accordingly, Defendants request that the Court take judicial notice of the following Nutanix SEC filings:

- Exhibit No. 1: excerpts of Nutanix's Form 10-K for the fiscal year 2017, filed with the SEC on September 18, 2017.

- Exhibit No. 2: excerpts from Nutanix's Form 10-K for the fiscal year 2019, filed with the SEC on September 24, 2019.

- Exhibit No. 7: excerpts of Nutanix's Form 10-Q for the first quarter of fiscal year 2018, filed with the SEC on December 13, 2017.

- Exhibit No. 8: excerpts of Nutanix's Form 10-Q for the third quarter of fiscal year 2018, filed with the SEC on June 12, 2018.

- Exhibit No. 9: excerpts of Nutanix's Form 10-K for the fiscal year 2018, filed with the SEC on September 24, 2018.

- Exhibit No. 11: Nutanix's press release dated February 28, 2019 and titled "Nutanix Reports Second Quarter Fiscal 2019 Financial Results," filed with the SEC as Exhibit 99.1 to Nutanix's Form 8-K on February 28, 2019.

- Exhibit No. 21: Nutanix's press release dated August 30, 2018 and titled "Nutanix Reports Fourth Quarter Fiscal 2018 Financial Results," filed with the SEC as Exhibit 99.1 to Nutanix's Form 8-K on August 30, 2018.

---

[3] Exhibit 2 is referenced in ¶¶ 53 (TAC) and 52 (RFAC); Exhibit 7 is referenced in ¶¶ 292-304, 335, 363, 386, 399, and 496-497; Exhibit 8 is referenced in ¶¶ 352-363, 386, and 399; Exhibit 9 is referenced in ¶¶ 53, 375-386, 393, 399, 530 (n.48 TAC, n.49 RFAC), and 536(f); Exhibit 11 is referenced in ¶¶ 26, 400-402, 448, and 527; Exhibit 21 is referenced in ¶¶ 364-367 and 374-375; Exhibit 22 is referenced in ¶¶ 132 n.21, 308-311, and 317; and Exhibit 25 is referenced in ¶¶ 97 (n.15 TAC, n.16 RFAC) 323-335, 363, 386, 399, and 497.

- Exhibit No. 22:  Nutanix's press release dated March 1, 2018 and titled "Nutanix Reports Second Quarter Fiscal 2018 Financial Results," filed with the SEC as Exhibit 99.1 to Nutanix's Form 8-K on March 1, 2018.

- Exhibit No. 25:  excerpts of Nutanix's Form 10-Q for the second quarter of fiscal year 2018, filed with the SEC on March 15, 2018.

- Exhibit No. 26:  excerpts of Nutanix's Form 10-Q for the second quarter of fiscal year 2017, filed with the SEC on March 10, 2017.

**B.      Earnings Call Transcripts are Properly Subject to Judicial Notice**

Exhibit Nos. 4-6, 10, 12, and 24 are transcripts of Nutanix's earnings conference calls. Courts in securities actions routinely take judicial notice of such transcripts.  *See, e.g.*, *Facebook*, 477 F. Supp. 3d at 1009 (judicial notice of "transcripts of Defendants' earnings calls and shareholder meetings"); *Nektar*, 2020 WL 3962004, at *7 ("The Court will consider the investor presentation transcripts and investor presentation slide decks that Plaintiffs allege contain false and/or misleading statements for the purpose of determining what was disclosed to the market."); *Veal v. LendingClub Corp.*, 2020 WL 3128909, at *5 (N.D. Cal. June 12, 2020) (judicial notice of earnings call transcripts), *aff'd*, 2021 WL 4281301 (9th Cir. Sept. 21, 2021); *Kipling*, 2020 WL 2793463, at *7 (judicial notice of "transcripts from earnings calls, investor and analyst conferences, and related presentations"); *Eventbrite*, 2020 WL 2042078, at *6-7 (judicial notice of earnings call transcripts); *Golub*, 2019 WL 4168948, at *5-6 (same).  Here, Exhibit Nos. 4-6, 10, 12, and 24 are earnings call transcripts that are referenced in the Complaint.[4]  Accordingly, Defendants request that the Court take judicial notice of the following Nutanix earnings call transcripts:

- Exhibit No. 4:  S&P Global's Transcript of Nutanix's Q1 2018 Earnings Conference Call dated November 30, 2017.

---

[4] Exhibit 4 is referenced in ¶¶ 289-291; Exhibit 5 is referenced in ¶¶ 132 (n.21 TAC, n.22 RFAC), 313-317, and 496; Exhibit 6 is referenced in ¶¶ 342-349, 351, 496-497, and 515; Exhibit 10 is referenced in ¶¶ 89, 368-374, 496, and 515; Exhibit 12 is referenced in ¶¶ 433-438; and Exhibit 24 is referenced in ¶¶ 26-30, 33, 102, 103 & n.18, 123, 184, 192, 230-231, 285, 295, 297, 307, 326, 328, 339, 344, 350, 355, 357, 378, 380, 390, 392, 403-414, 425-427, 431, 434, 448, 452, and 457.

- Exhibit No. 5:  S&P Global's Transcript of Nutanix's Q2 2018 Earnings Conference Call dated March 1, 2018.

- Exhibit No. 6:  S&P Global's Transcript of Nutanix's Q3 2018 Earnings Conference Call dated May 24, 2018.

- Exhibit No. 10:  S&P Global's Transcript of Nutanix's Q4 2018 Earnings Conference Call dated August 30, 2018.

- Exhibit No. 12:  S&P Global's Transcript of Nutanix's Q3 2019 Earnings Conference Call dated May 30, 2019.

- Exhibit No. 24:  S&P Global's Transcript of Nutanix's Q2 2019 Earnings Conference Call dated February 28, 2019.

## III. THE COURT SHOULD CONSIDER THE METRIC SHEET THAT FORMS THE BASIS OF PLAINTIFFS' ALLEGATIONS IN EVALUATING THE PLAUSIBILITY OF THE TAC AND RFAC

The Court should consider Exhibit 3—a Nutanix internal Excel spreadsheet labeled, and hereinafter referred to, as a "Metric Sheet" containing, *inter alia*, Nutanix's internal metrics for (i) quarterly starting pipeline and pipeline created each quarter (ii) bookings per ramped and total sales representatives and (iii) ramped and total sales reps from Q1'17 to Q4'18 (Amadon Decl. ¶ 3; Ex. 3)—in evaluating the plausibility of Plaintiffs' allegations in the TAC and RFAC.  As explained below, this document was cited, attached to, and expressly formed the basis of Lead Plaintiff Norton's scienter allegations in the FAC.  FAC ¶¶ 183 n.31, 314 (citing to the Metric Sheet); *Norton* ECF No. 75.  And, although Plaintiffs' latest operative Complaints do not attach the Metric Sheet, it remains central to their allegations and is incorporated by reference in the *Nutanix* TAC and the *Norton* RFAC.  Either basis provides an independent reason for the Court to consider the Metric Sheet (Exhibit 3) in connection with Defendants' Motion to Dismiss.

### A. The Metric Sheet Was Attached to the *Norton* FAC And Central to Norton's Allegations

On September 1, 2022, Levi & Korsinsky as Lead Counsel in the *Norton* Action filed the FAC.  *Norton* ECF No. 74-4.  Counsel in the *Nutanix* Action—including the same Levi &

Korsinsky team that serves as Lead Counsel in *Norton*[5]—filed the TAC the same day. *Nutanix* ECF No. 281-3. While the *Norton* FAC challenged the same statements and adopted the same theory of fraud as the *Nutanix* TAC, the *Norton* FAC included several additional factual allegations that were purportedly substantiated by six additional exhibits comprising over 4,300 additional pages. *E.g.*, *Norton* ECF Nos. 75-78. Among those additional exhibits was FAC Exhibit 19, a 2,055 page exhibit containing the data in the "Metric Sheet" tab of the Excel spreadsheet produced as NTNX-0046501. Thus, Exhibit 3 attached to the Amadon Declaration and *Norton* FAC Exhibit 19 are precisely the same Metric Sheet document.[6]

The Metric Sheet was a centerpiece of Norton's theory of scienter as pled in the FAC. In the opening section of the FAC, captioned the "**NATURE OF THE ACTION**," Norton pled that "[t]he Individual Defendants had direct access to the multiple sources demonstrating the Company's sales pipeline, attrition, hiring and productivity problems" and that "[s]everal of these reports, ***including 'Metric Sheets'*** . . . were routinely e-mailed to and discussed by the Individual Defendants." FAC at p. 2, ¶ 23 (emphasis added). He claimed that "[b]ased on their review of these sources, the Individual Defendants knew by the beginning of the Class Period that Nutanix's sales pipeline was materially depleted . . . and that the sales pipeline became more depleted throughout the Class Period." *Id.* ¶ 24; *see also id.* (alleging that sources including the "Metric Sheets" established that Defendants "knew that the Company was suffering from rampant salesforce attrition, inadequate salesforce hiring, and sales productivity issues, which compounded Nutanix's sales pipeline problems and the resulting declines in key financial metrics such as revenue and billings.").

Elsewhere in the FAC, Norton expressly relied on the Metric Sheet to support his claim

---

[5] Specifically, the same counsel represent named plaintiff City of Miami in the *Nutanix* Action and filed the TAC on its behalf. TAC at p.149.

[6] Norton's FAC Exhibit 19 constitutes 2,055 pages, which have not been formatted to present Excel sheets, columns or rows logically together, and often contains large blank areas without data. For ease of reading and to reduce the volume of their submission, Defendants have re-formatted the data in Exhibit 3 and limited the data to Q1'17 through Q4'18 as compared to Norton's FAC Exhibit 19, which provides data from Q1'13 through Q3'19. Thus, the differences in how the data is presented in Defendants' Exhibit 3 versus FAC Exhibit 19 is only for ease of reference. At the Court's request, Defendants will provide the Court with a full softcopy version of the as-produced Excel file reflected in Defendants' Exhibit 3 and FAC Exhibit 19.

that "internal Company data showed that several sales productivity metrics were in decline during the Class Period" and that "[n]otwithstanding this internal data, Defendant Williams misleadingly stated on March 1, 2018 that Nutanix 'experienced record sales productivity' in Q2 FY2018." FAC ¶¶ 314, 315; *see also id.* ¶ 183 n.31 (relying on the Metric Sheet to claim that "several sales productivity metrics declined worldwide during the Class Period").[7]  Thus, the *Norton* FAC not only directly relied on the Metric Sheet to support its core theory of scienter, it ***expressly alleged*** that the same data proved that a challenged statement that previously survived dismissal ***was knowingly misleading*** when made.  *See* MTD II at 13-17.

Norton has since filed the RFAC, which is substantively identical to the *Nutanix* TAC and excises many—but, as discussed herein, not all (*see infra* Section III.B)—of the FAC's allegations described above and does not attach any Metric Sheets as exhibits.[8]  As explained in Defendants' Motion to Dismiss, the problem with Norton's attempt to delete the Metric Sheet exhibit and excise certain of the allegations that relied upon it is that the data contained in the Metric Sheet ***directly disproves*** the central allegations of fraud in not only the FAC but also Norton's new RFAC.  Rather than showing a sales pipeline in "massive decline" (*e.g.*, RFAC ¶ 17), the Metric Sheet shows a pipeline undergoing significant growth throughout FY18.  Motion to Dismiss at 10-14.  And rather than showing significant sales attrition, declining sales productivity, and declines in key financial

---

[7] Norton's FAC also cited and attached another Metric Sheet, attached as Exhibit 46 to the FAC and bearing Bates number NTNX-0026265, to support his claim that "according to a 'Metric Sheet' Williams received three days before the Company's [Q3'18] earnings call . . . new customer adds were down 23% quarter-over-quarter, and essentially flat year-over-year."  FAC ¶ 207 (citing NTNX-0026264-265).  FAC Exhibit 46 is an earlier-in-time version of the same Metric Sheet data reflected in Exhibit 3, and extends only through Q3'18.  As Defendants' Exhibit 3 is more complete, including because it provides metrics through the entirety of FY18, Defendants cite that more-complete version of the Metric Sheet in their Motion to Dismiss, although the Court could properly consider either document in full and both directly undercut Plaintiffs' allegations.

[8] In seeking leave to file the RFAC, Lead Counsel for Norton claimed that the differences between the FAC and *Nutanix* TAC were mere "idiosyncrasies" resulting from "last minute changes in the drafting process" that occurred despite Lead Counsel's efforts to "ensure that [the FAC and *Nutanix* TAC] would be substantially identical" by "exchanging multiple drafts and iterations of amended complaints with counsel in the *Nutanix* [A]ction."  *Norton* ECF No. 85 at 2, 3.  There is no reason to credit these claims.  The differences between the *Norton* FAC and RFAC were hardly "idiosyncratic"; they were extensive and implicated 60 paragraphs of allegations and over 4,300 pages of exhibits.  Moreover, the claim that the *Norton* FAC and *Nutanix* TAC differed due to a failure to adequately exchange the drafts with "counsel in *Nutanix*" is nonsensical: Norton's counsel ***is counsel for City of Miami in the* Nutanix *Action***.

metrics (*e.g.*, RFAC ¶ 24), it shows a steadily growing salesforce and consistently strong growth in Nutanix's key financial metrics (including bookings, billings, and revenue).  *Id.*

Even though Norton has removed the Metric Sheet from the exhibits he filed with the RFAC and has deleted many of the allegations based on it, the Court cannot disregard the Metric Sheet data in considering the plausibility of Plaintiffs' Complaints.  Specifically, and as a legion of cases hold, Plaintiffs "cannot avoid" the consequences of previous allegations or exhibits that undermine their current complaint "by simply deleting [them] from [their] amended complaint[.]" *J. Edwards Jewelry Distrib., LLC v. Wells Fargo & Co.*, 2019 WL 2329248, at *4 (N.D. Cal. May 31, 2019).  Thus, "the Court may consider allegations in a prior complaint as part of its 'context-specific' inquiry into whether a later complaint plausibly suggests an entitlement to relief." *Costanzo v. DXC Tech. Co.*, 2021 WL 5908385, at *4 n.1 (N.D. Cal. Dec. 14, 2021) (taking notice of "previously pled . . . allegation regarding [defendant's] internal budget being 'merely aspirational'" that was deleted in subsequent amended complaint to find new allegations that the budget was "serious" or "concrete" implausible); *see also Molica v. Synchrony Bank*, 2021 WL 9315272, at *3 (N.D. Cal. Sept. 14, 2021) (motion to dismiss granted; considering allegations included in an earlier complaint as part of the "context-specific inquiry . . . to assess whether an amended complaint plausibly suggests an entitlement to relief") (citation omitted); *McKenna v. WhisperText*, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015) (similar).[9]

Thus, the Court can and should consider the data incorporated in the Metric Sheet (Exhibit 3) in evaluating the plausibility of the RFAC and the substantively identical TAC.

**B.      The Metric Sheet Is Incorporated By Reference in the TAC and RFAC**

Although neither the TAC nor the RFAC attach or expressly cite Exhibit 3, the Metric

---

[9] *See also, e.g.*, *Kennedy v. Wells Fargo Bank, N.A.*, 2011 WL 3359785, at *4-5 (N.D. Cal. Aug. 2, 2011) (dismissing claims in light of contradictory allegations between an original and amended complaint; requiring plaintiff to attach a purported exhibit evidencing his allegations to any further amended complaint); *Fasugbe v. Willms*, 2011 WL 2119128, at *5 (E.D. Cal. May 26, 2011) (considering conflicting versions of screenshots in a complaint and a later amended complaint in holding that plaintiffs' allegations were implausible; "plaintiffs may alter their allegations in an amended complaint, but the court may properly consider the plausibility of the [amended complaint] in light of the prior allegations"); *Cole v. Sunnyvale*, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010) (considering a letter attached as an exhibit to an earlier complaint in dismissing claims alleged in a later amended complaint that did not attach the exhibit).

Sheet nevertheless still forms the basis of Plaintiffs' Complaints and is, therefore, incorporated by reference therein. *See, e.g.*, TAC ¶¶ 23-24; RFAC ¶¶ 23-24. The very purpose of the incorporation by reference doctrine is to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (citation omitted). Thus, as explained previously (*supra* Section I), the incorporation by reference doctrine also extends to documents that form the basis plaintiff's allegations, even if not explicitly attached to the complaint. *E.g.*, *NVIDIA*, 768 F.3d at 1058 n.10 (entirety of document properly considered under doctrine of incorporation by reference where plaintiffs "rely[] on portions of [the document] in their complaint"); *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *2 (N.D. Cal. Mar. 23, 2020) ("If a plaintiff fails to attach to the complaint the documents on which it is based, defendant may attach to a Rule 12(b)(6) motion the documents referred to in the complaint to show that they do not support plaintiff's claim."), *aff'd*, 848 F. App'x 2021 (9th Cir. 2021) (citation omitted).

While Plaintiffs in the *Nutanix* Action did not attach the Metric Sheet to the TAC, and Plaintiff in the *Norton* Action excised it from the RFAC, there can be no reasonable dispute that the TAC and RFAC refer to the Metric Sheet and that the document continues to form the basis of Plaintiffs' core scienter allegations in both actions. Specifically, both the TAC and RFAC include sections entitled "**NATURE OF THE ACTION**" that are identical to the "**NATURE OF THE ACTION**" section in the *Norton* FAC discussed above: both expressly rely on Nutanix's internal "Metric Sheets" and claim that such sheets were "routinely e-mailed to and discussed by the Individual Defendants[.]" TAC ¶ 23; RFAC ¶ 23. Likewise, both the TAC and RFAC claim that "[b]ased on their review of [*inter alia*, the Metric Sheets], the Individual Defendants knew by the beginning of the Class Period that Nutanix's sales pipeline was materiality depleted" and "sales pipeline became more depleted throughout the Class Period." TAC ¶ 24; RFAC ¶ 24. And both allege that the Metric Sheet also directly contributed to the Individual Defendants purported "[knowledge] that the Company was suffering from rampant salesforce attrition, inadequate salesforce hiring, and sales productivity issues, which compounded Nutanix's sales pipeline problems and the resulting declines in key financial metrics such as revenue and billings." *Id*.

Thus, although the TAC and RFAC may carefully avoid express reliance on the Metric Sheet, there can be no reasonable dispute that it remains at the heart of Plaintiffs' theory of scienter and is, therefore, properly considered incorporated by reference into the TAC and RFAC. *E.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (photo and website properly subject to incorporation by reference where plaintiff alleged they were defamatory but did not expressly cite them). This is precisely the purpose of the doctrine of incorporation by reference: to prevent plaintiffs from engaging in artful pleading by omitting the documents that they rely upon, but are fatal to their claims, from their complaints. *E.g.*, *Khoja*, 899 F.3d at 1002.

The *Nutanix* Plaintiffs may respond by attempting to claim that the Court should not consider the Metric Sheet in evaluating the plausibility of the allegations in the TAC by arguing that, unlike the *Norton* FAC, none of the complaints filed in the *Nutanix* Action attached the Metric Sheet or included any allegations expressly based on that specific document.[10] The *Nutanix* Plaintiffs may, therefore, suggest that the "Metric Sheets" the TAC expressly relies upon could refer to some documents other than Exhibit 3—documents that are not identified in the TAC or attached as exhibits.

If the *Nutanix* Plaintiffs pursue that avenue of argument, it should not be credited. As discussed previously, counsel for City of Miami in *Nutanix* is Lead Counsel for the *Norton* Action and expressly relied on the Metric Sheet in the *Norton* FAC. Thus, there is no plausible reason to suggest that the "Metric Sheets" relied upon in the TAC and filed jointly on behalf of City of Miami and California Ironworkers refer to something different than the Metric Sheets that City of Miami's own counsel expressly relied upon in the *Norton* FAC. Moreover, even assuming *arguendo* that there could be some glimmer of a doubt as to what "Metric Sheets" the *Nutanix* TAC relied upon, Lead Counsel's pre-filing communications with Defendants resolves it definitively. Specifically, in late August 2022, Lead Counsel in the *Nutanix* Action reached out to Defendants concerning the potential down-designation of documents designated by Defendants as "confidential" under the parties' Protective Order (*Nutanix* ECF No. 151), as supplemented

---

[10] This potential avenue of argument is not even minimally colorable for Norton as he specifically relied on the Metric Sheet in Exhibit 19 in his FAC. *Supra* Section III.A.

(*Nutanix* ECF No. 246), entered in the *Nutanix* Action.  In that correspondence, Lead Counsel identified the document Bates numbered NTNX-0046501 (*i.e.*, the Metric Sheet in Exhibit 3)—among other documents[11]—as a document that the *Nutanix* Plaintiffs "intended to reference in their third amended complaint due on 9/1" and represented that the Metric Sheet would "likely be [an] exhibit [to the TAC in its] entirety."  Amadon Decl. ¶¶ 27-28, Ex. A (email correspondence with Lead Counsel for California Ironworkers, carbon copying City of Miami and Norton's counsel); Ex. B (list of documents attached to email correspondence).  This exchange expressly confirms that the unidentified "Metric Sheets" in the TAC refer to the Metric Sheet in Exhibit 3 and renders any contrary argument facially implausible.

Therefore, Defendants request the court consider the Metric Sheet (Exhibit 3), which is incorporated by reference in the TAC and RFAC.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court consider under the doctrine of incorporation by reference, or take judicial notice of, the above-referenced documents in connection with their Omnibus Motion to Dismiss the Complaints.

Dated:  November 14, 2022

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Nina F. Locker*
Nina F. Locker

*Attorneys for Defendants Nutanix, Inc.,*
*Dheeraj Pandey and Duston M. Williams*

---

[11] Exhibit 3 is one of only two Metric Sheets that Lead Counsel in the *Nutanix* Action listed for potential down-designation in their pre-filing email correspondence.  The other is the earlier-in-time Metric Sheet that was attached as Exhibit 46 to the *Norton* FAC.  *Supra* n.7; Amadon Decl. ¶ 29.  That Metric Sheet, too, has been omitted from the *Nutanix* TAC.