ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
KENNETH J. BLACK (291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
kennyb@rgrdlaw.com
        – and –
JAMES E. BARZ
FRANK A. RICHTER
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re NUTANIX, INC. SECURITIES LITIGATION | ) ) ) |
| | ) |
| JOHN P. NORTON, ON BEHALF OF THE NORTON FAMILY LIVING TRUST UAD 11/15/2002, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>    vs.<br><br>NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS,<br><br>                              Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 3:19-cv-01651-WHO
Case No. 3:21-cv-04080-WHO

CLASS ACTION

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

DATE:      May 17, 2023
TIME:      2:00 p.m. (via videoconference)
JUDGE:    Honorable William H. Orrick

4891-7245-8327.v2

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ........................................................................................1

II.     OVERVIEW OF THE ACTIONS ..................................................................................2

        A.      Factual Background ............................................................................................2

        B.      Procedural History ..............................................................................................3

III.    THE PROPOSED SETTLEMENT..................................................................................4

IV.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............................6

        A.      Plaintiffs and Lead Counsel Have Adequately Represented the Class...................8

        B.      The Proposed Settlement Is the Result of Good Faith, Arm's-Length
                Negotiations by Informed, Experienced Counsel Who Were Aware of the
                Risks of the Litigation.......................................................................................9

        C.      The Settlement Provides Adequate Relief for the Class.......................................10

                1.      The Costs, Risks, and Delay of Trial and Appeal Support Approval
                        of the Settlement .....................................................................................11

                2.      The Proposed Method for Distributing Relief Is Effective.......................14

                3.      Proposed Attorneys' Fees ........................................................................14

                4.      The Parties Have a Supplemental Agreement Regarding Opt-Outs..........15

        D.      The Proposed Plan of Allocation Treats Class Members Equitably and
                Does Not Confer Preferential Treatment ...............................................................16

        E.      The Remaining Ninth Circuit Factors Support Preliminary Approval of the
                Settlement ...........................................................................................................17

                1.      Risks of Maintaining Class Action Status Through Trial.........................17

                2.      Experience and Views of Counsel ...........................................................17

V.      CERTIFICATION OF THE CLASS FOR PURPOSES OF THE SETTLEMENT
        IS APPROPRIATE ......................................................................................................18

        A.      The Requirements of Rule 23(a) Are Met ..........................................................19

                1.      Numerosity Is Satisfied...........................................................................19

                2.      Commonality Is Satisfied........................................................................19

                3.      Typicality Is Satisfied .............................................................................20

                4.      The Class Representatives and Lead Counsel are Adequate .....................21

**Page**

B.      The Requirements of Rule 23(b)(3) Are Also Met ................................................22

VI.     THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AS WELL AS DUE PROCESS REQUIREMENTS ..........................................................23

VII.    THE PROPOSED CLAIMS ADMINISTRATOR IS EXPERIENCED AND QUALIFIED, JUSTIFYING APPROVAL ......................................................................25

VIII.   THE SETTLEMENT FOLLOWS THE GUIDELINES OF THE NORTHERN DISTRICT OF CALIFORNIA ..................................................................................25

IX.     CONCLUSION..................................................................................................25

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...............................................................................11

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).....................................................................................19, 22

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013).............................................................................................22

*Ang v. Bimbo Bakeries USA, Inc.*,
2020 WL 2041934 (N.D. Cal. Apr. 28, 2020) ........................................................7

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) .........................................................................21

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ...............................................................................20

*Ciuffitelli v. Deloitte & Touche LLP*,
2019 WL 1441634 (D. Or. Mar. 19, 2019)...........................................................16

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).............................................................................................23

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011).............................................................................................22

*Fleming v. Impax Laby's Inc.*,
2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) .............................12, 18, 22, 23

*Fleming v. Impax Laby's, Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022)...............................................5, 15

*Ford v. CEC Ent., Inc.*,
2015 WL 11439032 (S.D. Cal. July 7, 2015) .......................................................23

*Gribble v. Cool Transps. Inc.*,
2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ......................................................18

*Hampton v. Aqua Metals, Inc.*,
2021 WL 4553578 (N.D. Cal. Oct. 5, 2021)................................................11, 16, 18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................... *passim*

PLTFS' NTC OF UNOPPOSED MTN AND MTN FOR PRELIM APPROVAL OF PROPOSED
SETTLEMENT AND MEM. OF PTS AND AUTH IN SUPPORT THEREOF - 3:19-cv-01651-WHO
4891-7245-8327.v2

- iii -

**Page**

*Hatamian v. Advanced Micro Devices, Inc.*,
2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)......................................................................19, 20, 22

*Hayes v. MagnaChip Semiconductor Corp.*,
2016 WL 7406418 (N.D. Cal. Dec. 22, 2016)....................................................................................19

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .....................................................................................8

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
*aff'd sub nom.*, *Hefler v. Pekoc*,
802 F. App'x 285 (9th Cir. 2020) ......................................................................10, 11, 15, 17

*In re BofI Holding, Inc. Sec. Litig.*,
2022 WL 2068424 (S.D. Cal. June 8, 2022).............................................................................6, 11, 13

*In re Charles Schwab Corp. Sec. Litig.*,
2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ...................................................................................12

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009).......................................................................................................22

*In re Haier Freezer Consumer Litig.*,
2013 WL 2237890 (N.D. Cal. May 21, 2013) .....................................................................................7

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ......................................................................................................6, 23

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)..............................................................................................17

*In re Juniper Networks, Inc. Sec. Litig.*,
264 F.R.D. 584 (N.D. Cal. 2009).......................................................................................................21

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015).......................................................................................................23

*In re Lyft, Inc. Sec. Litig.*,
2022 WL 17740302 (N.D. Cal. Dec. 16, 2022).............................................................................5, 15

*In re MGM Mirage Sec. Litig.*,
708 F. App'x 894 (9th Cir. 2017) ......................................................................................................10

PLTFS' NTC OF UNOPPOSED MTN AND MTN FOR PRELIM APPROVAL OF PROPOSED
SETTLEMENT AND MEM. OF PTS AND AUTH IN SUPPORT THEREOF - 3:19-cv-01651-WHO
4891-7245-8327.v2

- iv -

**Page**

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*,
2017 WL 6040065 (N.D. Cal. Dec. 6, 2017),
*aff'd*, 768 Fed. App'x 651 (9th Cir. 2019)...............................................................................15

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................................18

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ...............................................................................16

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ...............................................................................12

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 1991529 (N.D. Cal. June 30, 2007)...............................................................................9

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...............................................................................7

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) ...............................................................................13

*In re VeriSign, Inc. Sec. Litig.*,
2005 WL 7877645 (N.D. Cal. Jan. 13, 2005),
*amending order* 2005 WL 226154 (N.D. Cal. Jan. 31 2005) ...............................................................................19

*In re Wireless Facilities, Inc. Sec. Litig.*,
253 F.R.D. 630 (S.D. Cal. 2008) ...............................................................................23

*In re Zynga Inc. Sec. Litig*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)...............................................................................13, 16

*Kendall v. Odonate Therapeutics, Inc.*,
2022 WL 188364 (S.D. Cal. Jan. 18, 2022)...............................................................................17

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ...............................................................................8, 23

*Linney v. Cellular Alaska P'ship*,
1997 WL 450064 (N.D. Cal. July 18, 1997),
*aff'd*, 151 F.3d 1234 (9th Cir. 1998)...............................................................................9

*Luna v. Marvell Tech. Grp.*,
2018 WL 1900150 (N.D. Cal. Apr. 20, 2018)...............................................................................13

**Page**

*Malriat v. QuantumScape Corp.*,
　2022 WL 17974629 (N.D. Cal. Dec. 19, 2022).....................................................................21

*Mauss v. NuVasive, Inc.*,
　2018 WL 6421623 (S.D. Cal. Dec. 6, 2018).....................................................................11, 16

*McKnight v. Uber Techs., Inc.*,
　2017 WL 3427985 (N.D. Cal. Aug. 7, 2017) ...........................................................................6

*Mendoza v. Hyundai Motor Co.*,
　2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ....................................................................17, 18

*Mild v. PPG Indus., Inc.*,
　2019 WL 3345714 (C.D. Cal. July 25, 2019)...........................................................................9

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
　339 U.S. 306 (1950)................................................................................................................24

*Nelson v. Bennett*,
　662 F. Supp. 1324 (E.D. Cal. 1987)..........................................................................................6

*Norton v. LVNV Funding, LLC*,
　2021 WL 3129568 (N.D. Cal. July 13, 2021)................................................................ *passim*

*Parsons v. Ryan*,
　754 F.3d 657 (9th Cir. 2014) ............................................................................................19, 20

*Rodriguez v. W. Publ'g Corp.*,
　563 F.3d 948 (9th Cir. 2009) ...........................................................................................6, 9, 23

*Salazar v. Midwest Servicing Grp., Inc.*,
　2018 WL 3031503 (C.D. Cal. June 4, 2018) .........................................................................12

*Schulein v. Petroleum Dev. Corp.*,
　2015 WL 12698312 (C.D. Cal. Mar. 16, 2015).....................................................................15

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
　335 F.R.D. 276 (N.D. Cal. 2020)......................................................................................19, 21

*Spann v. J.C. Penney Corp.*,
　314 F.R.D. 312 (C.D. Cal. 2016) .............................................................................................6

*Terry v. Hoovestol, Inc.*,
　2018 WL 4283420 (N.D. Cal. Sept. 7, 2018) ..........................................................................7

**Page**

*Vataj v. Johnson*,
    2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .................................................................8, 18

*Vinh Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................................................16

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .............................................................................................15

*Wong v. Arlo Techs., Inc.*,
    2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ..............................................................7, 10, 11

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b)....................................................................................................................................2
    §78t(a) ....................................................................................................................................2
    §78u-4(a)(4) ...............................................................................................................2, 4, 5, 24

Federal Rules of Civil Procedure
    Rule 23 .........................................................................................................................7, 11, 23
    Rule 23(a)..........................................................................................................................19, 23
    Rule 23(a)(1)..............................................................................................................................19
    Rule 23(a)(2)..............................................................................................................................19
    Rule 23(a)(3)..............................................................................................................................20
    Rule 23(a)(4)..............................................................................................................................21
    Rule 23(b) .................................................................................................................................19
    Rule 23(b)(3)..........................................................................................................................22, 23
    Rule 23(c)(2)(B)...........................................................................................................................23
    Rule 23(e)........................................................................................................................... 7-8, 11
    Rule 23(e)(1)...............................................................................................................................7
    Rule 23(e)(1)(B)................................................................................................................7, 9, 18
    Rule 23(e)(2) ....................................................................................................................7, 8, 17, 18
    Rule 23(e)(2)(A) ..........................................................................................................................8
    Rule 23(e)(2)(B)...........................................................................................................................9
    Rule 23(e)(2)(C)..........................................................................................................................10
    Rule 23(e)(2)(C)(i)......................................................................................................................11
    Rule 23(e)(2)(C)(ii).....................................................................................................................14
    Rule 23(e)(2)(C)(iii)....................................................................................................................14
    Rule 23(e)(2)(D) ........................................................................................................................16
    Rule 23(e)(3)...............................................................................................................................7
    Rule 23(h)(1)..............................................................................................................................24

**Page**

17 C.F.R.
   §240.10b-5 ..............................................................................................................................2, 3

**SECONDARY AUTHORITIES**

Janeen McIntosh, Svetlana Starykh, and Edward Flores,
   *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*
   (NERA Economic Consulting Jan. 24, 2023)..........................................................................11

## NOTICE OF MOTION AND MOTION

### TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 17, 2023, at 2:00 p.m., or as soon thereafter as counsel may be heard, lead plaintiff California Ironworkers Field Pension Trust ("California Ironworkers") and named plaintiff City of Miami Fire Fighters' and Police Officers' Retirement Trust ("City of Miami") in the action captioned *In re Nutanix, Inc. Sec. Litig.*, No. 3:19-cv-01651-WHO (N.D. Cal.) ("*Nutanix* Action") and lead plaintiff John P. Norton, on behalf of the Norton Family Living Trust UAD November 15, 2002 ("Norton," and collectively with California Ironworkers and City of Miami, "Plaintiffs"), in the action captioned *John P. Norton, on behalf of the Norton Fam. Living Tr. UAD 11/15/2002 v. Nutanix, Inc., et al.*, No. 3:21-cv-04080-WHO (N.D. Cal.) ("*Norton* Action," and with the *Nutanix* Action, the "Actions"), will and hereby do move for an Order pursuant to Federal Rule of Civil Procedure ("Rule") 23: (1) certifying the proposed class ("Class") for purposes of effectuating the proposed settlement ("Settlement") of the above-captioned Actions; (2) granting preliminary approval of the Settlement on the terms set forth in the Stipulation of Settlement, dated April 7, 2023 ("Stipulation")[1]; (3) authorizing the retention of Gilardi & Co. LLC ("Gilardi") as the administrator for the Settlement ("Claims Administrator"); (4) approving the form and manner of notice of the Settlement to the Class; (5) setting a hearing date to determine whether the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and litigation expenses, including awards to California Ironworkers, City of Miami, and Norton pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(4), should be approved, as well as setting the schedule for various deadlines in connection with the Settlement; and (6) providing such other and further relief as this Court deems just and proper.[2]

---

[1]    All capitalized terms not defined herein shall have the same meanings as set forth in the Stipulation, a true and correct copy of which is attached as Exhibit 1 to the Declaration of Stephen R. Astley in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Settlement (the "Astley Decl."), submitted herewith. Emphasis is added and citations are omitted throughout unless otherwise noted.

[2]    These multiple motions are addressed in one 25-page brief for efficiency and ease of presentation.

This motion is unopposed and is based on the Memorandum of Points and Authorities below and Appendix A thereto, the Astley Declaration and exhibits attached thereto, the Declaration of Peter Crudo Regarding Notice and Administration, submitted herewith as Exhibit 2 to the Astley Declaration (the "Crudo Decl."), the Stipulation and attached exhibits, all prior pleadings in the Actions, and such additional evidence or argument as may be requested by the Court.

A [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") with annexed exhibits is also submitted herewith as Exhibit 3 to the Astley Declaration.

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the Court will likely be able to certify the Class for purposes of effectuating the Settlement.

2.    Whether the proposed $71,000,000.00 recovery and the other terms of the proposed Settlement of these Actions are within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to Class Members.

3.    Whether the Court should approve the form and substance of the proposed Notice of Pendency and Proposed Settlement of Class Action ("Settlement Notice"), the Proof of Claim and Release Form ("Proof of Claim" or "Claim Form"), the Summary Notice, and the Postcard Notice, appended as Exhibits A-1 through A-4 to the Preliminary Approval Order, as well as the manner of notifying the Class of the proposed Settlement.

4.    Whether the Court should schedule a hearing in connection with the proposed Settlement, the proposed Plan of Allocation, and the application of Lead Counsel for an award of attorneys' fees and expenses and awards to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) ("Settlement Hearing").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     PRELIMINARY STATEMENT

After nearly four years of litigation and following extensive arm's-length negotiations, the Settling Parties have reached a proposed Settlement of these securities class actions in exchange for $71,000,000.00 for the Class's benefit.  Plaintiffs now request the Court preliminarily approve the proposed Settlement.  As set forth below, the Settlement is the product of good-faith, arm's-length negotiations between experienced counsel, under the supervision of the Honorable Layn R. Phillips (Ret.), a highly respected mediator with extensive experience in complex securities litigation.  The Settlement represents a recovery that falls well within the range of possible approval and is an excellent result for the Class.

Plaintiffs reached the Settlement only after they had a thorough appreciation for the strengths and weaknesses of the Actions.  Plaintiffs (i) engaged in an extensive investigation; (ii) filed detailed amended complaints; (iii) successfully opposed Defendants' motions to dismiss; (iv) reviewed tens of thousands of pages of documents produced by Defendants; (v) incorporated evidence from Defendants' production in the Third Amended Complaint for Violations of the Federal Securities Laws in the *Nutanix* Action ("*Nutanix* TAC") and the Revised First Amended Complaint for Violations of the Federal Securities Laws in the *Norton* Action ("*Norton* RFAC," and with the *Nutanix* TAC, the "Complaints"); (vi) filed an omnibus opposition to Defendants' motion to dismiss; (vii) prepared detailed mediation statements; and (viii) participated in a mediation session on April 26, 2022, with Judge Phillips, and continued to conduct months of settlement discussions with Judge Phillips' assistance which resulted in a "mediator's proposal," accepted by the parties.  Against this background and considering the risks and delays entailed with further litigation, the Settlement provides a certain, immediate, and significant recovery to the Class.  Moreover, it represents a significant percentage of Plaintiffs' estimated aggregate damages, and therefore falls well within the range of possible approval.

Plaintiffs also request certification of the Class for settlement purposes, and appointment of California Ironworkers, City of Miami, and Norton as class representatives and Lead Counsel as class counsel.

Additionally, Plaintiffs seek approval of the form and substance of the Settlement Notice, the Claim Form, the Summary Notice, and the Postcard Notice, appended as Exhibits A-1 through A-4 to the Preliminary Approval Order.  Plaintiffs also seek the Court's approval of Gilardi as Claims Administrator and the means and methods for disseminating notice of the Settlement, and a finding that such notice comports with due process and the PSLRA, 15 U.S.C. §78u-4, *et seq*.

Accordingly, Plaintiffs respectfully submit that the Settlement meets the standards for preliminary approval because it is in the best interests of the Class and represents a significant recovery.  By granting preliminary approval, Plaintiffs will be able to notify the Class and solicit claims, requests for exclusion, and objections, at which point the Court will be able to consider whether to finally approve the Settlement.

## II.    OVERVIEW OF THE ACTIONS

### A.    Factual Background

Plaintiffs allege that during the period between November 30, 2017 and May 30, 2019, Defendants made materially false or misleading statements and omissions in violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), Rule 10b-5 promulgated thereunder, which caused the price of Nutanix securities and publicly traded options to trade at artificially inflated prices.  Specifically, Plaintiffs allege that Defendants concealed the transition to a new business model, which diverted its customer pipeline spending to the R&D of new software products.  Plaintiffs allege that contrary to Defendants' Class Period statements that Nutanix was making significant investments in sales and marketing while maintaining high profit margins, Defendants had actually decreased Nutanix's lead generation spending, which in turn "drove" higher margins and resulted in weak guidance.  According to Plaintiffs' allegations, Defendants knew that, without pipeline expenditures, Nutanix would see lower growth, fewer customer acquisitions, and declining sales productivity.  Plaintiffs further allege that these problems were compounded by an exodus of Nutanix's sales force.  Plaintiffs allege that Defendants attempted to conceal these negative trends by pulling in future sales based on inducements such as discounts and a novel rebate program, but ultimately, Defendants were unable to pull in sufficient sales to hide the lagging pipeline growth and sales productivity.  Plaintiffs allege that when Defendants were forced to report

disappointing financial results in a series of partial disclosures, the price of Nutanix securities and publicly traded options plummeted, causing massive losses to investors.

Defendants have denied and continue to deny each and all of the claims and contentions alleged by Plaintiffs in these Actions. Defendants further assert that they are entering into this Settlement solely to eliminate the burden, expense, and uncertainty of further protracted litigation.

**B.     Procedural History**[3]

On March 29, 2019, an initial class action complaint was filed in this Court against Defendants on behalf of investors in Nutanix securities. *Nutanix* Action ECF 1. Following consolidation with other actions, an amended complaint was filed, and Defendants moved to dismiss. *Id.*, ECF 102 and 108. On March 9, 2020, the Court granted Defendants' motion with leave to amend the complaint. *Id.*, ECF 121. After a second consolidated amended complaint and subsequent motion to dismiss were filed, the Court denied Defendants' motion on September 11, 2020, and the parties commenced discovery, which included the review and analysis of tens of thousands of pages of documents produced by Defendants. *Id.*, ECF 124, 125, and 140.

On May 28, 2021, Norton filed a class action complaint in this Court against Defendants. The *Norton* Action was brought on behalf of investors who transacted in Nutanix's publicly traded options. *Norton* Action ECF 1. On June 2, 2021, the Court entered an order finding that the *Norton* Action was related to the *Nutanix* Action. *Id.*, ECF 8; *Nutanix* Action ECF 223. Defendants moved to dismiss the *Norton* Complaint on November 1, 2021. *Norton* Action, ECF 41-42.

On April 26, 2022, the parties participated in a mediation assisted by retired Judge Layn R. Phillips. The mediation was unsuccessful, and the litigation resumed, though settlement discussions continued through the facilitation of Judge Phillips.

California Ironworkers and City of Miami filed the *Nutanix* TAC on September 1, 2022, and Norton filed the *Norton* RFAC on October 4, 2022 to add new allegations, including allegations based on documents obtained from Nutanix in discovery, and to re-allege previous allegations from the *Nutanix* second amended complaint. The parties completed briefing on Defendants' omnibus

---

[3]    A detailed discussion of the procedural history of the Actions is set forth in the Stipulation at 1-4. Plaintiffs provide a brief summary here.

motion to dismiss, which was scheduled to be heard on February 15, 2023.  Then, on February 9, 2023, the parties informed the Court that they had reached an agreement in principle to settle the Actions, having accepted Judge Phillips' "mediator's proposal" to settle the claims for $71 million.

### III.    THE PROPOSED SETTLEMENT

The Settlement requires Nutanix to pay, or cause to be paid, $71,000,000.00 (the "Settlement Amount"), which amount, plus all interest and income earned thereon, constitutes the Settlement Fund. Stipulation, ¶2.1.  The Settlement Amount will be deposited into the Escrow Account within twenty (20) calendar days after the Court signs and enters an order approving this motion for preliminary approval of the Settlement (the "Payment Date"); provided, however, that the Payment Date is not fewer than thirty (30) calendar days after Lead Counsel has provided Defendants' Counsel with payment instructions and a contact person to confirm the payment instructions.  *Id.*

Notice to the Class and the cost of settlement administration will be funded by the Settlement Fund. Stipulation, ¶2.7.  Plaintiffs propose Gilardi, a nationally-recognized class action settlement administrator, be retained, subject to the Court's approval.   Gilardi was chosen because its experience makes it best-suited to execute the claims administration in these Actions.  Accordingly, Plaintiffs respectfully request that the Court approve their selection.   In compliance with this District's *Procedural Guidance for Class Action Settlements* (the "Guidelines"), Lead Counsel states that it has retained Gilardi a total of 41 times in the past two years.  *See* Crudo Decl., ¶5.  Based on the estimates provided by Gilardi, including email notice and the preparation and management of the Settlement website, the parties expect notice and claims administration costs to be approximately $993,000 through the initial distribution.  *Id.*, ¶28.  The proposed notice plan, Plan of Allocation, and plan for claims processing is discussed below in §IV.C.2 and in the Crudo Declaration.

The Notice provides that Lead Counsel will move for final approval of the Settlement and: (i) an award of attorneys' fees in the amount of no more than 30% of the Settlement Amount; (ii) payment of expenses or charges resulting from the prosecution of the Actions not in excess of $750,000; and (iii) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.  Further, as explained in the Notice, pursuant to 15 U.S.C. §78u-4(a)(4) and

in connection with their representation of the Class, Plaintiffs request awards in amounts not to exceed $10,000 for California Ironworkers, $10,000 for City of Miami, and $5,000 for Norton.

Once Notice and Administration Expenses, Taxes, Tax Expenses, Court-approved attorneys' fees and expenses, and any award to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class have been paid from the Settlement Fund, the remaining amount (the "Net Settlement Fund"), shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants. Stipulation, ¶5.5. These distributions shall be repeated until the balance remaining in the Settlement Fund is *de minimis*. *Id.*, ¶5.9. Any *de minimis* balance that still remains in the Net Settlement Fund after such reallocation(s) and payment(s) and that is not feasible or economical to reallocate shall be donated to the Investor Protection Trust, a 501(c)(3) non-profit dedicated to investor education and protection (subject to Court approval).[4] *Id.* The Plan of Allocation treats all Class Members equitably based on the timing of their purchases, acquisitions, transactions, and sales of Nutanix securities and/or options.

The Settling Parties have entered into a confidential Supplemental Agreement, which provides that if prior to the Settlement Hearing, the number of damaged shares of Nutanix common stock and options purchased, acquired, or transacted during the Class Period, represented by valid claims by Persons who would otherwise be members of the Class, but who request exclusion from the Class, exceeds a certain amount, Nutanix shall have the option to terminate the Settlement. Stipulation, ¶7.5. The Settling Parties will submit the Supplemental Agreement to the Court for *in camera* review or under seal, upon request. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) ("The existence of a termination option

---

[4] Founded in 1993, the Investor Protection Trust serves as an independent source of non-commercial investor education. *See* www.investorprotection.org/ipt-activities/?fa=about. Pursuant to Guideline §8, the Investor Protection Trust is an appropriate *cy pres* designee here. *See, e.g.*, *Fleming v. Impax Laby's, Inc.*, 2022 WL 2789496, at *2 (N.D. Cal. July 15, 2022) (approving Investor Protection Trust due to sufficient nexus with the Class due to its mission of protecting investors and preventing fraud). Neither the Settling Parties nor their counsel have any relationship with the Investor Protection Trust to disclose.

triggered by the number of class members who opt out of the settlement does not by itself render the settlement unfair.").

Next, in exchange for the benefits provided under the Stipulation, Class Members will release "any and all claims, demands, losses, debts, rights, and causes of action or liabilities of every nature and description . . . that concern, arise out of, relate to, or are based upon both: (i) the purchase or acquisition of publicly traded Nutanix securities, call options, or put options during the Class Period; and (ii) the facts, events, transactions, acts, occurrences, statements, representations or omissions which were or could have been alleged in the Actions or could have been asserted in any court or forum."  Stipulation, ¶¶1.30, 4.2.

## IV.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

As a matter of public policy, settlement is a strongly favored method for resolving disputes, "'particularly where complex class action litigation is concerned.'"  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).  Settlement of complex cases contributes to the efficient utilization of scarce judicial resources and achieves the speedy resolution of justice.  *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 2068424, at *4 (S.D. Cal. June 8, 2022) (evaluating whether to approve a settlement "is made in the context of the 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned'"); *McKnight v. Uber Techs., Inc.*, 2017 WL 3427985, at *2 (N.D. Cal. Aug. 7, 2017) ("The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions.").  With respect to "complex securities actions" like this one, "federal courts [have] long recognized the public policy in favor of . . . settlement." *Nelson v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987) ("'[T]here is an overriding public interest in settling and quieting litigation.  This is particularly true . . .' in these days of burgeoning federal litigation, [where] the promotion of settlement is, as a practical matter, an absolute necessity.").  Moreover, the Ninth Circuit "has long deferred to the private consensual decision of the parties" in such cases.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Approval of class action settlements normally requires "a two-step process – a preliminary approval followed by a later final approval."  *See, e.g.*, *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016).  By this motion, Plaintiffs request that the Court take the first step in the

approval process by granting preliminary approval of the Settlement.  At the preliminary approval stage, the court must "determine whether the settlement falls 'within the range of possible approval.'" *Terry v. Hoovestol, Inc.*, 2018 WL 4283420, at *1 (N.D. Cal. Sept. 7, 2018) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).  Courts grant preliminary approval when the proposed settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies." *Ang v. Bimbo Bakeries USA, Inc.*, 2020 WL 2041934, at *4 (N.D. Cal. Apr. 28, 2020).  If the court "finds the proposed settlement fair to its members," it will then "schedule[] a fairness hearing where it will make a final determination of the class settlement." *In re Haier Freezer Consumer Litig.*, 2013 WL 2237890, at *3 (N.D. Cal. May 21, 2013).

Rule 23(e) requires judicial approval for a settlement of claims brought as a class action. Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(2) provides the following factors:

> (2) *Approval of the Proposal*.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  While these Rule 23(e) factors focus on core concerns of procedure and substance of a settlement, they are not intended to fully displace factors previously adopted by courts to evaluate settlements.  *See, e.g.*, *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021) ("[T]he Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent.").  In this respect, the Ninth Circuit has long considered the following factors when evaluating a class settlement, some of which overlap with Rule 23(e)(2):

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (discussing the *Hanlon* factors).

As discussed below, the proposed Settlement readily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Ninth Circuit *Hanlon* factors and Northern District Guidelines. Therefore, notice of the proposed Settlement should be sent to the Class in advance of the final Settlement Hearing.

### A.    Plaintiffs and Lead Counsel Have Adequately Represented the Class

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23(e)(2) advisory committee's notes to 2018 amendment. The Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2).

Rule 23(e)(2)(A) asks whether the plaintiff and its counsel have adequately represented the class. This factor overlaps with the Ninth Circuit's factor regarding "the extent of discovery completed and the stage of the proceedings." *Hanlon*, 150 F.3d at 1026. As detailed above, Plaintiffs and Lead Counsel satisfy this factor as they have diligently prosecuted these Actions for nearly four years, including, among other things, investigating and drafting the complaints; opposing Defendants' motions to dismiss; obtaining and reviewing significant document discovery; and conducting extended settlement discussions with Judge Phillips. Given Plaintiffs' and Lead Counsel's demonstrated prosecution of the Actions, it is without question that Plaintiffs and Lead Counsel have adequately represented the Class. Further, courts regularly find counsel adequately informed even where formal discovery has not commenced or has only just begun. *See, e.g.*, *Vataj v. Johnson*, 2021 WL 1550478, at *2 (N.D. Cal. Apr. 20, 2021) (granting preliminary approval of settlement reached in PSLRA class action before completion of motion to dismiss briefing); *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *10 (N.D. Cal. Sept. 4, 2018) (granting preliminary

approval even though the parties were "'only at the outset of formal discovery'"). Here, the parties were well into formal discovery.

Similarly, the Ninth Circuit tasks trial courts with resolving two questions to determine "legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Plaintiffs and Lead Counsel have no interests antagonistic to other Class Members; Plaintiffs' claims are typical of the Class's claims; and their interest in obtaining the largest possible recovery for Nutanix investors is aligned with that of the Class. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Finally, the substantial monetary recovery obtained after the nearly four years of litigation speaks for itself and is an excellent result for Plaintiffs and the Class.

**B.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation**

Rule 23(e)(2)(B) asks whether a proposed settlement is procedurally adequate, *i.e.*, whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(1)(B). There is an initial presumption that a proposed settlement is fair and reasonable when it is "the product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). The Ninth Circuit and the district courts within it "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez*, 563 F.3d at 965; *accord Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair.").

Here, the proposed Settlement was achieved only after the Settling Parties participated in a mediation session on April 26, 2022, with Judge Phillips – an experienced mediator with considerable knowledge, experience, and expertise in the field of federal securities law – as well as

various teleconferences and correspondences regarding a potential resolution of the Actions. Lead Counsel and Defendants' Counsel prepared and presented submissions to Judge Phillips concerning their respective views on the merits of the Actions, along with supporting evidence obtained through discovery, and the negotiations were at all times adversarial and performed at arm's length. The negotiations resulted in Judge Phillips' February 6, 2023 "mediator's proposal," which was accepted by the Settling Parties. The protracted negotiations under the supervision of a neutral experienced mediator are evidence that the $71,000,000.00 Settlement was reached at arm's length. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*, *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ("[T]he Settlement was the product of arm's length negotiations through two full-day mediation sessions and multiple follow-up calls supervised by former U.S. District Judge Layn Phillips."); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) (noting district court approved settlement reached "after extensive negotiations before a nationally recognized mediator, retired U.S. District Judge Layn R. Phillips"). The negotiations were at all times adversarial and at arm's length, and produced a result that is in the Class's best interests.

### C.    The Settlement Provides Adequate Relief for the Class

Under Rule 23(e)(2)(C), the Court also must consider whether "the relief provided for the class is adequate, taking into account" four relevant factors that are addressed below.[5] Fed. R. Civ. P. 23(e)(2)(C). While each of these factors supports preliminary approval of the Settlement, as an initial matter, the $71,000,000.00 recovery achieved by the Settlement is an exceptional result for the Class.[6] *See Wong*, 2021 WL 1531171, at *9 ("'The relief that the settlement is expected to provide

---

[5]    In addition to the fourth *Hanlon* factor ("the amount offered in settlement"), which is subsumed within the Rule 23(e)(2)(C) analysis, courts also evaluate the requirements of Guideline §1(c) with regard to "[t]he class recovery under the settlement. . . . , the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims." Guideline §1(c); *see also*, *Norton v. LVNV Funding, LLC*, 2021 WL 3129568, at *13 (N.D. Cal. July 13, 2021) (citing Guideline with alterations).

[6]    Guideline §1(g) requires discussion of "whether . . . money originally designated for class recovery will revert to any defendant." No such reversion is present here. Stipulation, ¶5.9.

PLTFS' NTC OF UNOPPOSED MTN AND MTN FOR PRELIM APPROVAL OF PROPOSED SETTLEMENT AND MEM. OF PTS AND AUTH IN SUPPORT THEREOF - 3:19-cv-01651-WHO     - 10 -
4891-7245-8327.v2

to class members is a central concern,' though it is not enumerated among the factors of Rule 23(e).") (quoting 2018 Advisory Committee Notes to Fed. R. Civ. P. 23).

Here, the Settlement recovers approximately 15% of the estimated aggregate damages as calculated by Plaintiffs' damages expert. This result is many multiples of the median ratio of settlements to investor losses in securities cases in 2022. *See* Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, at 18, Figure 19 (NERA Economic Consulting Jan. 24, 2023) (median ratio of settlement to investor losses was 1.8% in 2022); *Hampton v. Aqua Metals, Inc.*, 2021 WL 4553578, at *9 (N.D. Cal. Oct. 5, 2021) (approving a settlement of 7.32% of the recoverable damages); *BofI Holding*, 2022 WL 2068424, at *6 (approving settlement that was between 8.9% and 10.4% of the estimated damages, and finding the settlement "well above the median percentage of the recovery level for investor losses in securities class action settlements"). As discussed more fully below, the benefits conferred on Class Members by the Settlement far outweigh the costs, risks, and delay of further litigation, and the attorneys' fees and expenses to be requested are reasonable. Accordingly, the relief provided by the Settlement is adequate and supports approval.

### 1. The Costs, Risks, and Delay of Trial and Appeal Support Approval of the Settlement

The factors presented by Rule 23(e)(2)(C)(i) are satisfied because the $71,000,000 recovery provides a significant and immediate benefit to the Class, especially in light of the costs, risks, and delay posed by continued litigation.[7] "'[S]ecurities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'" *Hefler*, 2018 WL 6619983, at *13; *see also Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *6 (S.D. Cal. Dec. 6, 2018) (recognizing that "[s]ecurities class actions are complex actions to litigate" and often involve "complex and highly risky trial and likely post-trial appeals and motion practice"); *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-

---

[7] Rule 23(e)(2)(C)(i) essentially incorporates the first three traditional *Hanlon* factors. *See, e.g.*, *Wong*, 2021 WL 1531171, at *8 (citing *Hanlon*, 150 F.3d at 1026); *Norton*, 2021 WL 3129568, at *5 ("The first three [*Hanlon*] factors are addressed together and require the court to assess the plaintiff's 'likelihood of success on the merits and the range of possible recovery' versus the risks of continued litigation and maintaining class action status through the duration of the trial.").

action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.") (O'Connor, J., sitting by designation).

While Plaintiffs at all times remained confident in their ability to ultimately prove the alleged claims, further litigation – including a trial – is always a risky proposition. *See Fleming v. Impax Laby's Inc.*, 2021 WL 5447008, at *11 (N.D. Cal. Nov. 22, 2021) (finding that the risks of continued litigation, including "prevailing at summary judgment, pretrial motions, trial, and subsequent appeals in a complex case that is likely to be expensive and lengthy to try" "weighs in favor of granting preliminary approval"); *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (a settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval). Further, complex securities fraud class actions such as this one present a myriad of risks that a plaintiff must overcome in order to ultimately secure a recovery. *See, e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011) ("[P]rosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay to any potential recovery . . . risks included proving loss causation and the falsity of the representations at issue."); *e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation). While Plaintiffs would be required to prove all elements of their claims to prevail, Defendants need only succeed on one defense to potentially defeat the Actions entirely.

Defendants have denied any wrongdoing, have already advanced several arguments disputing liability, and would have presented a multi-pronged defense to Plaintiffs' claims at summary judgment, trial, and in subsequent appeals. For instance, Defendants raised numerous challenges to falsity. Defendants repeatedly argued that the alleged misstatements concerning Nutanix's new customers and sales pipeline were nonactionable, accurate statements, and that Nutanix's actual performance reflected significant growth. Defendants asserted that other alleged statements could not be found false because they were either opinion statements or immaterial puffery. Defendants also pointed to the Court's prior dismissal of certain misstatements as indicative of how the Court would rule on the pending motion to dismiss. As for scienter, Defendants argued that internal

reports that the Individual Defendants received regarding the sales pipeline negated any inference of wrongdoing. Likewise, according to Defendants, documents evidencing that Nutanix had missed internal targets for its pipeline were not evidence of fraud, because they were aggressive goals set to achieve the more modest public guidance. *See BofI*, 2022 WL 2068424, at *7 (noting that challenges to falsity, scienter, and loss causation "remained on the table" and "[t]hat the Parties would need to further litigate discovery disputes, and traverse motions for summary judgment, and a trial"); *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018) (noting the risks of proving scienter, loss causation, and damages at trial).

And Defendants have challenged loss causation in their Rule 12(c) motion and were sure to challenge both loss causation and damages, which typically require complex economic and statistical assessments by experts, at summary judgment, in pre-trial motions, and at trial, providing multiple opportunities for Defendants to establish that the price declines of Nutanix's securities and options were caused by factors unrelated to the alleged fraud and no damages had occurred. *See In re Zynga Inc. Sec. Litig*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) ("[I]n 'any securities litigation case, it [is] difficult for [plaintiff] to prove loss causation and damages at trial.'") (second and third alterations in original). Indeed, the parties had very different views on damages. While Plaintiffs' expert estimated recoverable damages at approximately $477 million, consistent with the proposed Plan of Allocation, Defendants took the position that damages were significantly lower, if not zero.

In sum, Defendants had "plausible defenses that could have ultimately left class members with a reduced or non-existent recovery," which weighs in favor of approving the Settlement. *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015). Barring the Settlement, this case would require the expenditure of substantial additional sums of time and money to litigate discovery disputes, summary judgment, expert discovery, trial, and appeals, with no guarantee that any additional benefit would be provided to the Class. Such a process would have been lengthy, complex, and extremely costly. Conversely, the Settlement confers a substantial and immediate benefit on the Class, and avoids the risks associated with obtaining a wholly speculative (though potentially larger) sum in the future. *BofI*, 2022 WL 2068424, at *7 ("although the settlement amount is only a portion of Defendant's maximum potential exposure according to

Plaintiff's calculations, the relief appropriately accounts for the not insubstantial risk that Plaintiff and the class would recover nothing on some or all claims").

Given the risks of continued litigation and the time and expense that would be incurred to prosecute the Actions through trial and beyond, the $71,000,000.00 Settlement is a meaningful recovery that is in the Class's best interests.

### 2. The Proposed Method for Distributing Relief Is Effective

The method for distributing relief to eligible claimants and for processing Class Members' claims includes standard, well-established, and effective procedures for processing claims and efficiently distributing the Net Settlement Fund, and is therefore an effective method of distribution to the Class under Rule 23(e)(2)(C)(ii).  The notice plan includes email and/or direct mail notice to all those who can be identified with reasonable effort, supplemented by publication of the Summary Notice in *The Wall Street Journal* and once over a national newswire service.  The Notice and Proof of Claim also will be posted on the case website (www.NutanixSecuritiesSettlement.com) established in connection with the Settlement.

The claims process also includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  The Plan of Allocation, discussed below, will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.  It is based on the amount of artificial inflation in the price of Nutanix securities and options during the Class Period.  A thorough claim review process, including how deficiencies are addressed, is also explained in the Crudo Declaration.  *Id.*, ¶¶24-26.

### 3. Proposed Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).[8]  Lead Counsel intend to seek an award of attorneys' fees of no more than 30% of the Settlement Amount and expenses in an amount

---

[8]   Guideline §6 requires discussion of "information about the fees" counsel intends to request, "their lodestar calculation," and "the relationship between the amount of the common fund, the requested fee, and the lodestar."

not to exceed $750,000, plus interest on both amounts.  Lead Counsel will provide more detailed information in their forthcoming application for attorneys' fees and expenses that will be filed with the Court prior to the final Settlement Hearing.

A proposed attorneys' fee of up to 30% of the Settlement Fund is reasonable in light of the result achieved, the risks at the outset of the Actions, and the work required to reach the Settlement.  *See, e.g.*, *Impax*, 2022 WL 2789496, at *11 (awarding 30% fee on $33 million recovery); *Schulein v. Petroleum Dev. Corp.*, 2015 WL 12698312, at *6 (C.D. Cal. Mar. 16, 2015) (awarding 30% fee on $37.5 million recovery).  The proposed attorney fee award here is also supported by Lead Counsel's lodestar of approximately $9.8 million in time expended over the past four years of litigation.  A fee award of 30% of the Settlement Fund would result in a multiplier of approximately 2.17.  This multiplier is reasonable and within the range of lodestar multipliers courts in this Circuit regularly approve.[9]  If preliminary approval is granted, Lead Counsel will present their total lodestar with their fee application prior to the final Settlement Hearing.

Approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  Stipulation, ¶6.3.

### 4.    The Parties Have a Supplemental Agreement Regarding Opt-Outs

The Settling Parties have entered into a standard supplemental agreement which provides that if Class Members opt out of the Settlement such that the number of damaged shares of Nutanix common stock or options represented by such opt-outs equals or exceeds a certain amount, Nutanix shall have the option to terminate the Settlement.  Stipulation, ¶7.5.  Such agreements are common and do not undermine the propriety of the Settlement.  *See, e.g.*, *Lyft*, 2022 WL 17740302, at *6 ("The existence of a termination option triggered by the number of class members who opt out of the

---

[9]    *See, e.g.*, *Impax*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (awarding fee representing 2.6 multiplier); *Hefler*, 2018 WL 6619983, at *14 (awarding fee representing a 3.22 multiplier); *In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *7-*9 (N.D. Cal. Dec. 6, 2017) (awarding fee representing a 3.66 multiplier), *aff'd*, 768 Fed. App'x 651 (9th Cir. 2019); *see generally Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 & 1051 n.6 (9th Cir. 2002) (affirming 3.65 multiplier on appeal and finding that multipliers ranged as high as 19.6, with the most common range from 1.0 to 4.0).

settlement does not by itself render the settlement unfair."); *Hampton*, 2021 WL 4553578, at *10 (same). While the Supplemental Agreement is identified in the Stipulation (Stipulation, ¶7.5), and the nature of the agreement is explained in the Stipulation and here, the terms are properly kept confidential.[10]

### D. The Proposed Plan of Allocation Treats Class Members Equitably and Does Not Confer Preferential Treatment

Rule 23(e)(2)(D) asks whether the proposal (here, the Plan of Allocation) treats class members equitably relative to each other.[11] Drafted with the assistance of Plaintiffs' damages expert, the Plan of Allocation is fair, reasonable, and adequate; it does not "'improperly grant'" Plaintiffs or any other Class Member "'preferential treatment.'" *Zynga*, 2015 WL 6471171, at *10; *see also Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'"). Specifically, the Plan of Allocation provides formulas for calculating the recognized claim of each Class Member, based on each such Person's purchases or acquisitions of Nutanix securities or transactions in publicly traded options of Nutanix on the open market during the Class Period and if or when they sold. "'A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.'" *NuVasive*, 2018 WL 6421623, at *4.

Each Authorized Claimant, including Plaintiffs, will receive a *pro rata* distribution pursuant to the Plan of Allocation. The amount of the payment will depend on, among other factors, how many Class Members file valid claims, and the aggregate value of the Recognized Claims represented by valid and acceptable Claim Forms. No special formula for distribution will apply to

---

[10] *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding that settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for practical reasons, was kept confidential").

[11] Guideline §1(e) states that the "motion for preliminary approval" should discuss the "proposed allocation plan for the settlement fund."

Plaintiffs. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) ("The Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class. . . .  [T]he proposed Plan of Allocation compensates all Class Members and [Plaintiffs] equally in that they will receive a *pro rata* distribution based of [sic] the Settlement Fund based on their net losses.").  Accordingly, the Plan is fair, reasonable, and applies in an equitable manner to all Class Members.

### E.    The Remaining Ninth Circuit Factors Support Preliminary Approval of the Settlement

Each of the relevant *Hanlon* factors that are not co-extensive with the Rule 23(e)(2) analysis above (*i.e.*, the third and sixth *Hanlon* factors) also support preliminary approval.[12]

#### 1.    Risks of Maintaining Class Action Status Through Trial

The issue of class certification had yet to be briefed when the Settlement was reached, but Plaintiffs believe that Defendants would have opposed Plaintiffs' motion to certify the Class.  If Plaintiffs were able to successfully obtain Class certification, Defendants could have moved to decertify the Class or shorten the proposed Class Period.  *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (finding risk that defendants would attempt to shorten the class period based on evidence produced during discovery supported settlement).  Accordingly, this factor supports preliminary approval.

#### 2.    Experience and Views of Counsel

The opinion of experienced counsel supporting a class settlement after arm's-length negotiations is entitled to considerable weight.  *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 188364, at 6 (S.D. Cal. Jan. 18, 2022) ("the Ninth Circuit favors deference to the 'private consensual decision [of] [settling] parties,' particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party") (second alteration in original); *see also Hefler*, 2018 WL 6619983, at *9 ("That counsel advocate in favor of this Settlement weighs in favor

---

[12]   "Because there is no governmental entity involved in this litigation," the seventh *Hanlon* factor ("presence of a governmental participant") is inapplicable.  *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).  Regarding the eighth *Hanlon* factor ("the reaction of the class members to the proposed settlement"), the Class's reaction is not yet available for consideration because notice of the Settlement has not yet been provided to the Class.

of its approval."). Indeed, in a case like this one that has been diligently litigated, including through multiple motions to dismiss, "'[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'" *Gribble v. Cool Transps. Inc.*, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country. *See* www.rgrdlaw.com and www.zlk.com. Here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

In sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied. The Settlement is fair, adequate, and reasonable, and meets each of the applicable factors such that notice of the Settlement should be sent to the Class.

## V.    CERTIFICATION OF THE CLASS FOR PURPOSES OF THE SETTLEMENT IS APPROPRIATE

Under the terms of the Settlement, Defendants have agreed, for purposes of settlement, to certification of the following Class: "all persons or entities who: (i) purchased or otherwise acquired Nutanix, Inc. ("Nutanix") securities between November 30, 2017 and May 30, 2019, inclusive (the "Class Period"); and/or (ii) transacted in publicly traded call options and/or put options of Nutanix during the Class Period." Stipulation, ¶1.6.[13] The Class, as defined in the Stipulation, combines the two classes alleged in the Complaints, but has no difference in time period. *See Nutanix* TAC, Preamble; *Norton* RFAC, Preamble; *see also* Guideline §1(a) (calling for an explanation of "[a]ny differences between the settlement class and the class proposed in the operative complaint").

At this stage, the Court should determine whether it "will likely be able" to grant certification to the proposed Class at final approval. Rule 23(e)(1)(B). Plaintiffs and the proposed Class Representatives submit that, similar to the classes certified by courts in this District, *see, e.g.*,

---

[13] "Excluded from the Class are Nutanix and its subsidiaries and affiliates, the Individual Defendants, any of Defendants' respective officers and directors at all relevant times, and any of their immediate families, legal representatives, heirs, successors, or assigns, and any entity in which any Defendant has or had a Controlling Interest. Also excluded from the Class are any persons or entities who exclude themselves by submitting a request for exclusion in connection with the Notice that is accepted by the Court." *Id.*

*Fleming*, 2021 WL 5447008, at \*7; *Hampton*, 2021 WL 4553578, at \*6; *Vataj*, 2021 WL 1550478, at \*6-\*7, the Class satisfies the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) as well as the requirements of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

### A.    The Requirements of Rule 23(a) Are Met

#### 1.    Numerosity Is Satisfied

The numerosity requirement is met where the party seeking certification shows the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "While no specific minimum number of potential class members exists, a 'proposed class of at least forty members presumptively satisfies the numerosity requirement.'"  *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at \*4 (N.D. Cal. Mar. 16, 2016).  In assessing this requirement here, "'[t]he Court certainly may infer that, when a corporation has millions of shares trading on a national exchange,' the numerosity requirement is met."  *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 7406418, at \*3 (N.D. Cal. Dec. 22, 2016).

Nutanix common stock trades globally on the NASDAQ under the symbol "NTNX," and as of February 28, 2019, there were 149,142,169 shares of Class A common stock and 32,957,329 shares of Class B common stock outstanding (Nutanix Form 10-Q, filed March 12, 2019), as well as 500,000 notes (Nutanix Form 8-K, filed January 18, 2018).  This easily establishes numerosity.  *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 282-83 (N.D. Cal. 2020) (numerosity satisfied with "over six-hundred thousand outstanding shares of Symantec common stock during the class period").

#### 2.    Commonality Is Satisfied

Rule 23(a)(2) requires a showing that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Plaintiffs need not show . . . that 'every question in the case, or even a preponderance of questions, is capable of class wide resolution.  So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2).'"  *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).  "Commonality, like numerosity, is a prerequisite which plaintiffs generally, and which Plaintiffs here, satisfy very easily."  *In re*

*VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *5 (N.D. Cal. Jan. 13, 2005), *amending order* 2005 WL 226154 (N.D. Cal. Jan. 31 2005).

Class Members have suffered a common injury – losses on their investments in Nutanix securities and publicly traded options – and their claims depend upon numerous common issues capable of class-wide resolution, including: (i) whether Defendants' alleged misrepresentations and omissions violated the Exchange Act; (ii) whether Defendants' alleged misrepresentations and omissions were materially false and misleading; (iii) whether Defendants acted knowingly or recklessly (*i.e.*, with scienter); (iv) whether the Individual Defendants controlled Nutanix and its violations of the securities laws; (v) whether the market prices of Nutanix securities and publicly traded options were artificially inflated as a result of Defendants' alleged misrepresentations and omissions; (vi) whether Defendants' misrepresentations and omissions caused Class Members to suffer a compensable loss; and (vii) whether the members of the Class have sustained damages, and the proper measure of damages.

As the Ninth Circuit has "recognize[d] . . . public disclosures alleged to contain material misrepresentations and omissions, like those at issue here, present common questions of law and fact." *Hatamian*, 2016 WL 1042502, at *4 (citing *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)).  Thus, these issues provide more than sufficient commonality.

### 3.    Typicality Is Satisfied

Rule 23(a)(3) requires that the proposed class representative's claims be "typical" of the claims of the class.  "'Under the rule's permissive standards, representative claims are "typical" if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Parsons*, 754 F.3d at 685.

Here, the Class Representatives' claims are "typical" of other Class Members' claims because they arise out of the same alleged course of conduct and, like other members of the Class, they all allege that they purchased Nutanix securities and/or transacted in Nutanix's publicly traded options during the Class Period at artificially inflated prices due to Defendants' material misstatements and omissions, and were damaged when the truth emerged.  Thus, the Class

Representatives and the Class assert the same legal claims, which relate to the same alleged false and misleading public statements, and will rely on the same facts and legal theories to establish liability.

### 4. The Class Representatives and Lead Counsel are Adequate

Under Rule 23(a)(4), the parties representing the class must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy prerequisite is concerned with two questions: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[,] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *SEB*, 335 F.R.D. at 284-85 (alteration in original) (quoting *Hanlon*, 150 F.3d at 1020).

The Class Representatives and Lead Counsel readily satisfy adequacy. First, based upon their purchases of Nutanix securities and/or options during the Class Period and the losses suffered as a result of Defendants' alleged misconduct, the Class Representatives' interests are directly aligned with – rather than "antagonistic" to – the interests of other Class Members, who were injured by the same alleged materially false and misleading statements and omissions as the Class Representatives. Second, there is no evidence of conflicts between the Class Representatives and the Class. *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 590 (N.D. Cal. 2009) (finding that the class representatives were adequate because there was no evidence of conflicts of interest with the class).

The Class Representatives also have retained counsel who satisfy this adequacy requirement. As many courts have recognized, Lead Counsel Robbins Geller Rudman & Dowd LLP is "'one of the most successful law firms in securities class actions, if not the preeminent one, in the country.'" *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 158 (S.D.N.Y. 2012). And this Court, recently ruling on a motion for class certification in *Malriat v. QuantumScape Corp.*, held that Lead Counsel Levi & Korsinsky, LLP was adequate class counsel, finding them to be "experienced class action litigators who have dedicated a substantial amount of time and resources to this case." 2022 WL 17974629, at *6 (N.D. Cal. Dec. 19, 2022) (Orrick, J.). As their actions in this case and others demonstrate, the Class Representatives' chosen counsel have committed, and are willing to commit,

considerable resources to prosecuting the Actions, and have vigorously represented the Class's interests in the Actions to date. Thus, the adequacy requirement is satisfied.

### B.  The Requirements of Rule 23(b)(3) Are Also Met

The Class Representatives seek to certify the Class pursuant to Rule 23(b)(3), under which certification is appropriate where: (1) questions of law or fact common to class members predominate over questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These requirements are readily satisfied here.

The predominance inquiry of Rule 23(b)(3) asks whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "[T]he predominance inquiry focuses on 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Hatamian*, 2016 WL 1042502, at *3. As the Supreme Court has explained, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625.

This securities fraud action is no different. Here, the common questions identified in §V.A.2 above clearly predominate over individual questions because Defendants' alleged fraudulent statements and omissions affected all Class Members in the same manner (*i.e.*, through public statements made to the market and documents publicly filed with the United States Securities and Exchange Commission ("SEC")). *See Fleming*, 2021 WL 5447008 at *7 ("common questions raised by Lead Plaintiffs' claims predominate over questions affecting only individual members of the proposed class"). Moreover, virtually all of the elements under §10(b) involve common questions of law and fact that predominate over individualized issues. *See Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460-61 (2013) (materiality); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) (loss causation); *see also In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) (all elements).

Finally, the superiority element of Rule 23(b)(3) asks whether class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." In cases like this one, where "'recovery on an individual basis would be dwarfed by the cost of litigating on an

PLTFS' NTC OF UNOPPOSED MTN AND MTN FOR PRELIM APPROVAL OF PROPOSED SETTLEMENT AND MEM. OF PTS AND AUTH IN SUPPORT THEREOF - 3:19-cv-01651-WHO    - 22 -
4891-7245-8327.v2

individual basis,'" a class action is the superior method of adjudication.[14] *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015).  Moreover, Plaintiffs are not aware of any other pending actions seeking similar relief.

In sum, all of the requirements of Rules 23(a) and (b)(3) are satisfied.

## VI.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AS WELL AS DUE PROCESS REQUIREMENTS

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances."  Fed.R. Civ. P. 23(c)(2)(B).  The notice must describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Lane*, 696 F.3d at 826 (quoting *Rodriguez*, 563 F.3d at 962).  The PSLRA further requires that "every settlement notice must include a statement explaining a plaintiff's recovery."  *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008).

Here, Plaintiffs propose to give interested parties notice in two ways.  First, notice will be sent by email, where available, and by postcard where no email is available, or where the email has bounced back.  The email will include a direct link, and the mailed Postcard (Stipulation, Ex. A-4) will include a QR Code, both of which will take the user directly to the case-specific website (www.NutanixSecuritiesSettlement.com) which contains the long form Settlement Notice (Stipulation, Ex. A-1).  Second, Gilardi will publish the Summary Notice (Stipulation, Ex. A-3) in *The Wall Street Journal* and transmit it over a national newswire service.  *See* Crudo Decl., ¶14.  The proposed methods for providing notice satisfy the requirements of Rule 23, the PSLRA, and due process.  *See, e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (requiring notice be sent to all class members "whose names and addresses may be ascertained through reasonable effort"); *Fleming*, 2021 WL 5447008, at \*12 (finding the proposed notice process, including mailed notices

---

[14]   When a class is seeking certification for purposes of settlement, "[t]he superiority inquiry focuses "'on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis.'" *Ford v. CEC Ent., Inc.*, 2015 WL 11439032, at \*4 (S.D. Cal. July 7, 2015) (alteration in original); *see also Hyundai*, 926 F.3d at 556-57 ("[t]he criteria for class certification are applied differently in litigation classes and settlement classes" and "manageability is not a concern in certifying a settlement class").

and claim forms to potential class members, a case-specific website dedicated to the settlement, and publication of the summary notice in the *Wall Street Journal* and *PR Newswire*, "is 'reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement'").

The form and substance of the notice program are also sufficient.  It includes all of the information required by the PSLRA, Federal Rules of Civil Procedure, and due process.  The proposed Settlement Notice describes the terms of the Stipulation and the Class's recovery in absolute dollars and, as required by the PSLRA, on an estimated per share basis; the nature, history, and status of the Actions, and the considerations that caused Plaintiffs and Lead Counsel to conclude that the Settlement is fair, adequate, and reasonable; the definition of the Class and who is excluded; the maximum attorneys' fees and expenses that Lead Counsel intends to seek in connection with final Settlement approval; the maximum amount that Plaintiffs will request pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class; the procedure and deadline for objecting to the Settlement; the procedure and deadline for participating in the Settlement and instructions on how to complete and submit a Proof of Claim to the Claims Administrator (both on paper and electronically); the proposed Plan of Allocation for the settlement proceeds; and the date, time, and place of the Settlement Hearing.  The Settlement Notice also provides contact information for Lead Counsel and Gilardi, the proposed Claims Administrator, as well as information regarding the website created for the case.  Thus, the contents of the proposed Settlement Notice and Summary Notice are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).[15]

---

[15]  In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1).  The proposed Settlement Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount and litigation expenses not to exceed $750,000, to be paid from the Settlement Fund.

## VII.  THE PROPOSED CLAIMS ADMINISTRATOR IS EXPERIENCED AND QUALIFIED, JUSTIFYING APPROVAL

Pursuant to Guideline §2, Lead Counsel proposes that the Court appoint Gilardi as the Claims Administrator for the Settlement in order to provide all notices approved by the Court to Class Members, to process Proofs of Claim, and to administer the Settlement.  Gilardi "has implemented successful notice and claims administration programs in more than a thousand securities class actions during our more than three decades as an administrator." *See* Crudo Decl., ¶4.

At this time, only a rough estimate of the total Notice and Administration Expenses can be provided as the costs are highly dependent on how many notices are ultimately emailed or mailed, and how many claims are ultimately received and processed.  Gilardi estimates Notice and Administration Expenses for the Actions and Settlement up through the initial distribution of approximately $993,000. Crudo Decl., ¶28.  These costs and expenses, which are necessary to fully and properly administer all notice and claims administration, represent approximately 1.4% of the total value of the Settlement.  All Notice and Administration Expenses will be paid from the Settlement Fund.

## VIII.  THE SETTLEMENT FOLLOWS THE GUIDELINES OF THE NORTHERN DISTRICT OF CALIFORNIA

The Guidelines for class action settlements in the Northern District of California have been satisfied and weighs in favor of approving the Settlement.  *See* Appendix A.

## IX.  CONCLUSION

The proposed $71,000,000.00 Settlement is an outstanding result for the Class.  For the reasons set forth above, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement, and enter the Preliminary Approval Order.

DATED:  April 7, 2023                                Respectfully submitted,

ROBBINS GELLER RUDMAN
  &amp; DOWD LLP
STEPHEN R. ASTLEY (admitted *pro hac vice*)

       s/ Stephen R. Astley
     STEPHEN R. ASTLEY

ROBERT J. ROBBINS
(admitted *pro hac vice*)
ANDREW T. REES
(admitted *pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sastley@rgrdlaw.com
rrobbins@rgrdlaw.com
arees@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
JAMES E. BARZ
(admitted *pro hac vice*)
FRANK A. RICHTER
(admitted *pro hac vice*)
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
KENNETH J. BLACK (291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

*Lead Counsel for Lead Plaintiff California
Ironworkers Field Pension Trust and Plaintiff
City of Miami Fire Fighters' and Police
Officers' Retirement Trust*

LEVI & KORSINSKY, LLP
ADAM M. APTON (SBN 316506)
ADAM C. MCCALL (SBN 302130)
75 Broadway, Suite 200
San Francisco, CA  94111
Telephone:  415/373-1671
415/484-1294 (fax)
aapton@zlk.com
amccall@zlk.com

LEVI & KORSINSKY, LLP
SHANNON L. HOPKINS
(admitted *pro hac vice*)
GREGORY M. POTREPKA
(admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT  06905
Telephone:  212/363-7500
866/367-6510 (fax)
shopkins@zlk.com
gpotrepka@zlk.com

*Counsel for Plaintiff John P. Norton, on behalf
of the Norton Family Living Trust UAD
11/15/2002, and Additional Counsel for Plaintiff
City of Miami Fire Fighters' and Police
Officers' Retirement Trust*

PLTFS' NTC OF UNOPPOSED MTN AND MTN FOR PRELIM APPROVAL OF PROPOSED
SETTLEMENT AND MEM. OF PTS AND AUTH IN SUPPORT THEREOF - 3:19-cv-01651-WHO      - 27 -
4891-7245-8327.v2

**APPENDIX A**
**(Compliance with *Procedural Guidance for Class Action Settlements* of Northern District of California)**

A.      **Guidance 1: Information about the Settlement**

1.      **Guidance 1(a):** *Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.*

There is no substantive difference between the proposed class for purposes of this Settlement and the classes proposed in the Complaints, as explained in §V of the attached supporting memorandum ("Preliminary Approval Memorandum").

2.      **Guidance 1(b):** *Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.*

The claims being released closely track the claims alleged.  The Complaints allege federal securities law claims based on certain alleged misrepresentations and omissions by Defendants in connection with the purchase or acquisition of Nutanix securities and transactions in publicly traded Nutanix options during the Class Period.  The definition of "Released Claims" is properly limited to claims that "are based upon both: (i) the purchase or acquisition of publicly-traded Nutanix securities, call options, or put options during the Class Period; and (ii) the facts, events, transactions, acts, occurrences, statements, representations or omissions which were or could have been alleged in the Actions or could have been asserted in any court or forum."  Stipulation, ¶1.30.  Accordingly, the release is carefully tailored to the claims alleged.

3.      **Guidance 1(c):** *The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.*

The Class will receive $71 million, less approved fees and expenses, through the Settlement.  As set forth in the Preliminary Approval Memorandum (§IV.C), the Settlement represents approximately 15% of estimated aggregate damages.  There are many factors that contributed to Plaintiffs' acceptance of a discount to that damages value, which are more fully explained in §IV.C.1 of the Preliminary Approval Memorandum.

APPENDIX A - 3:19-cv-01651-WHO                                                                                    - 1 -
4891-7245-8327.v2

4.    **Guidance 1(d):** *Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval.  If there are no such cases, counsel should so state.*

Lead Counsel believes there are no other cases that will be affected by the Settlement.

5.    **Guidance 1(e):** *The proposed allocation plan for the settlement fund.*

The proposed allocation plan is set forth in detail in the Notice of Pendency and Proposed Settlement of Class Action ("Notice") (Stipulation, Ex. A-1 at 9-18).

6.    **Guidance 1(f):** *If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples.*

With respect to the number of class members, as well as their identities, these are unknown in securities cases.  *See Vataj v. Johnson*, 2021 WL 1550478, at *11 (N.D. Cal Apr. 20, 2021) ("The Court understands that the majority of class members are likely beneficial purchasers whose securities were purchased by brokerage firms, banks, institutions, and other third-party nominees in the name of the nominee, on behalf of the beneficial purchaser.").  Because the number and identity of class members is unknown, both the number and percentage of class members expected to file claims is unknown.  Indeed, the number of claims varies widely from case to case as does the size of each claim.  In a securities class action settlement, class member participation is determined by the number of damaged shares (shares affected by the inflation caused by the alleged misrepresentations and omissions) represented by the claims submitted.  This more accurately reflects how much of the Class is seeking to participate in the Settlement.  Consistent with its experience in securities class actions, and based on the effectiveness of the proposed Notice Plan, Lead Counsel anticipates that the vast majority of damaged shares will be represented by the claims submitted in the Actions.

7.      **Guidance 1(g):** *In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate.*

The Settlement is non-reversionary; there will be no reversions.  Stipulation, ¶5.9.  Once the Settlement becomes final, nothing is returned to Defendants.

**B.      Guidance 2: Settlement Administration**

a.      **Guidance 2(a):** *Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years.*

Plaintiffs' request to appoint Gilardi to serve as the Settlement Administrator, including the reasons for Lead Counsel's selection of Gilardi, is addressed in §VII of the Preliminary Approval Memorandum.  Lead Counsel states that Gilardi and affiliated entities have been appointed as the notice or claims administrator in 41 matters where Robbins Geller was lead or co-lead counsel and had not been retained by Levi & Korsinsky over the past two years.  *See* Declaration of Peter Crudo Regarding Notice and Administration ("Crudo Decl."), ¶5.  The proposed methods of notice are addressed in §VI of the Preliminary Approval Memorandum.

b.      **Guidance 2(b):** *Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs.*

Gilardi's Information Security Policy Framework is aligned to ISO/IEC 27002:2013 which is reviewed on an annual basis and communicated to all employees through a comprehensive training program.  Crudo Decl., ¶30.  Gilardi maintains a number of corporate governance policies that reflect the manner in which it does business, including an employee Code of Conduct that outlines

the professional, responsible, and ethical guidelines that govern employee conduct.  These policies are available on Gilardi's website.  *Id.*, ¶31.

### C.    Guidance 3: The Proposed Notices to the Class Are Adequate

As set forth in §VI of the Preliminary Approval Memorandum, Lead Counsel believes that both the form of notice, which incorporates the suggested language from the *Procedural Guidance* (Stipulation, Ex. A-1 at 24-25), and the plan for disseminating the notice, satisfy Rule 23, the PSLRA, and due process.

### D.    Guidance 4 and 5: Opt-Outs and Objections

The proposed Notice complies with Rule 23(e)(5) in that it discusses the rights Class Members have concerning the Settlement.  The proposed Notice includes information on a Class Member's right to: (i) request exclusion and the manner for submitting such a request; (ii) object to the Settlement, or any aspect thereof, and the manner for filing an objection; and (iii) participate in the Settlement and instructions on how to complete and submit a Claim Form to the Settlement Administrator.  *See* Stipulation, Ex. A-1.  With respect to exclusion requests, the Notice requires only the information needed to opt out – the securities or options purchased, acquired, transacted, and sold during the Class Period.  The Notice also provides contact information for Lead Counsel, as well as the postal address for the Court.  Finally, the Notice incorporates the suggested language regarding objections from the *Procedural Guidance*.  *Id.* at 22-23.

### E.    Guidance 6: Attorneys' Fees and Expenses

Lead Counsel's intended request for attorneys' fees and expenses is set forth in §IV.C.3 of the Preliminary Approval Memorandum.

### F.    Guidance 7: Incentive Award

Plaintiffs will not seek an "Incentive Award"; however, pursuant to 15 U.S.C. §78u-4(a)(4), Plaintiffs may seek an award in an amount not to exceed $10,000 for California Ironworkers, $10,000 for City of Miami, and $5,000 for Norton in connection with their representation of the Class.  Support for this award will be presented in support of Lead Counsel's application for an award of attorneys' fees and expenses and in support of final approval of the Settlement.

### G.    Guidance 8: *Cy Pres* Awardees

The Settling Parties have chosen the Investor Protection Trust as the designated recipient for any *de minimis* balance remaining after all reallocations are completed.   *See* Stipulation, ¶5.9; *Fleming v. Impax Laby's, Inc.*, 2022 WL 2789496, at *2 (N.D. Cal. July 15, 2022) (approving Investor Protection Trust as the *cy pres* recipient in securities class action settlement).

### H.    Guidance 9: Proposed Timeline

Plaintiffs propose the following schedule for notice, Settlement Hearing, and related dates:

| Event | Deadline for Compliance |
|---|---|
| Deadline to commence emailing and mailing the Postcard Notice to potential Class Members and posting of the Notice and Proof of Claim (the "Notice Date") | No later than 20 calendar days following entry of the Preliminary Approval Order (Preliminary Approval Order, ¶11) |
| Publication of the Summary Notice | No later than 7 calendar days following the Notice Date (Preliminary Approval Order, ¶12) |
| Deadline for filing papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶21) |
| Deadline for submitting requests for exclusion or objections | 21 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶¶18-19) |
| Deadline for submission of reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶21) |
| Proof of Claim submission deadline | 90 calendar days after the Notice Date (Preliminary Approval Order, ¶15.a) |
| Date for the Settlement Hearing | At least 100 days after entry of the Preliminary Approval Order (Preliminary Approval Order, ¶6) |

### I.    Guidance 10: Class Action Fairness Act

Although the CAFA statute is unclear whether notice is required in a securities class action settlement, Defendants are nevertheless coordinating compliance with 28 U.S.C. §1715 at their own cost.

**J.    Guidance 11: Comparable Outcomes**

# JCPenney 13

*Alan B. Marcus v. J.C. Penney Company, Inc., et al.*,
No. 6:13-cv-00736-RWS-KNM (E.D. Texas, Tyler Division)

| | |
|---|---|
| Total Settlement Amount | $97,500,000.00 |
| Notice and Claim Packets Mailed/Remailed | 110,391 |
| Number of Packets Returned Undeliverable/Unable to Forward | 3,516 / 3.232% |
| Total Claims Submitted | 51,991 / 47.797% |
| Total Valid Claims | 13,890 / 26.716% |
| Opt-Outs Received | 8 / 0.007% |
| Objections Received | 0 |
| Mean Recovery per Claimant | $8,415.15 |
| Median Recovery per Claimant | $171.25 |
| Largest Recovery per Claimant | $7,934,734.22 |
| Smallest Recovery per Claimant | $10.01 |
| Method of Notice | Direct Mail; Published in *The Wall Street Journal*; *Business Wire*; DTC Legal Notice Systems |
| Number of Checks Not Cashed | To Be Determined |
| Value of Checks Not Cashed and Included in Supplemental Distribution | To Be Determined |
| Administrative Costs (including taxes, tax prep., etc.) | $1,813,209.58 |
| Attorney Costs | $868,760.57 |
| Expert Fees | $428,337.67 |
| Attorney Fees | $29,250,000.00 |
|    % of Settlement Amount | 30% |
|    Multiplier | 3.18 |
| Initial Distribution Date | 11/25/2019 |
| Cy Pres Distribution | To Be Determined |
| Charity | To Be Determined |
| Total Amount Distributed | $68,308,649.33 |
| Percentage of Distribution Factor | 31.500% |
| Number of Payments | 13,930 |
| Method of Payments | Checks; Wires |