# EXHIBIT 2

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
KENNETH J. BLACK (291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
kennyb@rgrdlaw.com
     – and –
JAMES E. BARZ
FRANK A. RICHTER
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re NUTANIX, INC. SECURITIES LITIGATION | Case No. 3:19-cv-01651-WHO<br>Case No. 3:21-cv-04080-WHO |
| | CLASS ACTION |
| JOHN P. NORTON, ON BEHALF OF THE NORTON FAMILY LIVING TRUST UAD 11/15/2002, Individually and On Behalf of All Others Similarly Situated, | DECLARATION OF PETER CRUDO REGARDING NOTICE AND ADMINISTRATION |
| Plaintiff, | DATE: May 17, 2023<br>TIME: 2:00 p.m. (via videoconference)<br>JUDGE: Honorable William H. Orrick |
| vs. | |
| NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS, | |
| Defendants. | |

I, PETER CRUDO, declare and state as follows:

1. I am an Executive Vice President of Securities at Gilardi & Co. LLC ("Gilardi"), located at 1 McInnis Parkway, Suite 250, San Rafael, California 94903. I make this declaration based on personal knowledge, and if called to testify I could and would do so competently.

2. At the request of Lead Counsel, Robbins Geller Rudman & Dowd LLP and Levi & Korsinsky, LLP, I am providing this declaration to give the Court and the parties to the above-captioned actions further information about the procedures and methods that will be used to provide notice of the proposed Settlement to the investors who make up the Class, and the administration of the claims process.

3. Gilardi has been retained by Lead Counsel, subject to Court approval, to provide notice and claims administration services in the above-captioned actions. The Class consists of all persons or entities who: (i) purchased or otherwise acquired Nutanix, Inc. ("Nutanix") securities between November 30, 2017 and May 30, 2019, inclusive (the "Class Period"); and/or (ii) transacted in publicly traded call options and/or put options of Nutanix during the Class Period. Excluded from the Class are Nutanix and its subsidiaries and affiliates, the Individual Defendants, any of Defendants' respective officers and directors at all relevant times, and any of their immediate families, legal representatives, heirs, successors, or assigns, and any entity in which any Defendant has or had a Controlling Interest.[1] Also excluded from the Class are any persons or entities who exclude themselves by submitting a request for exclusion in connection with the Notice that is accepted by the Court.

4. As background, Gilardi (a subsidiary of Computershare) has implemented successful notice and claims administration programs in more than a thousand securities class actions during our more than three decades as an administrator. Our experience includes many of the largest and most complex settlement administrations of both private litigation matters and of

---

[1] "Controlling Interest" shall be defined as having a majority ownership interest or ownership of the majority of voting stock of the entity.

-1-

actions brought by government securities regulators.  More information on Gilardi's experience can be found on its website at www.gilardi.com.

5.    Gilardi and affiliated entities have been appointed as the notice or claims administrator in some 400 notice or settlement administrations over the past two years.  In 41 of those matters, Robbins Geller was lead or co-lead counsel.  Gilardi has not been retained by Levi & Korsinsky over the past two years.

6.    The proposed notice plan in this matter uses procedures that have been designed to provide extremely effective direct mail notification to every investor who is a member of the Class and who can be identified with reasonable effort.  In addition, direct email notification will be provided to hundreds of financial institutions that regularly monitor proposed securities class action settlements.  By themselves, the proposed direct mail and email notification will be sufficient to reach an extremely high percentage of the Class.  All persons and entities identified as potential Class Members will be sent a summary postcard version of the Notice of Pendency and Proposed Settlement of Class Action ("Postcard Notice"), which will direct potential Class Members to the Settlement website to access the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release Form ("Claim Form"), which will include instructions for claim submission, objecting to any aspect of the Settlement, and requesting exclusion from the Class.  The proposed notice plan also calls for publication of a summary version of the Notice ("Summary Notice") in a national newspaper read by securities investors, as well as placement of the Summary Notice on a national business newswire service.  Details of the complete proposed notice plan are outlined below.

7.    If Gilardi is appointed by the Court as Claims Administrator, and subject to the Court's approval of the notice plan set forth in the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order"), Gilardi will initially send a copy of the Postcard Notice by First-Class Mail (or email, to the extent email addresses are provided) to all persons and entities identified as potential Class Members by Nutanix's stock transfer agent.  The stock transfer agent will only have the contact information for the small number of investors that

hold their securities in their own names. These investors typically make up a very small percentage of a class, as the vast majority of investors hold their securities through a broker, bank, or other financial institution, and do so in what is known colloquially as "street name." Under the system of street name ownership, institutions act as the record holders for investors who are the beneficial owners of the securities. In Gilardi's experience, shareholders who hold their securities in their own name, and are therefore known to the stock transfer agent, typically make up less than 5% of a class in a typical securities settlement.

8. In order to obtain the contact information for investors that hold their securities in street name, Gilardi and other administrators use a procedure designed to obtain that information from the brokers, banks, and other institutions (the "Nominee Holders") that actually hold the securities for the benefit of their clients. In the more than 30 years that Gilardi has been notifying class members of actions involving publicly-traded securities, Gilardi has found the majority of potential class members hold their securities in street name and are reached through the Nominee Holders.

9. For this matter, Gilardi will send a Postcard Notice and appropriate cover letter to each entity included on a proprietary list of approximately 280 Nominee Holders. This list also includes a group of firms and institutions who have requested notification on every case involving publicly-traded securities and is contained in a database created, maintained, and updated as necessary by Gilardi. In Gilardi's experience, the institutions included in this database represent a significant majority of the beneficial holders of the securities in most settlements involving publicly-traded companies.

10. Gilardi will also send a Postcard Notice and appropriate cover letter to each financial institution registered with the U.S. Securities and Exchange Commission ("SEC") as a potential Nominee Holder. There are approximately 4,450 institutions on that list, which changes from time to time and is, therefore, periodically updated. The cover letter accompanying the Postcard Notice would notify the Nominee Holders of the pendency of these actions as class actions and of the proposed Settlement and inform them of their obligation to either provide to

Gilardi the names and addresses of their clients who may be Class Members or request copies of the Postcard Notice to provide directly to their customers and clients.

11.    Gilardi has long-standing relationships with all of the primary Nominee Holders, and they are accustomed to providing us with information regarding their clients from their records and obtaining reimbursement for doing so.  Gilardi will provide several supplemental notification letters to any Nominee Holder who does not respond to the initial request for potential Class Member names and addresses.

12.    Gilardi will promptly mail the Postcard Notice to all potential Class Members identified by Nominee Holders.  Gilardi will also send copies of the Postcard Notice directly to Nominee Holders who indicate that they will directly forward the documents to their customers and clients who may be Class Members.

13.    All name and address data obtained by Gilardi will be reviewed to identify and eliminate exact duplicates and incomplete data prior to mailing.  Addresses will be checked against the United States Postal Service's National Change of Address database to identify address changes and obtain current mailing addresses where available.  Any Postcard Notices that are returned as undeliverable mail will be reviewed to determine if an alternative or updated address is available from the Postal Service, and will be re-mailed to the updated or alternative address.  In cases where no address is available from the Postal Service, Gilardi will attempt to obtain updated or alternative address information from private databases, and will re-mail the Postcard Notice if such information is available.

14.    Gilardi will supplement the direct mailing program described above by publishing the Summary Notice in *The Wall Street Journal*.  The Summary Notice will also be posted with Business Wire, an online newswire service, where it will be available for a month.  News outlets often use posted notices as the basis for their own stories about litigation settlements involving publicly-traded companies, thereby creating added awareness of the proposed Settlement among investors.

-4-

15. Gilardi will also cause the Postcard Notice, Notice, and Claim Form to be published by the Depository Trust Corporation ("DTC") on the DTC Legal Notice System ("LENS"). LENS enables participating banks and brokers to review the documents and directly contact the Claims Administrator to obtain copies of the Postcard Notice for their clients who may be Class Members.

16. The Postcard Notice, Notice, and Claim Form will also be provided electronically to approximately 365 institutions that monitor securities class actions for their investor clients and regularly act on their behalf in these matters.

17. Throughout the notification and claims processing period, Gilardi will maintain a toll-free number to accommodate potential Class Members' inquiries.

18. Gilardi will also establish and maintain a settlement-specific website where key documents will be posted, including the Stipulation of Settlement, Notice, Claim Form, executed Notice Order, and any other documents that the parties or the Court require to be posted. The website will also provide summary information regarding the case and Settlement and highlight important dates, including the date of the Settlement approval hearing and any changed deadlines. All posted documents will be available for downloading from the website.

19. Based on our experience, we estimate that the combined direct mail and publication program proposed will provide notice to more than 95% of the investors that are potential Class Members. Because the Notice directs the cooperation of Nominee Holders and provides for the reimbursement of their costs of doing so, we have experienced and continue to anticipate a high level of compliance from those institutions, many of which have developed regular systems for providing the required information. In addition, the proposed publication will create additional awareness of the Settlement, and we expect to receive a number of additional requests for the Notice and Claim Form through the designated toll-free number and via email as a direct result of publication.

20. The procedures proposed here have proven extremely effective at compiling a very comprehensive list of potential class members and providing notice to those potential class members in thousands of securities class action matters prior to this case. Substantially similar

-5-

notice plans have been approved by numerous courts as being the best notice practicable under the circumstances. Gilardi will, of course, provide a reporting declaration outlining the results of the implemented notice plan and the number of notices that are ultimately delivered, and will do so prior to, or in conjunction with, Plaintiffs' request that the Settlement be finally approved.

21. Because of the street name system under which most securities are held, even Defendant Nutanix does not know the identity of the vast majority of its shareholders, and it is usually not possible to meaningfully project the total number of class members prior to implementing the notice plan. However, by taking certain information regarding the number of outstanding Nutanix shares during the proposed class period and comparing that to similar information collected in other cases Gilardi has administered, we estimate that we will send approximately 350,000 Postcard Notices to potential Class Members and other Nominees.

22. Because this matter involves the purchase and sale of securities, which is protected and private financial information held by a large number of different brokerages, custodians and other financial institutions, a claims process is necessary to gather the required information regarding each claimant's purchases, acquisitions, sales, and holdings of Nutanix securities and options during the periods relevant to the proposed Plan of Allocation. This stock transaction information will then be used to evaluate the eligibility of each claim to receive any distribution from the Settlement.

23. There are three typical ways that a claim may be submitted to Gilardi in securities settlements such as this: a claimant may submit a Claim Form and supporting documents by mail, a claimant may submit a Claim Form and supporting documents via an interactive service provided on the Settlement website, or a financial institution or other third party who has the authority to do so may file claims on behalf of its clients in electronic spreadsheet format. In our experience, the vast majority of claims, typically at least 80%, are filed by institutions or third-party services which submit claims on behalf of their clients who may be class members, removing the burden from those claimants to file on their own behalf.

24.    A claim may be determined ineligible for recovery for various reasons related to the overall completeness of the claim and the claimant or transaction information as presented. For example, where the Claim Form did not include any purchases or acquisitions of Nutanix securities and options during the relevant period, where calculation of the claim under the Plan of Allocation did not result in a net loss, or where the beneficial owner as presented was determined to be insufficient or otherwise ineligible, the claim will be deemed ineligible for recovery and claimants are so advised.

25.    In addition to making these determinations, Gilardi also reviews claims for deficiencies related to specific missing or incorrect information which may be resolved with further information; for example, where a claim is missing supporting documentation, lacking a signature, appears to be missing information regarding transactions or holdings, or presents transaction information which does not match the known history of the stock.  If those deficiencies can be corrected by an analyst on review, some of these claims may result in a different loss determination and move into eligible status.  Furthermore, Gilardi will typically waive deficiencies deemed to be insignificant, which may include, but is not limited to, deficiencies which impact only the portion of the claim which calculates no recognized loss, and partially or undocumented claims, partial or missing signatures, and other immaterial deficiencies where the loss of the claim falls below certain recognized loss amount thresholds.

26.    Deficiencies will be addressed during the normal course of the administration and claimants with deficient Claim Forms will be provided an opportunity to cure these deficiencies prior to distribution of the Settlement proceeds.  In addition, rejected claimants will be notified of the rejection of their claim and will be provided an opportunity to furnish additional information which may validate the claim or request more information about the reason why the claim is rejected prior to distribution of the Settlement proceeds.  Claimants who furnish additional information which remains insufficient or who request further review by the Claims Administrator of their rejected claim and who remain dissatisfied with the determination made by the Claims

-7-

Administrator will also be given instructions for further appealing adverse determinations to the Court to obtain a final determination for the claim.

27.     In our experience, not all class members submit claims, and some of the claims submitted are not valid or eligible to receive distributions according to the plan of allocation. Historically, based on the number of Notices we expect to mail, we would expect the number of claims received to be between 70,000 and 105,000, and on average as many as 70% of the claims received may be valid and eligible for distribution. Therefore, our estimate below is based on those assumptions, as well as certain other projections based on our experience. The actual fees and costs required to complete the administration may be significantly higher or lower, depending on how many Class Members are identified, how many claims are filed, how many claims are valid, and how many claims require additional communication with the filer.

28.     Based on our experience with securities settlements of similar size and involving companies with similar market capitalizations and numbers of shareholders, we would estimate administering the notice, claims processing, and settlement distribution aspects of this proposed Settlement will generate professional services fees and expenses of approximately $993,000. The estimate includes expenses related to printing and postage for mailing and emailing the Postcard Notice. This estimate also includes the expenses of the Nominee Holders incurred in complying with the request for client information or disseminating the Postcard Notice to clients as allowed by law. As part of the outreach process described in paragraphs 8-13, Nominee Holders will be advised that they may seek reimbursement of their reasonable out of-pocket expenses actually incurred in connection with the foregoing up to $0.03 per record for providing names, addresses, and email addresses to the Claims Administrator; up to a maximum of $0.03 per Postcard Notice mailed, plus postage at the rate used by the Claims Administrator; or $0.03 per notice sent by email, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. In our experience, the notice process and claims process outlined above are consistent with those undertaken in other securities settlements of similar size

and complexity, and are extremely effective in administering settlements of securities class actions.

29.      Gilardi is an indirect subsidiary of Computershare Limited ("Computershare") and through Computershare it maintains a robust and comprehensive security program designed to ensure the protection and secure handling of client data.  Gilardi acts as a data processer and will receive class member data through secure means, such as secure FTP.  All data provided to Gilardi will be used for purposes of the Settlement as directed by the Settlement Agreement and the parties and will be used solely for settlement implementation and no other purpose.

30.      Gilardi's Information Security Policy Framework is aligned to ISO/IEC 27002:2013 which is reviewed on an annual basis and communicated to all employees through a comprehensive training program.

31.      Gilardi maintains a number of corporate governance policies that reflect the manner in which it does business, including an employee Code of Conduct that outlines the professional, responsible, and ethical guidelines that govern employee conduct.  These policies are available on Computershare's website.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 7th day of April, 2023, at San Rafael, California.

_____
PETER CRUDO

-9-